**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Akmurat O. Doe,

Plaintiff,

v.

Donald J. Trump, in his official capacity as President of the United States,

The White House
1600 Pennsylvania Avenue, NW,
Washington, D.C. 20500;

United States Department of Homeland Security,

Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security,

Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

United States Citizenship and Immigration Services,

USCIS
Office of the Chief Counsel
5900 Capital Gateway Dr.
Mail Stop 2120
Camp Springs, MD 20588-0009,

Joseph B. Edlow, in his official capacity as Director of the United States Citizenship and Immigration Services,

Case No.

USCIS
Office of the Chief Counsel
5900 Capital Gateway Dr.
Mail Stop 2120
Camp Springs, MD 20588-0009,

and

Dorothy Michaud, in her official capacity as Director of the Boston Field Office of United States Citizenship and Immigration Services,

USCIS
John F. Kennedy Federal Building
15 Sudbury St.
Boston, MA 02203,

Defendants.

**COMPLAINT FOR DECLARATORY RELIEF AND TO SET ASIDE UNLAWFUL AGENCY ACTION**

1. Plaintiff Akmurat O. Doe brings this action to stop the Executive Branch from shutting down core components of the nation's lawful immigration system. Relying on Presidential Proclamation 10949 and subsequent DHS and USCIS directives—including Policy Alert PA-2025-26 and Policy Memorandum PM-602-0192—Defendants have implemented a de facto nationwide freeze on the adjudication of immigration benefits inside the United States.

2. These policies halt or delay naturalization, adjustment of status, asylum and employment authorization for hundreds of thousands of noncitizens who are lawfully present in the United States and statutorily entitled to individualized adjudication. The freeze is categorical and indefinite, and it targets applicants based on country of birth and/or country of citizenship, rather than individualized evidence or case-specific concerns.

3. As implemented, the challenged policies bar affirmative asylum adjudications outright; place applicants from nineteen designated countries into open-ended "security posture" holds; suspend naturalization interviews and oath ceremonies; suspend green card interviews and final adjudication; and, delay issuance and renewal of employment authorization. They also instruct USCIS adjudicators to treat mere nationality from one of the thirty-nine designated countries as a "significant negative factor" in evaluating eligibility and discretion, even in the absence of any *individualized* derogatory information or security concern.

4. Nothing in the Immigration and Nationality Act authorizes DHS or USCIS to suspend adjudications en masse, to replace individualized assessments with nationality-based review, or to convert the President's authority under 8 U.S.C. § 1182(f) over the entry of foreign nationals to the United States into a wholesale domestic adjudication moratorium. The INA assigns USCIS mandatory adjudicatory duties and expressly prohibits nationality-based discrimination in the allocation of immigration benefits.

5. Nor does the Administrative Procedure Act permit agencies to impose binding rules of general applicability without statutory authorization, without reasoned explanation, and without notice-and-comment rulemaking, as discussed below. The challenged directives are substantive rules with immediate legal consequences, promulgated without compliance with the APA.

6. The consequences are profound. Naturalization applicants are pulled from oath ceremonies. Adjustment applicants are denied green cards, work authorization, advance parole and remain separated from family. Asylum seekers lose work authorization and employment. Students fall out of status. Families confront eviction, job loss, and prolonged insecurity. Immigrants face daily financial, emotional, and legal harm from the indefinite suspension of their immigration cases.

7. Plaintiff does not seek review of individual removal orders, consular visa issuance, or discretionary adjudicatory outcomes. He challenges only the legality of systemic policies that suspend mandatory statutory duties and impose nationality-based freezes on domestic adjudications.

8. Plaintiff seeks declaratory relief and an order setting aside the challenged directives, and an injunction prohibiting further reliance on those directives in domestic adjudications, to restore lawful processing of his application and to ensure compliance with statutory and constitutional limits on agency action.

## FACTUAL ALLEGATIONS

9. On June 4, 2025, President Donald J. Trump issued Presidential Proclamation 10949, invoking INA § 212(f) to restrict entry for nationals of nineteen designated countries, and directing the Department of Homeland Security to adopt a heightened "security posture" toward individuals from those countries.

10. The June 4, 2025 Proclamation identified nineteen countries subject to heightened restrictions, but it drew distinctions between those subject to a total entry suspension and those subject to partial or conditional restrictions. The Proclamation imposed a complete entry ban on nationals of Afghanistan, Burma, Chad, Republic of the Congo, Equatorial Guinea, Eritrea, Haiti, Iran, Libya, Somalia, Sudan, and Yemen, blocking their admission to the United States absent narrow discretionary waivers. For nationals of seven additional countries—Burundi, Cuba, Laos, Sierra Leone, Togo, Turkmenistan and Venezuela—the Proclamation ordered heightened screening and processing requirements as conditions of entry rather than a complete bar.

11. On November 27, 2025, DHS issued Policy Alert PA-2025-26. Attached as Exhibit A and incorporated herein by reference. The Policy Alert instructed DHS components, including

USCIS, to implement an "enhanced security posture" and "tiered risk framework" for nationals of the nineteen countries, and directed that nationality would trigger additional review.

12. In the accompanying November 27th press release issued by Defendant USCIS, Defendant Joseph Edlow stated that "[e]ffective immediately, I am issuing new policy guidance that authorizes USCIS officers to consider country-specific factors as significant negative factors when reviewing immigration requests." Attached as Exhibit B and incorporated herein by reference.

13. Although § 212(f) pertains *solely* to entry, DHS interpreted the Proclamation and Policy Alert to apply to domestic immigration adjudications conducted by USCIS, and directed USCIS to implement internal procedures applying the heightened posture to pending applications *within* the United States.

14. On December 2, 2025, USCIS issued Policy Memorandum PM-602-0192. Attached as Exhibit C and incorporated herein by reference. The Memorandum ordered a nationwide hold on *all* affirmative asylum adjudications and directed adjudicators to place pending benefit requests by nationals of the nineteen designated countries into indefinite "security posture" holds.

15. USCIS issued PM-602-0192 without publishing a proposed rule, without soliciting public comment, and without notice-and-comment rulemaking. No notice appeared in the Federal Register, and affected applicants received no advance warning that their pending cases would be suspended.

16. PM-602-0192 did not articulate criteria, standards, or factual triggers for suspending adjudications; did not specify goals, timelines, or sunset provisions; and did not identify mechanisms for resuming adjudication.

17. This Memorandum did not require individualized assessments or evidence-based determinations, but instead relied on nationality alone to place applications on hold, without any showing of derogatory information, ineligibility, or security concern.

18. USCIS provided no mechanism for affected applicants to contest the hold, seek expedited review, or request exemption. No administrative process exists for challenging the ongoing suspension.

19. Following issuance of PM-602-0192, USCIS cancelled scheduled asylum interviews, adjustment interviews, naturalization interviews, and naturalization oath ceremonies. Notices cited "policy guidance" or "security review" without identifying individualized statutory grounds.

20. During the same period, USCIS delayed or withheld adjudication of employment authorization applications and renewals tied to frozen asylum and adjustment cases, as well as various other types of immigration cases, causing lapses in work authorization and loss of employment.

21. According to news reports, on or about December 18, 2025, the Administration expanded the scope of the adjudication freeze to nationals of an additional twenty countries that were newly added to the President's travel-ban proclamation. According to reporting by CBS News citing a senior U.S. official, USCIS extended its suspension of adjudicating petitions and applications filed by individuals from these newly designated nations, including Burkina Faso, Mali, Niger, South Sudan, and Syria (now subject to full bans), as well as Angola, Antigua and Barbuda, Benin, Côte d'Ivoire, Dominica, Gabon, Gambia, Malawi, Mauritania, Nigeria, Senegal, Tanzania, Tonga, Zambia, and Zimbabwe (which face partial restrictions). This expansion was not issued through notice-and-comment rulemaking, was not accompanied by any statutory justification for halting

domestic adjudications, and further illustrates that the agency's freeze is categorical, nationality-based, and escalating in scope.

22. The cumulative effect of these directives has been a de facto nationwide freeze on statutory immigration adjudications, including affirmative asylum, adjustment of status, naturalization, and employment authorization, for large numbers of lawfully present applicants.

## JURISDICTION AND VENUE

23. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution, the Immigration and Nationality Act, and the Administrative Procedure Act.

24. Judicial review is available under the Administrative Procedure Act, 5 U.S.C. §§ 702 and 704, because Plaintiff challenges final agency actions that impose binding consequences, suspend statutory adjudication duties, and inflict concrete injuries. Sovereign immunity is waived for claims seeking non-monetary relief.

25. Taken as a whole, Defendant Edlow's purported policy guidance directing USCIS officers to consider country-specific factors as "significant negative factors," Policy Alert PA-2025-26 and Policy Memorandum PM-602-0192 constitute final agency action because they determine rights and obligations, bind USCIS adjudicators, and have direct and immediate legal consequences for Plaintiff.

26. The relief sought is authorized under 5 U.S.C. § 706, which empowers courts to set aside agency actions that exceed statutory authority, conflict with governing law, or violate procedural requirements:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The

> reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;...

27. Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(e), because Plaintiff resides within this District, USCIS conducts and withholds adjudications affecting Plaintiff here, and a substantial part of the events and omissions giving rise to this action occurred in this District.

28. This case does not fall within any statutory exclusion from judicial review. Plaintiff does not seek review of an individual removal order, consular visa issuance, or discretionary adjudicatory determination. He challenges only systemic policies that suspend domestic adjudication.

## PARTIES

29. Plaintiff Akmurat O. Doe is a native and citizen of Turkmenistan who came to the United States in October of 2019. He filed for asylum in March of 2020. Defendants granted asylum in the United States to Plaintiff on June 13, 2024. Following that grant, he filed a timely Form I-485 application for adjustment of status to that of a lawful permanent resident with USCIS on June 13, 2025. This application has remained pending for more than six months without adjudication. Despite meeting all statutory requirements for adjustment and receiving no indication of any individualized concerns or deficiencies, his application has been held in abeyance as a result of the challenged adjudicatory freeze.

30. Each day of uncertainty weighs heavily on him, causing persistent stress, anxiety, and emotional strain. The security and stability asylum was meant to provide, fell out of reach, leaving him constantly on edge and unsure of his future. The delay has compelled him to place his medical career on hold, undermining the long-term planning and stability essential to his professional development. He is preparing for U.S. medical training and licensure, including residency, with the objective of establishing a long-term career in the United States as a physician dedicated to high-quality patient care and service to the American healthcare system and society.

31. Defendant Donald J. Trump is the President of the United States and is sued in his official capacity. He issued Presidential Proclamation 10949 and directed the development and implementation of the challenged "security posture" and adjudication freezes through the Department of Homeland Security and its component agencies.

32. Defendant United States Department of Homeland Security (DHS) is a cabinet-level department of the United States charged with administering and enforcing the immigration laws. DHS issued Policy Alert PA-2025-26, directed the extension of 8 U.S.C. § 1182(f) entry authority into domestic adjudications, and oversees USCIS.

33. Defendant Kristi Noem is the Secretary of DHS and is sued in her official capacity. She is responsible for supervising DHS, issuing and implementing Policy Alert PA-2025-26, and directing USCIS to adopt the challenged adjudicatory freezes and nationality-based security posture.

34. Defendant United States Citizenship and Immigration Services (USCIS) is a component agency of DHS charged with adjudicating applications for naturalization, adjustment of status, asylum, and employment authorization. USCIS issued Policy Memorandum PM-602-0192 and is responsible for freezing or delaying domestic adjudications under the challenged directives.

35. Defendant Joseph B. Edlow is the Director of USCIS and is sued in his official capacity. He is responsible for directing USCIS operations and implementing Policy Memorandum PM-602-0192 and related adjudication freezes.

36. Defendant Dorothy Michaud is the Field Office Director of USCIS's Boston Office and is sued in her official capacity. She is responsible for directing USCIS operations and implementing Policy Memorandum PM-602-0192 and related adjudication freezes at the Boston Field Office.

37. The challenged directives remain in effect and continue to bind USCIS adjudicators at the direction of Defendants.

## IMMIGRATION AND NATIONALITY ACT STATUTORY AND REGULATORY FRAMEWORK

Naturalization (INA §§ 310–319; 8 U.S.C. §§ 1421, 1446–1448; 8 C.F.R. Part 335)

38. Congress vested exclusive naturalization authority in USCIS and mandated adjudication of naturalization applications. 8 U.S.C. § 1421(a).

39. Section 1446 provides that USCIS "shall conduct" an investigation and examination of each applicant. 8 U.S.C. § 1446(a), (d).

40. Section 1447 provides that, once eligibility is established, USCIS "shall grant" naturalization and administer the oath. 8 U.S.C. § 1447(a)–(b).

41. Implementing regulations are similarly mandatory: 8 C.F.R. § 335.3(a) requires USCIS to determine whether to grant or deny an application following examination.

Adjustment of Status (INA § 245; 8 U.S.C. § 1255; 8 C.F.R. §§ 245.1–245.2)

42. Section 245 authorizes eligible noncitizens who have been inspected or paroled into the United States to apply for adjustment of status and directs USCIS to adjudicate those applications through individualized determinations of admissibility, visa availability, and statutory eligibility. By

statute, the process is not discretionary once an application is properly filed: Congress provided that eligible applicants "may apply," and that USCIS must determine eligibility based on evidence and statutory criteria.

43. The implementing regulations confirm that obligation. Under 8 C.F.R. § 245.2(a)(1), USCIS must accept and process properly filed applications that are accompanied by required fees and initial evidence. Section 245.2(a)(5)(i) further mandates action, stating that an officer "shall adjudicate" an adjustment application and must notify the applicant of the decision. Related regulations require USCIS to request additional evidence if needed, and—after evidence is submitted—to make a determination to approve or deny the application, not to withhold action indefinitely.

44. Congress designed adjustment as an adjudicatory benefit tied to statutory eligibility and timely access to permanent residence. The statutory and regulatory framework assumes movement toward a final decision once (1) a visa is available, (2) the applicant submits the required fees and evidence, and (3) USCIS completes any necessary background review. That design is reflected in the mandatory "shall adjudicate" language and the absence of any authority to suspend adjudication based on nationality.

45. Nothing in § 245 or its implementing regulations authorizes USCIS to refuse to act on properly filed applications, to place entire nationalities into open-ended abeyance, or to treat nationality itself as evidence of inadmissibility or risk. The freeze thus contradicts Congress's requirement of individualized adjudication and converts a mandatory statutory process into an indefinite suspension untethered to any statutory criteria.

Asylum (INA § 208; 8 U.S.C. § 1158; 8 C.F.R. Part 208)

46. Section 208 provides that "any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival…) may apply for asylum," 8 U.S.C. § 1158(a)(1), and mandates adjudication of such applications. Congress imposed specific procedural requirements governing affirmative asylum, including deadlines and mandatory processing obligations. Section 1158(d)(5)(A) directs DHS to conduct an initial interview within 45 days and to complete adjudication within 180 days absent exceptional circumstances—reflecting Congress's intent that asylum claims be decided, not suspended.

47. The implementing regulations mirror these statutory obligations. Under 8 C.F.R. § 208.9, USCIS must interview asylum applicants to evaluate eligibility, credibility, and statutory bars. Section 208.14 requires adjudicators to take action following an interview—granting asylum, denying it, or referring the application to the Department of Justice for removal proceedings. These steps form a mandatory adjudicatory sequence: interview; evaluate evidence; issue a decision or referral. The regulations contemplate continuous processing and expressly provide for actions at each stage, not indefinite holds.

48. The statutory design recognizes asylum as a humanitarian protection grounded in international and domestic law, with specific protections for timely adjudication and eligibility to obtain work authorization during the process. Congress required DHS to move cases forward through individualized adjudication and to complete them within prescribed timeframes. Nothing in § 1158 or Part 208 authorizes DHS or USCIS to halt asylum adjudications categorically, to suspend interviews across the board, or to impose moratoria based solely on nationality. Such freezes convert a mandatory adjudicatory framework into an open-ended asylum limbo that Congress expressly

sought to prevent through statutory deadlines and individualized assessment requirements.

Employment Authorization (INA § 208(d); 8 C.F.R. §§ 208.7, 274a.12)

49. Section 208(d) and implementing regulations require DHS to process work authorization applications for eligible asylum applicants and renewal applicants.

50. Regulations provide that DHS "shall grant" employment authorization after required timeframes. 8 C.F.R. § 208.7(a).

51. The regulatory scheme imposes mandatory duties to accept, process, and adjudicate work authorization applications and contains no authority for categorical or indefinite suspension.

Prohibition on Nationality-Based Discrimination (8 U.S.C. § 1152(a)(1)(A))

52. For much of the twentieth century, the federal immigration system was structured around national-origin quotas that explicitly allocated immigration benefits on the basis of nationality and race. The Immigration Act of 1924 imposed formal national-origin limits that restricted immigration from Asia, Africa, and southern and eastern Europe.

53. Although the 1952 Immigration and Nationality Act carried forward elements of the quota system, Congress repudiated nationality-based allocation in the Immigration and Nationality Act of 1965, Pub. L. No. 89-236. The 1965 amendments abolished the national-origin quota system and replaced it with a uniform preference system based on family and employment categories.

54. As part of this shift, Congress enacted § 202(a)(1)(A), now codified at 8 U.S.C. § 1152(a)(1)(A), which provides that **"no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."**

55. Section 202(a)(1)(A) was designed as a categorical barrier against the reintroduction of nationality-based preferences or penalties in the allocation of immigration benefits. Legislative

history reflects Congress's express intent to ensure that nationality could not serve as a proxy for eligibility or risk.

56. Although § 202(a)(1)(A) applies directly to immigrant visa issuance abroad, it necessarily informs the treatment of immigrant-visa-dependent domestic benefits—particularly adjustment of status and naturalization—which derive from visa eligibility and share the same statutory framework. Domestic adjudication of these benefits must therefore be free from nationality-based discrimination.

57. The INA reflects Congress's deliberate structural choice: *individualized* adjudication based on statutory eligibility criteria, not categorical judgments based on nationality and/or country of birth. The challenged directives substitute nationality for individualized evidence, contrary to this core statutory design.

58. Defendants' policy of placing all applicants from thirty-nine designated countries into open-ended "security posture" holds reintroduces nationality and/or country of birth as a controlling factor in domestic adjudication, effectively reviving the very form of discrimination Congress abolished in 1965.

59. Nothing in the INA authorizes DHS or USCIS to treat nationality and/or country of birth as a basis for suspending adjudication or imposing heightened scrutiny absent individualized findings. To the contrary, nationality-based distinctions in the domestic context conflict with the statutory command of individualized adjudication and Congress's explicit rejection of national-origin systems.

60. The challenged directives thus contravene § 202(a)(1)(A)'s nondiscrimination principle and undermine Congress's objective of eliminating nationality-based barriers to lawful immigration benefits.

## LIMITS OF INA § 212(f) AND ITS INAPPLICABILITY TO DOMESTIC ADJUDICATIONS

55. While INA § 212(f), codified at 8 U.S.C. § 1182(f), authorizes the President to "suspend the entry" of noncitizens whose admission would be detrimental to the interests of the United States, the statutory text is expressly confined to entry—**not adjudication of applications for individuals already physically present in the United States.**

56. Section 212(f) operates at consulates and the border, and governs visa issuance abroad and admission at ports of entry. It does not grant authority to override domestic adjudication obligations imposed by Congress on USCIS. In this suit, Plaintiff does not challenge the Executive's authority to regulate or limit the entry of certain foreign nationals into the United States.

57. Congress created a structural division between border entry authority and domestic adjudication authority: the former resides with the President and the Departments of State and Homeland Security; the latter resides with USCIS under chapters 4, 5, and 12 of the INA. See 8 U.S.C. §§ 1421–1448, 1255, 1158.

58. Nothing in § 1182(f) authorizes the President or DHS to: (a) suspend naturalization interviews or oath ceremonies; (b) halt or delay adjustment of status adjudications; (c) freeze affirmative asylum adjudications; or (d) suspend employment authorization tied to applications in the domestic system.[1]

59. Congress could have granted the Executive authority to suspend domestic adjudications based on nationality or security posture; it did not. Instead, Congress imposed mandatory adjudication duties and prohibited nationality-based and birthplace discrimination.

---

[1] In *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), the Supreme Court addressed only the scope of § 1182(f) with respect to entry and consular visa issuance. The Court did not extend § 1182(f) to domestic adjudications and did not hold that it overrides statutory adjudication mandates.

60. Defendants' reliance on § 1182(f) to justify domestic adjudication freezes exceeds statutory authority, alters the statutory scheme Congress enacted, and is ultra vires.

## CLAIMS FOR RELIEF

### COUNT I — ULTRA VIRES EXECUTIVE ACTION

63. Plaintiff incorporates the preceding paragraphs.

64. The INA grants the President limited authority under § 1182(f) to suspend entry, but does not authorize domestic adjudication freezes.

65. USCIS is statutorily required to adjudicate naturalization, adjustment, asylum, and employment authorization applications and lacks authority to suspend adjudication en masse or based solely on nationality and/or place of birth.

66. The challenged directives convert § 1182(f) entry authority into domestic adjudication moratoria, exceeding statutory limits and displacing mandatory adjudicatory obligations.

67. The directives conflict with statutory requirements, including the mandatory "shall" language in §§ 1446–1447 and § 1158(d)(5) and adjudication requirements in 8 C.F.R. §§ 208.9 and 245.2.

68. Defendants acted outside the scope of delegated authority and contrary to the statutory framework Congress enacted.

69. Because Congress did not authorize these measures, the challenged directives are ultra vires and must be set aside.

### COUNT II — APA VIOLATION: CONTRARY TO LAW (5 U.S.C. § 706(2)(A), (C))

70. Plaintiff incorporates preceding paragraphs.

71. The challenged directives conflict with statutory mandates requiring adjudication of naturalization, adjustment, asylum, and employment authorization applications and prohibiting nationality discrimination.

72. The directives exceed the limited authority conferred by § 1182(f) and substitute nationality-based criteria for individualized statutory eligibility.

73. The directives prevent USCIS from performing mandatory adjudicatory duties.

74. As such, the directives are contrary to law within the meaning of § 706(2)(A) and (C).

**COUNT III — APA VIOLATION:**
**ARBITRARY AND CAPRICIOUS (5 U.S.C. § 706(2)(A))**

75. Plaintiff incorporates preceding paragraphs.

76. The directives were issued without explanation, evidentiary basis, or reasoned decision-making.

77. The directives lack: criteria for case-by-case determination; timelines; sunset provisions; standards for lifting holds; and mechanisms for review or exemption.

78. Defendants failed to consider reliance interests, statutory mandates, or less restrictive alternatives such as individualized background checks.

79. The breadth, duration, nationality and/or country of birth basis of the freezes render them arbitrary and capricious.

**COUNT IV — APA VIOLATION:**
**NOTICE-AND-COMMENT (5 U.S.C. § 553)**

80. Plaintiff incorporates preceding paragraphs.

81. The directives impose binding consequences on adjudication, alter rights and obligations, and suspend statutory duties, and thus are substantive rules requiring notice-and-comment.

82. DHS and USCIS did not publish proposed rules, solicit comment, or provide public notice prior to implementation.

83. By adopting substantive rules without notice-and-comment, Defendants violated § 553 and § 706(2)(D).

## COUNT V — EQUAL PROTECTION (FIFTH AMENDMENT)

84. Plaintiff incorporates preceding paragraphs.

85. Plaintiff is physically present in the United States and entitled to equal protection under the Fifth Amendment.

86. The directives single out nationals of thirty-nine countries for adverse adjudicatory treatment solely based on nationality or place of birth, without individualized assessment.

87. Nationality is not a permissible criterion for domestic adjudication of naturalization, adjustment, asylum, or employment authorization.

88. The directives revive a form of nationality and/or place of birth discrimination Congress abolished in 1965 and lack rational basis as applied to individuals already in the United States.

## COUNT VI — VIOLATION OF PROCEDURAL DUE PROCESS (FIFTH AMENDMENT)

89. Plaintiff incorporates the preceding paragraphs.

90. Plaintiff is physically present in the United States and is entitled to the protections of the Fifth Amendment's Due Process Clause. Congress has created mandatory adjudicatory

schemes governing adjustment of status, asylum, naturalization, and employment authorization, which require USCIS to adjudicate properly filed applications through individualized decision making.

91. Defendants' challenged directives deprive Plaintiff of due process by suspending adjudication of his application without notice, without an individualized determination, and without any meaningful opportunity to be heard. Plaintiff's application has been placed into indefinite abeyance based solely on nationality and/or country of birth, rather than on evidence, statutory criteria, or case-specific findings.

92. Defendants provided no advance notice of the suspension, no explanation of its basis, no standards governing its duration, and no mechanism to contest, appeal, or seek exemption from the freeze. Plaintiff is denied the ability to obtain a decision—approval or denial—through the procedures Congress prescribed.

93. By imposing an open-ended, nationality-based suspension of domestic adjudications without notice or process, Defendants have deprived Plaintiff of liberty and property interests without due process of law, in violation of the Fifth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that Policy Alert PA-2025-26 and Policy Memorandum PM-602-0192 exceed the authority granted by the INA and are unlawful;

2. Declare that the directives violate the APA, including § 553 procedural requirements and § 706 substantive constraints;

3. Vacate the directives as applied to domestic USCIS adjudications, including naturalization, adjustment of status, affirmative asylum, and employment authorization;

4. Enjoin Defendants from applying the vacated directives in domestic adjudications or imposing nationality-based suspensions absent statutory authority;

5. Order Defendants to adjudicate Plaintiff's application in accordance with statutory and regulatory requirements;

6. Award attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

7. Grant any further relief the Court deems just and proper.

**RESPECTFULLY SUBMITTED**
December 23, 2025

***/s/ Melissa Allen Celli***
Melissa Allen Celli
Strehorn, Ryan, & Hoose
100 Main Street, 3rd Floor
Northampton, MA 01060
(O)413-341-3918
(E) mcelli@strhlaw.com

***/s/ James O. Hacking, III***
James O. Hacking, III*
MO Bar # 46728
Hacking Immigration Law, LLC
10121 Manchester Road, Suite A
St. Louis, MO 63122
(O) 314.961.8200
(F) 314.961.8201
(E) jim@hackingimmigrationlaw.com

**ATTORNEYS FOR PLAINTIFF**
**AKMURAT O. DOE**

**Pro Hac Vice pending*

**CERTIFICATE OF SERVICE**

I, Melissa Allen Celli, certify that on December 23, 2025, I served the foregoing Complaint for Declaratory Relief and to Set Aside Unlawful Agency Action on the United States government defendants through the Electronic Case Filing system to the United States Attorney's Office for the District of Massachusetts.

/s/Melissa Allen Celli
Melissa Allen Celli