RECEIVED IN CLERK'S OFFICE
DATE 3/9/2026

Case No. 1:25-cv-13946-JEK

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

AKMURAT O. DOE, et al.,

      Plaintiffs,

v.

DONALD J. TRUMP, et al.,

      Defendants.

Case No. **1:25-cv-13946-JEK**
(D. Mass.)

ISAAC D. NARVAEZ GOMEZ,
1601 Assembly St. # 1062
Columbia, SC 29201,

      Plaintiff-Intervenor,

v.

DONALD J. TRUMP, et al.,

      Defendants in Intervention.

## COMPLAINT IN INTERVENTION FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

### INTRODUCTION

Fourteen days before this filing, the Supreme Court held that two words in a federal emergency statute—"regulate" and "importation"—*"cannot bear such weight"* of unlimited presidential tariff authority; courts do not permit Congress to "hide elephants in mouseholes" by reading general language to authorize transformative executive power. *Learning Resources, Inc. v. Trump*, 607 U.S. ___, slip op. at 5 (Feb. 20, 2026) (Roberts, C.J., for the Court); *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (Scalia, J.) (coining the canon that Congress does not hide elephants in mouseholes). The Director of USCIS points to zero words. Not two. Zero. The INA

-1-

says *shall approve the petition.* 8 U.S.C. § 1154(b). It contains no clause, no proviso, no subsection, and no sentence authorizing USCIS to suspend that command indefinitely for nationals of thirty-nine countries through a policy memorandum. If two words in an express emergency statute cannot carry unlimited executive power, then administrative silence carries none at all.

This case rests on five propositions. Each is as old as the Republic. Each is as settled as constitutional law gets. And each has been violated by the two policy memoranda this Complaint challenges.

**First:** The Executive executes the laws; it does not suspend them. *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524, 613 (1838).

**Second:** A naturalized citizen occupies an equal constitutional footing with every native-born citizen in every respect the law touches. *Schneider v. Rusk*, 377 U.S. 163, 165 (1964). There is no second tier, no asterisk, no residual second-class status the government may reimpose after the naturalization certificate is signed, sealed, and delivered.

**Third:** Where Congress writes "shall," the Executive may not substitute "shall not." *Lexecon Inc. v. Milberg Weiss*, 523 U.S. 26, 35 (1998) (Souter, J.). "Shall decide" means decide.

**Fourth:** National security is not a blank check. *"A state of war is not a blank check for the President when it comes to the rights of the Nation's citizens."* *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (O'Connor, J., announcing judgment of the Court). A state of diplomatic tension is less. The Hold Memoranda are that blank check. This Court should decline to honor it.

**Fifth:** Courts read statutes as they are written. After *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024), and *Learning Resources*, no deference attaches to claimed authority not found in the statute's text. The statute says "shall approve." These decisions confirm that this Court reads those words for itself, applies their ordinary meaning, and enforces them.

Intervenor Isaac D. Narvaez Gomez is a naturalized United States citizen. His wife is a citizen of Italy and Uruguay, admitted to the United States on an Italian passport. USCIS accepted his I-130 petition, took his money, ran her name through every federal law-enforcement database, found nothing adverse, and advanced his case to the threshold of adjudication. It then stopped—indefinitely, with no explanation directed at him, no standard he could satisfy, no timeline he could plan around, and no process he could invoke—because the Place of Birth line in his record says Venezuela.

This case presents a single dispositive question that cuts to the constitutional marrow of the Republic's promise to every citizen it has ever made: May an Executive agency accept a United States citizen's petition, collect his filing fees, complete biometrics and security vetting, advance the matter to the statutory threshold of adjudication—and then simply decline to decide, indefinitely, based solely on an automated birthplace flag embedded in internal policy memoranda that supply no standards, no timelines, no individualized findings, and no mechanism for the citizen to contest the resulting suspension?

Under the Constitution's separation of powers, the Administrative Procedure Act's command that agencies "proceed to conclude" matters within a reasonable time, the Fifth Amendment's guarantees of equal protection and procedural due process, and the Take Care Clause's prohibition on executive suspension of duly enacted law, the answer is no. It has always been no. It will remain no for as long as the Constitution endures.

Consider what the government is actually claiming. It is claiming the authority to accept a petition from a United States citizen, collect his money, take his wife's fingerprints, run his wife's name through every law-enforcement database the federal government maintains, find nothing adverse,

advance his case to the precise moment of decision—and then walk away. Indefinitely. With no explanation directed at him. With no standard he could satisfy. With no timeline he could plan around. With no process he could invoke. The government calls this national security. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 166 (1803), called it something else: the denial of a vested legal right, *"in violation of the laws of [the] country."* Chief Justice Marshall's answer in 1803 is the same answer this Court must give in 2026: *"[T]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury."* Id. at 163.

The Executive retains full discretion over *how* it decides. It does not retain discretion to refuse to decide at all. An agency may decide yes or no. It may not decide never.

Should Defendants adjudicate Intervenor's pending petitions in the ordinary course—without reliance on the challenged birthplace-based hold—his participation in this litigation may become unnecessary as a matter of Article III standing. That possibility, and not the expansion of this litigation, is Intervenor's preferred outcome. But the Constitution and the APA do not permit the Executive to manufacture that preference into indefinite paralysis.

## PARTIES

1.   **Plaintiff-Intervenor Isaac D. Narvaez Gomez** is a naturalized United States citizen residing in Columbia, South Carolina. He was born in the Bolivarian Republic of Venezuela, immigrated lawfully, satisfied all prerequisites for naturalization under 8 U.S.C. § 1427, submitted to full FBI and DHS vetting, and took the Oath of Allegiance. He is the petitioner of record on the pending Form I-130 at issue in this action.

2.   The **Beneficiary** is Intervenor's spouse. She was born in the Bolivarian Republic of Venezuela. She is a citizen of both the Italian Republic and the Oriental Republic of

-4-

Uruguay and holds a valid Italian passport issued by the Government of Italy. She was lawfully admitted to the United States on that Italian passport. She is the applicant of record on the pending Form I-485 and Form I-765 at issue in this action. Neither Italy nor Uruguay is designated as a "high-risk country of concern" under any operative Presidential Proclamation, Executive Order, or USCIS policy memorandum. As a matter of the Hold Memoranda's own plain text—which targets nationals or persons *born* in designated countries—the hold's application to a citizen of Italy admitted on an Italian passport is ultra vires on its face.

3.    Defendant **Donald J. Trump** is President of the United States. In that capacity, he issued Executive Order 14161, Protecting the United States From Foreign Terrorists and Other National Security and Public Safety Threats (Jan. 20, 2025), Presidential Proclamation 10949 (June 4, 2025), 90 Fed. Reg. 24497, and Presidential Proclamation 10998 (Dec. 16, 2025), 90 Fed. Reg. 59717, which provide the stated predicate for the Hold Memoranda challenged in this action. He is sued in his official capacity.

4.    Defendant **Kristi Noem**[1] is Secretary of Homeland Security and bears ultimate administrative authority over USCIS, responsible for the promulgation, implementation, and enforcement of the Hold Memoranda. She is sued in her official capacity.

---

[1] As of the date of this filing, Kristi Noem remains the Secretary of Homeland Security. The undersigned is aware that on March 5, 2026, President Trump announced her removal from that position and indicated that Senator Markwayne Mullin (R-Okla.) would succeed her effective March 31, 2026. See NBC News, Trump Fires DHS Secretary Kristi Noem (Mar. 5, 2026); USA Today, Trump Fires Kristi Noem as Homeland Secretary, Announces Replacement (Mar. 5, 2026). Because Secretary Noem is sued exclusively in her official capacity as Secretary of Homeland Security, any change in the identity of the officeholder does not affect this action. Upon confirmation or succession of a new Secretary, that officer will be automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d), which provides that "[a]n action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office" and that the "officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). No amendment of this Complaint will be required to effect that substitution.

5.  Defendant **Joseph B. Edlow** is Director of United States Citizenship and Immigration Services ("USCIS") and issued PM-602-0192 and PM-602-0194. He is directly responsible for their operational implementation, including the hold placed on Intervenor's petition package. He is sued in his official capacity.

## JURISDICTION AND VENUE

### I. Subject-Matter Jurisdiction

6.  This Court has original jurisdiction under 28 U.S.C. § 1331 (federal question). Intervenor's claims arise under the Constitution of the United States (Fifth Amendment Due Process and Equal Protection; Article II, Section 3), the INA, 8 U.S.C. § 1101 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*

7.  Sovereign immunity is waived by 5 U.S.C. § 702 for actions seeking relief other than money damages. Intervenor seeks only declaratory, injunctive, and mandamus relief. Where officers act ultra vires, sovereign immunity is additionally unavailable. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–90 (1949).

8.  Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 57. Injunctive relief is authorized by Federal Rule of Civil Procedure 65. Mandamus jurisdiction is independently conferred by 28 U.S.C. § 1361. The duty to adjudicate properly filed petitions within a reasonable time is a clear, non-discretionary, ministerial obligation for which mandamus is the classic remedy. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 166 (1803); *Will v. United States*, 389 U.S. 90, 95 (1967).

9.  Supplemental jurisdiction is proper under 28 U.S.C. § 1367(a). Intervenor's claims form part of the same case or controversy as the main action, arising from identical policy

memoranda, identical adjudicative-hold architecture, and overlapping constitutional and statutory questions.

## II. The § 1252 Jurisdiction-Stripping Provisions Do Not Bar This Action

10. 8 U.S.C. § 1252(a)(2)(B) does not divest this Court of jurisdiction for six independent and cumulative reasons.

11. *First, Intervenor seeks an order to decide, not an order to grant.* Section 1252(a)(2)(B)(i) bars review of "any judgment regarding the granting of relief" under enumerated INA provisions. Intervenor does not challenge a substantive eligibility determination. He challenges a categorical, policy-based refusal to render any adjudication—a threshold procedural barrier imposed before the agency ever reaches the statutory merits. *Gomez v. Nielsen*, 301 F. Supp. 3d 91 (D.D.C. 2018).

12. *Second, the I-130 petition is independently reviewable.* Section 1252(a)(2)(B)(i) does not enumerate 8 U.S.C. § 1154 (approval of immigrant petitions). *Moore v. Frazier*, 941 F.3d 717, 725 (4th Cir. 2019) (persuasive); *Ruiz v. Mukasey*, 552 F.3d 269, 275 (2d Cir. 2009).

13. *Third, citizen-petitioner constitutional claims are structurally outside § 1252's scope.* Courts must construe jurisdiction-stripping statutes narrowly—Congress must speak clearly before courts lose jurisdiction over a category of claims. *Kucana v. Holder*, 558 U.S. 233, 251–52 (2010); *INS v. St. Cyr*, 533 U.S. 289, 299–300 (2001). Reading § 1252 to foreclose a naturalized citizen's constitutional challenges to nationality-based adverse treatment raises precisely the serious constitutional problems the canon of avoidance forecloses. *Clark v. Martinez*, 543 U.S. 371, 381–82 (2005).

14. *Fourth, Section 1252(a)(2)(D) preserves constitutional claims and questions of law.* "Questions of law" include mixed questions presenting constitutional dimensions.

*Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068–69 (2020). Whether USCIS may categorically suspend adjudication of citizen-filed petitions based on birthplace is a quintessential question of law that Congress preserved for review.

15. *Fifth, non-statutory ultra vires review is independently available.* This Court retains inherent equitable jurisdiction under § 1331 to enjoin Executive officers acting beyond statutory authority or in violation of the Constitution. *Ex parte Young*, 209 U.S. 123, 150–51 (1908); *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

16. *Sixth, even areas of textual agency discretion remain reviewable for failure to consider relevant factors.* USCIS considered no factors individualized to Intervenor's case—it considered only birthplace. That failure is reviewable. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 372 (2018).

17. On February 20, 2026—the same day *Learning Resources* was decided—the Northern District of California granted a preliminary injunction against the identical Hold Memoranda, resolving all § 1252 jurisdictional objections in plaintiffs' favor. *Varniab v. Edlow*, No. 5:25-cv-10602-SVK, ECF No. 35, slip op. at 8–14 (N.D. Cal. Feb. 20, 2026) (van Keulen, M.J.) (ordering USCIS to adjudicate within 30 days; holding neither § 1252(a)(2)(B)(i) nor (B)(ii) strips jurisdiction where no final decision has issued). This Court reached the identical conclusion one week later. *Bowser v. Noem*, No. 26-CV-10382-AK, ECF No. 20, at 8–19 (D. Mass. Feb. 27, 2026) (Kelley, D.J.) (§ 1252(a)(2)(B)(ii) does not bar review of USCIS's categorical refusal to adjudicate; PM-602-0192 and PM-602-0194 are final agency action; hold is arbitrary and capricious; preliminary injunction granted requiring adjudication of Form I-765 within ten days).

Every holding *Varniab* made applies here with equal or greater force, because Intervenor is a naturalized citizen petitioner—whose rights under § 1154(b) are mandatory rather than discretionary—and whose petition has been suspended indefinitely based solely on the Venezuelan birth of both Petitioner and Beneficiary, notwithstanding that Petitioner is a naturalized United States citizen and Beneficiary holds Italian and Uruguayan citizenship and was admitted to the United States on an Italian passport, and neither has ever been the subject of any adverse finding, articulable standard, or individualized determination.

### III. The § 701(a)(2) "Committed to Discretion" Bar Is Equally Inapplicable

18.    The APA's "committed to agency discretion" bar under 5 U.S.C. § 701(a)(2) does not apply because there is ample "law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Section 1154(b)'s mandatory "shall," § 555(b)'s "reasonable time" command, 8 C.F.R. § 103.2(b)(1), equal protection constraints, and due process under *Mathews v. Eldridge* together supply judicially manageable standards in abundance.

19.    *Heckler* itself distinguished a categorical refusal to perform a congressionally mandated ministerial duty from an agency's discretionary refusal to pursue an individual enforcement action. 470 U.S. at 833 n.4. The Hold Memoranda are the former: a formal, published, nationwide directive suspending a duty Congress made mandatory. They are affirmative policy directives of general applicability—final agency action under *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)—not unreviewable non-enforcement. An agency cannot immunize its most aggressive power assertions from judicial review by styling them as decisions not to act.

**IV. Primary APA Path—§ 706(1): Unlawfully Withheld and Unreasonably Delayed**

20.     Intervenor's principal APA basis is 5 U.S.C. § 706(1)—agency action unlawfully withheld or unreasonably delayed—which does not require "final agency action" under § 704. The Supreme Court limited § 706(1) to "discrete agency action" that an agency is "legally required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Both requirements are satisfied. The duty to adjudicate properly filed petitions within a reasonable time is non-discretionary, arising from 8 U.S.C. §§ 1154(b) and 1255(a), 8 C.F.R. § 103.2(b)(1), and 5 U.S.C. § 555(b). While the outcome—approve or deny—is discretionary, the ministerial duty to render a decision is not. An agency may decide yes or no. It may not decide never.

**V. Alternative APA Path—Final Agency Action Under § 706(2)**

21.     Should the Court require final agency action under § 704, the Hold Memoranda satisfy *Bennett v. Spear*'s two-part test. 520 U.S. 154, 177–78 (1997). As to consummation: PM-602-0194 states that holds "remain in effect until lifted or modified by the USCIS Director through a subsequent memorandum"—there is no more final an expression of agency position. As to legal consequences: the hold produces immediate denial of adjudication, denial of employment authorization, denial of a Social Security Number under 20 C.F.R. § 422.107(e), and adverse federal income tax treatment under 26 U.S.C. § 6013. These are "direct and appreciable legal consequences" satisfying finality. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597–99 (2016).

22.     *Tang v. Chertoff*, 493 F. Supp. 2d 148, 154 (D. Mass. 2007), is instructive on finality: this Court has held that while the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all. *Tang* addressed ordinary

processing delays; the categorical, indefinite, policy-mandated hold here presents a far stronger case for finality and reviewability. *See also Bowser v. Noem*, No. 26-CV-10382-AK, ECF No. 20 (D. Mass. Feb. 27, 2026) (Kelley, D.J.) (holding PM-602-0192 and PM-602-0194 constitute final agency action under *Bennett v. Spear* on identical facts). The APA limitations period runs from when Intervenor was first injured—not from the Hold Memoranda's promulgation dates. *Under Corner Post, Inc. v. Board of Governors*, 603 U.S. 799, 820 (2024), the limitations period begins when the plaintiff suffers an injury from the challenged agency action, not when the action was taken. Moreover, each day the hold remains operative is a new, independent violation of § 1154(b)'s mandatory command—a continuing injury that accrues anew with each adjudication withheld.

## VI. Venue

23. Venue is proper under 28 U.S.C. § 1391(e). The underlying action is pending in this District. Defendants are federal officers sued in their official capacities. The challenged policies operate nationally with direct effects in this District.

## CONFRONTING THE LIKELY DEFENSES

*In the interest of candor required by Fed. R. Civ. P. 11 and the professional obligation of completeness, Intervenor identifies below the arguments Defendants are most likely to raise and explains, in advance, why none defeats the claims presented. This Court should not need to discover these arguments at oral argument.*

### I. The Plenary Power Doctrine Does Not Apply

24. The government will invoke *Fiallo v. Bell*, 430 U.S. 787 (1977), and the plenary power doctrine. The Court should confront this argument directly.

25. *Fiallo* holds that "over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." 430 U.S. at 792 (emphasis added). Three words do all the legal work in that sentence: *legislative, Congress,* and *admission.* Not one of them applies here.

26. *First, this is not a challenge to legislative power.* The plenary power doctrine protects *congressional* immigration decisions from heightened judicial review. No Act of Congress created the Hold Memoranda. Two sub-regulatory policy memoranda issued by a USCIS Director created them—memoranda that bypass notice-and-comment, carry no legislative force, and are reviewable precisely because they claim authority Congress never granted. *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 637–38 (1952) (Jackson, J., concurring).

27. *Second, this is not a challenge to alien admission.* Intervenor does not challenge who may enter the United States. He challenges what USCIS must do with a petition it has accepted, processed, vetted, and advanced to the threshold of adjudication. *Trump v. Hawaii,* 585 U.S. 667, 703–04 (2018), addressed an entry ban on foreign nationals—the executive's decision about *who may cross the border.* The present case addresses the executive's decision to *refuse to adjudicate a citizen's statutory petition right* after accepting the petition and completing every required vetting step. These are categorically distinct government acts subject to categorically distinct standards.

28. *Third, this challenge is brought by a citizen, not an alien.* Intervenor is a naturalized United States citizen whose petition rights Congress made mandatory in § 1154(b). *Fiallo's* majority acknowledged it was not resolving the rights of the *citizen* petitioner—it reserved that question. 430 U.S. at 795–96 n.6. Justice Marshall's dissent went further: "[the case]

directly involves the rights of citizens, not aliens," requiring strict scrutiny. The majority never contested that citizen-petition rights invoke different analysis. This Court cannot similarly decline—Intervenor is a citizen petitioner, and his rights are squarely before the Court.

29.    *Fourth, Learning Resources* confirms that foreign affairs implications do not reduce judicial scrutiny. The Roberts plurality expressly rejected both the argument that emergency statutes escape the major questions doctrine and the argument that foreign affairs implications flip the presumption against broad executive authority. *Learning Resources,* slip op. at 12–13 (Roberts, C.J., joined by Gorsuch and Barrett, JJ.). Three additional Justices reached the same result on independent textual grounds, without resort to any special doctrinal framework. Id., slip op. at 1 (Kagan, J., concurring in part and concurring in the judgment, joined by Sotomayor and Jackson, JJ.).

## II. National Security Deference Does Not Apply

30.    The government will invoke *Trump v. Hawaii, Department of the Navy v. Egan,* and *Ziglar v. Abbasi.* None applies.

31.    *Trump v. Hawaii*'s deferential review applies to entry bans on foreign nationals—the executive's decision about who may cross the border. It does not apply to the executive's decision to refuse to adjudicate a citizen's statutory petition right after collecting fees, completing vetting, and advancing the case to adjudication's threshold.

32.    *Egan,* 484 U.S. 518 (1988), addresses security clearance revocation—quintessentially discretionary. Adjudication of a citizen-filed petition under § 1154(b) is mandatory. *Ziglar,* 582 U.S. 120 (2017), limits Bivens liability for individual officers in specific

historical emergencies—it does not immunize agency-wide published policies of general applicability from APA review.

### III. No Deference Applies Under Loper Bright

33.   *Chevron* deference is overruled. *Loper Bright*, 144 S. Ct. at 2273. The Court will exercise independent judgment to determine whether the INA authorizes the Hold Memoranda's adjudicative suspension regime. The best reading of the INA—the only reading *Loper Bright* permits—is that "shall" means shall.

34.   Even under prior *Chevron* step one, there is no ambiguity. Congress used the word "shall" in § 1154(b) to impose a mandatory obligation. Mandatory obligations are not ambiguous. Agencies do not get to "interpret" mandatory commands as optional ones.

35.   *West Virginia v. EPA*, 597 U.S. 697, 723 (2022), and *Biden v. Nebraska*, 600 U.S. 477, 504-06 (2023), independently hold that agencies must point to clear statutory authorization before exercising authority of vast economic and political significance. *Learning Resources* applied this principle to bar sweeping executive authority claimed under general statutory language. The Hold Memoranda suspend the mandatory adjudication of citizen-filed petitions for tens of thousands of petitioners. That is a major question. There is no clear statutory authorization. The analysis is complete.

36.   The major questions and non-delegation doctrines operate as a constitutional pincer. Under *Loper Bright*, courts independently read statutes and find no delegation of suspension authority; under *Gundy v. United States*, 139 S. Ct. 2116, 2131 (2019), if delegation exists, it fails for want of an intelligible principle. Either prong is independently sufficient. Together they are conclusive.

## IV. The Expressio Unius and Related Canons

37. Congress prescribed specific, delineated circumstances authorizing abeyance: 8 U.S.C. § 1154(c)–(d) and 8 C.F.R. § 103.2(b)(18). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). The *expressio unius* canon forecloses any implied suspension authority.

38. *Auer* deference is also unavailable. *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019), substantially constrained *Auer* deference to situations involving genuinely ambiguous regulatory text where the agency's reading is reasonable, consistent, and not a post-hoc rationalization. The Hold Memoranda interpret no specific ambiguous regulation—they assert freestanding authority to suspend adjudication, which the regulations plainly do not authorize.

39. Under *Loper Bright*, courts no longer resolve statutory ambiguity in favor of agency authority. The absence of any intelligible principle governing the Hold Memoranda's operation—no defined criteria, no durational limit, no individualized assessment, no mechanism for review—confirms that even if delegation were found, it would violate the non-delegation doctrine under *J.W. Hampton, Jr., Co. v. United States*, 276 U.S. 394, 409 (1928), as reinvigorated by *Gundy*, 139 S. Ct. at 2131 (Gorsuch, J., dissenting, joined by Roberts, C.J., and Thomas, J.).

## V. Youngstown Zone 3 and the Take Care Clause

40. Under Justice Jackson's controlling *Youngstown* framework, 343 U.S. 579, 637–38 (1952) (Jackson, J., concurring), Executive action "incompatible with the expressed or implied will of Congress" operates at its "lowest ebb." Congress has spoken with mandatory

"shall" language in § 1154(b). The Executive's suspension of that mandate contradicts Congress's expressed will and operates squarely in Zone 3. No enumerated or inherent Executive power authorizes indefinite categorical suspension of congressionally mandated adjudication.

41.    Article II, Section 3 commands that the President "shall take Care that the Laws be faithfully executed." As Chief Justice Marshall established in *Kendall*, 37 U.S. at 613: "To contend that the obligations imposed on the President to see the laws faithfully executed, imply a power to forbid their execution, is a novel construction of the constitution, and entirely inadmissible." The Hold Memoranda do not execute the INA's family-petition provisions. They suspend them. Suspension is not execution.

## VI. USCIS as Administrative Outlier

42.    No other federal adjudicatory agency operates this way. The IRS adjudicates millions of tax returns annually from individuals born in countries designated as state sponsors of terrorism and does not place those returns on indefinite adjudicative holds. The Social Security Administration adjudicates disability claims, retirement benefits, and survivor benefits under strict statutory and regulatory deadlines without implementing birthplace-based categorical holds. *See* 20 C.F.R. § 404.900(b). The TSA administers the Flight Training Security Program, 49 C.F.R. Part 1552, and the FAA certifies airmen thereunder—and then decides. The VA adjudicates benefit claims from naturalized-citizen veterans born in countries now designated adversarial. *See* 38 U.S.C. § 5101(c). Even OFAC maintains a published process for administrative reconsideration, delisting petitions, and specific licenses. 31 C.F.R. Part 501.

43. Yet USCIS claims the very authority that every other federal adjudicatory agency—VA, SSA, IRS, FAA, OFAC—recognizes it does not possess. If the principle USCIS advances here were accepted, it would license the IRS to freeze tax refunds for naturalized citizens from disfavored countries, the SSA to suspend disability determinations for veterans born in "high-risk" nations, and the VA to place benefit claims from foreign-born veterans in indefinite bureaucratic limbo. No court has ever endorsed such a principle. This Court should not be the first.

## FACTUAL ALLEGATIONS

### I. Intervenor's Naturalization and the Guarantee of Equal Citizenship

44. Isaac D. Narvaez Gomez was born in Caracas, Venezuela. He immigrated to the United States lawfully. He submitted to background investigations conducted by the Department of Homeland Security, the Federal Bureau of Investigation, and other federal agencies. He provided biometric data. He participated in in-person interviews. He demonstrated continuous residence, good moral character, knowledge of U.S. history and government, and English proficiency. Having satisfied every requirement of 8 U.S.C. § 1427, he took the Oath of Allegiance prescribed by 8 C.F.R. § 337.1 and received his Certificate of Naturalization.

45. From that moment, Intervenor became the constitutional equal of every native-born citizen. The rights of citizenship of the native born and of the naturalized person "are of the same dignity, and are coextensive." *Schneider v. Rusk*, 377 U.S. 163, 165 (1964). Accord *Luria v. United States*, 231 U.S. 9, 22 (1913); *Knauer v. United States*, 328 U.S. 654, 658 (1946). This equality is not a courtesy. It is a constitutional command.

46.    The government's own prior conduct forecloses its current posture.  USCIS certified Intervenor fit for citizenship—the highest federal clearance available in domestic law—after full FBI and DHS vetting under 8 U.S.C. § 1427.  Having made that determination, the Executive cannot now functionally revoke it through sub-regulatory holds imposed after the fact.  Even where a citizen's family interests are adversely affected by executive immigration action, a facially legitimate and bona fide reason must be given.  *Kerry v. Din*, 576 U.S. 86, 103–04 (2015) (Kennedy, J., concurring in judgment).  No such reason has been given here.  An automated birthplace flag is not an individualized reason.  It is the absence of one.

## II. The Beneficiary's Multi-National Profile and Lawful Admission

47.    The Beneficiary is Intervenor's spouse.  She was born in Venezuela.  She holds citizenship in the Italian Republic and the Oriental Republic of Uruguay, and possesses a valid Italian passport issued by the Government of Italy.  Neither Italy nor Uruguay is designated as a "high-risk country of concern" under any operative Proclamation, Order, or USCIS memorandum.  She was lawfully admitted to the United States using her Italian passport.  U.S. Customs and Border Protection officers inspected her documents and admitted her lawfully.  She has no criminal record and no adverse information of any kind.  The sole basis for the hold on her applications is the country printed on the line marked "Place of Birth."  That basis is irrational, untethered to any individualized security assessment, and—as to an Italian national admitted on an Italian passport—ultra vires under the plain text of the Presidential Proclamations the Hold Memoranda purport to implement.

### III. The Petition Package and Regulatory Violations

48.    Intervenor filed Form I-130, Petition for Alien Relative, exercising his statutory right under 8 U.S.C. § 1154(a)(1)(A)(i). Congress placed the immediate-relative category outside all numerical visa limitations. 8 U.S.C. § 1151(b)(2)(A)(i). Concurrently, the Beneficiary filed Form I-485 pursuant to 8 U.S.C. § 1255(a), and Form I-765 pursuant to 8 C.F.R. § 274a.12(c)(9). These applications were properly completed, supported by all required documentation and fees, and accepted for processing by USCIS, which assigned them to the National Benefits Center.

49.    USCIS completed biometric collection. Biometric data was transmitted to the FBI through the Integrated Automated Fingerprint Identification System and the National Crime Information Center. Interagency name-check vetting was initiated and completed. No derogatory information has been identified or communicated to Intervenor.

50.    USCIS's internal case management system reflects the following designation: **"Render Case Decision."** There has been no decision. This status has persisted without change, explanation, or any communication from USCIS. Upon information and belief, based on Freedom of Information Act requests under 5 U.S.C. § 552 and USCIS case status records, the case bears a **"Final Hold"** code applied automatically upon detection of Venezuelan birthplace.

### IV. The Hold Memoranda: Text, Structure, and Operation

51.    On December 2, 2025, USCIS issued Policy Memorandum PM-602-0192, directing USCIS officers to implement an adjudicative hold on all pending benefit requests filed by aliens from "high-risk countries" identified in Presidential Proclamation 10949 and Executive Order 14161. Venezuela is expressly designated. The memorandum states that

holds remain "in effect until lifted or modified by the USCIS Director through a subsequent memorandum."

52. On January 1, 2026, USCIS issued Policy Memorandum PM-602-0194, expanding the country list and clarifying operational mechanics. The memorandum states that a case under hold may proceed through processing "up to final adjudication," with only the decision deferred, and that within 90 days USCIS would issue operational guidance. As of the filing of this Complaint in Intervention, no such guidance has been issued, no Director memorandum has lifted the hold as applied to Venezuelan-origin cases, and the hold on Intervenor's petition package remains in full force.

53. The Hold Memoranda apply based on automated flags triggered by birthplace with no provision for individualized assessment, no mechanism for the petitioner to demonstrate that predicate security concerns do not apply to his specific case, and no procedural safeguards of any kind. The Hold Memoranda were issued without notice-and-comment rulemaking under 5 U.S.C. § 553. They are legislative rules in substance—they change the legal rights of a defined class of petitioners—and their issuance without notice and comment independently violates the APA.

## V. The Self-Refuting Security Architecture

54. The operational incoherence of the Hold Memoranda is demonstrated by USCIS's own conduct. While PM-602-0192/0194 were in full force, USCIS simultaneously imposed indefinite adjudicative holds on all citizen-sponsored family-based adjustment applications where the beneficiary was born in Venezuela—including fully-vetted, citizen-sponsored, biometrically complete adjustment cases like Intervenor's, where the beneficiary holds passports from non-designated allied nations—while at the same time continuing to

adjudicate and approve initial Employment Authorization Documents under 8 C.F.R. § 274a.12(c)(8) filed by Venezuelan nationals who had submitted asylum applications.

55. The security profiles of these two populations are not comparable—they are inversely ordered. If USCIS genuinely assessed Venezuelan nationals as presenting categorical, irreducible security threats requiring indefinite suspension of all adjudicative decisions, then continuing to issue work authorization to Venezuelan asylum applicants in a pathway with lesser documentation and verification was irrational on its face. If, alternatively, USCIS assessed that adequate vetting could be conducted to permit safe issuance of work authorization to Venezuelan asylum applicants, then the categorical freeze on fully-vetted, citizen-sponsored, multi-nationally documented adjustment cases was equally irrational. Both positions cannot be simultaneously true. USCIS maintained both for weeks.

56. This is the paradigmatic failure of reasoned decisionmaking that *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), requires courts to set aside. Under *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), an agency must stand on the reasoning it actually employed, not post-hoc rationalizations. The contemporaneous rationale is refuted by the agency's own simultaneous operations. That is arbitrary action by a different name.

## VI. The NPRM and Its Evidentiary Significance

57. On February 23, 2026, DHS published *Employment Authorization Reform for Asylum Applicants*, 91 Fed. Reg. 8616 (Feb. 23, 2026), proposing to eliminate the (c)(8) EAD pathway for asylum applicants from designated countries. This NPRM does not cure the constitutional and statutory defects in the Hold Memoranda. It confirms them. Under *SEC v. Chenery Corp.*, an agency must justify its action on contemporaneous grounds. The

contemporaneous grounds here were self-contradicting. No NPRM issued after litigation pressure can retroactively supply the rationality that was absent when the Hold Memoranda operated. *Dep't of Commerce v. New York*, 588 U.S. 752, 780 (2019) (Roberts, C.J.).

### VII. Article III Standing

58. Intervenor satisfies all three elements of Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

59. *Injury-in-fact:* Intervenor suffers concrete, ongoing, and particularized injuries including unlawful withholding of adjudication of his statutory petition right under 8 U.S.C. § 1154; family separation from his spouse; economic harm from the Beneficiary's inability to obtain employment authorization and a Social Security Number; and adverse federal income tax consequences including forced married-filing-separately status under 26 U.S.C. § 6013. Each harm has a "close historical or common-law analogue" satisfying the concreteness requirement of *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425–27 (2021).

60. *Traceability:* All injuries are directly traceable to PM-602-0192 and PM-602-0194.

61. *Redressability:* An order compelling adjudication within a court-specified period would redress these injuries immediately.

### INTERVENTION AS OF RIGHT

*Federal Rule of Civil Procedure 24(a)(2)*

62. Intervenor satisfies all four Rule 24(a)(2) requirements.

63. *Timeliness.* This complaint was filed promptly upon Intervenor's discovery that his petition package had been classified under the hold architecture and upon his determination that no existing party adequately represents his interests. The action remains at the

preliminary injunction stage. No final judgment has entered. Intervention will not prejudice existing parties.

64. *Significantly Protectable Interest.* Intervenor holds a direct, legally cognizable, and substantial interest in the lawfulness of PM-602-0192 and PM-602-0194 as applied to citizen-filed immediate-relative petitions—protected by the INA's immediate-relative pathway (8 U.S.C. §§ 1151(b)(2)(A)(i), 1154), the constitutional guarantee of equal citizenship (*Schneider*, 377 U.S. at 165), and the APA's guarantee of lawful administrative action (5 U.S.C. §§ 555(b), 706).

65. *Impairment of Interest.* Disposition of this action may, as a practical matter, impair Intervenor's ability to protect his interests. Relief shaped solely around noncitizen applicants may not require USCIS to dismantle the birthplace-automation architecture as applied to citizen-filed petitions. Adverse precedential rulings on finality or § 1252— rendered without citizen-specific briefing—could foreclose arguments Intervenor would otherwise make.

66. *Inadequacy of Existing Representation.* No existing party adequately represents Intervenor's interest. Existing Plaintiffs are noncitizens asserting alienage-based claims; Intervenor is a naturalized U.S. citizen asserting independent constitutional rights. Scrutiny of birthplace classifications as applied to citizens is categorically more demanding than scrutiny of alienage classifications. Compare *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995) (strict scrutiny for national-origin classifications), *with Mathews v. Diaz*, 426 U.S. 67, 81–82 (1976) (rational basis for alienage classifications in some federal contexts). Intervenor's *Marbury*-rooted mandamus theory is constitutionally

strongest when asserted by a citizen. Pro se status is not an independent bar to Rule 24(a) intervention when all four elements are satisfied, as they are here.

## CLAIMS FOR RELIEF

## COUNT I

## APA: AGENCY ACTION UNLAWFULLY WITHHELD

*5 U.S.C. §§ 555(b), 706(1)*

67. Intervenor incorporates all preceding paragraphs by reference.

68. The APA commands: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Section 706(1) authorizes courts to compel agency action unlawfully withheld or unreasonably delayed. These are obligations. They are enforceable in this Court.

69. USCIS has a clear, non-discretionary, ministerial duty to adjudicate properly filed petitions, arising from 8 U.S.C. § 1154(b) (the Attorney General *shall* approve the petition—mandatory, per *Lexecon*, 523 U.S. at 35), 8 C.F.R. § 103.2(b)(1), and 5 U.S.C. § 555(b). Intervenor's petition package has been fully processed. Biometrics are complete. Background checks are complete. No derogatory information has been identified. The case management system says "Render Case Decision." USCIS has rendered nothing. The case sits at the threshold of decision—a threshold USCIS refuses to cross solely because of an automated birthplace flag.

70. This constitutes agency action unlawfully withheld because no statute authorizes categorical refusal to adjudicate citizen-filed petitions based on automated birthplace flags with no individualized findings, standards, or timelines; the Hold Memoranda violate

constitutional constraints applicable to naturalized citizens; and they exceed any legitimate security-vetting function by converting what might be a temporary screening measure into a permanent categorical non-adjudication regime with no exit.  Under *Russello*, 464 U.S. at 23, the *expressio unius* canon forecloses any implied authority to do so.

## COUNT II

## APA: UNREASONABLE DELAY AND REGULATORY DEADLINE VIOLATION

### *5 U.S.C. §§ 555(b), 706(1)*

71.    Intervenor incorporates all preceding paragraphs by reference.

72.    The broader suspension constitutes unreasonably delayed agency action under the TRAC six-factor framework. *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984); *Gupta v. Jaddou,* 118 F.4th 475 (1st Cir. 2024). Congress placed immediate relatives outside all numerical caps, reflecting the highest legislative priority for citizen-sponsored family unity—and an indefinite hold with no exit mechanism inverts that priority.  USCIS has advanced no case-specific justification; generic policy justifications do not satisfy TRAC. *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).  Compelling adjudication imposes no undue burden—the case is ready to decide. *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 52–53 (D.D.C. 2021). *Accord Bowser v. Noem*, No. 26-CV-10382-AK, ECF No. 20, at 19–20 (D. Mass. Feb. 27, 2026) (Kelley, D.J.) (hold arbitrary and capricious; USCIS failed to supply rational connection between national security rationale and blanket adjudication freeze).

73.    USCIS's own published processing times for Form I-765 under 8 C.F.R. § 274a.12(c)(9) serve as a concrete benchmark against which unreasonable delay may be measured.  The Beneficiary suffers ongoing irreparable harm to her ability to work lawfully, and USCIS

has offered no explanation for its inaction. The length of delay is particularly egregious: adjudication of a (c)(9) EAD is straightforward, biometrics are complete, and no competing national interest justifies further delay. *See Palakuru*, 521 F. Supp. 3d at 52–53.

## COUNT III

### APA: ARBITRARY, CAPRICIOUS, AND PRETEXTUAL

*5 U.S.C. § 706(2)(A)*

74.   Intervenor incorporates all preceding paragraphs by reference.

75.   The Hold Memoranda fail under each *State Farm* prong. 463 U.S. at 43. First, they rely on automated birthplace classifications—a factor Congress did not authorize. Second, they fail entirely to consider the naturalized-citizen petitioner category—an important aspect of the problem. *Ohio v. EPA*, 603 U.S. 279, 292 (2024). Third, their explanation runs counter to their own concurrent conduct—the EAD asymmetry is a textbook unexplained inconsistency. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). Fourth, when an agency departs from a prior operational norm, it must supply a "more detailed justification" for that change of course. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Fifth, the government's belated NPRM—issued only after litigation pressure—confirms the original architecture was pretextual. Sixth, the Hold Memoranda entirely ignore the reliance interests of citizen-petitioners. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913–14 (2020).

76.   The *Chenery* doctrine reinforces each defect. The agency's contemporaneous rationale—not the litigation rationale offered after the fact—governs the arbitrary-and-capricious inquiry. *SEC v. Chenery Corp.*, 332 U.S. at 196. The contemporaneous rationale is refuted by the agency's own operations.

-26-

## COUNT IV

### APA: IN EXCESS OF STATUTORY AUTHORITY

*5 U.S.C. § 706(2)(C)*

77.     Intervenor incorporates all preceding paragraphs by reference.

78.     The INA contains no provision authorizing USCIS to categorically suspend adjudication of properly filed citizen petitions based on automated birthplace classifications with no individualized findings, no standards, and no timelines.  Under *Loper Bright*, 144 S. Ct. at 2273, USCIS receives zero deference for this self-serving assertion of authority beyond the statutory text.  The best reading of the INA—the only reading *Loper Bright* permits—is that "shall" means shall.

79.     The Beneficiary's Italian and Uruguayan citizenship independently renders the hold ultra vires as to her applications.  The Presidential Proclamations target "nationals" of designated countries.  The Beneficiary is, by her own travel documents, an Italian national admitted on an Italian passport.  The hold's application to her is not authorized by any Proclamation, not required by any statute, and not supported by any individual finding.  Under *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–90 (1949), ultra vires Executive action is subject to injunction regardless of sovereign immunity.

## COUNT V

### APA § 705: INTERIM STATUTORY STAY PENDING JUDICIAL REVIEW

*5 U.S.C. § 705*

80.     Intervenor incorporates all preceding paragraphs by reference.

81. Section 705 of the APA independently authorizes this Court to postpone the effective date of the Hold Memoranda and preserve Intervenor's rights pending conclusion of review, to the extent necessary to prevent irreparable injury.

82. Section 705 is a statutory remedy enacted by Congress in 1946, independent of the common-law equity jurisdiction addressed in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). A § 705 stay is not an equitable injunction; it is a congressionally prescribed remedy for preserving the status quo during judicial review. Its scope matches the scope of the § 706 vacatur the Court would ultimately order.

83. Intervenor is entitled to a § 705 stay for four independent and cumulative reasons. First, he is likely to succeed on the merits as demonstrated in Counts I through IV and VI through X. Second, he will suffer irreparable injury absent a stay: ongoing family separation, denial of employment authorization, denial of a Social Security Number, and recurring adverse tax consequences that compound with each filing cycle. Third, the balance of hardships decisively favors Intervenor: the government loses nothing from being required to decide a petition it has already fully processed to the threshold of decision. Fourth, the public interest favors a stay because enforcement of an unlawful birthplace-triggered suspension erodes equal citizenship guarantees foundational to this Republic's constitutional order.

## COUNT VI

### FIFTH AMENDMENT: EQUAL PROTECTION

*U.S. Const. amend. V — Strict Scrutiny*

84. Intervenor incorporates all preceding paragraphs by reference.

85. The Fifth Amendment's Due Process Clause contains an equal protection component applicable to the federal government with full force. *Bolling v. Sharpe*, 347 U.S. 497, 499

(1954). Classifications based on national origin are inherently suspect and subject to strict scrutiny. *Adarand*, 515 U.S. at 224–27. The Hold Memoranda impose adverse treatment on Intervenor—a naturalized U.S. citizen—in the exercise of his statutory petition rights under 8 U.S.C. § 1154, based solely on his country of birth. This creates a functional second tier of citizenship directly contrary to *Schneider, Afroyim v. Rusk*, 387 U.S. 253 (1967), and *Adarand*.

86. Defendants cannot satisfy strict scrutiny. While national security is a compelling interest, the Hold Memoranda are not narrowly tailored. They apply categorically with no individualized assessment. They provide no exit mechanism or timeline. They apply even where—as with the Beneficiary—the individual holds passports from allied nations. And they were contradicted by USCIS's own simultaneous issuance of EADs to Venezuelan asylum applicants, fatally undermining any claim that Venezuelan birthplace alone identifies a category justifying categorical suspension. The discriminatory mechanism here is facial, not inferential—no *Arlington Heights* analysis is required. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

## COUNT VII

### FIFTH AMENDMENT: PROCEDURAL DUE PROCESS

*U.S. Const. amend. V — Mathews v. Eldridge*

87. Intervenor incorporates all preceding paragraphs by reference.

88. Intervenor holds a protected liberty interest in family integrity—among the most fundamental liberties the Constitution recognizes. *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997); *Obergefell v. Hodges*, 576 U.S. 644, 663 (2015); *Moore v. City of East Cleveland*, 431 U.S. 494, 503–04 (1977). He also holds a protected property interest

in the adjudication of his properly filed, fee-paid petition. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

89. Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), all three factors favor Intervenor decisively. The private interest—family unity, economic stability, equal treatment as a naturalized citizen, and the ability to file taxes in the legally correct marital status—is of the highest order. The risk of erroneous deprivation is maximal: the hold is triggered automatically by a birthplace data field with zero individualized review. The government's burden of providing notice, criteria, and an opportunity to be heard is minimal—USCIS already conducts individualized adjudications in every other benefit category. The Hold Memoranda provide no process whatsoever. That is not due process. That is no process.

## COUNT VIII

### TAKE CARE CLAUSE AND YOUNGSTOWN ZONE 3

*U.S. Const. art. II, § 3 — Youngstown Sheet & Tube Co. v. Sawyer*

90. Intervenor incorporates all preceding paragraphs by reference.

91. Article II, Section 3 commands that the President "shall take Care that the Laws be faithfully executed." As Chief Justice Marshall established in *Kendall*, 37 U.S. at 613: "To contend that the obligations imposed on the President to see the laws faithfully executed, imply a power to forbid their execution, is a novel construction of the constitution, and entirely inadmissible." The Hold Memoranda do not execute the INA's family-petition provisions. They suspend them. Suspension is not execution.

92. Under Justice Jackson's controlling *Youngstown* framework, 343 U.S. at 637–38, the Executive acts at its "lowest ebb" when it contradicts Congress's expressed will. Congress said "shall decide." The Hold Memoranda say "shall not decide." That is Zone 3. In Zone

3, the President may only rely on his own constitutional powers minus any powers of Congress over the matter. No enumerated or inherent Executive power authorizes indefinite categorical suspension of a congressional adjudicatory mandate.

## COUNT IX

### WRIT OF MANDAMUS

*28 U.S.C. § 1361 — Ministerial Duty to Adjudicate*

93. Intervenor incorporates all preceding paragraphs by reference.

94. Mandamus relief under 28 U.S.C. § 1361 is available upon satisfaction of three elements: a clear right in the petitioner; a clear, non-discretionary duty in the respondent; and no adequate alternative remedy. *Will v. United States*, 389 U.S. 90, 95 (1967); *Marbury*, 5 U.S. at 163. All three elements are satisfied.

95. *Clear right:* Intervenor holds a clear right to adjudication of his properly filed, fee-paid, biometrically complete, background-checked Form I-130 petition and his spouse's Forms I-485 and I-765. That right is conferred by 8 U.S.C. § 1154, confirmed by *Marbury*'s foundational principle that where there is a legal right there must be a legal remedy, and reinforced by the constitutional guarantee that a naturalized citizen stands on equal footing with every native-born citizen. *Schneider*, 377 U.S. at 165.

96. *Clear duty:* The duty to adjudicate within a reasonable time is non-discretionary and ministerial. 8 U.S.C. § 1154(b); 8 C.F.R. § 103.2(b)(1); 5 U.S.C. § 555(b). While the substantive outcome is discretionary, the ministerial duty to render that outcome is not.

97. *No adequate remedy:* There is no adequate alternative remedy at law. The administrative appeals process cannot cure a categorical hold that prevents adjudication from ever issuing. No mechanism exists for Intervenor to contest the hold, no timeline for resolution, and no

criteria by which the hold might be lifted. Mandamus is not merely appropriate. It is necessary.

98. *Marbury*'s central holding bears repeating: *"[T]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury."* 5 U.S. at 163. Intervenor has received an injury. The laws provide a remedy. This Court has both the authority and the obligation to provide it.

## COUNT X

## UNCONSTITUTIONAL DELEGATION AND ABSENCE OF INTELLIGIBLE PRINCIPLE

*U.S. Const. art. I, § 1 — J.W. Hampton, Jr., Co. v. United States; Gundy v. United States*

99. Intervenor incorporates all preceding paragraphs by reference.

100. This Count presents an independent constitutional ground for relief that operates whether or not the Court reaches the APA, mandamus, or Fifth Amendment claims. It is not duplicative of Count IV's statutory excess-of-authority analysis. Count IV asks whether Congress *authorized* the Hold Memoranda. Count X asks a prior and more fundamental question: if Congress *did* authorize them—which Intervenor denies—whether that authorization would itself be constitutionally permissible. The answer is no. A delegation that authorizes indefinite, categorical, individualized-finding-free suspension of a mandatory statutory adjudication pathway, for an open-ended list of nationalities, with no criteria, no durational limit, and no mechanism for review, is not a permissible delegation of legislative power. It is an abdication of it.

## I. The Non-Delegation Doctrine and Its Present Vitality

101. Article I, Section 1 of the Constitution vests "[a]ll legislative Powers herein granted" in Congress. This vesting is not a formality. It reflects the Framers' considered judgment that the branch most accountable to the people must make the fundamental policy choices that govern them. *Gundy v. United States*, 139 S. Ct. 2116, 2133 (2019) (Gorsuch, J., dissenting, joined by Roberts, C.J., and Thomas, J.). The non-delegation doctrine enforces that promise.

102. Under *J.W. Hampton, Jr., Co. v. United States*, 276 U.S. 394, 409 (1928), Congress may delegate legislative power to the Executive only if it "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." The intelligible principle requirement is the constitutional floor. Congress may not hand an executive officer a blank portfolio and instruct him to fill it however he sees fit.

103. That floor is not merely historical. It is present and active. In *Gundy*, four Justices applied the intelligible principle standard and found it satisfied only after close examination of the statutory text and structure. Justice Gorsuch, joined by the Chief Justice and Justice Thomas, would have held the delegation unconstitutional and called for a reinvigorated standard. Justice Alito, concurring in the judgment, wrote separately to express openness to reconsidering the intelligible principle standard "in a future case." 139 S. Ct. at 2130 (Alito, J., concurring in the judgment). That alignment—three Justices for reinvigoration, one Justice explicitly open to it—means a majority of participating Justices expressed skepticism about the existing standard's adequacy.

104. *Loper Bright* did not address non-delegation directly. But its logic reinforces it. *Loper Bright* held that courts must exercise independent judgment in reading statutes and may not defer to agency interpretations that claim authority beyond the text. 144 S. Ct. at 2273. The combination of *Loper Bright*'s independent-judgment mandate with *Gundy*'s intelligible principle requirement operates as a constitutional pincer: the Court independently reads the statute to find no delegation of suspension authority; and if delegation nonetheless exists, the Court strikes it for want of any guiding principle constraining its exercise. Either prong is independently sufficient. Together they are conclusive.

105. *West Virginia v. EPA* and *Learning Resources* further confirm this trajectory. Both decisions demanded that agencies point to clear, specific statutory authorization before exercising transformative power. Both decisions refused to find such authorization in general administrative grants. The major questions doctrine and the non-delegation doctrine are doctrinal cousins: both insist that Congress make the hard choices rather than outsource them to executive officers under cover of vague enabling language.

## II. The Claimed Delegation Here Lacks Any Intelligible Principle

106. Even accepting, for the sake of argument, that the general administrative provisions Defendants invoke— 8 U.S.C. §§ 1103(a), 1182(a)(3)(C), and 1225(d)—confer some degree of operational flexibility on the USCIS Director, the Hold Memoranda's claimed authority fails the intelligible principle test by every available measure.

107. *No criteria.* The Hold Memoranda supply no criteria for determining which countries are designated, which petitioners are affected, or which cases within the designated population might be exempt. An agency operating under a valid delegation must be able to point to a

congressional standard against which its choices can be measured. *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 472–76 (2001). Here there is no standard to measure against. The Director designates; the Director holds; the Director—and only the Director—decides when to lift. That is not a delegation with an intelligible principle. That is a delegation of the legislative power itself.

108. *No durational limit.* The Hold Memoranda impose holds that "remain in effect until lifted or modified by the USCIS Director through a subsequent memorandum." There is no outer time limit. There is no triggering condition that automatically terminates the hold. A delegation that authorizes indefinite executive suspension of a congressionally mandated adjudication pathway, with no endpoint Congress has defined, delegates to the executive the choice of when—if ever—the law operates. That is not execution of the law. That is control over whether the law operates at all. *Kendall*, 37 U.S. at 613.

109. *No individualized assessment requirement.* The Hold Memoranda require no individualized finding of any kind before a hold is imposed. The trigger is a birthplace data field. No officer reviews the specific petitioner. No officer considers the beneficiary's actual nationality, travel documents, vetting results, or case-specific circumstances. A delegation without any requirement of individualized application—one that permits a single data field to determine the fate of hundreds of thousands of cases—is a delegation without an intelligible principle.

110. *No mechanism for review or appeal.* The Hold Memoranda provide no administrative mechanism by which an affected petitioner can contest the hold, demonstrate that the predicate security concerns do not apply to his case, or seek individual relief. The absence of any review mechanism is itself evidence that Congress supplied no intelligible

principle—because a valid delegation would at minimum require the agency to articulate, apply, and defend the principle it is enforcing.

### III. The Delegation Is Especially Defective as Applied to Citizens

111.   Whatever latitude Congress may possess to delegate broad immigration authority over the admission and exclusion of aliens—and Intervenor does not challenge that latitude here—the non-delegation calculus changes fundamentally when the delegated authority operates against the rights of United States citizens.

112.   The rights of naturalized citizens are not merely statutory.   They are constitutional. *Schneider*, 377 U.S. at 165; *Afroyim*, 387 U.S. 253.   A delegation that authorizes executive action adverse to citizens' constitutional rights demands a more clearly articulated intelligible principle.   Where delegated authority curtails or dilutes a constitutional liberty, courts construe that delegation narrowly. *Kent v. Dulles*, 357 U.S. 116, 129 (1958). Congress cannot be presumed to have silently delegated to a Director the power to sort United States citizens by birthplace for adverse treatment in the exercise of mandatory statutory petition rights without speaking clearly to that effect.   It did not speak clearly.   It did not speak at all.

113.   This principle has deep roots.   In *Kent v. Dulles*, the Supreme Court refused to read a broad delegation of passport authority as encompassing the power to deny passports based on political belief, because passport denial implicates the constitutional right to travel.   357 U.S. at 130.   The Court demanded specific authorization before it would permit executive action that burdened a citizen's constitutional right under cover of a general delegation. The same logic applies here with greater force: the right to petition for a spouse as an immediate relative implicates the constitutional liberty of family integrity, the equal

citizenship guarantee, and the procedural due process right to adjudication of a vested legal claim. A general administrative delegation cannot silently authorize the suspension of all three.

### IV. The Absence of an Intelligible Principle Requires This Court to Act

114. The consequence of a finding that the claimed delegation lacks an intelligible principle is not that the Court rewrites the statute. It is that the Court does what *Marbury* has always required: it declines to give effect to executive action that rests on unconstitutional authority. *Marbury v. Madison*, 5 U.S. (1 Cranch) at 180. The Hold Memoranda, if they rest on a delegation, rest on an unconstitutional one. If they rest on no delegation—which is Intervenor's primary submission—they are ultra vires on their face. Either way, they cannot stand.

115. This Court need not resolve whether the reinvigorated non-delegation standard advocated by Justice Gorsuch in *Gundy* represents the current law of the land. The Hold Memoranda fail both the traditional *Hampton* test and the reinvigorated standard simultaneously. Under the traditional *Hampton* test, there is no principle—not even a vague one—to which the Director has been directed to conform. The memoranda do not identify a statutory standard they are implementing. They announce a freeze and defer everything else to future Director discretion. That is not an intelligible principle. That is its opposite.

116. Under the reinvigorated standard, the failure is more obvious still. Justice Gorsuch's *Gundy* dissent identified three questions a valid delegation must answer: what is the policy, who is affected, and under what circumstances does the authority apply. 139 S. Ct. at 2137. The Hold Memoranda answer none of these questions with any congressional guidance. The policy is whatever the Director decides it is. The affected population is whoever the

Director designates. The circumstances for application, modification, or termination are entirely within Director discretion. No Congress operating under Article I, Section 1 could have intended to delegate that.

### V. Relief Under Count X

117. As a remedy for the unconstitutional delegation established in this Count, Intervenor requests that the Court: (a) declare that any purported statutory authorization for the Hold Memoranda's adjudicative suspension regime violates Article I, Section 1 of the Constitution by failing to supply an intelligible principle constraining the Director's exercise of the claimed power; (b) declare that the Hold Memoranda are void as the product of an unconstitutional delegation of legislative authority, independently of and in addition to their invalidity under the APA, the INA, the Fifth Amendment, and the Take Care Clause; (c) enjoin Defendants from enforcing PM-602-0192 and PM-602-0194 against Intervenor's pending petition package on the independent ground that they rest on authority Congress could not constitutionally confer without specifying criteria, duration, individualized-assessment requirements, and review mechanisms; and (d) coordinate this relief with Counts I through IX to ensure that adjudication of Intervenor's petitions is compelled on every available independent ground.

118. This Count is presented as a nonfrivolous argument for the application and extension of existing constitutional doctrine to a fact pattern no court has yet addressed in this specific configuration. The underlying principle—that Congress must supply an intelligible principle when it delegates power that burdens constitutional rights of citizens—is not novel. Its application to USCIS adjudicative suspension memoranda is. That is precisely the kind of doctrinal development that Article III courts exist to recognize and enforce.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Intervenor Isaac D. Narvaez Gomez respectfully requests that this Court grant the following relief:

1. **Intervention.** Grant Intervenor's motion to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, by permissive intervention under Rule 24(b)(1)(B).

2. **Declaratory Relief—Unlawfulness of Hold Memoranda.** Declare, pursuant to 28 U.S.C. §§ 2201–2202 and 5 U.S.C. § 706, that USCIS Policy Memoranda PM-602-0192 (December 2, 2025) and PM-602-0194 (January 1, 2026) are unlawful, arbitrary, capricious, and in excess of statutory authority insofar as they impose adjudicative holds on citizen-filed immediate-relative petitions based solely on automated birthplace classifications, without individualized findings, standards, timelines, or procedural safeguards.

3. **Declaratory Relief—Ultra Vires as to the Beneficiary.** Declare that application of PM-602-0192 and PM-602-0194 to the Beneficiary's Form I-485 and Form I-765—where the Beneficiary is a citizen of Italy and Uruguay admitted on an Italian passport—is ultra vires the Presidential Proclamations the Hold Memoranda purport to implement and void.

4. **Declaratory Relief—Equal Protection.** Declare that the Hold Memoranda, as applied to a naturalized United States citizen petitioner, violate the equal protection component of the Fifth Amendment by creating a nationality-based second tier of citizenship, contrary to *Schneider v. Rusk*, *Afroyim v. Rusk*, and *Adarand Constructors, Inc. v. Peña*.

5. **Declaratory Relief—Procedural Due Process.** Declare that the Hold Memoranda violate the procedural due process guarantee of the Fifth Amendment by depriving Intervenor of

protected statutory, liberty, and property interests without notice, criteria, timeline, or any mechanism to be heard.

6. **Declaratory Relief—Take Care Clause.** Declare that the Hold Memoranda violate Article II, Section 3 by suspending rather than executing the mandatory adjudicatory framework Congress enacted in 8 U.S.C. § 1154(b), and that such suspension operates unconstitutionally in Youngstown Zone 3.

7. **Declaratory Relief—Tax Injury.** Declare that the denial of a Social Security Number to the Beneficiary—as a direct and proximate consequence of the unlawful hold on her Form I-765—constitutes a concrete, ongoing, and quantifiable injury to Intervenor as a United States citizen taxpayer, depriving him of the ability to file federal income taxes as "married filing jointly" under 26 U.S.C. § 6013.

8. **Declaratory Relief—Unconstitutional Delegation.** Declare that any purported statutory authorization for the Hold Memoranda's adjudicative suspension regime violates Article I, Section 1 of the Constitution by failing to supply an intelligible principle under *J.W. Hampton, Jr., Co. v. United States*, 276 U.S. 394 (1928), and *Gundy v. United States*, 139 S. Ct. 2116 (2019).

9. **Preliminary Injunction.** Issue a preliminary injunction pursuant to Fed. R. Civ. P. 65 and 5 U.S.C. § 705 requiring Defendants, within fourteen (14) days of the Court's order, to: (a) provide Intervenor with written notice of the specific, individualized basis—if any exists— for the hold applied to his petition package; (b) disclose the criteria, timeline, and mechanism by which the hold may be resolved or contested; and (c) remove the "Final Hold" designation from Intervenor's petition package pending final adjudication of this

action. All four *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008), factors favor Intervenor. *Cf. Elrod v. Burns*, 427 U.S. 347, 373 (1976).

10. **APA § 705 Interim Stay.** Issue a statutory stay under 5 U.S.C. § 705 postponing the effective date of PM-602-0192 and PM-602-0194 as applied to Intervenor's Form I-130, the Beneficiary's Form I-485, and the Beneficiary's Form I-765, to the extent necessary to prevent irreparable injury pending the conclusion of this review proceeding.

11. **APA § 706(2) Relief.** Hold unlawful and set aside, under 5 U.S.C. § 706(2)(A), (C), and (D), the application of PM-602-0192 and PM-602-0194 to Intervenor's pending Form I-130 petition and his spouse's Forms I-485 and I-765, as arbitrary and capricious, in excess of statutory authority, and promulgated without required notice-and-comment rulemaking.

12. **APA § 706(1) Relief.** Compel, under 5 U.S.C. § 706(1), Defendants to adjudicate Intervenor's Form I-130 and the Beneficiary's Forms I-485 and I-765 to a final decision within sixty (60) days of the Court's order, without reliance on any birthplace-based automated hold, consistent with the relief awarded in *Varniab v. Edlow*, No. 5:25-cv-10602-SVK, ECF No. 35, slip op. at 42-43 (N.D. Cal. Feb. 20, 2026), and *Bowser v. Noem*, No. 26-CV-10382-AK, ECF No. 20 (D. Mass. Feb. 27, 2026).

13. **Writ of Mandamus.** Issue a Writ of Mandamus under 28 U.S.C. § 1361 compelling Defendants to perform their ministerial duty to adjudicate Intervenor's pending petitions and applications within a reasonable, Court-specified period, without reliance on the birthplace-based adjudicative holds imposed by PM-602-0192 and PM-602-0194.

14. **Coordination of Relief.** Coordinate any relief granted to Intervenor with existing or future preliminary or permanent injunctive relief entered in the main action in a manner that promotes judicial economy and avoids inconsistent obligations, ensuring that relief ordered

for noncitizen plaintiffs in the underlying action extends, with equal or greater force, to citizen-filed petitions independently subject to the mandatory adjudication command of 8 U.S.C. § 1154(b). Any such relief shall be narrowly tailored to the parties before this Court consistent with *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).

15. **Fees and Costs.** Award Intervenor his reasonable costs and expenses, including attorney's fees, under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), on the grounds that the government's position is not "substantially justified" where it asserts the power to suspend a mandatory statutory duty through a sub-regulatory memorandum that cites zero statutory language, applies a Venezuelan-national hold to an Italian national admitted on an Italian passport, and was issued without notice-and-comment rulemaking. Intervenor reserves the right to retain counsel at any stage of these proceedings; any subsequent retention of counsel shall not constitute a waiver of entitlement to fees attributable to pro se efforts.

16. **Further Relief.** Grant such other and further relief as this Court deems just and proper. This relief is independently compelled by *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (Feb. 20, 2026), which confirms—across a 6-3 majority (with three concurring in the judgment on independent textual grounds)—that courts exercise independent statutory judgment to enforce mandatory congressional commands against executive claims of transformative authority, and that no emergency framing, foreign affairs invocation, or national security predicate substitutes for the clear statutory authorization transformative executive power requires. *"Those words cannot bear such weight."* Id., slip op. at 5. The statute says shall decide. The Executive says shall not. Fourteen days ago, the Supreme Court told us exactly how that dispute ends.

Respectfully submitted this 6th day of March, 2026.


**ISAAC D. NARVAEZ GOMEZ**
1601 Assembly St. # 1062
Columbia, SC 29201
(803) 530-8212
ngomezisaac@gmail.com
*Plaintiff-Intervenor, Proceeding Pro Se*

## CERTIFICATE OF PRO SE COMPLIANCE
### *Fed. R. Civ. P. 11(b)*

I, Isaac D. Narvaez Gomez, proceeding pro se, certify pursuant to Federal Rule of Civil Procedure 11(b) that:

(1) This Complaint in Intervention is not being presented for any improper purpose;

(2) The legal contentions herein are warranted by existing law or, where identified as novel, by a nonfrivolous argument for extending existing law. In particular, the application of *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (Feb. 20, 2026), to immigration adjudication holds is a novel cross-doctrinal argument that no court has yet addressed, presented as such. The doctrinal parallel is exact: general statutory language cannot carry transformative executive authority whether the claimed authority is unlimited tariffs or unlimited adjudicative suspension. Six Justices confirmed the principle. Three confirmed it requires no special doctrinal framework. The novelty is in the application, not the rule;

(3) The factual contentions have evidentiary support or, where identified as believed to be true pending further investigation, are reasonably likely to have evidentiary support after a reasonable opportunity for discovery;

(4) The denials of factual contentions are warranted on the evidence.

The Court is advised that this Complaint, while filed pro se, is drafted at the level of represented litigation and should be evaluated as such. *Haines v. Kerner*, 404 U.S. 519, 520 (1972), requires liberal construction; that protection is preserved as a fallback but is not the premise on which this filing rests.

Respectfully submitted this 6th day of March, 2026.


**ISAAC D. NARVAEZ GOMEZ**
1601 Assembly St. # 1062
Columbia, SC 29201
(803) 530-8212
ngomezisaac@gmail.com
*Plaintiff-Intervenor, Proceeding Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March, 2026, I caused a true and correct copy of the foregoing to be served upon the following counsel of record via U.S. Mail, pursuant to Fed. R. Civ. P. 5(b)(2)(C), as I am a pro se litigant not yet registered with the Court's Electronic Case Filing (ECF) system under Local Rule 5.4:

**James O. Hacking, III**
Hacking Immigration Law, LLC
10121 Manchester Rd, Ste A
St. Louis, MO 63122

**Eve A. Piemonte**
U.S. Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210

Respectfully submitted this 6th day of March, 2026.


**ISAAC D. NARVAEZ GOMEZ**
1601 Assembly St. # 1062
Columbia, SC 29201
(803) 530-8212
ngomezisaac@gmail.com
*Plaintiff-Intervenor, Proceeding Pro Se*