UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AKMURAT O. DOE, et al.,

     Plaintiffs,

  v.

DONALD J. TRUMP, et al.,

     Defendants.

Case No. 1:25-cv-13946-JEK

**DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE
BY ISAAC D. NARVAEZ GOMEZ**

Defendants oppose the Motion to Intervene filed by Isaac D. Narvaez Gomez ("Movant") [Dkt. 53-54]. Movant, a naturalized United States citizen residing in Columbia, South Carolina, seeks to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), or in the alternative by permissive intervention under Rule 24(b)(1)(B), based on the alleged impact of USCIS Policy Memoranda PM-602-0192 and PM-602-0194 on his pending Form I-130 petition for his spouse, and his spouse's concurrently pending Forms I-485 and I-765.

The motion should be denied. Movant fails to satisfy the requirements for intervention as of right because his independent ten-count Complaint in Intervention has no connection to this district and cannot be grafted onto a District of Massachusetts case to circumvent venue requirements he could easily satisfy in district for which he resides. This Court's disposition of the Doe action will not impair or impede Movant's ability to protect his interests through independent litigation in the District of South Carolina; and this Court lacks subject-matter jurisdiction over Movant's I-485 and I-765 claims, which are barred from judicial review both by the INA's jurisdiction-stripping provision, 8 U.S.C. §1252(a)(2)(B), and by the APA's exclusion of agency

action committed to discretion by law, 5 U.S.C. § 701(a). Permissive intervention should likewise be denied because Movant's complaint raises four claims with no counterpart in this litigation, that would materially expand and complicate this proceeding without adding anything the Court does not already have before it. For these reasons, the Court should deny the motion.

**ARGUMENT**

I.   **MOVANT'S INDEPENDENT CLAIMS HAVE NO CONNECTION TO THIS DISTRICT.**

Movant's address is a Post Office Box at 1601 Assembly Street, Columbia, South Carolina—approximately 0.4 miles from the Matthew J. Perry, Jr. United States Courthouse in the District of South Carolina. [Dkt. 53 at 1].[1] He has no residence, property, or connection to the District of Massachusetts. His Form I-130 petition was not filed in, processed through, or assigned to any USCIS office in this district. No substantial part of the events or omissions giving rise to Movant's individual claims occurred here.

Under 28 U.S.C. § 1391(e)(1), a civil action against a federal officer or agency may be brought in any judicial district in which: (A) a defendant resides; (B) a substantial part of the events or omissions giving rise to the claim occurred; or (C) the plaintiff resides. The purpose of venue "is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84 (1979). Movant does not seek merely to join in the existing parties' claims. He files an independent, free-standing ten-count Complaint in Intervention seeking separate declaratory, injunctive, and mandamus relief based on his own circumstances in South Carolina. [Dkt. 53-3].

---

[1] Walking distance determined using https://www.google.com/maps.

Where a proposed intervenor asserts independent claims seeking separate relief, those claims must independently satisfy jurisdictional requirements. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978) ("[t]he limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded"); 7C Wright & Miller, Federal Practice and Procedure § 1917 (3d ed.). Movant's Complaint in Intervention raises claims far beyond those asserted by Plaintiffs—including two § 706(1) compulsion counts (Counts I–II), a Take Care Clause claim (Count VIII), a nondelegation challenge (Count X), and a separate mandamus count under 28 U.S.C. § 1361 (Count IX)—and requests relief tailored to his individual petition package. These are not supplemental claims ancillary to the existing action; they are the functional equivalent of a new lawsuit that Movant has chosen to file a thousand miles from home rather than in the courthouse down the street.

Allowing Movant to litigate independent claims in this district—where he has no connection, where no substantial part of the events giving rise to his claims occurred, and where his own courthouse is 0.4 miles away—would allow him to evade venue requirements he plainly cannot escape. The limits upon federal jurisdiction "must be neither disregarded nor evaded." *Owen Equipment*, 437 U.S. at 374; *see also Leroy*, 443 U.S. at 184 (venue exists "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial"); 7C Wright & Miller, Federal Practice and Procedure § 1917 (3d ed.) (independent claims in intervention must satisfy jurisdictional requirements independently). The proper vehicle for Movant's claims is an independent action in the District of South Carolina, where venue is plainly satisfied under § 1391(e)(1)(C). Nothing prevents Movant from filing there.

## II.    DISPOSITION OF THIS ACTION WILL NOT IMPAIR MOVANT'S ABILITY TO PROTECT HIS INTERESTS.

Even apart from venue, Movant cannot satisfy Rule 24(a)(2)'s requirement that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). This Court's resolution of the Doe action will have no preclusive effect on any proceeding Movant might bring in the District of South Carolina. A district court ruling in the First Circuit does not bind a district court in the Fourth Circuit—or, for that matter, any other court. At most, it would constitute persuasive authority. The possibility of an unfavorable persuasive precedent is not the kind of practical impairment that Rule 24(a)(2) contemplates.

The 1966 advisory committee notes to Rule 24 recognized that impairment should be assessed "as a practical matter," broadening the inquiry beyond formal res judicata. But the broadening was directed at situations where a judgment would have direct, binding consequences for the intervenor—such as in rem proceedings, consent decrees, or class actions where the intervenor would be bound by the result. *See Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 134–36 (1967) (intervention proper where divestiture decree would directly bind the intervenor). That is not this case. Movant is a private individual with an individual petition package who is free to bring his own action at any time in a district where venue is proper. No ruling this Court enters will bind him, preclude his claims, or diminish his ability to litigate. He will remain free to assert every theory he advances here—including his § 706(1), Take Care Clause, mandamus, and nondelegation claims—in his own forum.

Moreover, existing parties adequately represent any overlapping interest Movant has. Where the government is a party, there is a presumption of adequate representation. *See T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 41 (1st Cir. 2020). Movant's assertion that no existing party represents his interest because "[e]xisting Plaintiffs are noncitizens" [Dkt. 53 at 2] ignores

4

that the existing Plaintiffs include individuals whose U.S. citizen spouses filed I-130 petitions on their behalf—the identical procedural posture Movant occupies [Dkt. 61]. A difference in preferred legal theory does not overcome the presumption of adequate representation. *See Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir. 1988).

### III.    THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER MOVANT'S I-485 AND I-765 CLAIMS.

Even if the Court were inclined to permit intervention, Movant's claims regarding his spouse's pending I-485 and I-765 applications are barred from judicial review. Movant's I-130 petition—filed by a U.S. citizen—has already been exempted from the adjudication hold. [Dkt. 57]. The I-485 (adjustment of status) and I-765 (employment authorization) applications remain subject to the hold, and those are claims over which Congress has precluded review.

The APA's judicial review provisions do not apply where "statutes preclude judicial review" or where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)–(2). Both prongs are independently satisfied here. Section 1252(a)(2)(B) is a statute that precludes judicial review of the discretionary immigration determinations at issue, rendering APA review unavailable under § 701(a)(1). As to adjustment under § 1255, both subparagraphs (B)(i) and (B)(ii) independently bar review—Defendants have briefed the applicability of § 1252(a)(2)(B)(ii) to adjustment of status processing [Dkt. 37-1 at 12-15], and that argument applies with equal force to Movant's I-485 claims. Section III.A below addresses (B)(i). As to employment authorization, § 1252(a)(2)(B)(ii) independently bars review, as Section III.B demonstrates. And because both adjustment of status and employment authorization are committed to the Secretary's discretion by law, § 701(a)(2) independently bars review as well.

### A. The hold represents a series of unreviewable judgments regarding the granting of adjustment.

Section 1252(a)(2)(B)(i) provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255." 8 U.S.C. § 1252(a)(2)(B)(i). The Supreme Court has interpreted this provision expansively: "'any' means that the provision applies to judgments 'of whatever kind' under § 1255, not just discretionary judgments or the last-in-time judgment." *Patel v. Garland*, 596 U.S. 328, 338 (2022). Similarly, the word "regarding" has a "'broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject.'" *Id.*

Although the holding in *Patel* concerned factual findings made during adjudication proceedings, the majority's plain-language analysis of § 1252(a)(2)(B)(i) is not limited to factual findings. It extends to judgments "of whatever kind" that relate to the granting of relief under § 1255—including judgments about the adequacy and timing of security vetting necessary to determine whether an applicant is admissible. Under § 1255(a), adjustment of status requires that the applicant be "admissible to the United States for permanent residence." 8 U.S.C. § 1255(a). These admissibility determinations are judgments regarding the granting of relief under section 1255. *See, e.g.,* INA § 212(a)(3), 8 U.S.C. § 1182(a)(3) (determining admissibility requires assessing security-related grounds of inadmissibility including terrorist activity, espionage, and other threats)

The record before this Court demonstrates that the hold is not a passive suspension of adjudication. It is a period during which USCIS is actively making vetting determinations that go directly to whether relief should be granted. The Declaration of Andrew Good, Chief of the USCIS Office of Policy and Strategy, documents that during the hold period, USCIS has implemented biometric identity verification when reusing fingerprints; initiated additional background checks,

re-interviews, and merit reviews under Operation PARRIS; developed system connectivity for automatic notifications of biometric matches and new criminal history information; implemented a policy requiring a final arrest-encounter review to verify criminal history before adjudication; and implemented a final Consular Consolidated Database check for identity verification, visa and travel history, and national security information. [Dkt. 49-1]. USCIS is also conducting country-by-country risk assessments and developing adjudicator guidance for aligning interview resources to country-specific risks. *Id*. Each of these steps constitutes a determination relating to whether the applicant is admissible and eligible for the benefit—that is, a judgment regarding the granting of relief. A criminal history check that reveals a disqualifying offense, a CCD check that uncovers prior visa fraud, or a biometric verification that exposes an identity discrepancy would each constitute a judgment directly determining whether relief under § 1255 should be granted or denied.

The policy memoranda define a "hold" as allowing "a case to proceed through processing, up to final adjudication," and defines "final adjudication" as "the issuance of a final decision on a case, such as an approval, denial, or dismissal." PM-602-0194, at 1 n.2. The hold is thus the agency's judgment that the case is not ready for a decision on granting or denying the benefit because identity and security vetting—a prerequisite to determining admissibility—is incomplete. Reviewing whether that judgment was proper would require this Court to second-guess the agency's determination about the adequacy and pace of security investigations that go to the heart of the granting-of-relief decision. That is precisely the kind of review § 1252(a)(2)(B)(i) forecloses. *See Dep't of Navy v. Egan*, 484 U.S. 518, 527, 529 (1988) (the grant of security clearance is "a sensitive and inherently discretionary *judgment* call," and "it is not reasonably possible for an outside nonexpert body to review the substance of such a *judgment*") (emphasis

7

added). The regulation at 8 C.F.R. § 103.2(b)(18), titled "Withholding adjudication," confirms the agency's authority: it provides that USCIS "may authorize withholding adjudication of a visa petition or other application if [USCIS] determines that an investigation has been undertaken involving a matter relating to eligibility." That regulatory determination to withhold adjudication pending investigation is itself a judgment about eligibility for relief—and is therefore unreviewable under § 1252(a)(2)(B)(i) and § 701(a)(2).

Moreover, even setting aside § 1252(a)(2)(B)(i), adjustment of status is independently barred from review under § 1252(a)(2)(B)(ii) because adjustment under § 1255 is a discretionary determination. Defendants have briefed that argument in full, to include the point that where an application for employment authorization is based on adjustment of status, review of that subordinate application is also necessarily precluded. [Dkt. 37-1 at 12-15]. Defendants do not repeat that analysis here, but incorporate it by reference.

### B. Employment authorization is discretionary by statute, and § 1252(a)(2)(B)(ii) independently bars review.

Section 1252(a)(2)(B)(ii) strips jurisdiction over "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary…" 8 U.S.C. § 1252(a)(2)(B)(ii). Employment authorization falls within this limitation because the INA commits it to the Secretary's discretion at the statutory level (unless Congress specifically provides otherwise for a specific class of aliens).

The INA's general rule is that no alien is authorized for employment unless either a specific statutory provision independently authorizes it, or the Secretary provides for it. INA § 274A(h)(3), 8 U.S.C. § 1324a(h)(3), provides that "an alien is not" is not authorized to be employed unless "authorized to be so employed by [statute] or by the Attorney General" (now the Secretary of

Homeland Security). This is a textual grant of discretion is all cases other than where a statute specifically speaks to the issue: Congress delegated to the Secretary the determination of whether, when, and on what terms employment authorization will be provided. The district court in *Save Jobs USA v. DHS*, analyzed this statutory framework in detail and concluded that DHS possesses broad discretionary authority over employment authorization under §§ 1103(a), 1184(a)(1), and 1324a(h)(3). *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 664 F. Supp. 3d 143, 148-52 (D.D.C. 2023), *aff'd*, 111 F.4th 76 (D.C. Cir. 2024), *cert. denied*, 146 S. Ct. 319 (2025). DHS implements this discretionary statutory authority. *See id.*; USCIS Policy Manual, Vol. 10, Pt. B, Ch. 1 ("Most other discretionary employment authorization is established by regulation and is based on the Secretary's statutory authority under INA 103(a), as well as the provision at INA 274A(h)(3)."). The regulations implement this statutory discretion. For Movant's spouse, who seeks employment authorization based on a pending I-485 under 8 C.F.R. § 274a.12(c)(9), the regulation provides that "[t]he approval of applications filed under 8 C.F.R. § 274a.12(c) . . . are within the discretion of USCIS." 8 C.F.R. § 274a.13(a)(1). Because the authority to grant or deny employment authorization "is specified under this subchapter to be in the discretion of" the Secretary (8 U.S.C. § 1324a(h)(3)), § 1252(a)(2)(B)(ii) bars judicial review—precluding APA claims under § 701(a)(1)—and because the statute supplies no judicially manageable standard against which to evaluate the agency's exercise of that discretion, § 701(a)(2) independently bars review. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The First Circuit has recognized that when a statute grants discretionary authority over a benefit, challenges to the procedures and timing for adjudicating that benefit fall within the jurisdictional bar. *See Gupta v. Jaddou*, 118 F.4th 475, 482–87 (1st Cir. 2024).

9

### C. Short pendency and lack of legal entitlement to discretionary benefits preclude Movant's claimed interest.

Movant's declaration emphasizes that his spouse "remains unable to obtain employment authorization or a Social Security Number, and is therefore unable to work..." [Dkt. 53-1, ¶ 7]. While Defendants do not minimize the personal difficulties, the inability to engage in gainful employment while a discretionary application is pending does not establish a legally cognizable injury. Employment authorization under 8 C.F.R. § 274a.12(c)(9) is a discretionary benefit to which Movant's spouse has no legal entitlement. Adjustment under § 1255(a) is likewise discretionary. Movant's spouse has an application for a benefit that the agency has discretion to grant or deny—not a vested right being withheld.

Moreover, Movant's petition package was filed around September and October 2025. The applications had been pending for approximately five to six months. Courts assess the reasonableness of administrative delay using the six-factor framework from *Telecommunications Research & Action Center v. FCC,* 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC"), which the First Circuit has employed. *See Towns of Wellesley, Concord, & Norwood, Mass. v. FERC,* 829 F.2d 275, 277 (1st Cir. 1987) (First Circuit expressly applying TRAC factors to assess reasonableness of agency delay*); V.U.C. v. United States Citizenship & Immigration Servs.*, 557 F. Supp. 3d 218, 223 (D. Mass. 2021) (applying TRAC framework in immigration adjudication delay context and dismissing unreasonable delay claim even after nearly four-year wait). Under those factors— which consider the rule of reason, congressional timetables, competing priorities, the nature of the prejudiced interests, the agency's track record, and whether the delay is attributable to the agency—a five-to-six-month pendency during an active, documented security review falls well within reasonable bounds. The Court should not permit intervention to pursue claims it could not adjudicate.

## IV.    PERMISSIVE INTERVENTION SHOULD BE DENIED.

Permissive intervention under Rule 24(b)(1)(B) requires that the applicant's "claim or defense" share "a common question of law or fact" with the main action, and the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3).

Movant's Complaint in Intervention asserts ten counts. The existing Doe complaint asserts six. Several of Movant's counts have no counterpart in this case: two § 706(1) compulsion claims (Counts I–II) asserting agency action unlawfully withheld and unreasonable delay—a distinct APA pathway that Plaintiffs did not plead and that Defendants have argued is inapplicable here; a Take Care Clause claim under Article II, § 3, combined with a *Youngstown* Zone 3 theory (Count VIII); a writ of mandamus under 28 U.S.C. § 1361 (Count IX); and an unconstitutional-delegation challenge under Article I, § 1 (Count X). These claims do not share common questions of law or fact with the existing six-count complaint—they expand the litigation into entirely new territory. The § 706(1) claims alone would require the Court to address a remedial framework it has not been asked to apply in the existing litigation. The mandamus claim requires its own demanding three-part showing. *See Cheney v. United States Dist. Court*, 542 U.S. 367, 380–81 (2004) (citing *Kerr v. United States Dist. Court*, 426 U.S. 394, 403 (1976)). And the nondelegation theory implicates unsettled Supreme Court doctrine. *See Gundy v. United States*, 139 S. Ct. 2116 (2019).

To the extent Movant's remaining counts overlap with the claims already before this Court, the overlap confirms that intervention adds nothing the Court does not already have—while the non-overlapping claims would require entirely separate briefing and adjudication, compounded by Movant's pro se status. And if this Movant's showing suffices for permissive intervention, there is no principled basis for denying similar motions from any of the tens of thousands of other

11

applicants affected by the same Hold Memoranda. The result would be the transformation of this proceeding into an open-ended, nationwide, all-comers case—precisely the kind of unmanageable litigation that Rule 24(b)(3)'s prejudice inquiry is designed to prevent.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Motion to Intervene filed by Isaac D. Narvaez Gomez [Dkt. 53-54]. Movant's PO Box is less than half a mile from the federal courthouse in the District of South Carolina, where venue is proper and where he can assert every claim he advances here—including new and novel theories—without burdening this already-complex proceeding. This Court's disposition of the pending preliminary injunction motion will neither bind nor preclude him. The Motion to Intervene should be denied.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

GLENN GIRDHARRY
Assistant Director

By: /s/ Jason S. Patil
JASON S. PATIL, Trial Attorney
Illinois Bar # 6257166
United States Department of Justice
Civil Division, Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: 202.598.1102
Email: jason.s.patil@usdoj.gov

BRONWYN H. NAYCI
JEFFREY ALDERETTE
Trial Attorneys

*Counsel for Defendants*

12

**CERTIFICATE OF SERVICE**

   I hereby certify that on March 23, 2026, this document was filed through the CM/ECF system, which will send an electronic notice of filing to all registered participants. I further certify that on March 23, 2026, a copy of the foregoing was served upon the following non-ECF participant by both electronic mail and by the United States Mail, first class, postage prepaid: Isaac D. Narvaez Gomez, PO Box 1062, Columbia SC 29201

         /s/ Jason S. Patil
         JASON S. PATIL