**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 26 C 2389 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| UNITED STATES CITIZENSHIP AND | ) | |
| IMMIGRATION SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The Court grants Plaintiff John Doe's motion for temporary restraining order [18]. The Court orders that Defendants and all their respective officers, agents, servants, employees, attorneys, and any person in active concert or participation with them who receive actual notice of this Order are enjoined from applying the adjudication hold of the December 2, 2025 and January 1, 2026 USCIS Policy Memoranda (PM-602-0192 and PM-602-0194) to Plaintiff John Doe's pending Forms I-485, I-765, I-131, and I-485 Supplement J. The Court orders Defendants to adjudicate Plaintiff John Doe's pending Forms, inform Plaintiff of the decision and, if denied, the reasons for denial. See Statement.

**STATEMENT**

This case concerns Plaintiff John Doe's pending employment-based application for adjustment of status. Doe specifically challenges Defendants' the United States Citizenship and Immigration Services' ("USCIS") newly issued policy placing an adjudication hold on all pending benefit applications filed by noncitizens from almost forty countries. Doe alleges, among other things, that this policy violates the Administrative Procedure Act ("APA"). One week after filing his complaint, Doe moved for a temporary restraining order ("TRO"), asking this Court to enjoin Defendants from applying the policy to his pending application.

**I.      Background**

**A.      Employment Authorization and Adjustment of Status Framework**

The Immigration and Nationality Act ("INA") provides a three-step process by which a lawfully present foreign national may become a lawful permanent resident of the United States. *See Musunuru v. Lynch*, 831 F.3d 880, 882 (7th Cir. 2016). "First, the employer must obtain a labor certificate from the Department of Labor that certifies that there are insufficient able, willing, qualified, and available workers, and that hiring the alien worker on a permanent basis will not adversely affect the wages or working conditions of similarly employed U.S. workers."

1

*Id.* (citing 8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5)(A)(i)). "Second, the employer must file, and USCIS must approve, an immigrant visa petition that assigns the worker to one of the INA's immigrant visa preference categories for employment-based permanent residency," known as a Form I-140. *Id.* at 882–83 (citing 8 U.S.C. §§ 1154(a)(1)(F), 1255(a)(2); 8 C.F.R. § 204.5(a)). Third, a worker must "apply for, and be granted, an adjustment of status to permanent resident," called a Form I-485. *Id.* (citing 8 U.S.C. § 1255(a); 8 C.F.R. § 204.5(n)(1)). Some workers may file their Forms I-485 concurrently with their I-140 petitions, *see* 8 C.F.R. § 245.2(a)(2)(i), but USCIS will not adjudicate a worker's Form I-485 until it approves their underlying I-140 petition, *see* 8 C.F.R. § 245.2(a)(5)(ii).

Congress has also amended the INA to make I-140 petitions and labor certifications "portable" to new employers for applications that have been pending for at least 180 days so long as "the new job is in the same or a similar occupational classification" as the prior job. 8 U.S.C. § 1154(j); 8 C.F.R. § 245.25(a) (federal regulations implementing § 1154(j)'s porting provision); *see also Musunuru*, 831 F.3d at 884. Workers can request job porting under § 1154(j) by completing a form called I-485 Supplement J. *See* 8 C.F.R. § 245.25(a).

When a worker applies for porting while his I-140 petition is still pending, the agency resolves the I-140 petition before addressing the portability request. *See* 81 Fed. Reg. 82,398, 82,418 (2016) ("In the final rule at 8 CFR 245.25(a)(2)(ii)(A) and (B), DHS reaffirms that a qualifying immigrant visa petition has to be approved before DHS examines a portability request under INA 204(j) and determines an individual's eligibility or continued eligibility to adjust status based on the underlying visa petition."). However, "just because an immigrant's I-485 application has been pending for more than 180 days does not automatically render the underlying I-140 petition valid." *Khedkar v. U.S. Citizenship & Immigr. Servs.*, 552 F. Supp. 3d 1, 12 (D.D.C. 2021) (citing *Matter of Al Wazzan*, 25 I. & N. Dec. at 364–67). Instead, USCIS approves the pending I-140 petition "if it was eligible for approval at the time of filing and until the alien's adjustment of status application has been pending for 180 days." 8 C.F.R. § 245.25(a)(2)(ii)(B)(2).

### B.    USCIS Hold

On January 20, 2025, President Trump issued Executive Order 14161 ("EO 14161"), directing enhanced vetting and screening of "all aliens seeking admission to the United States, or who are already in the United States . . . particularly those aliens coming from regions or nations with identified security risks." EO 14161 § 2. Citing EO 14161, President Trump then issued Presidential Proclamation 10949 on June 4, 2025, fully restricting and limiting the entry of nationals from twelve countries, including Iran, and partially restricting and limiting the entry of nationals from seven additional countries. Proclamation No. 10949 § 1(f)–(g), 90 Fed. Reg. 24497 (June 4, 2025). A subsequent Presidential Proclamation, issued on December 16, 2025, expanded these lists of countries. Proclamation No. 10998 §§ 2–5, 90 Fed. Reg. 59717 (Dec. 16, 2025).

In response to these Proclamations, USCIS issued two Policy Memoranda. First, on December 2, 2025, USCIS issued Policy Memorandum PM-602-0192, directing its personnel, among other things, to place a hold on all pending benefit requests for noncitizens from countries

2

listed in Proclamation No. 10949, including Iran and regardless of entry date. Dep't of Homeland Sec., USCIS, Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries, PM-602-0192 (Dec. 2, 2025) ("PM-602-0192"). USCIS subsequently issued Policy Memorandum PM-602-0194 on January 1, 2026, expanding this hold to all pending benefit applications for noncitizens from countries listed in Proclamation No. 10998. Dep't of Homeland Sec., USCIS, Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries, PM-602-0194 (Jan. 1, 2026) ("PM-602-0194"). PM-602-0194 notes that the hold allows a case to proceed through processing but inhibits any final adjudication, such as an approval, denial, or dismissal. *Id.* at 1 n.2. It also adds exceptions to the adjudication hold. *Id.* at 4–5.

Both PM-602-0192 and PM-602-0194 state that the hold "will remain in effect until lifted by the USCIS Director through a subsequent memorandum." PM-602-0192 at 2–3; PM-602-0194 at 3. Both memoranda also direct USCIS to "prioritize a list [of applicants] for review, interview, and re-interview" within 90 days of the memoranda issuances. PM-602-0192 at 3; PM-602-0194 at 5.

### C.      Doe Plaintiff[1]

Plaintiff John Doe is an Iranian national who has lawfully resided in the United States since December 16, 2014. He initially entered the United States in F-1 student status to pursue a graduate degree in mechanical engineering at the University of Akron. He maintained continuous lawful F-1 status throughout his academic program. After completing his studies, Doe received an initial grant of optional practical training ("OPT") employment authorization for twelve months and a subsequent 24-month science, technology, engineering, and mathematics ("STEM") OPT extension. Doe maintained this uninterrupted employment authorization from August 22, 2019 to August 21, 2022. During this time, Doe's employer successfully petitioned USCIS for Doe to receive H-1B specialty occupation status through February 18, 2027. He has continuously maintained lawful H-1B status since February 26, 2021.

Doe's employer sponsored him for lawful permanent residence through the employment-based immigrant visa process. His employer initiated the process by filing a Form I-140 on his behalf, and then Doe timely filed multiple forms on October 27, 2025, including: Form I-485 (application to register permanent residence or adjust status); Form I-765 (application for employment authorization); Form I-131 (application for travel document (advance parole)); and Form I-485 Supplement J (confirmation of valid job offer or request for job portability). At the time of his filing, Doe was statutorily eligible for adjustment of status and remained in valid H-1B status. All applications remain pending and unadjudicated.

On January 26, 2026, Doe's employer informed him that as part of a merger, the company determined Doe's role "is not eligible for [visa] sponsorship" and decided to eliminate his role. Doc. 1-8 at 1. After Doe questioned this decision, his employer stated that he could remain in his role only if USCIS approves his adjustment of status request before April 1, 2026. *See* Doc. 18-1. His employer notes that Doe's adjustment of status application "is portable at

---

[1] Doe has provided identifying information about himself under seal, to which Defendants have access. Doc. 6.

this point so [he] would be able to transfer where [he] currently [is] in the process to a new employer and continue to wait for it to be approved." *Id.* But his employer also cautioned that Doe would need to exit the United States if he cannot find a new employer or USCIS does not approve his adjustment of status within sixty days of losing his employment. *Id.*

## II. Legal Standard

Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies that "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). The party seeking such relief must satisfy three threshold requirements: it must show (1) some likelihood of success on the merits; (2) an inadequate remedy at law; and (3) that it will likely suffer irreparable harm if the relief is not granted. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). If the moving party fails to satisfy any one of these threshold requirements, the Court must deny the preliminary relief. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the moving party makes the threshold showing, however, the Court "proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Mays*, 974 F.3d at 818. "This balancing process involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Id.* Finally, the Court considers whether the injunction is in the public interest, which includes taking into account any effects on non-parties. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

## III. Discussion

Although Doe's opening brief is not a model of clarity, his reply simplifies the only question he asks this Court to consider: "whether Defendants may impose an indefinite, categorical pause on adjudication of properly filed applications without statutory authority." Doc. 32 at 1. Accordingly, the Court only analyzes whether Doe has shown some likelihood of success on the merits of his APA arbitrary and capricious claim. Before doing so, however, the Court must address Defendants' arguments that the Court does not have jurisdiction over Doe's claims.

### A. Section 1252 Jurisdiction

Section 1252, titled "Judicial review of orders of removal," provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" 28 U.S.C. § 1252(a)(2)(B)(ii). Defendants contend that 8 U.S.C. § 1255(a)'s text plainly grants the Attorney General discretion when deciding whether to adjust a noncitizen's status, thus stripping this Court of jurisdiction. But Doe does not "contest the adjudication of [his] applications to adjust status or for employment authorization; instead, [he] seek[s] review of the *failure to adjudicate* the application." *Bowser v. Noem*, No. 26-CV-10382, 2026 WL 555624, at *3 (D. Mass. Feb. 27, 2026). "An overarching problem with Defendants' argument is that numerous

4

courts have concluded that subsection (B)(ii) only precludes judicial review of decisions denying discretionary relief on individual applications and does not preclude judicial review of the Government's decision to categorically act or withhold action." *Varniab v. Edlow*, No. 25-CV-10602, 2026 WL 485490, at *7 (N.D. Cal. Feb. 20, 2026) (collecting cases). The Court therefore can consider Doe's challenge to the Policy Memoranda.

The Court agrees with Defendants, however, that § 1252(a)(2)(B)(ii) and Seventh Circuit precedent prevents it from reviewing "the timeline under which [the adjustment of status] process unfolds." *See Garcia v. USCIS*, 760 F. Supp. 3d 671, 673 (N.D. Ill. 2024). So, while the Court may appropriately consider the legality of Defendants' categorial adjudicative hold, it may not direct Defendants' discretionary decision of when and how to adjudicate Doe's applications.

### B. Likelihood of Success

The first factor for injunctive relief is likelihood of success. To meet this requirement, the "plaintiff must demonstrate that 'its claim has some likelihood of success on the merits.'" *Mays*, 974 F.3d at 822 (citation omitted). "What amounts to 'some' depends on the facts of the case at hand because of [the Seventh Circuit's] sliding scale approach," *id.*, but it at least requires a "strong" showing that "normally includes a demonstration of how the applicant proposes to prove the key elements of its case," *see Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020). A "mere possibility of success" does not meet this standard. *Id.* at 762.

The APA requires courts to "hold unlawful and set aside agency action" that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity;" or "(C) in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706. But first, the imposition of the challenged conditions must also be a "final agency action" to be reviewable. 5 U.S.C. § 704. The Court first addresses whether the Policy Memoranda constitute a final agency action and next addresses whether they are arbitrary and capricious.

#### 1. Final Agency Action

A court can only review a "final" agency action under the APA. 5 U.S.C. § 704. For an agency's action to be "final", the Supreme Court has stated that it must satisfy two conditions: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Importantly, "[t]he cases dealing with judicial review of administrative actions have interpreted the 'finality' element in a pragmatic way." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977).

Regarding the first prong, Doe asserts that the Policy Memoranda mark the consummation of USCIS' decisionmaking process because they "took immediate nationwide effect" and "do not contemplate further discretionary review prior to implementation." Doc. 18 at 7. Because Defendants misconstrue Doe's claim, they do not address this argument.

5

The Court concludes that Doe has shown some likelihood of success that the Policy Memoranda are the consummation of agency decisionmaking. While the Policy Memoranda direct USCIS to take certain actions within 90 days, "it remains entirely unclear to the Court what will occur 90 days after the release of these Policy Memoranda." *Bowser*, 2026 WL 555624, at *5. And both Policy Memoranda state that the blanket adjudicative hold will remain in effect for an indefinite period, only terminating when the USCIS Director issues a subsequent memorandum. "[A] number of cases support the proposition that significant pauses and blanket moratoria are final agency actions that cannot be exempted from judicial review merely by being characterized as intermediate." *Massachusetts v. Trump*, 790 F. Supp. 3d 8, 26 (D. Mass. July 3, 2025) (collecting cases); *Varniab*, 2026 WL 485490, at *17 ("For example, in the immigration context, a memorandum issued by the Department of Homeland Security that called for a department-wide review of policies and practices concerning immigration enforcement and ordered an immediate 100-day pause on the removal of any noncitizen with a final order of removal was held to meet the *Bennett* criteria for final agency action, notwithstanding that the Secretary retained the discretion to change or abandon the nonenforcement policy at any time." (citing *Texas v. United States*, 524 F. Supp. 3d 598, 642 (S.D. Tex. Feb. 23, 2021))). The Policy Memoranda's language, therefore, effectuates an indefinite freeze for immigration benefits from a lengthy list of countries, including Iran, satisfying the first prong.

As for the second prong, the Policy Memoranda prevent USCIS from issuing a final decision on whether to approve, deny, or dismiss Doe's applications. Without such final adjudication, Doe cannot maintain his current employment or, even if he were to find a different employer to sponsor his H-1B status, maintain new employment because that status expires in February 2027. Doe therefore cannot continue his professional progress so long as the adjudicative hold remains. "Courts have regularly determined that this condition is satisfied when an indefinite pause is imposed by an agency." *New York v. Trump*, No. 25-CV-11221, 2025 WL 3514301, at *9 (D. Mass. Dec. 8, 2025) (collecting cases); *Doe v. Trump*, 288 F. Supp. 3d 1045, 1070 (W.D. Wash. 2017) (holding that memoranda issued by agencies including DHS that suspended for at least 90 days the entry of refugees who are nationals of or residents of certain countries was a final agency action because "whether the Agency Memo produces a 'suspension' or an indefinite delay, [it] has significant real-world impacts on Plaintiffs' various situations."). Even brief delays can have profound consequences. *Doe v. Trump*, 288 F. Supp. 3d at 1070; *Varniab*, 2026 WL 485490, at *17; *Bowser*, 2026 WL 555624, at *6.

Accordingly, Doe is likely to succeed in showing that PM-602-0192 and PM-602-0194 constitute final agency action. "This conclusion is consistent with the 'well-settled' and 'strong' presumption in favor of judicial review of administrative action, which courts 'consistently' apply to 'legislation regarding immigration.'" *Varniab*, 2026 WL 485490, at *11 (first quoting *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020); then quoting *Kucana v. Holder*, 558 U.S. 233, 251 (2010)).

### 2. Arbitrary and Capricious

Pursuant to the APA, a court reviewing an agency's decision "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(a)(2)(A). An agency's decision is arbitrary and capricious under the APA when it:

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Awad v. Kerry*, 257 F. Supp. 3d 1016, 1020 (N.D. Ill. 2016) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007)). "To survive arbitrary and capricious review, an agency action must be the product of a reasoned decisionmaking." *Id.* (quoting *Fox v. Clinton*, 684 F.3d 67, 74–75 (D.C. Cir. 2012)). This means an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted) (internal quotation marks omitted). A court reviewing an agency's decision "should not attempt itself to make up for . . . deficiencies" in the agency's reasoning and "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (citation omitted) (internal quotation marks omitted).

Doe argues that the Policy Memoranda are arbitrary and capricious because they "fail[ ] to consider relevant statutory factors, fail[ ] to articulate a satisfactory explanation, [and] depart from prior policy without reasoned justification." Doc. 18 at 7. Doe also contends that the Policy Memoranda's categorical suspension of final adjudications without any individualized assessment or temporal limitations evidences their arbitrary and capricious nature. Again, Defendants do not address this argument.

Doe does not question the implementation of Proclamation No. 10949 concerning national security and public safety threats of those who seek to enter the United States. At least one court has found that a "rational connection plausibly exists between the entry, as described in [Proclamation No. 10949], and the limitations imposed on entry (or recent reentry) by the Policy Memoranda, as well as the contemplated new guidance." *Bowser*, 2026 WL 555624, at *7. But important here, Doe takes issue with how the adjudicatory hold "applies to nearly all pending benefit requests from applicants such as [Doe] *who have already been admitted to the United States*. There is no evidence that Defendants considered reasonable alternatives to the expansive hold policy." *Varniab*, 2026 WL 485490, at *18–19. Doe has been in the country since 2014 and the government has granted him an F-1 visa, OPT employment authorization, STEM OPT employment authorization, and an H-1B visa. He has remained in lawful status without interruption. Yet Defendants have provided no reasoned explanation "why such a broad hold is necessary for applications for immigration benefits" like Doe's or that they considered any other reasonable alternative. *Bowser*, 2026 WL 555624, at *7; *see also Varniab*, 2026 WL 485490, at *19 (citing *AIDS Vaccine Advoc. Coalition v. U.S. Dep't of State*, 766 F. Supp. 3d 74, 82 (D.D.C. Feb. 13, 2025) ("Defendants have not offered any explanation for why a blanket suspension of all congressionally appropriate foreign aid, which set off a shockwave and upended reliance interests for thousands of agreements with businesses, nonprofits, and

7

organizations around the country, was a rational precursor to reviewing programs.”)).  If Defendants are concerned about public safety and national security, “it should find a way to process name checks more rapidly, thereby revealing threats to security more quickly.  The Government protects no one by delaying a decision on [an] application[.]”  *Hong Wang v. Chertoff*, 550 F. Supp. 2d 1253, 1260 (W.D. Wash. 2008).

The Court therefore finds that Doe is likely to succeed on his claim that the adjudicatory hold component on the Policy Memoranda is arbitrary and capricious and therefore the APA requires this Court to set it aside.

### C.        Irreparable Harm and Adequacy of Traditional Remedies

Additional elements of the TRO’s balancing test are the adequacy of legal remedies and whether the movant would suffer irreparable harm in the absence of an injunction.  *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023).  In the Seventh Circuit, these elements essentially mirror each other: “[h]arm is irreparable if legal remedies are inadequate to cure it.”  *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531 (7th Cir. 2021).  Essentially, the analysis looks to whether monetary compensation will make the movant whole.  *See Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (“This takes us to irreparable harm, which we have defined as harm that cannot be repaired and for which money compensation is inadequate.” (citation omitted) (internal quotation marks omitted)).

Defendants argue that Doe has not shown that he will suffer imminent irreparable harm because the “loss of a foreign national’s employment authorization is not typically irreparable harm to justify a preliminary injunction” and neither is “economic harm.”  Doc. 31 at 12.  But USCIS’ refusal to adjudicate Doe’s applications means that Doe will not only lose his job but if he cannot find another job within sixty days, he will also lose his ability to lawfully remain in the country.  “Aside from the imminent and irreparable professional harm [he] face[s] in the absence of a[TRO], [Doe] ha[s] also presented evidence of other irreparable harm [he] will suffer if [his] applications remain frozen.  These harms include inability to travel to visit family, inability to make basic life decisions, and significant emotional strain.”  *Varniab*, 2026 WL 485490, at *23.

Defendants also contend that any harm is not imminent because Doe waited months before filing his complaint against the Policy Memoranda.  True, Doe did not file this lawsuit until March 2026, about three months after the Policy Memoranda became effective.  But Doe did not know that his employment, and by consequence, his ability to remain within the United States, was at jeopardy until his employer emailed him in late January and early February.  In the interim, the Court assumes that Doe needed to find a lawyer, who also needed some time to draft a complaint and motion for TRO.  Regardless of this month-long delay, the fact remains that Doe will certainly lose his employment on April 1, 2026 if USCIS does not adjudicate his applications, which the Policy Memoranda make impossible.[2]

---

[2] The Court acknowledges that Doe may still lose his job even if the Court lifts the adjudicative hold as applied to him because of the abbreviated time period between its ruling date and Doe’s termination date.  But Doe has represented that “[a]t least if the hold is lifted by 3/26/26 . . . then [Doe] may show positive steps are being taken toward the adjudication and [his] Employer may give him another chance.”  Doc. 32 at 12.

### D.      Balance of Harms and Equities

Finally, the Court considers whether the parties' potential harm and the public interest justify the TRO. The Court must consider the public interest and impacts that a TRO could have on nonparties. *See Madden v. Amazon Servs., LLC*, No. 23 C 14163, 2023 WL 8827977, at *10 (N.D. Ill. Dec. 21, 2023) (quoting *Cassel v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021)). These factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Doe seeks an extremely limited TRO. He asks the Court to enjoin Defendants from enforcing the Policy Memoranda against his pending Forms and order Defendants to resume adjudication of these Forms.[3] Should USCIS fail to adjudicate Doe's Forms, he will lose his job and may have to leave the country this summer. Defendants only raise a separation-of-powers concern, referencing the Executive's sovereign power over immigration laws. But Defendants have "not demonstrated how a [TRO] would interfere with its ability to enforce U.S. immigration laws[.]" *Chatwani v. Noem*, No. 25-CV-04024, 2026 WL 458418, at *9 (N.D. Ill. Feb. 18, 2026). Granting Doe's requested narrow relief "would not cause the sort of 'disruptive effect[s]' on government operations that could tip the balance of equities back in the government's favor." *City of Chicago v. United States Dep't of Just.*, No. 25 C 13863, 2026 WL 114294, at *11 (N.D. Ill. Jan. 15, 2026) (quoting *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025)). And although Defendants did not raise a national security concern, the Court would find such an argument unavailing, considering Doe has been living and studying or working in the United States without issue since 2014. Accordingly, Defendants have not shown that denial of the TRO would serve any governmental interest, whereas Doe will face immediate and irreparable harms if a TRO does not issue.

### E.      Bond

Rule 65(c) provides that, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, "the case law has somewhat weakened the force of the 'no order shall issue' language" in Rule 65(c). *Reinders Bros., Inc. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 54 (7th Cir. 1980); *see also Wayne Chem., Inc. v. Columbus Agency Serv. Corp.*, 567 F.2d 692, 700 (7th Cir. 1977) ("Under appropriate circumstances bond may be excused, notwithstanding the literal language of Rule 65(c)"); *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972) (the district court retains discretion to determine if a bond must be posted despite the mandatory language in Rule 65(c)).

Defendants here ask for a bond, but only generally reason that the "risk of harm to [D]efendants is not insubstantial." Doc. 31 at 14. Defendants offer no support for this statement,

---

[3] Doe asks the Court to order the Defendants to adjudicate his Forms within 48 hours. Doc. 32 at 15. But as discussed in the jurisdictional section, the Court cannot direct Defendants' discretionary decision of when to adjudicate Doe's applications. The Court therefore declines to include this temporal provision in the relief it grants Doe.

9

nor do they suggest a bond amount.  In fact, the record does not indicate that Defendants will suffer any monetary damages due to the narrow nature of the requested TRO.  Having considered the facts and circumstances of this case, the Court follows the decision of other courts and declines in its discretion to require Plaintiffs to post a bond for the TRO.  *See Bowser*, 2026 WL 555624, at \*10 (finding that a bond is not required under Rule 65(c) because "Defendants did not request a bond or submit any evidence that they are likely to suffer damages from the injunction"); *Varniab*, 2026 WL 485490 (same).

Date:  March 26, 2026                              /s/__Sara L. Ellis_____