**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

AKMURAT O. DOE, et al,
  Plaintiffs,

v.

DONALD J. TRUMP, et al.,

  Defendants.

Case No.  1:25-cv-13946-JEK

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATUS REPORT AND RESPONSE**
(Dkt. 70, filed April 1, 2026)

Defendants' April 1 filing presents two items to this Court: a link to a March 30, 2026 USCIS website update, and a brief attempt to distinguish *John Doe v. USCIS*, No. 26 C 2389 (N.D. Ill. Mar. 26, 2026). Neither advances the government's position. To the contrary, the new materials—including a USCIS spokesman statement issued March 31, 2026, attached hereto as Exhibit A—confirm three things that are fatal to the government's defense of this motion.

First, the operational guidance both memoranda required within 90 days does not exist. The PM‑602‑0192 deadline expired March 2, 2026. The PM‑602‑0194 deadline expired on or about April 1, 2026—the day the government filed Dkt. 70. Neither deadline produced the promised guidance. Second, the government's public statements now describe these holds as permanent bans, not interim pauses—directly contradicting the "interim" characterization on which the entire finality defense rests. Third, the government's own words reveal that the holds have expanded beyond any national security rationale into labor market policy—a new post-hoc justification that does not appear in the policy memoranda and underscores the absence of reasoned decisionmaking the APA requires.

**I. The March 30 Website Update Confirms That No Operational Guidance Has Been Issued**

The government characterizes the March 30 USCIS website update as meaningful new information warranting this Court's attention. It is not. Every action described in the update's "What We Are Doing" section is forward-looking and incomplete:

- "USCIS **is developing** a layered vetting plan."

- "USCIS **is developing** guidance to help adjudicators align interview resources to specific risks identified for each country."
- "USCIS is **working with** the Department of State to identify risk factors."

This is verbatim the same status the Good Declaration reported on March 3. Four weeks later, after two missed 90-day deadlines, the government's answer is: still developing, still working. If a USCIS adjudicator sat down today with a paused Iranian adjustment of status case, nothing in the March 30 update would tell that officer what to do. The hold remains in place, exactly as it was on December 2, 2025.

The update also inadvertently confirms what Plaintiffs have argued throughout: the holds are not narrowing toward resolution. The update discloses for the first time that PM-602-0193—a third policy memorandum placing holds on diversity visa AOS applications—remains in force. If anything, the scope of the non-adjudication regime is being documented more fully, not wound down.

Finally, the update's "What We Found" section asserts that "applications were approved and individuals were naturalized who should not have been." This sweeping accusation is offered without a single supporting data point, individual finding, or country-specific analysis. It is a post-hoc rationalization that further illustrates why these memoranda are arbitrary and capricious: the agency has substituted a generalized assertion for the individualized, evidence-based explanation the APA requires. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) ("The APA requires not just that the agency but that the reviewing court be able to discern what the agency's reason was.").

## II. The USCIS Spokesman Statement Confirms the Holds Are Permanent Bans, Not Interim Pauses

The day after the March 30 update, on March 31, 2026, USCIS Spokesman Matthew J. Tragesser issued a public statement to the press. Exhibit A. It deserves the Court's careful attention. On the threshold question of finality, the spokesman stated: "Optional Practical Training (OPT) applications for Iranian nationals are **banned** and will **not be processed**, in accordance with Presidential Proclamation 10998."

This is not the language of an interim measure. It is not the language of a "midstream pause in an ongoing administrative process." *Kewayfati v. Bondi*, No. 25-20073 (5th Cir. Jan. 14, 2026). "Banned"

and "will not be processed" are permanent, final determinations. They describe exactly the kind of "consummation of the agency's decisionmaking process" that satisfies the first prong of *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)—agency action that is not "merely tentative or interlocutory."

The government has told this Court that the policy memoranda are not final because operational guidance is forthcoming. The government has simultaneously told the public that certain applications are "banned" and "will not be processed." These positions cannot be reconciled. If the holds are interlocutory—awaiting further guidance—they are not bans. If they are bans, they are final. The spokesman's statement confirms the latter.

This Court identified precisely this concern at the February 13 hearing: "[A]n agency can't just say sort of indefinitely that we're taking a temporary action, but then it goes on for years and it never actually makes a final regulation." *Transcript of Motion Hearing* (ECF No. 41) at 10-11. The spokesman's statement—months after the hold was imposed, after both 90-day deadlines have now passed—confirms that no final regulation is coming. The hold is the final policy.

### III. The Spokesman Statement Reveals a New and Impermissible Rationale

The spokesman statement also discloses a rationale that does not appear anywhere in the policy memoranda. The stated basis for halting OPT processing is not national security vetting. It is labor market competition:

> *"The Trump administration is reviewing every immigration benefit to protect American jobs by ensuring foreign nationals do not displace American STEM graduates. The Optional Practical Training program has become a pathway for foreign students to secure long-term employment in the U.S., undermining qualified American workers and depressing wages."*

This justification is nowhere in PM-602-0192, PM-602-0194, or PA-2025-26. Those documents cite national security concerns and the vetting deficiencies of 39 designated countries. A rationale grounded in protecting American STEM wages is categorically different from a rationale grounded in screening out terrorists.

An agency may not defend a challenged policy on grounds it did not invoke when the policy was adopted. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("an

agency's action must be upheld, if at all, on the basis articulated by the agency itself"). The spokesman's labor-competition rationale is precisely the kind of post-hoc rationalization that courts reject under arbitrary-and-capricious review. It confirms that the policy memoranda's stated national security basis was not the actual or only basis for the holds—which is further evidence that the agency failed to engage in the reasoned decisionmaking the APA requires.

The spokesman's statement also confirms the scope-creep argument. OPT is not a visa. It is a benefit tied to F-1 student status for individuals already present in the United States. The spokesman attributes the OPT ban to PP 10998, which "restricts entry and visa issuance"—but OPT is neither entry nor visa issuance. This is the precise overreach Plaintiffs have challenged throughout: the Executive using entry authority under INA § 212(f) to halt domestic adjudications for people who are already here.

## IV. The Attempt to Distinguish John Doe v. USCIS Does Not Hold

Defendants argue that the Northern District of Illinois decision in *John Doe v. USCIS* (Mar. 26, 2026) should be disregarded because the court there failed to consider (1) the Good Declaration, (2) the I-130 hold lifts for U.S. citizen petitions (Dkt. 61), and (3) the March 30 website update. None of these distinctions change the legal analysis.

**The Good Declaration.** Plaintiffs have addressed this document at length in their March 10 supplemental memorandum. The Good Declaration describes ongoing work and process improvements; it does not contain or attach the operational guidance PM-602-0192 required. The *John Doe* court's failure to consider a document that confirms guidance does not yet exist did not prejudice the government.

**The I-130 hold lifts.** The government has lifted holds on I-130 petitions filed by U.S. citizens on behalf of certain beneficiaries. This is a narrow exception covering a discrete petition type filed by U.S. citizen petitioners. It does not address the holds on the benefit categories affecting the overwhelming majority of Plaintiffs in this case: adjustment of status, naturalization, affirmative asylum, and employment authorization. Lifting one bolt from a closed gate is not evidence the gate is open. It is evidence the gate remains locked.

**The March 30 update.** As demonstrated in Section I above, the March 30 update confirms that no operational guidance has been issued. The *John Doe* court's inability to consider that document did not harm the government—the document confirms the government's failure to perform, not its compliance. The growing number of courts reaching the same conclusion as *John Doe*—including *Bowser v. Noem* (D. Mass. Feb. 27, 2026) and *Varniab v. Edlow* (N.D. Cal. Feb. 20, 2026)—reflects the consistent legal analysis that these memoranda constitute final agency action and that the blanket holds are likely unlawful. The government has yet to prevail on the merits in any court to have considered these questions since the PI motion was briefed.

## V.  Conclusion

The new materials filed and disclosed by the government since the March 10 supplemental briefing close, rather than open, the remaining question before this Court. The 90-day deadlines in both memoranda have passed without the operational guidance they promised. The government's own public statements describe the holds as permanent bans. A new rationale—protecting American STEM wages—has emerged that does not appear in any challenged policy document. And the narrow exception carved out for U.S. citizen I-130 petitions only underscores the breadth and permanence of the holds that remain.

For the reasons set forth in Plaintiffs' opening memorandum, reply brief, and supplemental submissions, the preliminary injunction should be granted.

**RESPECTFULLY SUBMITTED**
April 2, 2026

Stefanie Fisher-Pinkert
BBO#676653
655 Centre St, Box 300151
Jamaica Plain, MA 02130
(C) 203-952-1809
(E) stef@sfpbriefing.com

***/s/ James O. Hacking, III***
James O. Hacking, III
MO Bar # 46728
*Admitted Pro Hac Vice*
Hacking Immigration Law, LLC

-6-

10121 Manchester Road, Suite A
St. Louis, MO 63122
(O) 314.961.8200
(F) 314.961.8201
(E) jim@hackingimmigrationlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2026, a true and correct copy of the foregoing was served on Defendants by filing the document through the Court's CM/ECF system.

*/s/ James O. Hacking, III*
James O. Hacking, III