**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

AKMURAT O. DOE,  et al,

   Plaintiffs,

v.

DONALD J. TRUMP, et al.,

   Defendants.

Case No.   1:25-cv-13946-JEK

## PLAINTIFFS' SIXTH NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs respectfully notify the Court of Judge George L. Russell's decision on April 24th, 2026, in *Mohammadreza Saghafi v. Joseph B. Edlow*, No. 8:26-cv-00100-GLR (D. Md. Jan. 11, 2026) (attached as Exhibit A). In *Saghafi*, the court granted in part and denied in part the plaintiff's motion for a preliminary injunction. The court also enjoined the application of Policy Memoranda PM-602-0192 and PM-602-0194, which are challenged here. The court ordered USCIS to resume adjudication of the pending Form I-485 applications for adjustment of status and to file a status report within 90 days detailing the current status of the plaintiffs' applications, including any changes since the adjudicatory hold was lifted or, if no changes had occurred, an explanation for the lack of progress.

The *Saghafi* case is especially noteworthy as a comprehensive 39-page order that addresses all the principal legal issues currently before this Court. The decision represents the sixth fifth federal district court to enjoin the Policy Memoranda, joining prior orders from this District (*Bowser*), the Northern District of California (*Varniab*) and (*Behdin*), the Northern District of Illinois (*John Doe v. USCIS*), and the pending stay order in this District (*Doe v. Trump, No. 1:26-cv-11382-ADB*).

**Jurisdiction**

The court rejected Defendants' argument that 8 U.S.C. § 1252(a)(2)(B)(ii) strips jurisdiction, holding that Plaintiffs do not challenge any discretionary decision to grant or deny adjustment of status, but rather challenge USCIS's refusal to adjudicate applications at all. The court distinguished visa retrogression cases, explaining that those cases involve temporary pauses tied to a defined "condition

precedent," whereas the Policy Memoranda impose an "indefinite" adjudicatory hold with "no end point" and no regulatory basis.

The court further held that neither 8 U.S.C. § 1255(a) nor 8 C.F.R. § 103.2(b)(18) authorizes USCIS to suspend adjudication indefinitely. Although § 1255(a) confers discretion over the ultimate disposition of an application, the governing regulations impose a mandatory duty to render a decision. The court also clarified that § 103.2(b)(18) permits only limited, procedurally constrained withholding of adjudication—not a blanket, indefinite halt.

**Final Agency Action**

Applying *Bennett v. Spear*, the court found that the Policy Memoranda constitute final agency action. On the first prong, the court held that the Memoranda are not "interim" merely because they could be revised; rather, they impose a binding, indefinite moratorium that marks the consummation of agency decisionmaking. On the second prong, the court emphasized the "very serious consequences" flowing from the hold, including loss of work authorization, inability to travel, and disruption of professional and personal lives.

The court that the adjudicatory hold inflicts ongoing, concrete harm on plaintiffs and that continued, partial processing offers no meaningful relief so long as final decisions remain indefinitely withheld. Taking a pragmatic approach, the court found the policy is not merely tentative or interlocutory but instead has direct legal and practical consequences. Accordingly, the pause constitutes final agency action, establishing the court's jurisdiction over plaintiffs' APA claims.

**APA Claims**

The court held that Plaintiffs are likely to succeed on their APA claim because the Policy Memoranda are arbitrary and capricious. USCIS failed to offer a reasoned explanation for disregarding Plaintiffs' serious reliance interests, relying instead on conclusory assertions that it had "considered" competing concerns. The court found no evidence the agency meaningfully weighed those interests or accounted for the significant professional, educational, and personal harms imposed. Judge Russell

further faulted USCIS for ignoring reasonable alternatives and adopting a policy that extends well beyond the underlying proclamations, sweeping in individuals already lawfully present in the United States.

**Irreparable Harm**

The court found that Plaintiffs face multiple forms of irreparable harm, including loss of work authorization, inability to pursue professional opportunities, family separation, and the inability to make basic life decisions due to prolonged uncertainty. Critically, the court reaffirmed that loss of the legal ability to work constitutes irreparable harm, as it affects Plaintiffs' fundamental ability to earn a livelihood and remain self-sufficient. The court also recognized that delays causing loss of career opportunities, disruption of research and education, and inability to travel to see family members independently satisfy the irreparable harm requirement.

In the matter before this court, Plaintiffs have experienced the exact same irreparable harms identified by the court in *Saghafi*. The adjudicatory hold has resulted in loss of work authorization and the resulting inability to fully pursue professional opportunities, along with significant disruption to careers, research, and education. Plaintiffs have also faced prolonged uncertainty that have separated families and prevented them from making basic life decisions. Here, Plaintiffs are left in a devastating state of legal and practical limbo, enduring the continued erosion of career opportunities, stability, and family unity—harms that cannot be undone by any later relief.

**Balance of Equities and Public Interest**

The court concluded that both the balance of equities and the public interest weigh decisively in Plaintiffs' favor. It rejected Defendants' generalized invocation of national security, noting the absence of any individualized evidence that Plaintiffs pose a risk. The court further emphasized Plaintiffs' substantial contributions to the United States, including in the scientific and medical fields. The court further concluded that enjoining the adjudicatory hold would impose only minimal burdens on USCIS, as the agency already possesses mechanisms to adjudicate applications in the ordinary course. Similarly, Plaintiffs in this matter have made substantial contributions to the United States, including through their work in the scientific, medical, and other critical sectors.

**The Remedy**

Judge Russell emphasized that in *Saghafi*, the status quo consisted of the ordinary adjudication of Form I-485 applications, even if at times delayed, without the imposition of an adjudicatory hold. Judge Russel thus granted targeted relief, enjoining application of the Policy Memoranda and ordering USCIS to resume adjudication of Plaintiffs' applications within a reasonable time while preserving agency discretion over ultimate outcomes.

This decision adds to an already overwhelming consensus. With this ruling, at least six federal district courts have now found the challenged Policy Memoranda likely unlawful, consistently rejecting Defendants' jurisdictional and merits arguments. No court has ruled in Defendants' favor. The April 24 decision provides one of the most detailed applications of the *Winter* framework to date and further confirms the correctness of Plaintiffs' legal position in this case.

**RESPECTFULLY SUBMITTED**
April 29, 2026

**/s/ Stefanie Fisher-Pinkert**
Stefanie Fisher-Pinkert
BBO#676653
655 Centre St, Box 300151
Jamaica Plain, MA 02130
(C) 203-952-1809
(E) stef@sfpbriefing.com

**/s/ James O. Hacking, III**
James O. Hacking, III
MO Bar # 46728
*Admitted Pro Hac Vice*
Hacking Immigration Law, LLC
10121 Manchester Road, Suite A
St. Louis, MO 63122
(O) 314.961.8200
(F) 314.961.8201
(E) jim@hackingimmigrationlaw.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2026, a true and correct copy of the foregoing was served on Defendants by filing the document through the Court's CM/ECF system.

*/s/ James O. Hacking, III*
James O. Hacking, III

5