IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MOHAMMADREZA SAGHAFI,                 *

    Plaintiffs,                          *

v.                                    *      Civil Action No. GLR-26-100

JOSEPH B. EDLOW,                      *

    Defendant.                           *

***

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Plaintiffs Mohammadreza Saghafi, Mehrdad Shamskilani, Boshra Rezvanian, A. S., Farid Alinejad Almachovan, Sarina Faizy, Shaheen Pouya, Sadaf Jamalzadeh, Alozai Javed, Saba Tabatabaee, Reza Alimohammadi, Arezou Rahimi, Amir Ahmadi Zahrani, Sarah Binas, Maysam Qadimi Rabbani, Raha Rahmani, Mehrdad Zandigohar, Shahrokh Paktinat, Tarkan Ghaseminejad Dehkordi, Kayhan Behdin, Efrem Brhane, Pegah Jandaghimeibodi, Mehrdad Khezri Pour, Mina Mahmoodabadi, Milad Pooladsanj, Mehrnaz Motamed, Reynaldo Aaron Marvez Blanco, Agustina Rovira, Shahram ArsangJang, Asiyeh Bakhtiyarkahriz, O.A., D.A., Mohammadkazem Meidani, Seyedeh Parshin Shojaee, Mohammad Dehghan Rouzi, Sanaz Nazari, Negin Alizadehvandchali, Faridoon Mohammadi, Arman Adibi, Sabiha Tajdari, Mohsen Sadeghi, Bahareh Rahimi, Mohsen Faghihinezhad, Tahere Shahidipour, Seydall Naseri, Morteza Salimi, Sahar Jomehpour, Sina Dehestani, Mostafa Rahgouy, Mehnaz Tabassum, Behrad Moniri, Sara Hoseingholizade, Yalda Yazdani, Azin Vakilpour, Eshagh Mohammadyari, Maryam Shayan, Bahar Bakhshi, Arsh Haj Mohamad Ebrahim

Ketabforoush, Rafi Zahedi, MohammadReza Alivand, S.A., Hosna Rastegarpouyani, Mohammad Rahiminejat, Fistm Emhaye Teklay, Mohamad Zamini, Saba Aslani, Mohammad Khosravikia, Nima Alamatsaz, Alexander Saavedra Melo, Marjan Azin, Nasrin Haghighinajafabadi, Mohammad Eskandari, Sahar Rostami, Saman Rahmati, Sina Shariati Samani, Hasan Hadid, Fatima Abdou, Fatemeh Mottaghian, Mladen Djekic, Alireza Salemi, Vahid Barzegar, Poorya Mirkhosravi, and Nazila Rahimi's Motion for Preliminary Injunction (ECF No. 3).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Motion.

## I.   BACKGROUND

Eighty-three Plaintiffs seeking lawful permanent residence status in the United States have filed suit against Joseph B. Edlow in his official capacity as the Director of the United States Citizenship and Immigration Services ("USCIS"). (Compl. at 8, 11–12, ECF No. 1).[2] Plaintiffs challenge two USCIS Policy Memoranda that have placed an adjudicatory hold on their applications for lawful permanent residence status. (Id. at 11–12). They now seek a preliminary injunction to enjoin Edlow from applying the hold to

---

[1] Plaintiffs also filed an Ex Parte Motion for Discovery on January 12, 2026, which was docketed twice, inadvertently. (ECF Nos. 4, 5). Plaintiffs have since withdrawn that Motion. (Feb. 23, 2026 Notice at 1–2, ECF No. 16). Defendant Joseph B. Edlow also filed a Motion for Leave to File Excess Pages with his Opposition to Plaintiffs' Motion for Preliminary Injunction. (ECF No. 14). Because Plaintiffs take no position on this request, and Edlow seeks to exceed the page limit by only six pages, the Court will grant the Motion. (Mot. Leave File Excess Pages at 1–2, ECF No. 14).

[2] Unless otherwise noted, citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

their applications for lawful permanent residence and to compel USCIS to adjudicate their

pending applications within thirty days. (Mot. PI at 36–37, ECF No. 3).

**A.      Statutory and Regulatory Framework**

The Immigration and Nationality Act ("INA") allows certain non-citizens to apply

for immigrant visas or lawful permanent residence status through various avenues,

including employment-based petitions (Form I-140), family-based petitions (Form I-130),

asylum petitions (Form I-589), and certain "special immigrant" petitions (Form I-360). 8

U.S.C. §§ 1151(a)(1), (2); 8 U.S.C. § 1159(b); 8 C.F.R. § 204.1(a); 8 C.F.R. § 204.5(a); 8

C.F.R. § 1208.3(a)(1). Non-citizens with one of the above petitions pending or approved

(depending on the type of petition) can apply for lawful permanent residence using Form

I-485, Application to Register for Permanent Residence or Adjust Status. See 8 U.S.C.

§ 1255(a); 8 C.F.R. §§ 245.2(a)(2)(ii)(B), (a)(3)(ii). Spouses and children of the applicant

also may apply for lawful permanent residence as derivative applicants. 8 U.S.C.

§ 1153(d). Under 8 U.S.C. § 1255(a), USCIS[3] may, in its "discretion and under such

regulations as [it] may prescribe," adjust a non-citizen's status to "lawfully admitted for

permanent residence" if (1) the non-citizen applied for an adjustment of status, (2) the non-

citizen "is eligible to receive an immigrant visa and is admissible to the United States for

---

[3] The statute gives this discretion to the Attorney General or the Secretary of Homeland Security, see 8 U.S.C. § 1255(a), but both parties refer to USCIS as the governing body in this context. (See, e.g., Mot. PI at 8–11; Opp'n Mot. PI at 4 n.1, ECF No. 15); see also 8 C.F.R. § 245.2(a)(1) ("USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 CFR 1245.2(a)(1)."). For that reason, the Court will refer to USCIS, rather than Edlow, as the entity with the relevant discretionary authority throughout this Opinion.

permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).

After an applicant submits a Form I-485, any required evidence, and the applicable fees, USCIS will schedule a biometrics services appointment. (Compl. ¶ 103); see also Dep't Homeland Sec., USCIS, Instructions for Application to Register Permanent Residence or Adjust Status 4, https://www.uscis.gov/sites/default/files/document/forms/i-485instr.pdf (last visited Apr. 23, 2026) [hereinafter USCIS Instructions].[4] There, the applicant must provide biometrics data, including fingerprints, a photograph, and a signature, so that USCIS can verify their identity and conduct background checks. (Compl. ¶ 103); USCIS Instructions at 4. USCIS also may request additional evidence or information and "may schedule an interview to further evaluate the applicant's eligibility for adjustment of status." (Compl. ¶¶ 104–06); USCIS Instructions at 16. At the conclusion of this process, USCIS will notify the applicant of its decision and, "if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2(a)(5)(i); USCIS Instructions at 16; (Compl. ¶¶ 108–09).

On June 4, 2025, President Trump issued Presidential Proclamation 10949, which, based on a report from the Secretary of State and the Assistant to the President for Homeland Security, identified nineteen "Countries of Identified Concern" from which the entry of non-citizens into the U.S. would be fully or partially suspended. Proclamation No. 10949, 90 Fed.Reg. 24497, 24498–502 (June 4, 2025). On December 2, 2025, USCIS

---

[4] Courts "routinely take judicial notice of information contained on state and federal government websites." United States v. Garcia, 855 F.3d 615, 621 (4th Cir. 2017).

issued Policy Memorandum PM-602-0192, which "[p]lace[d] a hold on pending benefit requests for aliens from countries listed" in Proclamation 10949. (PM-602-0192 at 1, ECF No. 1-1 (footnote omitted)). President Trump then issued a second Proclamation on December 16, 2025, that expanded the list to thirty-nine Countries of Identified Concern and the Palestinian Authority. Proclamation No. 10998, 90 Fed.Reg. 59717, 59722–26 (Dec. 16, 2025). USCIS responded by issuing another Policy Memorandum, PM-602-0194, on January 1, 2026, which extends the adjudicatory hold to benefit applications for non-citizens from the countries listed in Proclamation 10998. (PM-602-0194 at 1, ECF No. 1-2). In a footnote, PM-602-0194 explains that the "'hold' allows a case to proceed through processing" but prevents any "final adjudication . . . , such as an approval, denial, or dismissal." (Id. at 1 n.2).

"The length of this hold is unclear at best . . . ." Bowser v. Noem, No. 26-CV-10382-AK, 2026 WL 555624, at *2 (D.Mass. Feb. 27, 2026). Both Policy Memoranda state that "[t]his hold will remain in effect until lifted or modified by the USCIS Director through a subsequent memorandum . . . ." (PM-602-0192 at 2–3; PM-602-0194 at 3). But they also state that within ninety days of each Policy Memorandum's issuance, "USCIS will prioritize a list for review, interview, re-interview, and referral to [Immigration and Customs Enforcement ("ICE")] and other law enforcement agencies as appropriate, and, in consultation with the Office of Policy and Strategy and the Fraud Detection and National Security Directorate, issue operational guidance." (PM-602-0192 at 3; PM-602-0194 at 5). Neither Memorandum provides any further guidance as to what will happen with the "list" or "the nature of any forthcoming operational guidance." Bowser, 2026 WL 555624, at *2.

5

**B.      The Plaintiffs**

Plaintiffs are eighty-three immigrants seeking lawful permanent residence status. (Compl. ¶¶ 16–98). Fifty-eight Plaintiffs have filed Forms I-485 based on their approved or pending employment-based, family-based, asylum, or special immigrant petitions. (Id. ¶¶ 16, 19–21, 23–24, 26, 28, 30, 32–33, 35–38, 40, 42, 44, 48, 50–54, 56–58, 60–61, 63–64, 66, 68–69, 71–75, 77, 79–86, 88–93, 95–98). Twenty-five Plaintiffs are spouses or children of the fifty-eight Plaintiffs and have filed Forms I-485 based on their derivative status. (Id. ¶¶ 17–18, 22, 25, 27, 29, 31, 34, 39, 41, 43, 45–47, 49, 55, 59, 62, 65, 67, 70, 76, 78, 87, 94). All but three Plaintiffs are citizens of Afghanistan, Eritrea, Iran, Syria, or Venezuela—all Countries of Identified Concern under Proclamation 10998. (Id. ¶¶ 2, 16–98); Proclamation No. 10998, at 59722–22. The three remaining Plaintiffs are from countries not listed in Proclamation 10998 (Argentina, Bangladesh, and Canada), but their derivative applications for lawful permanent residence are on hold because their spouses—the primary applicants—are from Countries of Identified Concern. (Compl. at 13 n.4; id. ¶¶ 43, 65, 94).

Plaintiffs filed their applications at varied times, with the earliest filed approximately three years and three months before the filing of the Complaint and the latest filed less than two weeks before the filing of the Complaint. (Pls. Decls. at 4, 28, ECF No. 3-2). As a result, Plaintiffs' applications are in various stages of processing, with some having completed their biometrics appointments and interviews and others having received no more than a notice that USCIS received their applications. (See generally USCIS Online Case Statuses, ECF No. 1-4).

C.    **Procedural History**

Plaintiffs filed a Complaint in this Court on January 11, 2026, alleging seven causes

of action: Plaintiffs' right to relief under the Mandamus Act, 28 U.S.C. § 1361 (Count

One); unreasonable delay and unlawful withholding under the Administrative Procedure

Act ("APA"), 5 U.S.C. §§ 706, et seq. (Count Two); arbitrary and capricious agency action

under the APA (Count Three); agency action without observance of legally required

procedures under the APA (Count Four); violation of the non-discrimination provision of

the INA, 8 U.S.C. § 1152(a)(1)(A) (Count Five); violation of the Equal Protection Clause

of the Fifth Amendment (Count Six); and ultra vires (Count Seven). (Compl. ¶¶ 144–97).

Plaintiffs seek injunctive and declaratory relief as well as a writ of mandamus and

reasonable costs and attorneys' fees. (Id. at 52–53).

On January 12, 2026, Plaintiffs filed the instant Motion for Preliminary Injunction.

(ECF Nos. 3). Edlow filed an Opposition on February 10, 2026, (ECF No. 15), and

Plaintiffs filed a Reply on February 24, 2026, (ECF No. 17).

## II.    DISCUSSION

A.    **Standard of Review**

A preliminary injunction "is an 'extraordinary and drastic remedy.'" See Munaf v.

Geren, 553 U.S. 674, 689–90 (2008) (quoting 11A Charles Alan Wright, Arthur R. Miller,

& Mary Kay Kane, Federal Practice & Procedure § 2948, at 129 (2d ed. 1995)). A party

seeking a preliminary injunction must establish the following elements: (1) a likelihood of

success on the merits; (2) a likelihood of suffering irreparable harm in the absence of

preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) that the

7

injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Frazier v. Prince George's Cnty., 86 F.4th 537, 543 (4th Cir. 2023). The final two factors merge when the Government opposes the motion for injunctive relief. Miranda v. Garland, 34 F.4th 338, 365 (4th Cir. 2022) (quoting Nken v. Holder, 556 U.S. 418, 435 (2009)).

**B.    Analysis**

Edlow contends that a preliminary injunction is not warranted here because the Court lacks jurisdiction over Plaintiffs' claims and Plaintiffs have not satisfied any of the four Winter factors as to any of their seven claims. (Opp'n Mot. PI ["Opp'n"] at 11–38, ECF No. 15). The Court will first address Edlow's jurisdictional arguments and then turn to each of the Winter factors.

**1.    Jurisdiction**

**a.    8 U.S.C. § 1252(a)(2)(B)(ii)**

Edlow argues first that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes this Court from reviewing USCIS's discretionary decision to pause adjudications on all Forms I-485 filed by applicants from the Countries of Identified Concern. (Opp'n at 11–17). Under 8 U.S.C. § 1252(a)(2)(B)(ii), courts do not have jurisdiction to review:

> any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

Id. Edlow is correct that this subsection prohibits judicial review of USCIS's decision to grant or deny a non-citizen's application for lawful permanent status, (Opp'n at 12), as 8 U.S.C. § 1255(a) states explicitly that such a decision is within USCIS's discretion, see id. (providing that USCIS may, in its "discretion and under such regulations as [it] may prescribe," adjust a non-citizen's status to "lawfully admitted for permanent residence"). Plaintiffs, however, do not seek review of USCIS's ultimate decision on their Forms I-485; they seek review of USCIS's decision not to adjudicate their applications at all. (Pls.' Reply Supp. Mot. PI ["Reply"] at 3–4, ECF No. 17).

On this point, Edlow turns to visa retrogression cases in which multiple United States Courts of Appeals have held that 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of USCIS's decision to hold adjustment of status applications in abeyance until visa numbers become available. (Opp'n at 13–16 (citing Kale v. Alfonso-Royals, 139 F.4th 329, 335 (4th Cir. 2025); Geda v. USCIS, 126 F.4th 835, 842 (3d Cir. 2024); Cheejati v. Blinken, 106 F.4th 388, 394 (5th Cir. 2024), cert. denied, 145 S.Ct. 1126 (2025); Thigulla v. Jaddou, 94 F.4th 770, 777 (8th Cir. 2024); Kanapuram v. Dir., U.S. Citizenship & Immigr. Servs., 131 F.4th 1306, 1307 (11th Cir. 2025)). Visa retrogression, however, "stands on a different factual and legal footing than the adjudication hold implemented under" the Policy Memoranda at issue here. Varniab v. Edlow, No. 25-CV-10602-SVK, 2026 WL 485490, at *7 (N.D.Cal. Feb. 20, 2026).

In the visa retrogression context, applications for adjustment of status are held in abeyance until a "condition precedent"—availability of visa numbers—is satisfied. Id. Indeed, the regulation governing applications for adjustment of status mandates that such

9

applications "shall not be approved until an immigrant visa number has been allocated by the Department of State." 8 C.F.R. § 245.2(a)(5)(ii) (emphasis added). The adjudicatory hold at issue here, on the other hand, is indefinite, with no specific condition precedent to be satisfied. (See PM-602-0192 at 2–3 ("This hold will remain in effect until lifted by the USCIS Director through a subsequent memorandum."); PM-602-0194 at 3 (same)); see also Varniab, 2026 WL 485490, at *7 ("Defendants have not identified the 'condition precedent' for the PM-0192 adjudication hold to be lifted, and no end point is apparent from the Policy Memorandum itself."). And Edlow has identified no regulation that authorizes the Policy Memoranda's categorical and indefinite adjudicatory hold. "Thus, [Edlow] cannot successfully extrapolate from the visa retrogression cases a general principle that USCIS has unfettered discretion to impose adjudicatory holds." Varniab, 2026 WL 485490, at *8; see id. at *7–8 (holding that the adjudicatory hold is unlike visa retrogression due to the lack of an identified end point or condition precedent and the lack of regulatory support); Bowser, 2026 WL 555624, at *4 (same). Section 1252(a)(2)(B)(ii), therefore, does not divest this Court of jurisdiction over Plaintiffs' claims.

### b.    8 U.S.C. § 1255(a) and 8 C.F.R. § 103.2(b)(18)

Next, Edlow points to the language of § 1255(a), arguing that "§ 1255(a)'s grant of discretion includes not only the ultimate decision as it relates to an I-485, but also the discretion for USCIS to create the processes and systems by which such applications are considered." (Opp'n at 16). Although § 1255(a) gives USCIS authority to grant or deny adjustment of status applications in its "discretion and under such regulations as [it] may prescribe," one of § 1255's corresponding regulations, 8 C.F.R. § 245.2(a)(5)(i), requires

that "[t]he applicant <u>shall</u> be notified of the decision of the director and, if the application is denied, the reasons for the denial." <u>Id.</u> (emphasis added). "A regulation can mandate action even if a statute does not." <u>Lovo v. Miller</u>, 107 F.4th 199, 212 (4th Cir. 2024). And based on § 245.2(a)(5)(i)'s mandatory notification requirement, this Court has held that "the duty to adjudicate a Form I-485 is non-discretionary." <u>Joshua v. Jaddou</u>, No. JRR-24-00667, 2025 WL 449001, at *7 (D.Md. Feb. 10, 2025) (quoting <u>Mokuolu v. Mayorkas</u>, No. RDB-24-817, 2024 WL 4783542, at *5 (D.Md. Oct. 1, 2024)); <u>see also</u> <u>Varniab</u>, 2026 WL 485490, at *10 (pointing to 8 C.F.R. § 245.2(a)(5)(i) and other relevant statutes and regulations to find that "USCIS has a duty to decide I-485 applications" (quoting <u>Mugomoke v. Curda</u>, No. 2:10-CV-02166 KJM, 2012 WL 113800, at *5 (E.D.Cal. Jan. 13, 2012))); <u>Bowser</u>, 2026 WL 555624, at *4 ("[W]hile it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all." (quoting <u>Tang v. Chertoff</u>, 493 F.Supp.2d 148, 154 (D.Mass. June 26, 2007))).

Edlow also briefly refers to 8 C.F.R. § 103.2(b)(18), which authorizes USCIS to:

> withhold[] adjudication of a visa petition or other application if USCIS determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the benefit request, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the benefit request would prejudice the ongoing investigation.

<u>Id.</u>; (<u>see</u> Opp'n at 5, 12, 15–16). Edlow, however, has provided no evidence that USCIS has commenced the type of eligibility investigation described in § 103.2(b)(18) for any Plaintiff in this action, nor does he dispute that Plaintiffs' applications are on hold due to

11

the Policy Memoranda. (See generally Opp'n). When read alone and in conjunction with other relevant statutes, it is clear that § 103.2(b)(18) "'is not a blanket authority to indefinitely withhold adjudication for adjustment of status. Section 103.2(b)(18) allows for the withholding of adjudication, for specified intervals, upon compliance with specific procedural requirements,' and '[a]bsent such compliance, judicial review is not precluded.'" Varniab, 2026 WL 485490, at *10 (quoting Dong v. Chertoff, 513 F.Supp.2d 1158, 1168 (N.D.Cal. 2007)); see also 5 U.S.C. § 555(b) (requiring agencies to conclude matters presented to it "within a reasonable time"); 8 C.F.R. § 245.2(a)(5)(i) (stating that a Form I-485 applicant "shall be notified of the decision of the director and, if the application is denied, the reasons for denial").

At bottom, neither the discretionary language in § 1255(a) nor the limited withholding authority in § 103.2(b)(18) divests this Court of jurisdiction to review USCIS's decision to implement the adjudicatory hold.

### c.    APA

Edlow argues next that the Court lacks jurisdiction to address Plaintiffs' APA claims. (Opp'n at 17). The APA permits judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, but it "does not permit judicial review of a challenge to 'agency action [that] is committed to agency discretion by law,'" Lovo, 107 F.4th at 210 (quoting 5 U.S.C. § 701(a)(2)). Under § 706, the Court "may only compel 'agency action' that has been 'unlawfully withheld or unreasonably delayed.'" Gonzalez v. Cuccinelli, 985 F.3d 357, 365 (4th Cir. 2021) (quoting 5 U.S.C. § 706(1)). An unreasonable delay claim "can

proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Lovo, 107 F.4th at 210 (quoting Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004)). "But where an agency is not required to do something, [courts] cannot compel the agency to act—let alone to act faster." Gonzalez, 985 F.3d at 366.

Here, Edlow contends that the Court does not have jurisdiction over Plaintiffs' APA claims because the Policy Memoranda are not "final agency actions," and USCIS has not failed to take a "discrete agency action" that it is required to take. (Opp'n at 17–21). As to the second argument, the Court has determined already that USCIS has a non-discretionary duty to adjudicate applications for adjustment of status. (See Subsections II.B.1.a–b above). The question, then, is whether the Policy Memoranda are "final agency actions." For the reasons below, the Court finds that they are.

The Supreme Court outlined the test for determining whether an action constitutes a "final agency action" under the APA in Bennett v. Spear, 520 U.S. 154 (1997). "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Id. at 177–78 (first quoting Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948); and then quoting Port of Bos. Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970)). "Notably, courts take a "'pragmatic" approach . . . to finality.'" Am. Fed'n of State, Cnty. & Mun. Emps., AFL-

CIO v. Soc. Sec. Admin., 771 F.Supp.3d 717, 786 (D.Md. 2025) (quoting U.S. Army Corps of Engineers v. Hawkes Co., 578 U.S. 590, 599 (2016)).

As to the first prong, Edlow argues that the Policy Memoranda "specifically state that they are temporary guidance," that more guidance "will be forthcoming," and that the Memoranda mark no more than a "midstream pause in an ongoing administrative process . . . ." (Opp'n at 18 (quoting Kewayfati v. Bondi, 165 F.4th 342, 346 (5th Cir. 2026))). Indeed, the Policy Memoranda contain language indicating that the adjudicatory hold is subject to change at the USCIS Director's discretion, (see PM-602-0192 at 2–3; PM-602-0194 at 3), but "[j]ust because the policy is subject to change does not mean it is interim," Bowser, 2026 WL 555624, at *5. The Policy Memoranda also state that USCIS will "prioritize a list for review, interview, and re-interview, . . . . and issue operational guidance" within ninety days, (PM-602-0192 at 3; PM-602-0194 at 5), but "[n]either Policy Memoranda explain what happens with the created list or the nature of any forthcoming operational guidance," Bowser, 2026 WL 555624, at *5. Edlow also has provided no information as to the nature of said guidance, who would provide such guidance, or whether that guidance would alter, let alone end, the adjudicatory hold. See Bowser, 2026 WL 555624, at *5; Varniab, 2026 WL 485490, at *15, 17.

The possibility of revision—such as through "operational guidance" or "a subsequent memorandum," (PM-602-0192 at 3; PM-602-0194 at 3, 5)—"is a common characteristic of agency action[] and does not make an otherwise definitive decision nonfinal," U.S. Army Corps of Engineers, 578 U.S. at 598. "[A] number of cases support the proposition that significant pauses and blanket moratoria" like the categorical and

indefinite adjudicatory hold at issue here "are final agency actions that cannot be exempted from judicial review merely by being characterized as intermediate." Massachusetts v. Trump, 790 F.Supp.3d 8, 26 (D.Mass. 2025) (collecting cases); Bowser, 2026 WL 555624, at *6 ("As [the adjudicatory hold] appears to be an indefinite moratorium on applications for immigration benefits from these 39 countries, . . . the first prong of Bennett is satisfied."); see, e.g., Texas v. United States, 524 F.Supp.3d 598, 642–43 (S.D.Tex. 2021) (holding that Department of Homeland Security's ("DHS") memorandum implementing a 100-day pause on the removal of non-citizens with final removal orders constituted final agency action even though "the Secretary retain[ed] the discretion to change or abandon this nonenforcement policy at any time" because "'discretion' to reverse course, by itself, is insufficient to convert an action that is final to one that is nonfinal"). Thus, like other courts that have addressed the finality of these Policy Memoranda, the Court finds that the Memoranda are not "of a merely tentative or interlocutory nature," despite the ninety-day guidance plan and Edlow's ability to modify the Memoranda. Bennett, 520 U.S. at 177–78; see Bowser, 2026 WL 555624, at *6; Varniab, 2026 WL 485490, at *17; (Mar. 26, 2026 Order, Doe v. U.S. Citizenship & Immigr. Servs., No. 1:26-cv-02389 (N.D.Ill. Mar. 26, 2026) (ECF No. 33) ["Doe v. USCIS Order"] at 6, ECF No. 25-2). The first prong of Bennett, therefore, is satisfied.

As to the second prong, Edlow contends that "the Policy Memorandums do not determine any noncitizens' rights or obligations, nor 'upend' the normal vetting process, but allow an application to continue to move forward until it is ready for a decision, with only the decision being deferred while the agency develops enhanced security protocols."

15

(Opp'n at 19). The continued processing of Forms I-485, however, does not negate or diminish "the very serious consequences that will result for [Plaintiffs] and others like [them] as this indefinite hold remains in place." Bowser, 2026 WL 555624, at *6. As discussed below, the adjudicatory hold has caused one Plaintiff to lose his ability to work legally in the U.S., and other Plaintiffs face the same impending loss of employment. (See Pls. Decls. at 16, 32, 50, 87). The hold also restricts or eliminates many Plaintiffs' ability to pursue other employment opportunities due to status requirements and the uncertainty created by this hold, barring them from advancing professionally. (See id. at 4, 13–14, 16, 36, 44, 54–55, 87–88, 90, 96–97, 104).

"Courts have regularly determined that [the second prong of the finality test] is satisfied when an indefinite pause is imposed by an agency." New York v. Trump, 811 F.Supp.3d 215, 234 (D.Mass. 2025); see id. at 227, 234 (collecting cases and holding that sixty-day pause on issuance of wind energy authorizations pending assessment of federal wind leasing and permitting practices was final agency action); see also Doe v. Trump, 288 F.Supp.3d 1045, 1058, 1070 (W.D.Wash. 2017) (holding that agency memorandum that suspended entry of refugees from certain countries for at least ninety days was final agency action because "whether the Agency Memo produces a 'suspension' or an indefinite delay, the Agency Memo has significant real-world impacts on Plaintiffs' various situations"). "[E]ven short delays can have cascading effects" on I-485 applicants. Doe, 288 F.Supp.3d at 1070. Indeed, for many Plaintiffs with careers in scientific or medical research, the barriers to advancement that this adjudicatory hold has created can have lasting negative effects on their research, career trajectory, and standing

in their field. (See Pls. Decls. at 4, 13–14, 36, 44, 54, 87–88, 90, 96, 104). Consequently, "it does Plaintiffs little practical good if some processing of their applications continues" when USCIS has placed the final decision on hold indefinitely. Varniab, 2026 WL 485490, at *17. Thus, taking the "pragmatic approach" to the Bennett test, the Court finds that the Policy Memoranda's adjudicatory hold is not "of a merely tentative or interlocutory nature," and Plaintiffs have faced, and will continue to face, both practical and legal consequences as a direct result of the hold. 520 U.S. at 177–78; see also Varniab, 2026 WL 485490, at *17; Bowser, 2026 WL 555624, at *6; (Doe v. USCIS Order at 6). The Policy Memoranda, therefore, constitute final agency action, and the Court has jurisdiction over Plaintiffs' APA claims.

### d.   Mandamus Act

Finally, Edlow makes the same jurisdictional argument against Plaintiffs' mandamus claim as against their APA claims. (See Opp'n at 17 n.6). The Court, however, finds that it lacks jurisdiction to review Plaintiffs' mandamus claim for a different reason: it is duplicative of Plaintiffs' APA claims. In Count One, Plaintiffs seek a writ of mandamus because USCIS has failed to fulfill its duty to adjudicate Plaintiffs' Forms I-485 in a reasonable time. (Compl. ¶¶ 148–59). Likewise, in Count Two, Plaintiffs argue that USCIS has "unlawfully withheld or unreasonably delayed" the mandatory adjudication of their Forms I-485 in violation of the APA. (Id. ¶¶ 161–68). "Courts 'lack jurisdiction to decide claims for mandamus relief which would be duplicative of their cause of action under the APA.'" Joshua, 2025 WL 449001, at *5 (quoting Jahangiri v. Blinken, No. DKC-23-2722, 2024 WL 1656269, at *14 (D.Md. Apr. 17, 2024)). Thus, where, as here,

"Plaintiff[s] assert[] the same claim under the Mandamus Act and the APA, the [C]ourt lacks jurisdiction over the duplicative Mandamus Act claim." Id.

**2.    Likelihood of Success on the Merits**

Having determined that the Court has jurisdiction over all but one of Plaintiffs' claims, the Court will now turn to the first of the Winter factors, likelihood of success on the merits. 555 U.S. at 20. Although Plaintiffs bring seven claims against Edlow, they "need only demonstrate a likelihood of success on one cause of action." Abrego Garcia v. Noem, 777 F.Supp.3d 501, 516 (D.Md. 2025). For the reasons below, the Court finds that they have done so as to their arbitrary and capricious claim. (Compl. ¶¶ 171–74).

Section 706 of the APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency's action is "arbitrary and capricious" if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Judicial review under the arbitrary and capricious standard is "highly deferential, with a presumption in favor of finding the agency action valid," but this deference "does not reduce judicial review to a rubber stamp of agency action." Casa De

Md. v. U.S. Dep't of Homeland Sec., 924 F.3d 684, 703 (4th Cir. 2019) (quoting Friends of Back Bay v. U.S. Army Corps of Eng'rs, 681 F.3d 581, 587 (4th Cir. 2012)).

"To comply with § 706(2)(A), an agency 'must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" Id. (quoting State Farm, 463 U.S. at 43). A "basic procedural requirement[] of administrative rulemaking" is that the agency provide "adequate reasons" for its decision. Id. (quoting Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 221 (2016)). Failure to provide "enough clarity that its 'path may reasonably be discerned'" renders the agency action arbitrary and capricious. Id. (quoting Encino Motorcars, 579 U.S. at 221).

Likewise, "[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change." Encino Motorcars, 579 U.S. at 221. In such cases, "the agency must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" Id. (quoting FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009)). Additionally, "[i]n explaining its changed position, an agency must . . . be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" Id. at 221–22 (quoting Fox Television Stations, 556 U.S. at 515). The agency also must provide "a reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." Id. (quoting Fox Television Stations, 556 U.S. at 515–16).

Here, Plaintiffs argue that in issuing the Policy Memoranda, USCIS "did not acknowledge, let alone meaningfully consider, the reliance interests of Form I-485

applicants harmed by their actions." (Compl. ¶ 174; Mot. PI at 23). Pointing to the administrative records for each Policy Memorandum, Plaintiffs also argue that "USCIS' explanation for its decision [to pause the adjudication of certain Forms I-485 indefinitely] runs counter to the evidence before the agency." (Reply at 13). Edlow responds that "USCIS provided a reasoned explanation for the hold." (Opp'n at 27). Specifically, in the Policy Memoranda, USCIS said it "'considered' that the pause could result in delay to some pending applicants, but nonetheless concluded that, when weighed against the 'urgent need' to 'ensure that applicants are vetted and screened to the maximum extent possible,' any potential delay was 'necessary and appropriate.'" (Id. at 28 (quoting PM-602-0192 at 3; PM-602-0194 at 4)).

While USCIS, arguably, "display[s] awareness that it is changing position" by stating that it "considered that this direction may result in delay to the adjudication of some pending applications," (PM-602-0192 at 3; PM-602-0194 at 4), USCIS provides no "reasoned explanation" for disregarding Plaintiffs' "serious reliance interests" in prior I-485 adjudication policies, Encino Motorcars, 579 U.S. at 221–22 (quoting Fox Television Stations, 556 U.S. at 515). The Policy Memoranda's conclusory statements that USCIS "considered" the negative consequences of the adjudicatory hold and "weighed" the competing interests do not constitute a "reasoned explanation" where USCIS, neither in the Policy Memoranda nor the corresponding administrative records, explained how it weighed the competing interests or how it concluded that the burdens imposed by the adjudicatory hold were "necessary and appropriate." (PM-602-0192 at 3; PM-602-0194 at 4; see generally Admin. R. PM-602-0192, ECF No. 16-1; Admin. R. PM-602-0194, ECF

No. 16-2). In short, USCIS "provides no indication that [it] actually considered the consequence of indefinitely delaying final adjudication of pending applications." Varniab, 2026 WL 485490, at *19; see also Bowser, 2026 WL 555624, at *8.

In this case, many Plaintiffs made career changes, business investments, and other long-term personal and professional decisions in reliance on the adjudication of their Forms I-485 in the usual course or, in some instances, in reliance on verbal approval of their application. (See, e.g., Pls. Decls. at 24–25, 40, 48, 61, 73, 79, 105). For example, Plaintiff Fatemeh Mottaghian "transitioned to employment under her I-485 employment authorization" after a USCIS officer verbally approved her and her spouse's Forms I-485 at the conclusion of their interview on September 22, 2025. (Id. at 24–25). As a result, she has "lost her underlying nonimmigrant status" and "now remains "indefinitely without underlying status through no fault of her own." (Id. at 25). Another Plaintiff, Mehrdad Khezri Pour, served as the principal investigator on a National Institutes of Health R36 Dissertation Award application that requires the recipient to have lawful permanent resident status. (Id. at 40). He submitted this application during a period in which his visa number was current and resubmitted it while his and his spouse's I-485 applications were pending, but he now remains indefinitely ineligible to receive any such award. (Id. at 40–41). Nowhere does either Policy Memorandum or their corresponding administrative records "reflect that [USCIS] considered the professional and other consequences and burdens imposed on applicants such as" Mottaghian and Khezri Pour. Varniab, 2026 WL 485490, at *19.

Edlow argues that "Plaintiffs' alleged 'reliance interests [as] Form I-485 applicants' are not based on any cognizable expectation that their I-485s would be adjudicated without additional screening or temporary withholding" because "USCIS has always had discretion in deciding whether, when, and how to adjust status or withhold adjustment." (Opp'n at 28–29). This argument misses the point. Plaintiffs have a reliance interest in the timely adjudication of their Forms I-485, as USCIS is required to adjudicate applications for immigration benefits within a reasonable time. See 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."); 8 C.F.R. § 245.2(a)(5)(i) ("The applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial."). Whether that involves additional screening and resulting delays is irrelevant—no Plaintiff seeks an exemption from any necessary additional screening. (See generally Pls. Decls.). What it does not involve is an indefinite pause on the adjudication of their applications, placing Plaintiffs in a state of limbo wherein they are unable to make long-term plans or decisions. See Bowser, 2026 WL 555624, at *8 (addressing plaintiffs' APA claim challenging the same Policy Memoranda and finding that "[t]here are a great deal of reliance interests at issue here. For example, in reliance on the timely adjudication of the application for immigration benefits, the Bowsers fundamentally organized their lives, including their marriage, employment, insurance, family planning, savings, and long-term career goals."); see also Doe v. Noem, 784 F.Supp.3d 437, 450, 465 (D.Mass. 2025) (finding that USCIS memorandum that placed administrative hold on all benefits requests submitted by non-citizens who were paroled into the U.S. under certain programs "gave no consideration of the reliance

interests of individuals already present in the United States seeking immigration benefits," and stating that "[w]hile such reliance interests of course do not necessitate the granting of any benefit, these reliance interests are sufficiently strong to necessitate that the agency acknowledge them, at a minimum, before effectively rendering individuals who lawfully entered the United States ineligible for more lasting forms of immigration relief"), appeal dismissed, No. 25-1715, 2025 WL 4666067 (1st Cir. Nov. 5, 2025).

The Policy Memoranda and administrative records also provide no indication that USCIS considered "alternative[s] . . . within the ambit of the existing [policy]" to an indefinite adjudicatory hold on all Forms I-485 filed by non-citizens from Countries of Identified Concern. Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 30 (2020) (quoting State Farm, 463 U.S. at 42). In fact, the adjudicatory hold "goes far beyond . . . the Proclamation[s] that PM-0192 [and PM-0194] purported to implement." Varniab, 2026 WL 485490, at *19. Relying on the President's authority to suspend or impose restrictions on "the entry of any aliens or of any class of aliens into the United States" when he finds that their entry "would be detrimental to the interests of the United States," 8 U.S.C. § 1182(f), Proclamations 10949 and 10998 set restrictions on the entry of non-citizens from certain Countries of Identified Concern, see Proclamation No. 10949, 90 Fed.Reg. at 24499; Proclamation No. 10998, 90 Fed.Reg. at 59719. The Policy Memoranda, on the other hand, impose an adjudicatory hold that extends to applications submitted by non-citizens who, like Plaintiffs, have already been admitted to the U.S. Yet, the Memoranda provide "no reasoned explanation, beyond conclusory statements, why such a broad hold is necessary for applicants for immigration benefits like" Plaintiffs who

have been in the U.S. for years, some for over a decade; have maintained lawful status under various programs and authorizations; and, in many cases, have contributed substantially to medical and scientific research that serves U.S. interests. Bowser, 2026 WL 555624, at *7; (see generally Pls. Decls.).

Overall, Edlow has failed to "provide a rational connection between the facts and the decision" to implement an indefinite adjudicatory hold on Plaintiffs' Forms I-485 due to their country of birth, and he has failed to "grapple with the serious reliance interests at stake based on the change in policy . . . ." Bowser, 2026 WL 555624, at *9. As such, the Court finds that Plaintiffs are likely to prevail on their arbitrary and capricious claim under the APA. See id. (finding plaintiffs likely to succeed on claim that adjudicatory hold is arbitrary and capricious); Varniab, 2026 WL 485490, at *20 (same); (Doe v. USCIS Order at 8 (same)).

### 3.    Irreparable Harm

As to the second Winter factor, Plaintiffs assert that they will face irreparable harm in the absence of a preliminary injunction. 555 U.S. at 20; (Mot. PI at 30). To satisfy this factor, Plaintiffs must demonstrate more than a mere "possibility" of harm; rather, Plaintiffs must "demonstrate that irreparable injury is likely in the absence of an injunction." Winter, 555 U.S. at 22. The harm can be "neither remote nor speculative"; it must be "actual and imminent." Does 1-26 v. Musk, 771 F.Supp.3d 637, 678 (D.Md. 2025) (quoting Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, 915 F.3d 197, 216 (4th Cir. 2019)). Additionally, harms that may be adequately compensated through monetary relief generally do not meet the "irreparable harm" standard:

> "The key word in this consideration is <u>irreparable</u>. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

<u>Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.</u>, 17 F.3d 691, 694 (4th Cir. 1994) (quoting <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974)).

Here, Plaintiffs allege five types of irreparable harms: professional harms, family separation, educational disruption, financial instability, and medical and family planning concerns. (Mot. PI at 30–34). Edlow argues that these alleged harms do not satisfy the irreparable injury standard. (Opp'n at 34–37). This Court disagrees.

### a.    Professional Harms

As to the alleged professional harms, many Plaintiffs declare that they face imminent risk of losing their authorization to work in the U.S. if the adjudicatory hold remains in place. For example, Plaintiff Mohammad Dehghan Rouzi is an essential healthcare worker with an approved Form I-140 under the National Interest Waiver category. (Pls. Decls. at 50). His work authorization lapsed in February 2026—four months after filing his Form I-485—and he cannot extend his temporary J-1 status, which expires in August 2026, due to his filing the Form I-485 (<u>Id.</u>; <u>see also</u> <u>id.</u> at 32, 48). Additionally, student-Plaintiffs like Bahareh Rahimi face the risk of not being able to secure employment after their upcoming graduations because many employers require long-term work authorization, which their F-1 student status does not provide. (<u>Id.</u> at 16; <u>see also</u> <u>id.</u> at 10–11, 101). For instance, Plaintiff Mladen Djekic's optional practical training ("OPT")

25

authorization, which "is temporary employment that is directly related to an F-1 student's major area of study,"[5] will expire in May 2026. (Id. at 24–25). "Absent adjudication, he will be forced into uncertain temporary status, exposing him to documented enforcement risks despite full compliance with immigration law." (Id. at 25).

Multiple courts have held that loss of one's legal ability to work constitutes irreparable harm. See, e.g., Bowser, 2026 WL 555624, at *9 ("[T]he harm here extends beyond ordinary economic injury. Plaintiffs would not only suffer lost wages. [Amaro Bowser] would lose the legal ability to work at all. It would implicate [her] fundamental ability to earn a livelihood, support [her] famil[y], and remain self-sufficient. [She] could not simply find another job, as [she] would be categorically barred from lawful employment. The loss of work authorization therefore constitutes irreparable harm." (quoting Miot v. Trump, No. 25-CV-02471 (ACR), 2026 WL 266413, at *36 (D.D.C. Feb. 2, 2026), cert. granted before judgment, No. 25-1084, 2026 WL 731087 (U.S. Mar. 16, 2026))); Varniab, 2026 WL 485490, at *22 (same); Doe 4 v. Lyons, 783 F.Supp.3d 1281, 1296–97 (W.D.Wash. 2025) (collecting cases and stating that "under circumstances where a plaintiff's work and lawful immigration status are interlinked, courts have held that the loss of work authorization is irreparable harm"); Casa de Md., Inc. v. Wolf, 486 F.Supp.3d 928, 937–38, 968–69 (D.Md. 2020) (finding that asylum-seekers' inability to work in U.S. while their asylum applications were pending was irreparable harm caused by new DHS

---

[5]    USCIS, Optional Practical Training (OPT) for F-1 Students, https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-opt-for-f-1-students, (last visited Apr. 24, 2026).

rule that disposed of thirty-day adjudication timeline on asylum-seekers' requests for interim employment authorization documents), order dissolved sub nom. Casa de Md., Inc. v. Mayorkas, No. PX-20-2118, 2023 WL 3547497 (D.Md. May 18, 2023). Additionally, "[t]he mere fear of immigration detention and deportation may alone constitute a sufficient irreparable injury." D.B. v. Trump, No. 2:25-CV-419, 2025 WL 1203232, at *3 (S.D.Ohio Apr. 23, 2025).

Many Plaintiffs also are forced to turn down offers or forego attempts at advancement in their careers because such opportunities require stable immigration status. Plaintiff Alireza Salemi, for example, is a Google Ph.D. Fellow and researcher in Natural Language Processing who is "regularly approached by recruiters for Research Scientist roles at leading U.S. institutions, such as Google DeepMind and DataBricks." (Pls. Decls. at 4). He is "forced to decline these high-level opportunities," however, because "[m]any of these roles require export-control clearance and long-term employment certainty . . . . As a result, [he is] effectively barred from positions for which [he is] uniquely qualified solely because of [his] unresolved immigration status." (Id.). Plaintiff Azin Vakilpour, a postdoctoral research fellow doing research on cardiovascular medicine, "has been unable to fully pursue advanced research roles, clinical training pathways, grant opportunities, and other career-advancement options that require permanent residence or stable immigration status." (Id. at 13). Vakilpour's spouse, Eshagh Mohammadyari, who is also a postdoctoral research fellow, states as well that "[t]he ongoing uncertainty . . . prevents him from applying for advanced research roles, promotions, and academic appointments that require permanent residence or long-term immigration stability." (Id. at 14). Several others face

the same stagnation in their professional trajectory. (See, e.g., id. at 16, 36, 44, 54–55, 87–88, 90, 96–97, 104).

In a similar vein, many Plaintiffs, like Salemi, Vakilpour, and Mohammadyari, are scientists or researchers whose career advancement and reputation depend in part on their participation in research studies and international conferences. (Id. at 4, 13). These Plaintiffs, however, are unable to attend international conferences because they risk abandoning their pending adjustment applications if they travel internationally. (See id. at 4, 10–12, 46, 55–56, 83). Although non-citizens with pending I-485 applications may obtain permission to travel outside the U.S. temporarily by filing a Form I-131 Application for Travel Documents, Parole Documents, and Arrival/Departure Records,[6] PM-602-0192 placed an adjudicatory hold on those applications, too. (PM-602-0192 at 1, n.4).

As with the loss of work authorization, multiple courts have found that the "loss of opportunity to pursue [one's] chosen profession[]," including by "limiting their professional opportunities," constitutes irreparable harm. Ariz. Dream Act Coal. v. Brewer, 757 F.3d 1053, 1059, 1068 (9th Cir. 2014) (quoting Enyart v. Nat'l Conf. of Bar Examiners, Inc., 630 F.3d 1153, 1165 (9th Cir. 2011)); id. at 1059, 1068 (finding likelihood of irreparable harm to plaintiffs due to defendants' policy prohibiting "DACA recipients from becoming eligible for any 'state identification, including a driver's license'" because "Plaintiffs' ability to drive is integral to their ability to work"); Giri v. Nat'l Bd. of Med.

---

[6] USCIS, While Your Green Card Application Is Pending with USCIS, https://www.uscis.gov/green-card/while-your-green-card-application-is-pending-with-uscis, (last visited Apr. 24, 2026).

Examiners, 718 F.Supp.3d 30, 44 (D.D.C. 2024) (collecting cases and stating that "[t]he loss of opportunity to pursue one's chosen profession due to alleged discrimination is widely recognized as constituting an irreparable injury"); Nio v. U.S. Dep't of Homeland Sec., 270 F.Supp.3d 49, 53–56, 62 (D.D.C. 2017) (reviewing USCIS's delay in processing naturalization applications for non-citizens who enlisted in the U.S. army under the Military Accessions Vital to the National Interest ("MAVNI") program and finding that "[a]ll eight plaintiffs are suffering irreparable harm because they are not obtaining citizenship rights and benefits, and, as a result of the legal limbo DHS Defendants have left them in pending resolution of their naturalization applications, their ability to travel and pursue professional and personal opportunities has been curtailed").

### b.    Family Separation

Alongside professional barriers, nearly every Plaintiff cites an inability to travel internationally to see family members, including ill and aging family members, while their I-485 applications are pending. (Mot. PI at 31–32; see generally Pls. Decls.). To the extent Plaintiffs were unable or afraid to travel internationally to see family before the Policy Memoranda went into effect, such harm is not attributable to the adjudicatory hold at issue here. Plaintiffs' inability to travel due to the indefinite hold on adjudications of their Forms I-485 and any Forms I-131 that, before the Policy Memoranda were issued, may have authorized such international travel, on the other hand, constitutes an irreparable injury in the form of time with family that is irretrievably lost and the resulting emotional trauma. See Varniab, 2026 WL 485490, at *23 (recognizing "inability to travel to visit family" as an irreparable harm); Bowser, 2026 WL 555624, at *9 (same); Young v. Trump, 506

29

F.Supp.3d 921, 939 (N.D.Cal. 2020) ("[F]amily separations and the resulting emotional harm can constitute irreparable hardship for purposes of a preliminary injunction."); Milligan v. Pompeo, 502 F.Supp.3d 302, 321 (D.D.C. 2020) ("Separation from family members is an important irreparable harm factor." (citation modified)); Nio, 270 F.Supp.3d at 56, 62 (finding irreparable harm where, due to hold on MAVNI naturalization applications "until all enhanced [Department of Defense] security checks are completed," "plaintiffs are forced to live in uncertainty about the legality of their immigration status, and they are prevented from ordering their day-to-day affairs or from making future plans, including travel abroad to see family members").

### c.    Educational and Family Planning Concerns

Plaintiffs also allege educational disruption and family planning concerns as irreparable harms. (Mot. PI at 32–34). These harms stem from the uncertainty that Plaintiffs feel and their inability to plan their futures. For instance, Plaintiff Dr. Mohammadreza Alivand states that "[t]he most profound impact of this prolonged uncertainty is borne by [his] daughter," a seventeen-year-old with a pending I-485 application based on her relationship to Dr. Alivand, the primary applicant. (Pls. Decls. at 54–55). As Dr. Alivand explains it, his daughter "has fully integrated into the American educational system . . . [and] has built her academic, social, and extracurricular life entirely here . . . ." (Id. at 55). "The indefinite pause," however, "places her educational future" and "her higher education prospects into uncertainty at a critical stage of her academic development," as she begins applying to college, tuition assistance, and scholarship programs. (Id.). Another Plaintiff, Nazila Rahimi, is a self-petitioner of a Form I-360

Petition for Special Immigrant status under the Violence Against Women Act as a spouse of an abusive U.S.-citizen. (Id. at 69). She is "working to rebuild [her] life after surviving domestic abuse and to become independent, educated, and self-sufficient in the United States." (Id.). She believes "[e]ducation is central to [her] ability to achieve safety, independence, and long-term stability," but she is "unable to commit to educational pathways that are required to continue and complete [her] schooling." (Id.).

A few Plaintiffs also have expressed concerns regarding their ability to have a family. Plaintiffs Dr. Nasrin Haghighinajafabadi and Mohammad Eskandari, for example, began the process of conceiving via in vitro fertilization ("IVF") in the U.S., which "requires continuity, careful planning, and uninterrupted health insurance." (Id. at 67–68). They "have embryos cryopreserved and stored in the United States, and [their] family-planning timeline is constrained by age-related considerations." (Id. at 68). Due to the nature of IVF, they may need to undergo multiple cycles of collecting and storing embryos, but "[t]he open-ended uncertainty created by this [adjudicatory] hold interferes with [their] ability to plan and maintain continuity of care for this ongoing, time-sensitive medical process and creates serious emotional strain about potential disruption." (Id.). Plaintiff Alexander Saavedra Melo and his U.S.-citizen spouse also have delayed family planning due to "fear of separation, instability, and the risk that [his] lawful presence could be abruptly terminated while [his] case remains frozen." (Id. at 1–2). He states that his wife's "biological clock is a real and pressing concern, and each passing month permanently narrows [their] opportunity to safely start a family." (Id. at 2).

31

As to both educational and family planning decisions, Plaintiffs face mounting uncertainty and inability to plan for the future responsibly. Such uncertainty and inability to plan can constitute irreparable harm. See Varniab, 2026 WL 485490, at *23 (recognizing "inability to make basic life decisions" as irreparable harm); Bowser, 2026 WL 555624, at *9 (same); Nio, 270 F.Supp.3d at 62 (finding irreparable harm where delayed adjudication of MAVNI naturalization applications "prevented [plaintiffs] from ordering their day-to-day affairs or from making future plans"); Yue v. Conseco Life Ins. Co., 282 F.R.D. 469, 484 (C.D.Cal. 2012) ("[W]ithout a preliminary injunction, class members will be forced to make a choice while [their life insurance policies] are in a legal limbo. The resulting uncertainty, stress, and inability to plan are sufficient to constitute irreparable harm.").

### d.     Financial Instability

Finally, many Plaintiffs report financial instability as a direct result of the adjudicatory hold. (Mot. PI at 33; see generally Pls. Decls.). For example, Plaintiff Sabiha Tajdari, a computer science Ph.D. student who expects to graduate soon, "faces a serious risk of being unable to secure internships/employment in her field after graduation, despite years of training." (Pls. Decls. at 10). While the adjudicatory hold is in place, "[h]er ability to work after graduation depends on time-limited student work authorization and on employers' willingness to hire under uncertain immigration conditions." (Id. at 10–11). Plaintiff Mohammadkazem Meidani's I-765 application for employment authorization has been pending for over one year, and his prior OPT work authorization has expired, "leaving him without authorization to work and without any source of income" while adjudications on Forms I-765 and I-485 are on hold. (Id. at 57).

32

"The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." TK Elevator Corp. v. Drzewiecki, No. RDB-25-0744, 2025 WL 776111, at *5 (D.Md. Mar. 11, 2025) (quoting Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017)). Thus, "'[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough' to justify a preliminary injunction." Id. (quoting Di Biase, 872 F.3d at 230). Therefore, Plaintiffs' financial distress, alone, does not constitute irreparable injury.

Plaintiffs highlight Efrem Hailu Brhane, a Plaintiff who started a small business with a partner while his I-485 application was pending. (Mot. PI at 33; Pls. Decls. at 20). He and his partner wish to have Brhane buy out the partner, making Brhane the sole owner, but Brhane is not eligible for a business loan to make that happen without lawful permanent residence status. (Pls. Decls. at 20). Although the "threat of substantial loss of business and certainly bankruptcy [can qualify] as the sort of irreparable harm needed to support [a] preliminary injunction," Brhane's harm does not appear to be of that caliber. Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005) (citing Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975)); (see Pls. Decls. at 20 (expressing desire to buy out partner, but no indication that he will suffer substantial loss of business or bankruptcy if unable to do so)). Arguably, though, Brhane's circumstance is similar to those of other Plaintiffs who are unable to advance professionally due to the uncertainty created by the adjudicatory hold. This, as discussed above, does constitute irreparable harm. (See Subsection II.B.3.a above).

Overall, even excluding the financial distress that many Plaintiffs report, Plaintiffs have established that in the absence of a preliminary injunction, they are facing, and will continue to face, ongoing professional and personal harms due to the uncertainty created by the adjudicatory hold. See Varniab, 2026 WL 485490, at *23; Bowser, 2026 WL 555624, at *9; (see also Doe v. USCIS Order at 8).

### 4. Balance of Equities and Public Interest

Regarding the final two Winter factors, Plaintiffs argue that the balance of the equities tips in their favor and that a preliminary injunction is in the public interest because they seek a narrow injunction, and they will continue to suffer significant harms in the absence of relief while USCIS will suffer minimal burdens if the Court grants the requested relief. 555 U.S. at 20; (Mot. PI at 34–36). Edlow counters that requiring adjudication of Plaintiffs I-485 applications within thirty days "goes beyond maintaining the status quo of enjoining enforcement of the Policy Memorandums" and "would be difficult to undo . . . ." (Opp'n at 37). Edlow also urges that "national security is at stake," while "Plaintiffs are alleging only a minimal delay in [the] adjudication of their I-485s . . . ." (Id.).

In considering the balance of the equities, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Abrego Garcia, 777 F.Supp.3d at 518 (quoting Winter, 555 U.S. at 24). As to the public interest, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. (quoting Winter, 555 U.S. at 24).

34

Here, Plaintiffs request that the Court enjoin Edlow from applying the adjudicatory hold to their I-485 applications, and they seek adjudication of their Forms I-485 within thirty days of this Court's order granting such relief. (Mot. PI at 36–37). The first part of this request is narrow and would place a minimal burden on USCIS of adjudicating Plaintiffs' I-485 applications in the usual course. Considering the multiple exceptions to the adjudicatory hold identified in PM-602-0194, (PM-602-0194 at 4–5), and the continued processing of Plaintiffs' applications, (see 2d Notice Material Change Facts at 1, ECF No. 23), it is reasonable to conclude that "there is a mechanism already in place to continue to process [and adjudicate] applications notwithstanding" the Policy Memoranda, Varniab, 2026 WL 485490, at *24. Moreover, Plaintiffs "do not ask the Court to dictate a particular outcome on their applications, and the Court cannot and will not do so." Id.

The second part of this request—the thirty-day timeframe—is potentially more burdensome, as Plaintiffs' eighty-three applications are in various stages of processing. (See generally USCIS Online Case Statuses). While some Plaintiffs have attended their biometrics appointments and interviews, others submitted their applications shortly before the hold went into effect and, as a result, have made little progress in the application process. (Id.). Thus, the situation here is unlike those in other cases with similar issues but where only one or two plaintiffs' Forms I-485 had been pending for at least nine months and who had gone through most of the required processing. See Varniab, 2026 WL 485490, at *24 (finding no evidence that requiring adjudication within thirty days "will cause any significant hardship to the Government" where "Plaintiffs' applications have been pending for over nine months and their biometrics appointments and interviews have already taken

35

place"); Bowser, 2026 WL 555624, at *2, 10 (ordering adjudication of plaintiff's employment authorization application (but not plaintiffs' other pending applications) within ten days where applications had been pending for over a year and plaintiffs had already attended USCIS interview). The Court weighs these potential burdens on USCIS against the irreparable harms to Plaintiffs discussed above. (See Subsection II.B.3 above).

As to the public interest, Edlow raises concerns of national security, (Opp'n at 37–38), but he has "not identified any information specific to Plaintiffs that suggest they pose a threat to national security," Varniab, 2026 WL 485490, at *24. On the contrary, many Plaintiffs have contributed significantly to scientific and medical research that serves the interests of the U.S. and its citizens. (See, e.g., Pls. Decls. at 4, 8, 10, 12–13, 15, 21, 32, 35, 37–38, 40, 46, 50–51, 54, 56, 59, 63, 65, 67, 75, 83, 89, 96, 99, 101). Many of those Plaintiffs, and others, have approved Forms I-140 in the National Interest Waiver, Extraordinary Ability, or Outstanding Professor or Researcher categories in recognition of their advanced degrees, scholarship, and contributions to their fields. (See id. at 8, 10, 12, 15, 18, 32, 35, 44, 50, 54, 59, 63, 65, 67, 75, 83, 89, 96, 99, 107). Moreover, USCIS appears to recognize the benefit of allowing such individuals to remain in the U.S., as PM-602-0194 carves out an exception to the adjudicatory hold for non-citizens "whose entry into the United States would provide significant benefit to the United States," such as "a scientist or medical researcher working on a critical public health project, an engineer with specialized skills needed for a key infrastructure initiative, or someone with unique expertise supporting U.S. national security or economic interests." (PM-602-0194 at 5 n.16); see also Varniab, 2026 WL 485490, at *24. "[A]nd in any event, withholding final

36

adjudication of [Plaintiffs'] Form I-485 . . . applications while Plaintiffs are already in the country would not serve national security interests." Varniab, 2026 WL 485490, at *24

Finally, Edlow argues that "plac[ing] Plaintiffs ahead of other applicants[] does not serve the public interest, especially when 61% of Plaintiffs filed their I-485s in 2025." (Opp'n at 37). Such concerns of fairness in processing Forms I-485, arguably, are "overblown" when considering the interests of applicants who are not affected by the Policy Memoranda, as those applicants likely were placed ahead of many Plaintiffs due to the adjudicatory hold. Varniab, 2026 WL 485490, at *13 ("[E]ven if USCIS at some point processed Form I-485 and Form I-765 applications on a [first-in, first-out] basis, the agency's implementation of PM-0192 changed the process by placing a hold on the final adjudication of applications submitted by applicants from certain countries."). On the other hand, applicants who are affected by the adjudicatory hold but do not have the resources to file a federal lawsuit could face additional delays in the processing of their applications if Plaintiffs are pushed ahead of them. See Jahangiri, 2024 WL 1656269, at *12 ("Courts have described visa processing capacity as a 'zero-sum game' . . . . "'[G]ranting [p]laintiff[s'] request to expedite would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own.'" (quoting Murway v. Blinken, No. CV 21-1618 (RJL), 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022))). Considering the wide range of wait times Plaintiffs report, it is difficult to determine how much the expedited adjudication of their applications will affect others seeking the same benefits.

37

In weighing all these interests, the Court remains cognizant of the primary purpose of a preliminary injunction: "to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." Di Biase, 872 F.3d at 230. "The status quo has been consistently defined as the last uncontroverted status preceding the pending litigation." Fed. Leasing, Inc. v. Underwriters at Lloyd's, 487 F.Supp. 1248, 1259 (D.Md. 1980), aff'd, 650 F.2d 495 (4th Cir. 1981). In this case, the status quo consisted of the usual, though sometimes prolonged, processing and adjudication of Forms I-485 within a reasonable time and without an adjudicatory hold in place. The Court, therefore, will restore the status quo by enjoining USCIS from applying the adjudicatory hold to Plaintiffs' Forms I-485 and compelling USCIS to resume adjudication of those Forms. The Court, however, will not impose a thirty-day timeline on the adjudications. (See Doe v. USCIS Order at 9 n.3 (enjoining defendants from enforcing adjudicatory hold against plaintiff's pending applications and ordering defendants to resume adjudication of those forms but rejecting plaintiff's request to order adjudication within forty-eight hours)).

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction (ECF No. 3) is GRANTED IN PART and DENIED IN PART; Plaintiffs' Ex Parte Motion for Discovery (ECF Nos. 4, 5) is deemed WITHDRAWN; and Edlow's Motion for Leave to File Excess Pages (ECF No. 14) is GRANTED. A separate Order follows.

Entered this 24th day of April, 2026.


_____/s/_____
George L. Russell, III
Chief United States District Judge