**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AKMURAT O. DOE, et al, | |
| Plaintiffs, | Case No.   1:25-cv-13946-JEK |
| v. | |
| DONALD J. TRUMP, et al., | |
| Defendants. | |

### SECOND AMENDED CLASS ACTION COMPLAINT

### INTRODUCTION

1.      Two hundred and one (201) immigrants bring this class action, on behalf of themselves and all others similarly situated, to challenge Defendants' implementation of categorical and indefinite restrictions on the adjudication of immigration benefits inside the United States.[1] Relying on Presidential Proclamations 10949 and 10998 and subsequent DHS and USCIS directives—including Policy Alert PA-2025-26 and Policy Memoranda PM-602-0192 and PM-602-0194—Defendants have implemented a nationwide adjudicative hold on immigration benefits for foreign nationals of thirty-nine designated countries inside the United States for nationals.

2.      These policies halt or delay naturalization, adjustment of status, asylum, and employment authorization for hundreds of thousands of noncitizens who are lawfully present in the United States and statutorily entitled to individualized adjudication. The adjudicative hold is categorical, indefinite, and triggered without individualized assessment. The adjudicative hold targets applicants based on country of birth and/or country of citizenship, rather than individualized evidence or case-specific concerns.

3.      As implemented, the challenged policies suspend final adjudication of affirmative asylum applications; place applicants from thirty-nine designated countries into open-ended "security posture"

---

[1] The accurate number of plaintiffs have increased from 197 to 201 as a result of the dismissal of two plaintiffs whose claims have become moot, and the inclusion of some spouse-derivative plaintiffs who were inadvertently omitted from the First Amended Complaint.

holds; suspend naturalization interviews and oath ceremonies; suspend green card interviews and final adjudication; and delay issuance and renewal of employment authorization. They also instruct USCIS adjudicators to treat mere nationality from one of the thirty-nine designated countries as a "significant negative factor" in evaluating eligibility and discretion, even in the absence of any individualized derogatory information or security concern.

4.      Nothing in the Immigration and Nationality Act authorizes DHS or USCIS to suspend adjudications en masse, to replace individualized assessments with nationality-based review, or to convert the President's authority under 8 U.S.C. § 1182(f) over the entry of foreign nationals into a categorical domestic adjudicative hold. The INA assigns USCIS mandatory adjudicatory duties and expressly prohibits nationality-based discrimination in the allocation of immigration benefits.

5.       Nor does the Administrative Procedure Act permit agencies to impose binding rules of general applicability without statutory authorization, without reasoned explanation, and without notice-and-comment rulemaking. The challenged directives are substantive rules with immediate legal consequences, promulgated without compliance with the APA and constitute final agency action reviewable under 5 U.S.C. § 704.

6.      The consequences are profound. Naturalization applicants who have been approved are pulled from oath ceremonies. Adjustment applicants are denied green cards, work authorization, and advance parole, and remain separated from family. Asylum seekers lose work authorization and employment. Students fall out of status. Families confront eviction, job loss, and prolonged insecurity. Immigrants face daily financial, emotional, and legal harm from the indefinite suspension of their immigration cases.

7.      Plaintiffs seek certification of this action as a class action under Federal Rule of Civil Procedure 23(b)(2); declaratory relief; an order under 5 U.S.C. § 706(2) setting aside the challenged directives as contrary to law, arbitrary and capricious, and promulgated without notice-and-comment rulemaking; an injunction prohibiting further reliance on those directives in domestic adjudications; and an order under 5 U.S.C. § 706(1) compelling Defendants to resume and complete adjudication of

Plaintiffs' pending applications in accordance with the mandatory duties imposed by the Immigration and Nationality Act, governing regulations, and the Administrative Procedure Act.

## FACTUAL ALLEGATIONS

### Presidential Proclamation 10949

8. On June 4, 2025, President Donald J. Trump issued Presidential Proclamation 10949, invoking INA § 212(f), 8 U.S.C. § 1182(f), to restrict the entry of nationals of nineteen designated countries, and directing the Department of Homeland Security to adopt a heightened "security posture" toward individuals from those countries. Attached as Exhibit A and incorporated herein by reference.

9. The Proclamation identified nineteen countries subject to heightened restrictions, but it drew distinctions between those subject to a total entry suspension and those subject to partial or conditional restrictions.

10. The Proclamation imposed a complete entry ban on nationals of Afghanistan, Burma, Chad, Republic of the Congo, Equatorial Guinea, Eritrea, Haiti, Iran, Libya, Somalia, Sudan, and Yemen, blocking their admission to the United States absent narrow discretionary waivers. For nationals of seven additional countries—Burundi, Cuba, Laos, Sierra Leone, Togo, Turkmenistan, and Venezuela—the Proclamation ordered heightened screening and processing requirements as conditions of entry rather than a complete bar.

### DHS Policy Alert PA-2025-26

11. On November 27, 2025, DHS issued Policy Alert PA-2025-26. Attached as Exhibit B and incorporated herein by reference. The Policy Alert instructed DHS components, including USCIS, to implement an "enhanced security posture" and "tiered risk framework" for nationals of the nineteen countries, and directed that nationality would trigger additional review.

12. In the accompanying November 27th press release issued by Defendant USCIS, Defendant Joseph Edlow stated that "[e]ffective immediately, I am issuing new policy guidance that authorizes USCIS officers to consider country-specific factors as significant negative factors when reviewing immigration requests" (emphasis added). Attached as Exhibit C and incorporated herein by

reference.

13.    Although § 212(f) pertains solely to entry, DHS interpreted the Proclamation and Policy Alert to apply to domestic immigration adjudications conducted by USCIS and directed USCIS to implement internal procedures applying the heightened posture to pending applications within the United States.

### Policy Memorandum PM-602-0192

14.    On December 2, 2025, USCIS issued Policy Memorandum PM-602-0192. Attached as Exhibit D and incorporated herein by reference. The Memorandum ordered a nationwide hold on all affirmative asylum adjudications and directed adjudicators to place pending benefit requests by nationals of the nineteen designated countries into indefinite "security posture" holds. PM-602-0192 provided no exceptions to the adjudicative hold for any category of applicant or benefit type.

15.    USCIS issued PM-602-0192 without publishing a proposed rule, without soliciting public comment, without any fact-finding, and without notice-and-comment rulemaking. No notice appeared in the Federal Register, and affected applicants received no advance warning that their pending cases would be suspended.

16.    PM-602-0192 did not articulate criteria, standards, or factual triggers for suspending adjudications; did not specify goals, timelines, or sunset provisions; and did not identify mechanisms for resuming adjudication.

17.    The Memorandum did not require individualized assessments or evidence-based determinations, but instead relied on nationality alone to place applications on hold, without any showing of derogatory information, ineligibility, or security concern.

18.    USCIS provided no mechanism for affected applicants to contest the hold, seek expedited review, or request exemption. No administrative process exists for challenging the ongoing suspension.

### Immediate Consequences of PM-602-0192

19.    Following issuance of PM-602-0192, USCIS cancelled scheduled asylum interviews, adjustment interviews, naturalization interviews, and naturalization oath ceremonies. Notices cited

"policy guidance" or "security review" without identifying individualized statutory grounds.

20.    During the same period, USCIS delayed or withheld adjudication of employment authorization applications and renewals tied to frozen asylum and adjustment cases, as well as various other types of immigration cases, causing lapses in work authorization and loss of employment.

**Presidential Proclamation 10998**

21.    On December 16, 2025, President Trump issued Presidential Proclamation 10998, titled "Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States," effective January 1, 2026. Attached as Exhibit E and incorporated herein by reference. PP 10998 substantially expanded the scope and severity of the entry restrictions imposed by PP 10949.

22.     PP 10998 continued the full entry ban on nationals of the original twelve countries subject to complete suspension under PP 10949: Afghanistan, Burma, Chad, Republic of the Congo, Equatorial Guinea, Eritrea, Haiti, Iran, Libya, Somalia, Sudan, and Yemen. It continued partial restrictions on nationals of Burundi, Cuba, Togo, and Venezuela.

23.    PP 10998 imposed full entry suspensions on nationals of seven additional countries—Burkina Faso, Laos, Mali, Niger, Sierra Leone, South Sudan, and Syria—as well as on individuals traveling on documents issued or endorsed by the Palestinian Authority. Of these, Laos and Sierra Leone had previously been subject only to partial restrictions under PP 10949; PP 10998 elevated them to complete entry bans.

24.    PP 10998 further imposed partial entry restrictions on nationals of fifteen additional countries: Angola, Antigua and Barbuda, Benin, Côte d'Ivoire, Dominica, Gabon, The Gambia, Malawi, Mauritania, Nigeria, Senegal, Tanzania, Tonga, Zambia, and Zimbabwe. It also modified the restrictions on Turkmenistan, lifting the nonimmigrant visa suspension while maintaining the suspension on immigrant visa entry.

25.    In total, PP 10949 and PP 10998 together restrict or suspend the entry of nationals from thirty-nine countries, plus individuals traveling on Palestinian Authority-issued documents.

26.    PP 10998 significantly narrowed the categorical exceptions to the entry restrictions. PP

10949 had provided a broad categorical exception for immigrant visas issued to family members of individuals in the United States. PP 10998 eliminated that exception. The Proclamation stated that "immigrant visas for family members of individuals in the United States will no longer be a broad categorical exception," asserting without individualized support that "[f]amilial ties can serve—and, in the past, have in fact served . . . as unique vectors for fraudulent, criminal, or even terrorist activity." The remaining categorical exceptions under PP 10998 are limited to lawful permanent residents, dual nationals traveling on non-designated passports, certain diplomats and NATO officials, athletes traveling for the World Cup or Olympics, Special Immigrant Visa holders who are U.S. Government employees, and immigrant visas for ethnic and religious minorities facing persecution in Iran.

27.     Presidential Proclamation 10998 contains an express carve-out limiting its scope in two respects relevant to this litigation. First, the Proclamation provides that it "shall not apply to an individual who has been granted asylum by the United States or to a refugee who has already been admitted to the United States." PP 10998, § 8(d). Second, the Proclamation provides that "[n]othing in this proclamation shall be construed to limit the ability of an individual to seek asylum, refugee status, withholding of removal, or protection under the Convention Against Torture, consistent with the laws of the United States." *Id.* The first sentence excludes from the Proclamation's restrictions a population the policy memoranda nevertheless include: individuals who have been granted asylum, including those seeking adjustment of status to lawful permanent residence based on their asylum grant. The second sentence forecloses any reading of the Proclamation that would limit the ability of an individual to seek asylum, including by suspending the adjudication of pending asylum applications. Despite these express limitations, Policy Memoranda PM-602-0192 and PM-602-0194 impose adjudicative holds on (a) applications filed by individuals already granted asylum, and (b) all pending Form I-589 asylum applications without regard to nationality. The policy memoranda thus extend the adjudicative hold to two populations the Proclamation itself excludes from its restrictions.

28.     The policy memoranda expressly invoke Presidential Proclamations 10949 and 10998 as the foundation for the adjudicative hold. PM-602-0192 cites the Proclamations as background and

authority for the comprehensive review and adjudicative hold it implements; PM-602-0194 likewise relies on the Proclamations' findings to extend the hold to additional countries. Yet the blanket adjudicative hold on affirmative asylum applications imposed by the Policy Memoranda has no foundation in the Proclamations. Proclamation 10998's express asylum carve-out in § 8(d) forecloses any reading under which the Proclamation could authorize a suspension of asylum adjudication. The Policy Memoranda's blanket asylum hold accordingly extends beyond—and conflicts with—the very Proclamations the Policy Memoranda invoke as their authority.

29.    Like PP 10949, PP 10998 was directed at the entry of foreign nationals into the United States. The Proclamation's stated justifications—deficiencies in foreign governments' screening, vetting, and information-sharing practices; visa overstay rates; and country-specific security conditions—relate to the assessment of individuals seeking admission at the border or through consular visa processing. PP 10998 does not address, authorize, or reference the adjudication of applications for immigration benefits filed by individuals already present within the United States.

**Policy Memorandum PM-602-0194**

30.    On January 1, 2026, USCIS issued Policy Memorandum PM-602-0194, titled "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries." Attached as Exhibit F and incorporated herein by reference. PM-602-0194 extended the adjudicative hold imposed by PM-602-0192 to nationals of all countries identified in PP 10998, expanding the hold from nineteen to thirty-nine countries plus individuals traveling on Palestinian Authority-issued documents.

31.    PM-602-0194 did not supersede PM-602-0192. The Memorandum states that it "does not supersede the guidance in [PM-602-0192] . . . except as specified under the 'Exceptions to the Adjudication Hold.'" Both policy memoranda remain in effect simultaneously.

32.    PM-602-0194 applies the adjudicative hold based on an individual's nationality, country of birth, or acquisition of Citizenship by Investment in a designated country, as well as to individuals traveling on Palestinian Authority-issued documents. The hold applies to all pending benefit applications regardless of entry date.

33. PM-602-0194 explicitly eliminated the broad exemption for family-based immigrant visa applications that had existed under PP 10949. Footnote 6 of the Memorandum states: "Immigrant visas for family members of individuals in the United States will no longer be automatically or broadly exempt from PP 10949 and PP 10998 restrictions or requirements. Family-based immigrant visa applications are now subject to the same review, restrictions, or additional scrutiny as other benefit requests."

34. PM-602-0194 identifies ten categories of applications that are excepted from the adjudicative hold: (1) Form I-90 applications to replace a permanent resident card; (2) Form N-565 applications for replacement naturalization or citizenship documents; (3) Form N-600 applications for a certificate of citizenship, except for nationals of Yemen and Somalia; (4) certain limited categories of Form I-765 employment authorization applications—specifically, initial filings under 8 C.F.R. § 274a.12(c)(8) subject to the *Asylumworks v. Mayorkas* processing requirements, limited filings under 8 C.F.R. § 274a.12(c)(11) where law enforcement has requested the filing, and limited filings under 8 C.F.R. § 274a.12(c)(14) where law enforcement has requested the filing; (5) Form I-910 applications for civil surgeon designation, but only for physicians who are United States citizens or nationals; (6) benefit requests filed by athletes or athletic team members, including coaches, support personnel, and immediate relatives, for the purpose of participating in the World Cup, Olympics, or other major sporting events as determined by the Secretary of State; (7) benefit requests that are a priority for law enforcement and where ICE has specifically requested USCIS take adjudicative action; (8) benefit requests filed by aliens whose entry would serve a United States national interest; (9) benefit requests for programs that are terminated or discontinued as a result of an Executive Order, Proclamation, Federal Register Notice, or Directive; and (10) automatic termination decisions for ancillary benefit requests when an individual is granted permanent resident status or becomes a naturalized citizen.

35. None of the ten enumerated exceptions applies to the core benefit categories at issue in this case: adjustment of status, naturalization, affirmative asylum, or the employment authorization applications filed by or on behalf of Plaintiffs. The exceptions are limited to replacement documents, narrow categories of employment authorization unrelated to Plaintiffs' applications, and special

circumstances involving law enforcement, sporting events, or program terminations. The eighth exception—benefit requests that would serve a "United States national interest"—requires a case-by-case determination and approval from headquarters, and no Plaintiff has received such a determination.

36.     PM-602-0194 directed that "[w]ithin 90 days of this memorandum issuance, and in consultation with OP&S and the Fraud Detection and National Security Directorate, USCIS will prioritize a list for review, interview, and re-interview, and issue operational guidance." That 90-day period expired on or about April 1, 2026. USCIS has not issued the operational guidance contemplated by PM-602-0194.

37.     PM-602-0192 directed that USCIS would issue operational guidance within 90 days of the memorandum's December 2, 2025 issuance. That self-imposed deadline expired on or about March 2, 2026. PM-602-0194 directed that USCIS would issue operational guidance within 90 days of its January 1, 2026 issuance. That deadline expired on or about April 1, 2026. Both deadlines have now passed.

38.     No operational guidance has been issued under either Policy Memorandum. On March 3, 2026, Defendants represented to the Court that USCIS had implemented certain unrelated changes to its screening and vetting practices, but Defendants did not issue, attach, or describe any operational guidance modifying or implementing the adjudicative hold policy. On March 30, 2026, USCIS published a public update on its website regarding strengthened screening and vetting practices, but that update likewise did not contain operational guidance modifying or implementing the adjudicative hold policy. On April 1, 2026, Defendants again represented that USCIS had updated certain practices and had established an internal process for lifting holds on individual or group cases, but Defendants again did not issue, attach, or describe any operational guidance modifying or implementing the adjudicative hold policy.

39.     On April 30, 2026, this Court granted in part Plaintiffs' motion for a preliminary injunction, concluding that Plaintiffs were likely to succeed on their claims that the adjudicative hold policy is contrary to law and arbitrary and capricious, and that the significant negative factor policy is contrary to law as applied to adjustment-of-status and employment authorization applications. The Court further concluded that the challenged directives constitute final agency action subject to judicial review.

40.     On May 7, 2026, the Court extended preliminary injunctive relief to all Plaintiffs in the

consolidated actions and ordered Defendants to immediately lift the adjudicative hold as to those Plaintiffs and cease applying the significant negative factor policy to their adjustment-of-status and employment authorization applications.

41.    As of the filing of this Second Amended Complaint, the adjudicative hold imposed by PM-602-0192 and PM-602-0194 remains in effect. No operational guidance has been issued. The hold has not been lifted as to any of the Plaintiffs. Defendants have provided no timeline for the issuance of operational guidance, no timeline for the lifting of the hold, and no end date for the policy. As a result of the continuing adjudicative hold, Defendants have failed to complete adjudication of Plaintiffs' pending applications within the timeframes and adjudicatory framework contemplated by the INA, governing regulations, and the APA. Plaintiffs' applications remain pending without final agency action and without any identified endpoint for adjudication.

42.    Like PM-602-0192, PM-602-0194 was issued without publishing a proposed rule, without soliciting public comment, and without notice-and-comment rulemaking. No notice appeared in the Federal Register. PM-602-0194 contains the same disclaimer that the memorandum "is intended solely for the guidance of USCIS personnel" and "may not be relied upon to create any right or benefit, substantive or procedural, enforceable under law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

**Cumulative Effect**

43.    The cumulative effect of Presidential Proclamations 10949 and 10998, Policy Alert PA-2025-26, and Policy Memoranda PM-602-0192 and PM-602-0194 has been a de facto nationwide adjudicative hold on statutory immigration adjudications—including affirmative asylum, adjustment of status, naturalization, and employment authorization—for nationals of thirty-nine countries and holders of Palestinian Authority-issued documents. The adjudicative hold remains categorical, indefinite, and untethered to individualized factual determinations.

44.    It operates without individualized assessment, without statutory authorization for domestic adjudication holds, and without any publicly available mechanism through which affected

applicants may seek individualized review, reconsideration, or release from the adjudicative hold. It applies to individuals who have been lawfully present in the United States for years, who have completed all steps required of them, and who in many cases have already been approved for the benefits they seek, awaiting only the ministerial act of an oath ceremony or the issuance of a document.

45.    As a result of the ongoing adjudicative hold challenged in this action, Plaintiffs have been compelled to file subsequent applications for relief over the past several months. These subsequent applications are integral to the full scope of relief sought and should likewise be included and removed from the hold, as they further demonstrate the continuing and unremedied nature of the harm at issue.

## CLASS ALLEGATIONS

46.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and seek certification of two subclasses.

47.    Subclass 1 (Designated-Country Nationals): All individuals who are nationals of a country identified in Presidential Proclamation 10949 or Presidential Proclamation 10998, and who have or had an application or petition for an immigration benefit pending before USCIS that was subjected to an adjudicative hold pursuant to USCIS Policy Memorandum PM-602-0192 or PM-602-0194, and whose pending application has been subjected to the significant negative factor policy in USCIS Policy Alert PA-2025-26.

48.    Subclass 2 (Asylum Applicants): All individuals who have or had a pending Form I-589 application for asylum that was subjected to a blanket adjudicative hold pursuant to USCIS Policy Memorandum PM-602-0192 or PM-602-0194.

49.    Both subclasses are so numerous that joinder of all members is impracticable. Subclass 1 encompasses nationals of thirty-nine countries whose immigration benefit applications have been subjected to nationality-based adjudicative holds. The named Plaintiffs alone include approximately 197 individuals from more than twenty countries, and they represent only those applicants who have retained counsel in this litigation—a fraction of the affected population. Subclass 2 encompasses every individual with a pending Form I-589 asylum application subjected to the blanket adjudicative hold. As of the third

quarter of fiscal year 2025, USCIS reported approximately 1.5 million pending asylum applications, according to USCIS reporting. The blanket hold imposed by the Policy Memoranda applies to all of them regardless of nationality.

50.    There are questions of law and fact common to each subclass that predominate over any individual issues. The challenged directives impose categorical holds triggered by objective criteria—nationality for Subclass 1, and the filing of an asylum application for Subclass 2. Both challenged positions operate through categorical criteria rather than individualized adjudicatory determinations. Common questions include: (a) whether the Policy Memoranda and Policy Alert constitute final agency action reviewable under the APA; (b) whether the challenged directives exceed the authority conferred by INA § 212(f); (c) whether the directives violate statutory mandates requiring individualized adjudication; (d) whether the directives are arbitrary and capricious; (e) whether the directives are substantive rules promulgated without notice-and-comment rulemaking in violation of 5 U.S.C. § 553; and (f) whether the directives violate procedural due process. Subclass 1 additionally shares the common question of whether singling out nationals of thirty-nine designated countries for adverse adjudicatory treatment violates equal protection. Subclass 2 additionally shares the common question of whether the blanket asylum hold conflicts with Section 8(d) of Presidential Proclamation 10998, which expressly provides that the Proclamation shall not limit the ability of an individual to seek asylum.

51.    The claims of the named Plaintiffs are typical of the claims of the members of each subclass. Every named Plaintiff's claims arise from the same challenged directives, challenge the same categorical holds, and seek the same declaratory and injunctive relief as every other class member. The named Plaintiffs proposed as representatives for Subclass 1 include nationals of more than twenty of the thirty-nine designated countries who have had a range of immigration benefit applications—including adjustment of status, naturalization, employment authorization, immigrant petitions for alien workers, and travel documents—subjected to the nationality-based holds. The named Plaintiffs proposed as representatives for Subclass 2 include asylum applicants whose cases have been subjected to the blanket hold regardless of nationality, including applicants from countries not among the thirty-nine designated

nations.

52.     The named Plaintiffs will fairly and adequately protect the interests of each subclass. The named Plaintiffs share the same interest as every member of both subclasses: ending the challenged adjudicative hold policies and restoring individualized adjudication under governing statutory and regulatory standards.

53.     No named Plaintiff has interests antagonistic to the class. The existence of two subclasses does not create antagonism; the subclasses challenge related but independent directives, and the relief sought for each is complementary rather than competing.

54.     Certification under Rule 23(b)(2) is appropriate because Defendants have acted on grounds generally applicable to each subclass. For Subclass 1, the Policy Memoranda and Policy Alert impose blanket adjudicative holds and a significant negative factor policy on every applicant who is a national of a designated country. For Subclass 2, the Policy Memoranda impose a blanket hold on every pending asylum application without regard to nationality or individual circumstances. The relief sought—a declaration that the challenged policies are unlawful and an injunction prohibiting their enforcement—is inherently indivisible and applies to each subclass as a whole.

55.     Plaintiffs further move for appointment of James O. Hacking, III, of Hacking Immigration Law, LLC and Stefanie Fisher-Pinkert as class counsel pursuant to Rule 23(g). Counsel identified this litigation, assembled a plaintiff group of approximately 197 individuals from more than twenty countries, conducted extensive factual investigation, briefed and argued the motion for preliminary injunction, obtained and analyzed two certified administrative records produced by the government, and have vigorously prosecuted this action since its filing.

## JURISDICTION AND VENUE

56.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution, the Immigration and Nationality Act, and the Administrative Procedure Act.

57.     Judicial review is available under the Administrative Procedure Act, 5 U.S.C. §§ 702 and 704, because Plaintiffs challenge final agency actions that impose binding consequences, suspend

statutory adjudication duties, and inflict concrete injuries. Sovereign immunity is waived for claims seeking non-monetary relief.

### A. The Challenged Directives Are Final Agency Action.

58.     Policy Alert PA-2025-26, Policy Memoranda PM-602-0192 and PM-602-0194, and the policy guidance directing USCIS officers to consider country-specific factors as "significant negative factors" each consummate the agency's decision-making process. PA-2025-26 took effect immediately upon issuance and supersedes all prior guidance. The Policy Memoranda direct USCIS personnel to immediately implement the adjudicative hold and remain in effect "until lifted or modified by the USCIS Director through a subsequent memorandum." Although the Policy Memoranda contemplated the issuance of "operational guidance" within 90 days, both 90-day deadlines have passed without the issuance of any such guidance and without any modification of the adjudicative hold, as set forth above. The challenged directives are not tentative or interlocutory; they are the agency's final word on its policy. The operational-guidance deadlines identified in PM-602-0192 and PM-602-0194 have expired without rescission or meaningful modification of the adjudicative hold policy.

59.     The challenged directives are also actions by which rights and obligations have been determined and from which legal consequences flow. USCIS adjudicators are bound to apply the directives. Plaintiffs' applications remain in indefinite adjudicative limbo without final agency action on the underlying benefit requests. Plaintiffs' adjudications, when and if they occur, are subject to a nationality-based negative presumption under the significant negative factor policy. The directives are accordingly final agency action subject to judicial review under 5 U.S.C. § 704.

60.     The relief sought is authorized under 5 U.S.C. § 706, which empowers courts to set aside agency actions that exceed statutory authority, conflict with governing law, or violate procedural requirements, and to compel agency action unlawfully withheld or unreasonably delayed.

### B. Venue.

61.     Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(e)(1). Plaintiffs Akmurat O. Doe, S. Ferdows A. Doe, Sahar E. Doe, Larissa G. Doe, Isis M. Doe, and Emile S. Doe reside

within this District. USCIS maintains a Field Office in Boston that conducts and withholds adjudications affecting Plaintiffs in this District, and Defendant Dorothy Michaud directs operations at that office. The challenged directives are nationwide policies applied uniformly across all USCIS offices, including the Boston Field Office, and a substantial part of the events giving rise to this action—including the implementation of adjudicative holds, the cancellation of interviews and oath ceremonies, and the withholding of employment authorization—occurred and continues to occur in this District.

### C. No Jurisdiction-Stripping Provision Bars Review.

62.    This case does not fall within any statutory exclusion from judicial review. Plaintiffs do not seek review of an individual removal order, consular visa issuance, or discretionary adjudicatory determination. They challenge agency policies and procedures of general applicability. The jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(B)(i) and (ii) do not apply to such collateral challenges.

## PARTIES

### Defendants

63.    Defendant Donald J. Trump is the President of the United States and is sued in his official capacity. He issued Presidential Proclamations 10949 and 10998 and directed the development and implementation of the challenged "security posture" and adjudication adjudicative holds through the Department of Homeland Security and its component agencies.

64.    Defendant United States Department of Homeland Security (DHS) is a cabinet-level department of the United States charged with administering and enforcing the immigration laws. DHS issued Policy Alert PA-2025-26, directed the extension of 8 U.S.C. § 1182(f) entry authority into domestic adjudications, and oversees USCIS, including USCIS's issuance and implementation of Policy Memoranda PM-602-0192 and PM-602-0194 and the adjudicative hold policy set forth therein.

65.    Defendant Markwayne Mullin is the Secretary of the Department of Homeland Security and is sued in his official capacity. He is responsible for supervising DHS, issuing and implementing Policy Alert PA-2025-26, overseeing USCIS's issuance and implementation of Policy Memoranda

PM-602-0192 and PM-602-0194, and directing USCIS to adopt and maintain the challenged adjudicative holds and the nationality-based significant negative factor policy. Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Mullin is the proper defendant in place of former Secretary Kristi Noem.

66.    Defendant United States Citizenship and Immigration Services (USCIS) is a component agency of DHS charged with adjudicating applications for naturalization, adjustment of status, asylum, employment authorization, immigrant petitions for alien workers, and other immigration benefits. USCIS issued Policy Alert PA-2025-26 and Policy Memoranda PM-602-0192 and PM-602-0194 and is responsible for implementing the adjudicative holds and the nationality-based significant negative factor policy on domestic adjudications under the challenged directives.

67.    Defendant Joseph B. Edlow is the Director of USCIS and is sued in his official capacity. He is responsible for directing USCIS operations, including the issuance and implementation of Policy Alert PA-2025-26, Policy Memoranda PM-602-0192 and PM-602-0194, the adjudicative hold policy, and the nationality-based significant negative factor policy. He publicly announced on November 27, 2025 that USCIS officers are authorized to consider country-specific factors as "significant negative factors" when reviewing immigration requests.

68.    Defendant Dorothy Michaud is the Field Office Director of the USCIS Boston Field Office and is sued in her official capacity. She is responsible for directing USCIS operations and implementing the challenged adjudicative holds at the Boston Field Office.

69.    The challenged directives—including Presidential Proclamations 10949 and 10998, Policy Alert PA-2025-26, and Policy Memoranda PM-602-0192 and PM-602-0194—remain in effect and continue to bind USCIS adjudicators at the direction of Defendants. Neither policy memorandum has been rescinded, modified, or superseded except to the extent that PM-602-0194 provides limited exceptions to the adjudicative hold. No operational guidance has been issued under either memorandum.

### Plaintiffs

#### A. Naturalization Applicants

70.    Plaintiffs in this category are noncitizens who have applied for naturalization under 8

U.S.C. § 1421 et seq. Each is a lawful permanent resident who satisfies the statutory eligibility requirements for naturalization, including the residency and good-moral-character requirements of 8 U.S.C. § 1427(a). Many have completed the personal investigation required by 8 U.S.C. § 1446(a), passed their naturalization examination, and been recommended for or formally approved for citizenship; certain Plaintiffs in this category have had oath ceremonies scheduled and then canceled as a result of the challenged directives. Defendants are subject to a mandatory, non-discretionary duty to adjudicate naturalization applications and, once eligibility is established, to grant naturalization and administer the oath of allegiance. 8 U.S.C. §§ 1446(b), (d), 1447(a)–(b). The challenged directives have caused USCIS to suspend adjudication of naturalization applications filed by Plaintiffs from the designated countries, including by canceling scheduled oath ceremonies and refusing to schedule new ones.

71.     Plaintiffs in this category include: Alain B. Doe (Burundi); Alexander H. Doe (Iran); Anwaar A. Doe (Iran); Arash E. Doe (Iran) (oath ceremony canceled); Emile S. Doe (Burkina Faso); Hamza A. Doe (Libya); Inimfon J. Doe (Nigeria) (oath ceremony canceled); Isis M. Doe (Syria); Jose H. Doe (Venezuela); Khalida N. Doe (Afghanistan); Marwa G. Doe (Libya); Mattathie G. Doe (Congo); Mohamed M. Doe (Sudan); Sawsan M. Doe (Sudan); Seyed M. R. Doe (Iran) (oath ceremony canceled); Shelmira M. Doe (Venezuela); Sol R. Doe (Venezuela).

### B. Adjustment of Status — Employment-Based (Approved I-140)

72.     Plaintiffs in this category are noncitizens who have obtained approval of an employment-based immigrant petition (Form I-140) and have a pending application for adjustment of status (Form I-485) to lawful permanent residence. USCIS has already determined that each Plaintiff in this category qualifies for an employment-based immigrant visa; what remains is the ministerial act of granting the I-485 application. The challenged directives have placed those applications on indefinite hold solely because of the applicants' nationality or country of birth.

73.     Plaintiffs in this category include: Abbas K. Doe (Iran); Aliakbar Y. Doe (Iran); Arash R. Doe (Iran) Astrid I. Doe (Venezuela); Dina M. Doe (Iran); Ehsan S. Doe (Iran); Faezeh E. Doe (Iran); Faranak K. Doe (Iran); Farzad Z. Doe (Iran); Fatemeh R. Doe (Iran); Fatemeh V. Doe (Iran) (spouse

dependent of Abbas K. Doe); Fatemehsadat T. Doe (Iran); Hamid S. Doe (Iran); Hamed S. Doe (Iran); Hoseyn A. Doe (Iran); Iman N. Doe (Iran); Khazar D. Doe (Iran); Afshin A. Doe (Iran) (spouse dependent of Khazar D. Doe); Mahdi G. Doe (Iran); Mahmood T. Doe (Iran); Maryam T. Doe (Iran) (spouse dependent of Mahmood T. Doe); Mahnaz V. Doe (Iran) (derivative spouse of Saman Z. Doe); Mehdi A. Doe (Iran); Masoumeh B. Doe (Iran) (derivative spouse of Mehdi A. Doe); Milad H. Doe (Iran); Mina R. Doe (Iran) (derivative spouse of Farzad Z. Doe); Misagh E. Doe (Iran); Mohammad H. Doe (Iran); Mohammad M. Doe (Iran); Mohammad M.Z. Doe (Iran); Mohammadamin M. Doe (Iran); Mohammadreza G. Doe (Iran); Mohammad S.T. Doe (Iran) (derivative spouse of Sara L. Doe); Muhammed E. Doe (Libya); Navid H. Doe (Iran); Neda I. Doe (Iran); Nima A. Doe (Iran); Parisa M. Doe (Iran); Payman P. Doe (Iran); Mohtaram B. Doe (Iran) (derivative spouse of Payman P. Doe); Pegah S. Doe (Iran) (spouse dependent of Iman N. Doe); Pedram R. Doe (Iran); Ramin S. Doe (Iran); S. Alireza Doe (Iran) (derivative spouse of Dina M. Doe); S. Ferdows A. Doe (Iran); S. Nooshan Doe (Iran); S. Rahman S. Doe (Iran); Sahar E. Doe (Iran); Sahar A. Doe (Iran) (derivative spouse of Mohammad H. Doe); Saharnaz E. Doe (Iran); Saeedeh P. Doe (derivative spouse of Arash R. Doe); Samad A. Doe (Iran); Saman Z. Doe (Iran); Sara L. Doe (Iran); Seyedmostafa Z. Doe (Iran); Shahab Z. Doe (Iran); Shirin A. Doe (Iran) (derivative spouse of Mohammadamin M. Doe); Sima M. Doe (Iran) (Spouse of Hoseyn A. Doe); Soheyla S. Doe (Iran) (derivative spouse of Hamed S. Doe).

### C. Adjustment of Status — Employment-Based (Concurrent I-140 and I-485)

74.     Plaintiffs in this category have filed both an employment-based immigrant petition (Form I-140) and an application for adjustment of status (Form I-485) concurrently, or have a pending I-140 paired with a pending I-485. Neither the I-140 nor the I-485 on an employment basis has been adjudicated. The challenged directives have suspended processing of both applications, leaving these Plaintiffs unable to obtain either the immigrant visa approval or the green card to which they seek to establish entitlement. The challenged directives have placed their applications on indefinite hold, leaving them unable to obtain lawful permanent residence, work authorization, or advance parole despite their lawful presence and compliance with all immigration requirements.

75.    Plaintiffs in this category include: Ali A. Doe (Iran); Alireza N. Doe (Iran); Amir B. Doe (Iran); Amirhossein H. Doe (Iran); Anas G. Doe (Libya); Asawer H. Doe (Libya) (derivative spouse of Anas G. Doe); Behnam T. Doe (Iran); Esmaeil M. Doe (Iran); Fahimeh S. Doe (Iran); Farnaz N. Doe (Iran); Mahsa P. Doe (Iran) (derivative spouse of S. Mahmoud M. Doe); Fatemeh F. Doe (Iran); Fatemeh M.H. Doe (Iran) (derivative spouse of Seyedheydar M. Doe); Hamid H. Doe (Iran); Hamidreza H. Doe (Iran); Kasra S. Doe (Iran); Khatereh S. Doe (Iran); Mohammad J.L. Doe (Iran); Masoumeh N. Doe (Iran) (derivative spouse of Milad M. Doe); Mehrnoosh E. Doe (Iran); Melika B. Doe (Iran) (derivative spouse of S. Mojtaba Doe (Iran); Milad M. Doe (Iran); Noushin A. Doe (Iran); Reihaneh D. Doe (Iran) (derivative spouse of Mohammad J.L. Doe); Reihaneh Z. Doe (Iran); Reza K. Doe (spouse derivative of Reihaneh Z. Doe); Sara M. Doe (Iran); S. Mahmoud M. Doe (Iran); S. Masoumeh Doe (Iran); S. Mojtaba Doe (Iran); Seyedali M. Doe (Iran); Seyedheydar M. Doe (Iran); Seyedhossein H. Doe (Iran); SeyedMahbod B. Doe (Iran); Shekoufeh M. Doe (Iran) (derivative spouse of Ali A. Doe); Shahnaz R. Doe (Iran); Shiva G. Doe (Iran); Sobhan Z. Doe (Iran);

### D. Employment-Based Immigrant Petitioners (Pending I-140)

76.    Plaintiffs in this category have filed an employment-based immigrant petition (Form I-140) that has not yet been adjudicated. The Form I-140 is the predicate filing for employment-based permanent residence under INA § 203(b), 8 U.S.C. § 1153(b), and Defendants are subject to a mandatory, non-discretionary duty to adjudicate such petitions and notify the petitioner of the decision. 8 C.F.R. §§ 204.5, 103.2(b)(19); 5 U.S.C. § 555(b). The challenged directives have suspended adjudication of these petitions, preventing Plaintiffs from establishing the predicate eligibility necessary to proceed to adjustment of status.

77.    Plaintiffs in this category include: Alireza A. Doe (Iran); Ali R. Doe (Iran); Amin S. Doe (Iran); Amirhosein R. Doe (Iran); Amirsalar B. Doe (Iran); Arian E. Doe (Iran); Emad S. Doe (Iran); Farzad V. Doe (Iran); Gisoo D. Doe (Iran); Hava D. Doe (Iran); Marjan D. Doe (Iran); Minoo M. Doe (Iran); Mitra B. Doe (Iran); Mohammad K. Doe (Iran); Nooshin Z. Doe (Iran); Saeed B. Doe (Iran); Seyedsajad M. Doe (Iran); Shaghayegh V. Doe (Iran); Sina L. Doe (Iran); Vahid N. Doe (Iran); Yasaman

E. Doe (Iran).

### E. Adjustment of Status — Cuban Adjustment Act Applicants

78.     Plaintiffs in this category are Cuban nationals who entered the United States lawfully and have filed applications for adjustment of status under the Cuban Adjustment Act, 8 U.S.C. § 1255 note. Each has complied with all requirements of the Cuban Adjustment Act. The challenged directives have placed their applications on indefinite hold, preventing adjudication of their eligibility for lawful permanent residence.

79.     Plaintiffs in this category include: Brayan R. Doe (Cuba); Raidel P. Doe (Cuba); Carlos G. Doe (Mexico) (Spouse dependent of Raidel P. Doe); Gladys G. Doe (Cuba); Manuel N. Doe (Cuba).

### F. Adjustment of Status — Family-Based Applicants

80.     Plaintiffs in this category are noncitizens who have filed applications for adjustment of status based on an approved or pending family-based immigrant petition (Form I-130) or other qualifying family relationship. Each has complied with all requirements of the family-based immigration process. The challenged directives have placed their applications on indefinite hold based on their nationality or country of origin, depriving them of the ability to obtain lawful permanent residence and, in many cases, employment authorization.

81.     Plaintiffs in this category include: Aidasadat M.T. Doe (Iran); Adolfo P. Doe (Venezuela); Amin M. Doe (Iran); Amslyne K. Doe (Haiti); Andisheh G. Doe (Iran) (spouse of Amir B. Doe); Bahareh S. Doe (Iran); Bob P-L. Doe (Haiti); Fazlollah M. Doe (Iran); Zahra G. Doe (Iran) (spouse of Fazlollah M. Doe); Francys C. Doe (Venezuela); Garlyne V. Doe (Haiti); Haleema L. Doe (Afghanistan); Iman M. Doe (Iran); Jaackcirelys G. Doe (Venezuela); Javier Q. Doe (Venezuela); Jose M. Doe (Venezuela); Katiana C. Doe (Haiti); Kwadzovi A. Doe (Togo); Kyaw T. Doe (Myanmar); Marco R. Doe (Venezuela); Mya S. Doe (Myanmar); Nancy C. Doe (Haiti); Paing Y. Doe (Myanmar); Patricia P. Doe (Venezuela); Shahnaz S. Doe (Iran); Souraya H. Doe (Syria); Sylvie E. Doe (Haiti); Thinzar L. Doe (Myanmar).

### G. Adjustment of Status — Asylum-Based Applicants

82.     Plaintiffs in this category have been granted asylum in the United States and have filed

applications for adjustment of status (Form I-485) to lawful permanent residence based on their asylum grants. Presidential Proclamation 10998 § 8(d) expressly provides that the Proclamation "shall not apply to an individual who has been granted asylum by the United States." Despite that express carve-out, the Policy Memoranda have imposed the same adjudicative hold on these Plaintiffs' applications as on those filed by nationals of the designated countries generally, in direct conflict with the Proclamation's limitations.

83.     Plaintiffs in this category include: Akmurat O. Doe (Turkmenistan); Hasti H. Doe (Iran); Mawugnon Z. Doe (Togo); Mohammed A. A. Doe (Yemen); Mostafa M. Doe (Afghanistan); Munera N. Doe (Afghanistan); Raymond K. Doe (Burundi); Ye M. Doe (Myanmar).

### H. Affirmative Asylum Applicants

84.     Plaintiffs in this category have filed affirmative asylum applications (Form I-589) with USCIS and are awaiting adjudication. Each has complied with all filing requirements and is lawfully present in the United States during the pendency of the application. Presidential Proclamation 10998 § 8(d) expressly provides that nothing in the Proclamation "shall be construed to limit the ability of an individual to seek asylum." Despite that express command, Policy Memorandum PM-602-0192 imposed a blanket hold on all affirmative asylum adjudications regardless of nationality, and that hold remains in place. Defendants are subject to a mandatory duty to adjudicate asylum applications, including a statutory directive to complete adjudication within 180 days. 8 U.S.C. § 1158(d)(5)(A)(iii).

85.     Plaintiffs in this category include: Aleksei S. Doe (Russia); Aung K. Doe (Myanmar); Aye K. Doe (Myanmar); Cherry T. Doe (Myanmar); Hlaing T. Doe (Myanmar); Kamyab V. Doe (Iran); Khant S. Doe (Myanmar); Kyaw Z. Y. Doe (Myanmar); Larissa G. Doe (Burundi); Marie J. Doe (Haiti); Mariya R. Doe (Kazakhstan); Myo A. Doe (Myanmar); Percy I. Doe (Nigeria); Robert C. Doe (Kenya); Saw Z. Doe (Myanmar); Wint A. Doe (Myanmar); Zaw L. Doe (Myanmar).

### I. Employment and Travel Authorization Applicants

86.     Plaintiffs in this category have filed applications for employment authorization (Form I-765) or Optional Practical Training (OPT) extensions that remain unadjudicated as a result of the

challenged directives. Each Plaintiff is or was authorized to work and remain lawfully present in the United States, and timely filed for continued or new authorization. The challenged directives have suspended adjudication of these applications, placing Plaintiffs at imminent risk of losing lawful work authorization, income, and in some cases lawful immigration status, through no fault of their own.

87.    Plaintiffs in this category include: Aye S. Doe (Myanmar); Behrouz E. Doe (Iran); Fatema H. Doe (Afghanistan); Marjan A. Doe (Iran); Mohammedmehdi A. Doe (Iran); Zhina R. Doe (Iran); Zin H. Doe (Myanmar).

*J. Additional Applicants*

88.    Plaintiffs in this category have pending immigration benefit applications that do not fit within the categories described above. Each has complied with all applicable requirements and is lawfully present in the United States. The challenged directives have suspended or delayed adjudication of their applications.

89.    Plaintiffs in this category include: Sara F. Doe (Iran) (spouse of Alireza A. Doe) (I-539).

**IMMIGRATION AND NATIONALITY ACT**

**Statutory and Regulatory Framework**
**Naturalization (INA §§ 310–319; 8 U.S.C. §§ 1421, 1446–1448; 8 C.F.R. Part 335)**

90.    Congress vested exclusive naturalization authority in USCIS and mandated adjudication of naturalization applications. 8 U.S.C. § 1421(a).

91.    Section 1446 provides that USCIS "shall conduct" an investigation and examination of each applicant. 8 U.S.C. § 1446(a), (d).

92.    Section 1447 provides that, once eligibility is established, USCIS "shall grant" naturalization and administer the oath. 8 U.S.C. § 1447(a)–(b).

93.    Implementing regulations are similarly mandatory: 8 C.F.R. § 335.3(a) requires USCIS to determine whether to grant or deny an application following examination.

**Adjustment of Status (INA § 245; 8 U.S.C. § 1255; 8 C.F.R. §§ 245.1–245.2)**

94.    Section 245 authorizes eligible noncitizens who have been inspected or paroled into the

United States to apply for adjustment of status and directs USCIS to adjudicate those applications through individualized determinations of admissibility, visa availability, and statutory eligibility. By statute, the process is not discretionary once an application is properly filed: Congress provided that eligible applicants "may apply," and that USCIS must determine eligibility based on evidence and statutory criteria.

95.    The implementing regulations confirm that obligation. Under 8 C.F.R. § 245.2(a)(1), USCIS must accept and process properly filed applications that are accompanied by required fees and initial evidence. Section 245.2(a)(5)(i) further mandates action, stating that an officer "shall adjudicate" an adjustment application and must notify the applicant of the decision. Related regulations require USCIS to request additional evidence if needed, and—after evidence is submitted—to make a determination to approve or deny the application, not to withhold action indefinitely.

96.    Congress designed adjustment as an adjudicatory benefit tied to statutory eligibility and timely access to permanent residence. The statutory and regulatory framework assumes movement toward a final decision once (1) a visa is available, (2) the applicant submits the required fees and evidence, and (3) USCIS completes any necessary background review. That design is reflected in the mandatory "shall adjudicate" language and the absence of any authority to suspend adjudication based on nationality.

97.    Nothing in § 245 or its implementing regulations authorizes USCIS to refuse to act on properly filed applications, to place entire nationalities into open-ended abeyance, or to treat nationality itself as evidence of inadmissibility or risk. The adjudicative hold thus contradicts Congress's requirement of individualized adjudication and converts a mandatory statutory process into an indefinite suspension untethered to any statutory criteria.

### Asylum (INA § 208; 8 U.S.C. § 1158; 8 C.F.R. Part 208)

98.    Section 208 provides that "any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . .) may apply for asylum," 8 U.S.C. § 1158(a)(1), and mandates adjudication of such applications. Congress imposed specific procedural requirements governing affirmative asylum, including deadlines and mandatory

processing obligations. Section 1158(d)(5)(A) directs DHS to conduct an initial interview within 45 days and to complete adjudication within 180 days absent exceptional circumstances—reflecting Congress's intent that asylum claims be decided, not suspended.

99.     The implementing regulations mirror these statutory obligations. Under 8 C.F.R. § 208.9, USCIS must interview asylum applicants to evaluate eligibility, credibility, and statutory bars. Section 208.14 requires adjudicators to take action following an interview—granting asylum, denying it, or referring the application to the Department of Justice for removal proceedings. These steps form a mandatory adjudicatory sequence: interview; evaluate evidence; issue a decision or referral. The regulations contemplate continuous processing and expressly provide for actions at each stage, not indefinite holds.

100.     The statutory design recognizes asylum as a humanitarian protection grounded in international and domestic law, with specific protections for timely adjudication and eligibility to obtain work authorization during the process. Congress required DHS to move cases forward through individualized adjudication and to complete them within prescribed timeframes. Nothing in § 1158 or Part 208 authorizes DHS or USCIS to halt asylum adjudications categorically, to suspend interviews across the board, or to impose moratoria based solely on nationality. Such adjudicative holds convert a mandatory adjudicatory framework into an open-ended asylum limbo that Congress expressly sought to prevent through statutory deadlines and individualized assessment requirements.

**Employment Authorization (INA § 208(d); 8 C.F.R. §§ 208.7, 274a.12)**

101.     Section 208(d) and implementing regulations require DHS to process work authorization applications for eligible asylum applicants and renewal applicants.

102.     Regulations provide that DHS "shall grant" employment authorization after required timeframes. 8 C.F.R. § 208.7(a).

103.     The regulatory scheme imposes mandatory duties to accept, process, and adjudicate work authorization applications and contains no authority for categorical or indefinite suspension.

**Prohibition on Nationality-Based Discrimination (8 U.S.C. § 1152(a)(1)(A))**

104. For much of the twentieth century, the federal immigration system was structured around national-origin quotas that explicitly allocated immigration benefits on the basis of nationality and race. The Immigration Act of 1924 imposed formal national-origin limits that restricted immigration from Asia, Africa, and southern and eastern Europe.

105. Although the 1952 Immigration and Nationality Act carried forward elements of the quota system, Congress repudiated nationality-based allocation in the Immigration and Nationality Act of 1965, Pub. L. No. 89-236. The 1965 amendments abolished the national-origin quota system and replaced it with a uniform preference system based on family and employment categories.

106. As part of this shift, Congress enacted § 202(a)(1)(A), now codified at 8 U.S.C. § 1152(a)(1)(A), which provides that "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."

107. Section 202(a)(1)(A) was designed as a categorical barrier against the reintroduction of nationality-based preferences or penalties in the allocation of immigration benefits. Legislative history reflects Congress's express intent to ensure that nationality could not serve as a proxy for eligibility or risk.

108. Although § 202(a)(1)(A) applies directly to immigrant visa issuance abroad, it necessarily informs the treatment of immigrant-visa-dependent domestic benefits—particularly adjustment of status and naturalization—which derive from visa eligibility and share the same statutory framework. Domestic adjudication of these benefits must therefore be free from nationality-based discrimination.

109. The INA reflects Congress's deliberate structural choice: individualized adjudication based on statutory eligibility criteria, not categorical judgments based on nationality and/or country of birth. The challenged directives substitute nationality for individualized evidence, contrary to this core statutory design.

110. Defendants' policy of placing all applicants from thirty-nine designated countries into open-ended "security posture" holds reintroduces nationality and/or country of birth as a controlling

factor in domestic adjudication, effectively reviving the very form of discrimination Congress abolished in 1965.

111.    Nothing in the INA authorizes DHS or USCIS to treat nationality and/or country of birth as a basis for suspending adjudication or imposing heightened scrutiny absent individualized findings. To the contrary, nationality-based distinctions in the domestic context conflict with the statutory command of individualized adjudication and Congress's explicit rejection of national-origin systems.

112.    The challenged directives thus contravene § 202(a)(1)(A)'s nondiscrimination principle and undermine Congress's objective of eliminating nationality-based barriers to lawful immigration benefits.

### Limits of INA § 212(f) and Its Inapplicability to Domestic Adjudication

113.    While INA § 212(f), codified at 8 U.S.C. § 1182(f), authorizes the President to "suspend the entry" of noncitizens whose admission would be detrimental to the interests of the United States, the statutory text is expressly confined to entry—not adjudication of applications for individuals already physically present in the United States.

114.    Section 212(f) operates at consulates and the border, and governs visa issuance abroad and admission at ports of entry. It does not grant authority to override domestic adjudication obligations imposed by Congress on USCIS. In this suit, Plaintiffs do not challenge the Executive's authority to regulate or limit the entry of certain foreign nationals into the United States.

115.    Congress created a structural division between border entry authority and domestic adjudication authority: the former resides with the President and the Departments of State and Homeland Security; the latter resides with USCIS under chapters 4, 5, and 12 of the INA. See 8 U.S.C. §§ 1421–1448, 1255, 1158.

116.    Nothing in § 1182(f) authorizes the President or DHS to: (a) suspend naturalization interviews or oath ceremonies; (b) halt or delay adjustment of status adjudications; (c) stop processing affirmative asylum adjudications; or (d) suspend employment authorization tied to applications in the

domestic system.[2]

117.    Congress could have granted the Executive authority to suspend domestic adjudications based on nationality or security posture; it did not. Instead, Congress imposed mandatory adjudication duties and prohibited nationality-based and birthplace discrimination.

118.    Defendants' reliance on § 1182(f) to justify domestic adjudication holds exceeds statutory authority, alters the statutory scheme Congress enacted, and is ultra vires.

## CLAIMS FOR RELIEF

## COUNT I — ULTRA VIRES EXECUTIVE ACTION

119.    Plaintiffs incorporate the preceding paragraphs.

120.    The INA grants the President limited authority under § 1182(f) to suspend the entry of certain foreign nationals, but does not authorize the suspension or indefinite deferral of domestic immigration adjudications conducted by USCIS.

121.    USCIS is statutorily required to adjudicate applications for naturalization, adjustment of status, asylum, and employment authorization. These are mandatory duties imposed by Congress through the INA and its implementing regulations. USCIS lacks authority to suspend adjudication en masse or to impose categorical holds based solely on nationality and/or place of birth.

122.    The challenged directives—Presidential Proclamations 10949 and 10998, Policy Alert PA-2025-26, and Policy Memoranda PM-602-0192 and PM-602-0194—convert the President's § 1182(f) entry authority into a domestic adjudication moratorium, exceeding statutory limits and displacing mandatory adjudicatory obligations that Congress assigned to USCIS.

123.    The directives conflict with statutory requirements, including the mandatory "shall" language in 8 U.S.C. §§ 1446–1447 (naturalization), § 1158(d)(5) (asylum), and the adjudication requirements in 8 C.F.R. §§ 208.9, 208.14, and 245.2(a)(5)(i) (adjustment of status).

124.    As set forth in Count III, the adjudicative hold policy also exceeds and conflicts with the

_____

    [2] In *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), the Supreme Court addressed only the scope of § 1182(f) with respect to entry and consular visa issuance. The Court did not extend § 1182(f) to domestic adjudications and did not hold that it overrides statutory adjudication mandates.

express limitations of Presidential Proclamation 10998 § 8(d), and is therefore ultra vires for this additional reason.

125.    Defendants acted outside the scope of delegated authority and contrary to the statutory framework Congress enacted. Because Congress did not authorize these measures, the challenged directives are ultra vires and must be set aside.

## COUNT II — APA: AGENCY ACTION UNLAWFULLY WITHHELD AND UNREASONABLY DELAYED (5 U.S.C. § 706(1))

126.    Plaintiffs incorporate the preceding paragraphs.

127.    Defendants' implementation of the adjudicative hold policies has unlawfully withheld and unreasonably delayed agency action required by law. By categorically suspending final adjudication of Plaintiffs' pending applications without any defined endpoint, Defendants have failed to carry out mandatory adjudicatory duties imposed by the INA, applicable regulations, and 5 U.S.C. § 555(b).

128.    Under 5 U.S.C. § 706(1), a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed."

129.    Congress has imposed on USCIS discrete, mandatory duties to adjudicate each of the categories of immigration benefit applications at issue in this case: (a) Naturalization: Congress directed that USCIS "shall conduct" an investigation and examination of each applicant, 8 U.S.C. § 1446(a), (d), and that once eligibility is established, USCIS "shall grant" naturalization and administer the oath of allegiance, 8 U.S.C. § 1447(a)–(b); (b) Adjustment of Status: Implementing regulations mandate that a USCIS officer "shall adjudicate" each adjustment application and notify the applicant of the decision, 8 C.F.R. § 245.2(a)(5)(i); (c) Asylum: Congress directed that DHS shall conduct an initial interview within 45 days and complete adjudication within 180 days, absent exceptional circumstances, 8 U.S.C. § 1158(d)(5)(A)(ii)–(iii); and (d) Employment Authorization: Regulations provide that DHS "shall grant" employment authorization to eligible applicants after required timeframes, 8 C.F.R. § 208.7(a).

130.    Each of these adjudicatory duties is a discrete agency action that USCIS is legally required to perform. The duty to adjudicate each properly filed application is not a broad programmatic

obligation, but a specific, nondiscretionary act owed to each individual applicant under the governing statutes and regulations.

131.    USCIS has unlawfully withheld and unreasonably delayed the performance of these mandatory duties with respect to each Plaintiff. Rather than adjudicating Plaintiffs' properly filed applications in accordance with the statutory and regulatory framework, USCIS has placed those applications into indefinite adjudicative holds pursuant to Policy Memoranda PM-602-0192 and PM-602-0194. USCIS has not denied Plaintiffs' applications; it has refused to act on them at all.

132.    The agency's refusal to adjudicate is not based on any individualized assessment of Plaintiffs' applications, any case-specific deficiency, or any statutory ground for withholding action. It is based solely on Plaintiffs' nationality, country of birth, or association with a designated country—criteria that do not appear in any statute or regulation as a basis for withholding adjudication.

133.    Many Plaintiffs have had applications pending for months or years, have completed all steps required of them—including interviews, biometrics, and responses to requests for evidence—and in some cases have been approved and are awaiting only the administration of an oath or the issuance of a document. The withholding of final action on these applications is both unlawful and unreasonable.

134.    Plaintiffs are entitled to an order under 5 U.S.C. § 706(1) compelling USCIS to adjudicate their pending applications in accordance with the statutory and regulatory requirements applicable to each benefit category.

### COUNT III — APA: CONTRARY TO LAW (5 U.S.C. § 706(2)(A), (C))

135.    Plaintiffs incorporate the preceding paragraphs.

***A. The Adjudicative Hold Policy Conflicts with Mandatory Statutory and Regulatory Duties to Adjudicate.***

136.    The APA directs courts to "hold unlawful and set aside" agency action that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C). The adjudicative hold policy and the significant negative factor policy are each contrary to law on multiple, independent grounds.

137.    The adjudicative hold policy set forth in Policy Memoranda PM-602-0192 and PM-602-0194 conflicts with the statutory and regulatory mandates requiring USCIS to adjudicate the categories of benefit applications at issue in this case.

138.    With respect to naturalization, Congress directed that USCIS employees designated to conduct examinations "shall make a determination as to whether the application should be granted or denied, with reasons therefore." 8 U.S.C. § 1446(d). With respect to asylum, Congress directed that final adjudication "shall be completed within 180 days after the date an application is filed," absent exceptional circumstances. *Id.* § 1158(d)(5)(A)(iii). With respect to adjustment of status, USCIS regulations require that "[t]he applicant shall be notified of the decision of the director." 8 C.F.R. § 245.2(a)(5)(i). With respect to employment authorization, USCIS regulations require that an applicant whose application is granted "shall be notified of the decision," and an applicant whose application is denied "shall be notified in writing of the decision and the reasons for the denial." *Id.* § 274a.13(b)–(c). The Administrative Procedure Act further requires that each agency "shall proceed to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b).

139.    The adjudicative hold policy, which indefinitely halts the adjudication of these applications based solely on nationality, country of birth, or association with a designated country, is contrary to these mandatory adjudicatory duties.

**B. The Adjudicative Hold and Significant Negative Factor Policies Exceed Defendants' Authority Under INA § 212(f).**

140.    INA § 212(f), 8 U.S.C. § 1182(f), authorizes the President to "suspend the entry" of "any class of aliens" into the United States. The Supreme Court has confirmed that § 1182(f) "grants the President broad discretion to suspend the entry of aliens into the United States." Trump v. Hawaii, 585 U.S. 667, 683–84 (2018) (emphasis added).

141.    By its plain text, § 1182(f) authorizes restrictions on entry, not the suspension of domestic adjudications for noncitizens already admitted to the United States. As the Supreme Court has explained, admissibility and entry "operate in [a] different spher[e]" than the allocation of visas and immigration

benefits. Hawaii, 585 U.S. at 695. The challenged directives, which apply exclusively to the domestic adjudication of benefit applications by noncitizens already lawfully present in the United States, exceed the authority conferred by § 1182(f).

**C. The Significant Negative Factor Policy Violates § 1152(a)(1)(A)'s Prohibition on Nationality Discrimination as Applied to Adjustment of Status and Work Authorization.**

142.    Section 1152(a)(1)(A) provides that, with limited exceptions not relevant here, "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence." 8 U.S.C. § 1152(a)(1)(A). Applications for adjustment of status and the work authorization applications at issue in this case depend on the allocation of immigrant visas and are accordingly subject to § 1152(a)(1)(A)'s prohibition on nationality-based discrimination.

143.    The significant negative factor policy expressly draws distinctions on the basis of nationality, instructing USCIS officers to treat the nationality of applicants from any of the thirty-nine designated countries as a "significant negative factor" in adjudicating their benefit applications. The policy is contrary to § 1152(a)(1)(A) as applied to applications for adjustment of status and work authorization.

**D. The Significant Negative Factor Policy Is Contrary to the INA's Statutory Frameworks Governing Asylum and Naturalization.**

144.    The significant negative factor policy is also contrary to law as applied to applications for asylum and naturalization, because each of those statutory frameworks defines eligibility by reference to individualized criteria that leave no room for a nationality-based thumb on the scale.

145.    With respect to asylum, the INA provides that "[a]ny alien who is physically present in the United States or who arrives in the United States . . ., irrespective of such alien's status, may apply for asylum." 8 U.S.C. § 1158(a)(1). The statute defines eligibility by reference to the individualized refugee definition in § 1101(a)(42)—which turns on past persecution or a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion"—and not by reference to the applicant's nationality. § 1158(b)(1)(A); § 1101(a)(42)(A). The bars to asylum

enumerated in § 1158(b)(2) likewise reflect individualized conduct or status determinations (persecutor of others; conviction of a particularly serious crime; commission of a serious nonpolitical crime abroad; danger to U.S. security; terrorist activity; firm resettlement). Nationality from a designated country appears nowhere among these enumerated bars. Under the canon of expressio unius, Congress's careful enumeration of disqualifying factors forecloses the addition by executive fiat of nationality as a further disqualifying factor. Imposing a nationality-based "significant negative factor" on asylum adjudications conflicts with the INA's statutory scheme for asylum eligibility, which Congress made nationality-blind by design.

146.    With respect to naturalization, Congress directed that "[t]he right of a person to become a naturalized citizen of the United States shall not be denied or abridged because of race, sex, or marital status." 8 U.S.C. § 1422. While that provision does not expressly enumerate nationality, the broader naturalization framework reflects the same congressional design: eligibility for naturalization is defined entirely by reference to individualized statutory criteria—lawful permanent residence, statutory residency and physical presence, good moral character, knowledge of English and U.S. civics, and attachment to the principles of the Constitution. 8 U.S.C. § 1427(a). Good moral character is itself defined by reference to enumerated disqualifying conduct, none of which includes nationality. *Id.* §§ 1101(f), 1427(e). Naturalization decisions must be made on the basis of "the applicant's conduct and acts at any time prior to that period." § 1427(e). The INA's naturalization framework leaves no room for nationality to operate as a categorical negative factor; doing so would convert an individualized statutory inquiry into a nationality-based screen Congress neither authorized nor contemplated.

147.    The significant negative factor policy is, accordingly, contrary to the statutory frameworks governing asylum and naturalization in 8 U.S.C. §§ 1158, 1422, and 1427.

### *E. The Adjudicative Hold Exceeds and Conflicts with the Presidential Proclamations the Policy Memoranda Invoke as Authority.*

148.    The Policy Memoranda expressly rely on Presidential Proclamations 10949 and 10998 as the source of authority for the adjudicative hold policy. An agency policy that exceeds or conflicts with

the source of authority it invokes is contrary to law under 5 U.S.C. § 706(2)(A).

149.    Section 8(d) of Proclamation 10998 imposes two express limitations on the Proclamation's scope: it shall not apply to individuals already granted asylum or admitted as refugees, and it shall not be construed to limit the ability of any individual to seek asylum, refugee status, withholding of removal, or protection under the Convention Against Torture. PP 10998, § 8(d).

150.    The adjudicative hold policy exceeds these express limitations in two respects. First, the Policy Memoranda apply the adjudicative hold to applications filed by individuals already granted asylum, including applications to adjust status to lawful permanent residence based on the asylum grant. This contradicts § 8(d)'s express exclusion of asylees and refugees from the Proclamation's scope. Second, the Policy Memoranda apply a blanket adjudicative hold to all pending Form I-589 asylum applications, regardless of the applicant's nationality. This contradicts § 8(d)'s express command that the Proclamation not be construed to limit the ability of any individual to seek asylum.

151.    The adjudicative hold policy is therefore contrary to law within the meaning of 5 U.S.C. § 706(2)(A) and (C), because it exceeds and conflicts with the very Proclamation the Policy Memoranda invoke as authority.

152.    For these reasons, the adjudicative hold policy and the significant negative factor policy are contrary to law and in excess of statutory jurisdiction, authority, or limitations within the meaning of 5 U.S.C. § 706(2)(A) and (C), and must be set aside.

### COUNT IV — APA: ARBITRARY AND CAPRICIOUS (5 U.S.C. § 706(2)(A))

153.    Plaintiffs incorporate the preceding paragraphs.

154.    The Administrative Procedure Act directs courts to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Both the adjudicative hold policy set forth in Policy Memoranda PM-602-0192 and PM-602-0194 and the significant negative factor policy set forth in Policy Alert PA-2025-26 are arbitrary and capricious within the meaning of § 706(2)(A).

155.    The challenged directives were issued without adequate explanation, evidentiary basis, or

reasoned decision-making as required under the APA.

156.    PM-602-0192 was issued with no exceptions for any category of applicant or benefit type, no criteria for individualized determination, no timelines, no sunset provisions, no standards for lifting holds, and no mechanisms for affected applicants to seek review or exemption.

157.    PM-602-0194 added ten categories of exceptions, but those exceptions are narrow and largely irrelevant to the core benefit categories at issue in this case—naturalization, adjustment of status, asylum, and employment authorization. The exceptions principally address replacement documents, law enforcement priorities, sporting events, and program terminations. They do not provide meaningful relief to applicants whose cases have been placed on indefinite hold.

158.    PM-602-0194 directed that USCIS would issue operational guidance within 90 days. That self-imposed deadline expired on or about April 1, 2026. Upon information and belief, no such operational guidance has been issued, and the adjudicative holds remain in place without the operational framework USCIS itself determined was necessary.

159.    PM-602-0194 eliminated the broad exemption for family-based immigrant visa applications that had existed under PP 10949, subjecting family-based applicants to the same adjudicative hold without adequate explanation for that change.

160.    Defendants failed to consider the reliance interests of the hundreds of thousands of applicants who filed applications in compliance with statutory requirements and in reasonable reliance on timely adjudication. Defendants failed to consider the statutory mandates requiring adjudication. Defendants failed to consider or adopt less restrictive alternatives, such as individualized background checks and case-by-case review, that would have permitted continued adjudication while addressing any legitimate security concerns.

161.    The breadth, indefinite duration, and nationality-based character of the adjudicative holds, combined with the absence of reasoned explanation, the failure to issue promised operational guidance, and the disregard of statutory obligations and reliance interests, render the challenged directives arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A).

162. USCIS failed to articulate a rational connection between the factual bases offered for the adjudicative hold policy and the scope of the policy. The Policy Memoranda reference two isolated criminal acts planned or committed by Afghan nationals and the country-specific vetting and screening findings set forth in Presidential Proclamations 10949 and 10998. Neither of these factual bases supports halting domestic benefit adjudications for nationals of thirty-nine designated countries, much less halting all asylum adjudications regardless of nationality. The Policy Memoranda extrapolate from the conduct of two individuals to thousands of unrelated applicants from dozens of countries, and from country-specific entry findings to a worldwide suspension of asylum adjudication, without any reasoned explanation for either extrapolation.

163. The factual findings in Presidential Proclamations 10949 and 10998 concern the adequacy of foreign governments' systems for vetting and screening their nationals in advance of entry into the United States. Domestic benefit adjudication for noncitizens already admitted to the United States is a separate process governed by separate statutory and regulatory provisions, and Defendants have offered no reasoned explanation for treating findings about foreign vetting systems as a basis for suspending domestic adjudications. Many of the Plaintiffs have been lawfully present in the United States for years or decades, have undergone extensive prior screening by the United States government, and have already been determined eligible for the benefits they seek.

164. USCIS failed to consider the reliance interests of applicants affected by the adjudicative hold policy. Plaintiffs and class members reasonably relied on the prior policy of issuing decisions on benefit applications, and that reliance shaped their professional, educational, financial, and family planning. USCIS did not assess whether these reliance interests existed, did not weigh them against the policy's stated objectives, and did not consider alternatives to a categorical adjudicative hold that would have permitted final adjudication to occur while addressing any individualized concerns. The conclusory statement in PM-602-0194 that the agency had "considered" the consequence of delay and "weighed" it against vetting concerns does not satisfy the agency's obligation to engage with significant reliance interests.

165.    Policy Alert PA-2025-26, which directs USCIS officers to treat nationality from one of the thirty-nine designated countries as a "significant negative factor" in the adjudication of benefit applications, is independently arbitrary and capricious.

166.    Defendants failed to provide a reasoned explanation for the significant negative factor policy. The Policy Alert relies on the same country-specific vetting and screening findings set forth in Presidential Proclamations 10949 and 10998, but those findings concern foreign governments' systems for vetting their nationals in advance of entry into the United States. Defendants offered no reasoned explanation for why such findings bear on the discretionary adjudication of benefit applications filed by individuals already admitted to the United States, many of whom have undergone extensive prior screening, have been lawfully present in the United States for years, and have already been determined eligible for the benefits they seek. Defendants also failed to explain why nationality from a designated country—standing alone, without any individualized derogatory information—is a rational proxy for adverse discretionary factors in domestic benefit adjudications.

167.    Defendants failed to consider the reliance interests of applicants affected by the significant negative factor policy. Applicants and their families reasonably relied on the prior policy under which their applications would be adjudicated based on individualized assessment, and that reliance shaped their professional, educational, financial, and family planning. Defendants did not assess whether these reliance interests existed, did not weigh them against the policy's stated objectives, and did not consider alternatives to a categorical nationality-based negative factor.

### COUNT V — APA: NOTICE-AND-COMMENT VIOLATION (5 U.S.C. § 553)

168.    Plaintiffs incorporate the preceding paragraphs.

169.    Policy Memoranda PM-602-0192 and PM-602-0194 impose binding consequences on the adjudication of immigration benefit applications, alter the rights and obligations of affected applicants, and suspend the performance of statutory duties. They are substantive rules with immediate and direct legal effect.

170.    PM-602-0192 imposed a categorical hold on all affirmative asylum adjudications and on

all pending benefit requests filed by nationals of nineteen designated countries. PM-602-0194 extended that hold to nationals of thirty-nine countries and eliminated the family-based exemption. Both memoranda prescribe binding standards that USCIS adjudicators must follow and that determine whether applications will be adjudicated.

171. Despite their substantive effect, neither PM-602-0192 nor PM-602-0194 was issued through notice-and-comment rulemaking. DHS and USCIS did not publish proposed rules, did not solicit public comment, and did not provide public notice prior to implementation. No notice appeared in the Federal Register for either memorandum.

172. The memoranda's disclaimers—stating that they are "intended solely for the guidance of USCIS personnel" and do not "create any right or benefit, substantive or procedural, enforceable under law"—do not alter their substantive character. A rule's legal effect is determined by its practical impact, not by the agency's self-serving characterization. The memoranda bind adjudicators, determine outcomes, and impose immediate and concrete consequences on affected applicants.

173. By adopting substantive rules without notice-and-comment rulemaking, Defendants violated 5 U.S.C. § 553 and the directives must be set aside under § 706(2)(D).

### COUNT VI — EQUAL PROTECTION (FIFTH AMENDMENT)

174. Plaintiffs incorporate the preceding paragraphs.

175. The Fifth Amendment's Due Process Clause includes an equal protection component that applies to the federal government. Plaintiffs are all physically present and lawfully residing in the United States and are entitled to equal protection under the Fifth Amendment.

### A. The Challenged Directives Are Classifications on the Basis of National Origin.

176. The adjudicative hold policy and the significant negative factor policy expressly classify Plaintiffs on the basis of nationality, country of birth, or association with one of thirty-nine designated countries. Policy Memoranda PM-602-0192 and PM-602-0194 place applications by nationals of those countries on an indefinite adjudicative hold. Policy Alert PA-2025-26 directs USCIS officers to treat nationality from those countries as a "significant negative factor" in adjudicating discretionary benefit

applications.

177.    These are facial classifications on the basis of national origin. They do not turn on individualized determinations of derogatory information, conduct, or risk. They apply to every applicant who is a national of, or who was born in, one of the designated countries—including applicants who have undergone extensive prior screening, have been lawfully present in the United States for years or decades, and have been previously found eligible for the benefits they seek.

### B. Trump v. Hawaii Does Not Govern Domestic Benefit Adjudications.

178.    *Trump v. Hawaii*, 585 U.S. 667 (2018), upheld the President's authority under INA § 212(f) to impose nationality-based restrictions on the entry of foreign nationals into the United States. Hawaii did not address—and did not authorize—nationality-based classifications applied to the domestic adjudication of immigration benefits filed by individuals already lawfully admitted to the United States. As the Supreme Court explained in Hawaii, admissibility and entry "operate in [a] different spher[e]" than the allocation of immigration benefits. 585 U.S. at 695. The deference to executive power discussed in Hawaii was tied to the President's authority over "matters of entry and national security," Id. at 704, not to USCIS's adjudication of domestic benefit applications by noncitizens already present in this country.

179.    The challenged directives operate in the domestic adjudication sphere that *Hawaii* expressly distinguished. The directives apply exclusively to applications filed by individuals lawfully admitted and present in the United States, who are not seeking entry and whose admissibility has already been determined. The reduced scrutiny applied in *Hawaii* to entry-based classifications under § 1182(f) does not extend to nationality-based classifications imposed on the domestic adjudication of immigration benefits.

### C. The Constitutional Rights of U.S. Citizen Beneficiaries Are Burdened.

180.    The Supreme Court has recognized that "although foreign nationals seeking admission have no constitutional right to entry, this Court has engaged in a circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Hawaii*, 585 U.S. at 703. The challenged directives burden the constitutional rights of numerous U.S. citizen beneficiaries—including

U.S. citizen spouses, parents, children, and employers of Plaintiffs—whose family-based and employment-based petitions have been suspended solely because of the nationality of their beneficiaries. These U.S. citizen petitioners have a direct interest in the timely adjudication of the benefit applications they filed on behalf of their family members and employees, and the challenged directives deny that adjudication on the basis of an impermissible nationality-based classification.

### D. The Directives Cannot Survive Any Level of Equal Protection Scrutiny.

181. The challenged directives cannot survive even rational basis review. The government has offered two purported justifications: (1) two isolated criminal incidents involving Afghan nationals, and (2) the President's findings in Presidential Proclamations 10949 and 10998 regarding the adequacy of certain foreign governments' vetting and screening systems for individuals seeking entry to the United States. Neither rationally supports the classifications imposed by the challenged directives.

182. The criminal conduct of two individuals does not rationally support adjudicative holds and adverse discretionary treatment imposed on tens of thousands of noncitizens from thirty-nine countries, much less the blanket asylum hold imposed on applicants from every country in the world.

183. The Presidential Proclamations' findings about foreign vetting and screening systems concern the assessment of individuals seeking entry to the United States. Those findings do not rationally support adverse adjudicatory treatment of individuals who have already been admitted to the United States—often years or decades ago—who have undergone extensive United States government screening at the time of their admission and at multiple subsequent stages, and who have been found eligible for the benefits they now seek. The challenged directives apply a foreign-vetting rationale to a domestic-adjudication context where that rationale has no traction.

184. The classifications imposed by the challenged directives are also overbroad and underinclusive in ways that confirm the absence of a rational fit. They sweep in lawful permanent residents seeking naturalization, employment-based applicants who have already been approved for permanent residence, asylees and refugees seeking adjustment based on protected status, and U.S.-citizen-petitioned beneficiaries whose applications have been individually adjudicated and approved

at every prior stage. At the same time, the directives ignore nationals of other countries with comparable or higher visa-overstay rates, comparable or greater identified security risks, or comparable foreign-government vetting deficiencies, who are not subject to any adjudicative hold or significant negative factor.

185.    Even if the directives could survive rational basis review—which they cannot—they would fail heightened scrutiny. National origin classifications by the federal government in the context of domestic civil rights have historically been subject to careful scrutiny. The challenged directives revive a form of nationality-based discrimination that Congress abolished in the 1965 Immigration and Nationality Act amendments and impose it on individuals who are lawfully present in the United States, have complied with all statutory and regulatory requirements, and in many cases have already been determined eligible for the benefits they seek.

186.    The adjudicative hold policy and the significant negative factor policy violate the equal protection component of the Fifth Amendment's Due Process Clause and must be set aside.

### COUNT VII — PROCEDURAL DUE PROCESS (FIFTH AMENDMENT)

187.    Plaintiffs incorporate the preceding paragraphs.

*A. Plaintiffs Are Entitled to the Protections of the Due Process Clause.*

188.    Plaintiffs are all physically present and lawfully residing in the United States. The Due Process Clause applies to all persons within the United States, including noncitizens, regardless of whether their presence is temporary or permanent. Plaintiffs are therefore entitled to the procedural protections of the Fifth Amendment's Due Process Clause.

*B. Plaintiffs Have Constitutionally Protected Liberty and Property Interests in the Adjudication of Their Applications.*

189.    A protected property interest arises where an individual has a legitimate claim of entitlement rooted in statutes, regulations, or rules that secure certain benefits. Congress has created mandatory adjudicatory schemes governing naturalization, adjustment of status, asylum, and employment authorization, which impose nondiscretionary statutory and regulatory duties on USCIS to adjudicate

properly filed applications and to issue decisions to applicants. 8 U.S.C. §§ 1446(b), (d), 1447(a)–(b), 1158(d)(5)(A)(ii)–(iii);  8 C.F.R.  §§ 245.2(a)(5)(i), 208.7, 274a.13(b)–(c); 5 U.S.C. § 555(b). These mandatory schemes give rise to a legitimate claim of entitlement to adjudication of properly filed applications.

190.    Plaintiffs also have constitutionally protected liberty interests at stake. Non-citizens lawfully residing in the United States have liberty interests in continuing to live and work in this country. The challenged directives place Plaintiffs at risk of losing lawful status, employment authorization, the ability to work and support themselves and their families, and the ability to remain present in the United States—each implicating liberty interests protected by the Due Process Clause. Naturalization applicants who have been recommended for or formally approved for citizenship have particularly strong interests, having completed every step required of them and awaiting only the ministerial administration of the oath of allegiance.

### C. The Challenged Directives Deprive Plaintiffs of These Interests Without Adequate Procedures.

191.    The adequacy of procedures is evaluated by weighing three considerations: (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the probable value of additional safeguards, and (3) the government's interest, including the burden that additional procedures would impose.

192.    The private interests at stake are substantial and concrete. Plaintiffs face indefinite suspension of statutory benefits to which they are entitled by Congress, loss of employment, lapse of lawful status, separation from family, and exposure to removal. For some Plaintiffs, the suspension of adjudication threatens loss of life-saving medical research positions, loss of livelihoods on which family members depend, and inability to reunite with spouses, children, or aging parents abroad.

193.    The risk of erroneous deprivation is severe and the value of additional safeguards is high. The challenged directives suspend adjudication based solely on nationality, country of birth, or association with a designated country—criteria that have no bearing on whether any individual applicant

satisfies the statutory eligibility requirements for the benefits sought. Many Plaintiffs have been previously approved for the benefits they seek, have completed all required interviews and biometrics, and in some cases await only the ministerial issuance of a document or administration of an oath. There is no procedural mechanism for any affected applicant to challenge the hold, present individualized evidence, seek exemption, or obtain administrative or judicial review of the suspension's application to their case. Even minimal additional procedures—such as advance notice, a statement of grounds, and an opportunity to present individualized evidence—would substantially reduce the risk of erroneous deprivation by ensuring that adjudication is suspended only where individualized concerns exist.

194.    The government's interest in the adjudicative hold policy is limited. The government can address any legitimate individualized security or screening concerns through case-specific investigation, the existing background check infrastructure, and the targeted withholding-of-adjudication procedures in 8 C.F.R. § 103.2(b)(18). The adjudicative hold does not facilitate the government's screening and vetting interests; to the contrary, it suspends adjudication without conducting any individualized review at all.

### D. The Challenged Directives Provide No Notice or Process.

195.    Defendants provided no advance notice of the adjudicative hold or the significant negative factor policy. Plaintiffs were not informed before their applications were placed on hold; in many cases, they discovered the hold only through cancelled interviews, cancelled oath ceremonies, or unexplained processing delays. Defendants have provided no statement of the grounds on which any individual Plaintiff's application has been placed on hold, no estimated duration or end date for the hold, no standards governing its lifting, and no administrative mechanism for any Plaintiff to contest its application, present individualized evidence, request exemption, or seek expedited review.

196.    By imposing an indefinite, nationality-based suspension of statutory adjudications without notice, without individualized determination, and without any meaningful opportunity to be heard, Defendants have deprived Plaintiffs of liberty and property interests without due process of law, in violation of the Fifth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1.    Certify this action as a class action under Federal Rule of Civil Procedure 23(b)(2), with two subclasses as defined herein, appoint the named Plaintiffs as class representatives, and appoint Hacking Immigration Law, LLC as class counsel pursuant to Rule 23(g);

2.    Declare that Presidential Proclamations 10949 and 10998, to the extent they have been applied by the Defendants to suspend or delay domestic immigration adjudications, exceed the authority granted by INA § 212(f) and are unlawful as so applied;

3.    Declare that the adjudicative hold policy set forth in Policy Memoranda PM-602-0192 and PM-602-0194 and the significant negative factor policy set forth in Policy Alert PA-2025-26 are contrary to law, arbitrary and capricious, and were promulgated without notice-and-comment rulemaking, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 553 and 706(2);

4.    Declare that the challenged directives violate the equal protection and due process guarantees of the Fifth Amendment;

5.    Set aside and vacate, pursuant to 5 U.S.C. § 706(2), Policy Memoranda PM-602-0192 and PM-602-0194 and Policy Alert PA-2025-26 as applied to domestic USCIS adjudications, including naturalization, adjustment of status, affirmative asylum, and employment authorization;

6.    Enjoin Defendants from applying the challenged directives to suspend, delay, or impose nationality-based holds on the domestic adjudication of immigration benefit applications absent individualized, case-specific statutory grounds;

7.    Compel Defendants, pursuant to 5 U.S.C. § 706(1), to perform their mandatory, nondiscretionary duties to adjudicate Plaintiffs' pending applications in accordance with the statutory and regulatory framework governing each benefit category, including 8 U.S.C. §§ 1446(b), (d), 1447(a)–(b), 1158(d)(5)(A)(ii)–(iii); 8 C.F.R. §§ 245.2(a)(5)(i), 208.7, 274a.13(b)–(c); and 5 U.S.C. § 555(b);

8.    Award attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

9.    Grant any further relief the Court deems just and proper.

**RESPECTFULLY SUBMITTED**

May __, 2026

**/s/ Stefanie Fisher-Pinkert**

Stefanie Fisher-Pinkert

BBO#676653

655 Centre St, Box 300151

Jamaica Plain, MA 02130

(C) 203-952-1809

(E) stef@sfpbriefing.com

**/s/ James O. Hacking, III**

James O. Hacking, III

MO Bar # 46728

*Admitted Pro Hac Vice*

Hacking Immigration Law, LLC

10121 Manchester Road, Suite A

St. Louis, MO 63122

(O) 314.961.8200

(F) 314.961.8201

(E) jim@hackingimmigrationlaw.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on May __, 2026, a true and correct copy of the foregoing was served on Defendants by filing the document through the Court's CM/ECF system.

**/s/ James O. Hacking, III**

James O. Hacking, III