**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

Akmurat O. Doe; S. Ferdows A. Doe; Marie J. Doe; Raidel P. Doe; Carlos G. Doe; Brayan R. Doe; Mohamed M. Doe; Sawsan M. Doe; Arash E. Doe; Haleema L. Doe; Alireza N. Doe; Mariya R. Doe; Robert C. Doe; Munera N. Doe; Manuel N. Doe; Mawugnon Z. Doe; Khalida N. Doe; Pedram R. Doe; Aleksei S. Doe; Garlyne V. Doe; Htoo A. Doe; Thin S. Doe; Gladys G. Doe; Zin H. Doe; Seyedali M. Doe; Mya S. Doe; Amin S. Doe; Raymond K. Doe; Inimfon J. Doe; Aye S. Doe; Seyed M. R. Doe; Farzad Z. Doe; Mina R. Doe; Hamza A. Doe; Marwa G. Doe; Anas G. Doe; Asawer H. Doe; Mattathie G. Doe; Alain B. Doe; Muhammed E. Doe; Iman N. Doe; Pegah S. Doe; Kwadzovi A. Doe; Sylvie E. Doe; Shelmira M. Doe; Ali R. Doe; Jose H. Doe; Mohammadamin M. Doe; Shirin A. Doe; Alexander H. Doe; Paing Y. Doe; Arash R. Doe; Francys C. Doe; Javier Q. Doe; Mohammad J. L. Doe; Reihaneh D. Doe; Iman M. Doe; Esmaeil M. Doe; Gisoo D. Doe; Faranak K. Doe; Shahnaz S. Doe; Astrid I. Doe; Behnam T. Doe; Payman P. Doe; Khatereh S. Doe; Marjan A. Doe; Hamed S. Doe; Minoo M. Doe; Aliakbar Y. Doe; Seyedhossein H. Doe; Noushin A. Doe; Alireza A. Doe; Mohammad M. Doe; Fahimeh S. Doe; S. Nooshan Doe; Sobhan Z. Doe; Zhina R. Doe; Shahab E. Doe; Hoseyn A. Doe; Sima M. Doe; Khazar G. Doe; Hamid H. Doe; Hamid S. Doe; Soheyla S. Doe; Hasti H. Doe; S. Mojtaba Doe; Melika B. Doe; Amin M. Doe; Katiana C. Doe; Dina M. Doe; S. Alireza Doe; Navid H. Doe; Milad H. Doe; Parisa M. Doe; S. Rahman S. Doe; Mohammadreza G. Doe; Ghadir and Souraya H. Doe; Misagh E. Doe; Mostafa M. Doe; Samad A. Doe; Mohammed A. A. Doe; Kasra S. Doe; S. Mahmoud M. Doe; Mahsa P. Doe; Marjan D. Doe; Saman Z. Doe; Mahnaz V. Doe; Percy I. Doe; Larissa G. Doe; Milad. M. Doe; Masoumeh N. Doe; Nooshin Z. Doe; Seyedsajad M. Doe; Amirsalar B. Doe; Abbas K. Doe; Bahareh S. Doe; Mehdi A. Doe; Reihaneh Z. Doe; Faezeh E. Doe; Saeed B. Doe; Ali A. Doe; Emile S. Doe; Arian E. Doe; Seyedmahbod B. Doe; Mohammad M. Z. Doe; Shaghayegh V. Doe; Shiva G. Doe; Yasaman E. Doe; Aidasadat T. Doe; Ehsan S. Doe; Mohammedmehdi A. Doe; Behrouz E. Doe; Sahar E. Doe; Hamidreza H. Doe; Sara M. Doe; Fazlollah M. Doe; S. Masoumeh

Case No.   1:25-cv-13946-JEK

Doe; Seyedmostafa Z. Doe; Nancy C. Doe; Mohammad
K. Doe; Fatemeh F. Doe; Mahmood T. Doe; Kamyab V.
Doe; Hava D. Doe; Ramin S. Doe; Bob P-L. Doe;
Saharnaz E. Doe; Thinzar L. Doe; Emad S. Doe;
Anwaar A. Doe; Kyaw T. Doe; Mahdi G. Doe;
Fatemehsadat T. Doe; Sara L. Doe; Mitra B. Doe;
Seyedheydar M. Doe; Sina L. Doe; Amirhossein H.
Doe; Farnaz N. Doe; Nima A. Doe; Farzad V. Doe;
Mohammad H.A. Doe; Marco R. Doe; Adolfo P. Doe;
Aye K. Doe; Neda I. Doe; Amir B. Doe; Jaackcirelys
G. Doe; Amirhosein R. Doe; Fatemeh R. Doe;
Mehrnoosh E. Doe; Fatema H. Doe; Patricia P. Doe;
Aung Z. Doe; Cherry T. Doe; Hlaing T. Doe; Khant S.
Doe; Myo A. Doe; Saw Z. Doe; Wint A. Doe; Ye M.
Doe; Zaw L. Doe; Amslyne K. Doe; Isis M. Doe;
Shahnaz R. Doe; Vahid N. Doe; Jose M. Doe, Sol G.
Doe; and, Kyaw Z. Y. Doe.

Plaintiffs,

v.

Donald J. Trump, et al.,

Defendants.

**AMENDED COMPLAINT**

1. One hundred ninety-seven (197) immigrants bring this action to stop the Executive Branch from shutting down core components of the nation's lawful immigration system. Relying on Presidential Proclamation 10949 and subsequent DHS and USCIS directives including Policy Alert PA-2025-26 and Policy Memorandum PM-602-0192 Defendants have implemented a de facto nationwide freeze on the adjudication of immigration benefits inside the United States.

2. These policies halt or delay naturalization, adjustment of status, asylum and employment authorization for hundreds of thousands of noncitizens who are lawfully present in the United States and statutorily entitled to individualized adjudication. The freeze is categorical

and indefinite, and it targets applicants based on country of birth and/or country of citizenship, rather than individualized evidence or case-specific concerns.

3.     As implemented, the challenged policies bar affirmative asylum adjudications outright; place applicants from thirty-nine designated countries into open-ended "security posture" holds; suspend naturalization interviews and oath ceremonies; suspend green card interviews and final adjudication; and, delay issuance and renewal of employment authorization. They also instruct USCIS adjudicators to treat mere nationality from one of the thirty-nine designated countries as a "significant negative factor" in evaluating eligibility and discretion, even in the absence of any *individualized* derogatory information or security concern.

4.     Nothing in the Immigration and Nationality Act authorizes DHS or USCIS to suspend adjudications en masse, to replace individualized assessments with nationality-based review, or to convert the President's authority under 8 U.S.C. § 1182(f) over the entry of foreign nationals to the United States into a wholesale domestic adjudication moratorium. The INA assigns USCIS mandatory adjudicatory duties and expressly prohibits nationality-based discrimination in the allocation of immigration benefits.

5.     Nor does the Administrative Procedure Act permit agencies to impose binding rules of general applicability without statutory authorization, without reasoned explanation, and without notice-and-comment rulemaking, as discussed below. The challenged directives are substantive rules with immediate legal consequences, promulgated without compliance with the APA.

6.     The consequences are profound. Naturalization applicants are pulled from oath ceremonies. Adjustment applicants are denied green cards, work authorization, advance parole

and remain separated from family. Asylum seekers lose work authorization and employment. Students fall out of status. Families confront eviction, job loss, and prolonged insecurity. Immigrants face daily financial, emotional, and legal harm from the indefinite suspension of their immigration cases.

7. Plaintiffs seek declaratory relief and an order setting aside the challenged directives, and an injunction prohibiting further reliance on those directives in domestic adjudications, to restore lawful processing of these applications and to ensure compliance with statutory and constitutional limits on agency action.

## FACTUAL ALLEGATIONS

8. On June 4, 2025, President Donald J. Trump issued Presidential Proclamation 10949, invoking INA § 212(f) to restrict entry for nationals of nineteen designated countries, and directing the Department of Homeland Security to adopt a heightened "security posture" toward individuals from those countries.

9. The June 4, 2025 Proclamation identified nineteen countries subject to heightened restrictions, but it drew distinctions between those subject to a total entry suspension and those subject to partial or conditional restrictions.

10. The Proclamation imposed a complete entry ban on nationals of Afghanistan, Burma, Chad, Republic of the Congo, Equatorial Guinea, Eritrea, Haiti, Iran, Libya, Somalia, Sudan, and Yemen, blocking their admission to the United States absent narrow discretionary waivers. For nationals of seven additional countries—Burundi, Cuba, Laos, Sierra Leone, Togo, Turkmenistan and Venezuela—the Proclamation ordered heightened screening and processing requirements as conditions of entry rather than a complete bar.

11. On November 27, 2025, DHS issued Policy Alert PA-2025-26. Attached as Exhibit A and incorporated herein by reference. The Policy Alert instructed DHS components, including USCIS, to implement an "enhanced security posture" and "tiered risk framework" for nationals of the nineteen countries, and directed that nationality would trigger additional review.

12. In the accompanying November 27th press release issued by Defendant USCIS, Defendant Joseph Edlow stated that "[e]ffective immediately, I am issuing new policy guidance that authorizes USCIS officers to consider country-specific factors as **significant negative factors** when reviewing immigration requests (emphasis added)." Attached as Exhibit B and incorporated herein by reference.

13. Although § 212(f) pertains *solely* to entry, DHS interpreted the Proclamation and Policy Alert to apply to domestic immigration adjudications conducted by USCIS and directed USCIS to implement internal procedures applying the heightened posture to pending applications *within* the United States.

14. On December 2, 2025, USCIS issued Policy Memorandum PM-602-0192. Attached as Exhibit C and incorporated herein by reference. The Memorandum ordered a nationwide hold on *all* affirmative asylum adjudications and directed adjudicators to place pending benefit requests by nationals of the nineteen designated countries into indefinite "security posture" holds.

15. USCIS issued PM-602-0192 without publishing a proposed rule, without soliciting public comment, without any fact-finding and without notice-and-comment rulemaking. No notice appeared in the Federal Register, and affected applicants received no advance warning that their pending cases would be suspended.

16. PM-602-0192 did not articulate criteria, standards, or factual triggers for suspending adjudications; did not specify goals, timelines, or sunset provisions; and did not identify mechanisms for resuming adjudication.

17. This Memorandum did not require individualized assessments or evidence-based determinations, but instead relied on nationality alone to place applications on hold, without any showing of derogatory information, ineligibility, or security concern.

18. USCIS provided no mechanism for affected applicants to contest the hold, seek expedited review, or request exemption. No administrative process exists for challenging the ongoing suspension.

19. Following issuance of PM-602-0192, USCIS cancelled scheduled asylum interviews, adjustment interviews, naturalization interviews, and naturalization oath ceremonies. Notices cited "policy guidance" or "security review" without identifying individualized statutory grounds.

20. During the same period, USCIS delayed or withheld adjudication of employment authorization applications and renewals tied to frozen asylum and adjustment cases, as well as various other types of immigration cases, causing lapses in work authorization and loss of employment.

21. According to news reports, on or about December 18, 2025, the Administration expanded the scope of the adjudication freeze to nationals of an additional twenty countries that were newly added to the President's travel-ban proclamation. According to reporting by CBS News citing a senior U.S. official, USCIS extended its suspension of adjudicating petitions and

applications filed by individuals from these newly designated nations, including Burkina Faso, Mali, Niger, South Sudan, and Syria (now subject to full bans), as well as Angola, Antigua and Barbuda, Benin, Côte d'Ivoire, Dominica, Gabon, Gambia, Malawi, Mauritania, Nigeria, Senegal, Tanzania, Tonga, Zambia, and Zimbabwe (which face partial restrictions). As before, this expansion was not issued through notice-and-comment rulemaking, was not accompanied by any statutory justification for halting domestic adjudications, and further illustrates that the agency's freeze is categorical, nationality-based, and escalating in scope.

22.    The cumulative effect of these directives has been a de facto nationwide freeze on statutory immigration adjudications, including affirmative asylum, adjustment of status, naturalization, and employment authorization, for large numbers of lawfully present applicants.

*JURISDICTION AND VENUE*

23.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution, the Immigration and Nationality Act, and the Administrative Procedure Act.

24.    Judicial review is available under the Administrative Procedure Act, 5 U.S.C. §§ 702 and 704, because Plaintiffs challenge final agency actions that impose binding consequences, suspend statutory adjudication duties, and inflict concrete injuries. Sovereign immunity is waived for claims seeking non-monetary relief.

25.    Taken as a whole, Policy Alert PA-2025-26, Policy Memorandum PM-602-0192 and Defendant Edlow's purported policy guidance directing USCIS officers to consider country-specific factors as "significant negative factors," constitute final agency action because they determine rights and obligations, bind USCIS adjudicators with no guidance as to how to

proceed, and have direct and immediate legal consequences for Plaintiffs.

26.    The relief sought is authorized under 5 U.S.C. § 706, which empowers courts to set aside agency actions that exceed statutory authority, conflict with governing law, or violate procedural requirements:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be —
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;...

27.    Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(e), because Plaintiffs Akmurat Doe, S. Ferdows A. Doe, Sahar E. Doe, Larissa G. Doe, Isis M. Doe and Emile S. Doe reside within this District, USCIS conducts and withholds adjudications affecting Plaintiffs here.

28.    This case does not fall within any statutory exclusion from judicial review. Plaintiffs do not seek review of an individual removal order, consular visa issuance, or discretionary adjudicatory determination. They challenge only systemic policies that suspend domestic adjudication.

## PARTIES

29.    Plaintiff **Akmurat O. Doe** is a native and citizen of Turkmenistan who came to the United States in October of 2019. He filed for asylum in March of 2020. Defendants granted asylum in the United States to Plaintiff on June 13, 2024. Following that grant, he filed a timely

Form I-485 application for adjustment of status to that of a lawful permanent resident with USCIS on June 13, 2025. This application has remained pending for more than six months without adjudication. Despite meeting all statutory requirements for adjustment and receiving no indication of any individualized concerns or deficiencies, his application has been held in abeyance as a result of the challenged adjudicatory freeze.

30.    Plaintiff **S. Ferdows A. Doe** is a citizen of Iran who resides within this judicial district. She is a biomedical engineering researcher who has been lawfully present in the United States since 2023 in J-1 status and filed an adjustment-of-status application following approval of an EB-1A extraordinary ability petition based on her scientific achievements. Despite completing biometrics in July 2025, her case has been halted pursuant to Presidential Proclamation 10949, DHS Policy Alert PA-2025-26, and USCIS Policy Memorandum PM-602-0192, solely due to her country of origin. The pause has caused substantial professional harm by jeopardizing a long-term employment opportunity with a biotechnology company in Massachusetts and has disrupted her transition from postdoctoral research to permanent industry work. It has also caused significant personal hardship by preventing stable life planning with her partner and creating ongoing emotional distress, despite her full compliance with U.S. immigration laws and prior government approval of her qualifications.

31.    Plaintiff **Marie J. Doe** is a native and citizen of Haiti who grew up amid political instability, gang violence, and constant fear. Her education was repeatedly disrupted, she lost friends to violence, and she witnessed severe trauma, making daily life focused on survival rather than stability. After arriving in the United States, she entered high school as a junior with limited English and a low GPA and persevered despite homelessness, serious health challenges, and persistent discouragement. Today, the pause in her immigration case has placed her future on

hold, leaving her overwhelmed, depressed, and anxious. Because her immigration process is paused due to her country of origin, she cannot access financial aid or continue her education, and despite being admitted to college and earning a scholarship, she may be forced to abandon her education solely because of her immigration status. She also faces the imminent risk of being forced to return to Haiti, where ongoing violence, instability, and lawlessness place her life in danger, and she fears being seriously harmed or killed.¶

32.    Plaintiff **Raidel P. Doe** is a native of Cuba residing in the United States, filed for Adjustment of Status under the Cuban Adjustment Act on September 13, 2023. Despite fully complying with USCIS requirements, including submitting biometrics twice and responding to all notices, his case has been placed on an unexplained pause with no timeline for adjudication. This delay has caused severe personal and professional harm. As an entrepreneur and licensed insurance professional, he cannot travel freely, expand his business, or pursue growth opportunities. The ongoing uncertainty has caused stress, anxiety, and emotional hardship, preventing him from planning for the future despite contributing to his household and community.¶

33.    Plaintiff **Carlos G. Doe** is a Mexican citizen and lawful spouse of Raidel Doe, a Cuban national applying for Adjustment of Status under the Cuban Adjustment Act, has suffered extreme stress and uncertainty due to the prolonged and unexplained pause in his husband's case. He is included in his spouse's adjustment application. The delay has severely disrupted their legal stability, financial planning, family decisions, and ability to make long-term plans, causing significant emotional and practical hardship. Despite full compliance with all legal requirements, the inaction has denied them the clarity, stability, and peace of mind that the law intends for spouses of eligible Cuban nationals.¶

34.    Plaintiff **Brayan R. Doe** is a Cuban national who lawfully entered the United

States on April 29, 2023, under humanitarian parole and timely filed applications for adjustment of status and employment authorization, yet USCIS has failed to adjudicate his case, leaving him without lawful work authorization since April 2025. This prolonged government inaction caused him to lose his job and housing, forced him to live in his car for approximately three months, and rely on church food pantries, while having no family support in the United States. The resulting instability has caused severe emotional distress, anxiety, and fear, exacerbated by shifting immigration policies and the constant uncertainty surrounding his status. Plaintiff had been working with children with autism and pursuing graduate studies toward professional licensure, both of which he was forced to abandon, deepening his sense of hopelessness and leaving him unable to plan for the future or regain stability despite full compliance with the law.

35.    Plaintiff **Mohamed M. Doe** is a Sudanese national. After more than five years of carefully complying with every legal requirement for naturalization, he and his family passed their interviews, completed their tests, and were approved for U.S. citizenship, awaiting only their oath ceremonies. While his brother was able to naturalize, a sudden USCIS pause targeting Sudanese applicants placed Mohamed's and his mother's cases on indefinite hold, creating severe uncertainty and emotional distress. This arbitrary delay, imposed despite full eligibility and approval, has deprived Mohamed of the security and peace of mind citizenship provides, even as the United States has become his permanent home, a place where he seeks only to belong fully, participate in civic life, and contribute positively as a citizen.

36.    Plaintiff **Sawsan M. Doe**, mother to Mohamed Doe, is a Sudanese national. She has experienced profound fear and frustration caused by the pause in her case. She and her two sons have lived in the United States as permanent residents for five years, building strong ties and purchasing a home while knowing that only U.S. citizenship could provide lasting security. After

carefully maintaining continuous residence and applying as soon as they were eligible, all three completed their interviews and were approved. One son has since become a U.S. citizen, but while the applicant and her other son awaited their oath ceremonies, USCIS paused adjudication for applicants from their country, including her approved case. This sudden delay, after years of effort and preparation, has caused significant emotional distress and left the family in painful uncertainty just as stability seemed within reach. ¶

37.     Plaintiff **Arash E. Doe**, a native and citizen of Iran, has endured profound fear and frustration due to the indefinite pause on his citizenship case, which has stalled his plans to reunite with his wife following their September 2025 marriage. The delay has caused severe emotional distress and anxiety, disrupting both his personal life and professional pursuits. As a scientist developing hydrogen fuel technology, Arash relies on access to U.S. national laboratories, a goal now blocked by his citizenship uncertainty, hindering critical progress and opportunities. Meanwhile, international travel to see his wife imposes financial strain and further emotional hardship. The pause has left him unable to focus on his work or build a stable life with his spouse, compounding years of uncertainty and fear. ¶

38.     Plaintiff **Haleema L. Doe**, a native of Afghanistan, lives each day gripped by fear and uncertainty. She fled Afghanistan in 2015 to escape threats of forced marriage and violence, yet her asylum case and I-485 adjustment remain stalled. Married to a U.S. citizen since 2017, she raises two young daughters, ages three and five, who feel her constant anxiety. Despite following every rule and securing an approved I-130 and J-1 waiver, Haleema remains in "legal limbo," unable to travel, work, or plan for her family's future. The looming threat of detainment or deportation hangs over her home, leaving her daughters terrified, her family destabilized, and Haleema crushed by the weight of unrelenting fear. ¶

39.    Plaintiff **Alireza N. Doe**, a native of Iran and member of the historically persecuted Sabian-Mandaean community, has lived in profound fear and uncertainty due to the indefinite pause on his immigration case. He came to the U.S. legally, maintained lawful status, and applied for permanent residency through the EB-2 National Interest Waiver based on his research in artificial intelligence, which has been published in top-tier conferences and advances U.S. priorities in technological leadership and innovation. Years of planning and sacrifice now hang in limbo, leaving his career, livelihood, and personal future uncertain. Despite eligibility and lawful compliance, policies beyond his control have stripped him of stability, opportunity, and the ability to fully contribute to the United States.

40.    Plaintiff **Mariya Doe** is a citizen of Kazakhstan who faced severe persecution for being a feminist and openly lesbian, including harassment, beatings, and rape by police. Speaking out for women's rights put her life in constant danger, prompting her to apply for asylum in the United States on March 14, 2016. For over nine years, she has endured fear, anxiety, and uncertainty, waiting for an interview. After fleeing Kazakhstan, she built a life in the U.S., marrying her wife and establishing stability, but the indefinite freeze on asylum decisions has left her devastated. Working as a truck driver to support her family and pay a mortgage, she fears ICE detention and losing her driver's license, which would threaten her livelihood and home. The prolonged limbo has taken a severe psychological toll, and returning to Kazakhstan would put her life in immediate danger. Her safety and dignity depend on U.S. protection.

41.    Plaintiff **Robert C. Doe** is a citizen of Kenya who became a direct target of persecution after participating in efforts to expose drug cartels involved in youth recruitment, drug trafficking, and human trafficking, networks that operate with impunity and protection from corrupt law enforcement. Robert received repeated death threats, culminating on April 7, 2019

when he was kidnapped, assaulted, tied up, and threatened with death, narrowly surviving after his abductors fled following a car crash, forcing him to flee Kenya and seek asylum in the United States in 2019 to protect his life. Due to the recent pause in asylum applications, he now lives under extreme stress and anxiety, fearing that he may be forced to return to Kenya where persecution and serious harm await him; this prolonged uncertainty has left his life at a standstill, caused deep mental distress and depression, and severely destabilized his family's sense of safety, wellbeing, and future. He does not ask to be pitied, but for the opportunity for his case to move forward so he can survive, live safely, and rebuild his life with dignity.

42.     Plaintiff **Munera N. Doe**, a native and citizen of Afghanistan, was granted asylum in the United States and, together with her husband and minor son, filed Form I-485 applications to adjust status based on her asylum grant on August 12, 2024. Despite submitting complete applications and fully complying with all requirements, none of the applications has been adjudicated, and no clear explanation has been provided for the delay. The prolonged uncertainty has placed severe emotional and practical strain on the family, preventing them from making long-term plans for employment, housing, education, or financial stability. Munera, employed as a medical laboratory technician assistant, faces limitations on her professional advancement and earning potential, directly affecting the family's financial security. The continued delay has left them trapped in uncertainty and stress, and they respectfully seek timely adjudication of their Form I-485 applications so they may live with the stability, safety, and certainty they have worked and waited for.

43.     Plaintiff **Manuel N. Doe**, a Cuban citizen who lawfully entered the United States under Humanitarian Parole, has experienced extreme fear and frustration due to the prolonged and unexplained pause in his Adjustment of Status and Employment Authorization applications.

Despite timely filing and full compliance with all legal requirements, repeated administrative delays and inaction have left his cases stagnant, with no adjudication or meaningful response. This failure has barred him from working legally, caused severe financial and professional harm, and created ongoing stress and uncertainty. Having acted in good faith and reasonably relied on timely adjudication, he has been indefinitely deprived of essential immigration benefits, resulting in undue hardship that directly affects his dignity, stability, and ability to fully contribute to society.

44.     Plaintiff **Mawugnon Z. Doe**, a native and citizen of Togo, was granted asylum in the United States, a protection that provided safety and the opportunity to rebuild a lawful life. He complied with all legal requirements and applied in good faith for permanent residence and a travel document, relying on the assurances inherent in asylum. Those applications have been paused, placing his life in painful uncertainty. He is unable to travel during a family medical emergency, including his cousin's hospitalization for breast cancer, causing severe emotional distress and helplessness. At the same time, he cannot pursue his goal of serving the United States by enlisting in the U.S. Air Force because enlistment requires a green card. This pause has placed his life on hold, separating him from his family, preventing him from serving the country that gave him refuge, and prolonging hardship despite his lawful status.

45.     Plaintiff **Khalida N. Doe** is a native and citizen of Afghanistan who entered the United States in August 2021 during the emergency evacuation following the closure of the U.S. Embassy in Kabul. After significant hardship, she arrived in the U.S., refiled her immigration applications, and became a lawful permanent resident. She later filed her Form N-400 for naturalization, passed her interview and civics and English tests, and was informed that her application was approved and that she would soon receive an oath ceremony notice. To date, she

has received no update, leaving her in prolonged uncertainty. This unexplained delay has caused her severe anxiety and emotional distress, reopening the fear and instability she endured while seeking safety, despite having followed all legal requirements and relied on the assurances provided by the process.

46. Plaintiff **Pedram R. Doe** is a native and citizen of Iran. The loss of both his grandfathers to cancer and his brother's current diagnosis inspired him to dedicate his career to helping cancer patients. He came to the United States to pursue a PhD in targeted radiotherapy and joined the Pharmaceutical Sciences graduate program in Nebraska in December 2021 on a legally obtained F-1 visa. Since then, he has conducted cancer research and, after gaining experience with advanced technology and leading scientists, filed an I-140 petition (EB-2, NIW) in September 2023, which was approved, allowing him to file his adjustment of status (I-485) in July 2025. He needs permanent residence to qualify as a Nuclear Pharmacist, but the pause on his application has stalled his career and put his professional goals on hold. His brother's cancer relapse in 2024, combined with a single-entry F-1 visa and fear of risking his return under Advance Parole, has prevented him from seeing his family for four years. This ongoing pause has left him deeply sad, emotionally drained, and anxious, facing devastating uncertainty with no end in sight as his life, career, and ability to be with his loved ones remain in limbo.

47. Plaintiff **Aleksei S. Doe** is a native and citizen of Russia who has lived in the United States since May 3, 2019. A trained lawyer, he fled Russia after facing threats for challenging corruption and abuses of power. Since 2019, he and his family have awaited their asylum interview, striving to live lawfully and productively. In 2020, he legally entered the trucking industry, obtained his CDL, and built a small business, which he manages while driving and employing two American citizens. On October 25, 2022, he suffered a serious workplace

injury, temporarily halting his work and causing significant hardship, but he has since recovered. Nearly six years of uncertainty have profoundly affected his family, particularly his nearly 14-year-old daughter, who excels academically and considers the U.S. her home. Recent policy changes now threaten his CDL, livelihood, and business, leaving his family extremely vulnerable.

48.    Plaintiff **Garlyne V. Doe** is a native and citizen of Haiti. Her husband filed an I-130 petition for her on January 13, 2025, which remains pending to this day. The pause in cases from Haiti has left her living in constant fear and uncertainty. She struggles to focus on work, daily responsibilities, and even basic routines because her thoughts are consumed by worry about her immigration status and what the future may hold. This prolonged delay has caused severe emotional distress, draining the joy and stability from her life. She is also deeply concerned about the impact on her family, feeling helpless as the uncertainty affects them as well. Each day that this pause continues intensifies her anxiety, leaving her vulnerable, emotionally exhausted, and fearful that her safety, stability, and future in the United States are at risk through no fault of her own.

49.    Plaintiff **Htoo A. Doe**, a native and citizen of Myanmar, came to the United States with his wife, Plaintiff **Thin S. Doe**, and daughter on August 15, 2018. They fled persecution in Myanmar, seeking safety in the United States. He has dedicated himself to helping Burmese refugees and immigrants navigate language and cultural barriers, working as a freelance interpreter for mental-health services, court proceedings, asylum interviews, and hospitals across the Chicago area, giving back to the country that welcomed him. Becoming a U.S. citizen has long been his goal, reflecting his commitment to the safety and opportunity the United States has provided. He completed his naturalization interview and was approved, but his oath ceremony was canceled following the USCIS memo of December 2, 2025. This delay has caused prolonged

uncertainty, preventing him from pursuing federal employment, visiting his elderly mother, and participating fully in civic life, creating significant hardship for him and his family.

50. Plaintiff **Thin Doe**, a native and citizen of Myanmar, came to the United States with her husband, Plaintiff **Htoo Doe**, and child on August 15, 2018, fleeing persecution and discrimination based on their religion and ethnicity. Since arriving, she has worked diligently to rebuild her life, learn English, adapt to American culture, and support her family, striving to create stability and opportunity for her daughter. The United States is her home, and becoming a U.S. citizen has been her goal, reflecting her commitment to the country that has provided safety and hope. She completed her naturalization interview and was approved, but her oath ceremony was canceled. This indefinite delay has caused prolonged uncertainty, preventing her from visiting her elderly mother, pursuing better employment, and fully participating in civic life, creating significant hardship for her family. She has complied with all naturalization requirements and seeks only the opportunity to complete a process for which she is already eligible for.

51. Plaintiff **Gladys G. Doe** is a native and citizen of Cuba who entered the United States in May 2023 under the Cuban Humanitarian Parole program and has fully complied with all conditions of her entry. Eligible for adjustment of status through a family-based petition filed by her husband, now a U.S. citizen, she filed her I-485 in November 2023 and submitted all required documentation, yet her case remains unadjudicated. Her employment authorization, filed in January 2025, is also pending, leaving her unable to work, creating financial strain, and forcing her to abandon her professional contributions as a former art gallery director. The prolonged uncertainty has taken a profound emotional toll, causing anxiety, undermining her sense of security, and forcing her and her husband to put family plans on hold. Despite acting lawfully and in good faith, her life remains suspended, and her family continues to suffer significant hardship.

52.    Plaintiff **Zin H. Doe** is a native and citizen of Myanmar and a recent graduate of a prestigious school in the University of California system, where he completed his ninth semester studying Computer Science and Civil Engineering on December 19, 2025. He submitted his work authorization application on October 6, 2025, upgraded to premium processing on December 3, and then learned he is affected by the indefinite USCIS pause. He had secured his dream post-graduate job as a Software Engineer II at Box Inc, earned through years of hard work and internships, but the pause has placed his career on a complete standstill. The uncertainty has caused immense anxiety, disrupted his focus and academic performance, and left him unable to plan his future or pursue his goals. Emotionally, he feels trapped, powerless, and exhausted, with every goal—career, independence, and personal growth—paused, shaking his confidence and sense of security.

53.    Plaintiff **Seyedali M. Doe** is a native and citizen of Iran who has long dreamed of becoming a physician-scientist specializing in lung vascular diseases. After graduating from medical school and gaining clinical and research experience, he relocated to Denver, CO, to pursue research at the highest level, passing the US Medical Licensing exams with high scores and receiving invitations to interviews at prestigious programs. He plans to remain in the U.S. to serve patients and advance lung disease research. Based on his achievements, he was found eligible for permanent residency under EB-1a and filed his I-485 and I-765 on August 8, 2025, but his process has devastatingly been put on hold. While he respects national security vetting, he has already undergone extensive screening, and the policy of segregating processing by nationality places a severe mental and professional burden on him. He is anxious and fearful that these delays will derail his career, prevent residency training, and jeopardize critical research opportunities he has worked tirelessly to secure. He seeks to have his case adjudicated on his

extraordinary ability rather than nationality so he can continue his work helping patients and advancing medical research.

54.    Plaintiff **Mya S. Doe**, a native and citizen of Myanmar, is a Certified Nursing Assistant pursuing a nursing degree, and a VAWA self-petitioner with pending applications at USCIS. She entered the United States on a fiancé visa in February 2025 and filed forms I-765, I-485, and I-360, fully complying with all legal requirements, yet her applications are now on hold, leaving her unable to work legally. Since filing her work permit in March 2025, her life has come to a standstill. Her marriage fell apart, and she experienced physical and emotional abuse that severely affected her mental well-being. The inability to work has caused financial hardship, forcing her to sell land in her home country to survive. As a CNA, she is trained to care for vulnerable individuals, and being prevented from working deprives both her and the patients who need care. The prolonged uncertainty has left her anxious, depressed, isolated, and overwhelmed, unable to pursue her education or plan for her future.

55.    Plaintiff **Amin S. Doe** is a native and citizen of Iran and a PhD candidate in the U.S. on lawful F-1 status, building his education and early career while preparing for full-time work. His situation has become critical, as both his work authorization and long-term immigration plans are stalled. He has a pending I-765 under post-completion OPT and an I-140 Petition for Alien Workers, that remain undecided. This pause has caused severe personal, professional, financial, and family consequences: he cannot legally begin a job in his field, earn income, or support himself despite having a verbal offer, and he has incurred substantial filing and legal costs. The uncertainty also affects his wife, with whom he has invested years in building a future in the U.S., threatening their stability and sense of security. Emotionally and professionally, living in limbo has been exhausting, jeopardizing his research, collaborations, and long-term

contributions to the U.S., while leaving him feeling unfairly penalized solely because of his country of birth.

56.    Plaintiff **Raymond K. Doe** is a native and citizen of Burundi who works in the U.S. as a healthcare caregiver for individuals with developmental disabilities and mental health issues. He fled political persecution in Burundi in 2016, leaving the country shortly after his son was born, while his wife later fled to South Korea. Since then, his son has been without parents in an unsafe environment, suffering profound emotional and mental harm. Granted asylum last year, Raymond hoped to finally reunite with his family, but the travel ban on Burundi and the pause of his adjustment of status application have shattered that hope. As a father and husband, he has endured nearly a decade of separation, longing to be with his son and wife while facing overwhelming emotional pain.

57.    Plaintiff **Inimfon J. Doe** is a native and citizen of Nigeria who applied for naturalization and completed her interview. She was informed that her application was recommended for approval and that she was placed in line for an oath ceremony. She was then notified the following day that her oath ceremony had been canceled, causing significant stress and uncertainty despite her approved status. A Nigerian-born physician who came to the United States in 2015 as an F-1 student, she has since completed a Master's degree, PhD, Internal Medicine residency, and is currently finishing a Medical Oncology fellowship, with plans to begin work as a Breast Medical Oncologist on January 1, 2026. The cancellation of her oath ceremony has caused serious anxiety, restricted her ability to travel safely to visit family in Nigeria, and delayed her ability to fully participate in civic life and formally affirm her allegiance to the United States after years of effort and service.

58.    Plaintiff **Aye S. Doe** is a native and citizen of Myanmar who entered the United

States in 2019 as an F-1 student. She earned a Finance degree in 2023, began a graduate program in Financial Risk Management at Baruch College in 2024, and is scheduled to graduate on December 22, 2025. She filed Form I-765 for post-completion OPT on October 5, 2025, and upgraded to premium processing on November 14, 2025, paying the $1,685 fee, yet her application has shown no progress since that date. On December 12, 2025, USCIS confirmed the case was pending without a completion timeline. The apparent pause in adjudications has disrupted her transition to employment, placed her January 2026 job at risk, and caused significant stress and financial harm, as her CPT ends at graduation and she faces an involuntary employment gap with an estimated loss of $8,750 per month despite full compliance and timely filing.

59.    Plaintiff **Seyed M. R. Doe**, a native and citizen of Iran, legally immigrated to the U.S. in September 2013 and has built his entire adult life there. He earned a master's degree and PhD in engineering, became a lawful permanent resident in 2020 through a National Interest Waiver, and works as a bioinformatics scientist impacting patient health. In 2025, he and his wife applied for U.S. citizenship, completed all interviews and tests, and his wife became a citizen without issue. His court-scheduled oath ceremony, required for a legal name change reflecting his true identity, was canceled shortly before the date due to a USCIS memo, deeply upsetting him after more than a decade of planning, preparation, and community engagement. He has no criminal or traffic history, maintains full and timely tax compliance, and has over ten years of volunteer service. The pause has caused personal hardship, jeopardizing a planned spring 2026 trip to his sister's wedding in Denmark, and the justification for extra vetting is unfounded, given his continuous 12+ years in the U.S., extensive background checks, and careers requiring federal security clearances.

60. Plaintiff **Farzad Z. Doe** is a native and citizen of Iran who currently resides in South Carolina and is a final-year Ph.D. student. He is the principal applicant for adjustment of status under the EB2 National Interest Waiver (NIW) category, and his Form I-140 has been approved, confirming that his work serves the national interest. He filed Form I-485 on January 5, 2024, completed biometrics on January 31, 2024, and had his USCIS interview on January 30, 2025. Since then, he has received no decision, with USCIS repeatedly stating the case is under "extended review" without explanation or timeline; his wife, Plaintiff **Mina Doe's** derivative I-485 has been delayed similarly. The prolonged delays have prevented him from pursuing or accepting several employment opportunities requiring permanent residency, disrupting his career plans, professional advancement, and causing significant financial pressure on him and his wife. The uncertainty has left him anxious, stressed, and powerless, with every major decision in his life on hold. The fear of missed opportunities and inability to plan for the future has created constant tension, and despite his hard work and compliance, his life and dreams are effectively paused, leaving his family in prolonged hardship and uncertainty.

61. Plaintiff **Mina R. Doe** is a native and citizen of Iran and derivative of her husband, Plaintiff **Farzad Z. Doe's** adjustment of status application. She is currently pursuing a Master of Fine Arts in Studio Art at a University in South Carolina. Since her husband's adjustment of status interview in January 2025, both of their cases have remained pending with no meaningful updates, leaving her in prolonged uncertainty about her legal status. This delay has significantly affected her personal and professional life, making it difficult to plan her academic and career future or make long-term personal decisions, while placing financial and emotional strain on their household. The ongoing uncertainty has caused constant stress and anxiety, impacting her ability to focus on her work, goals, and daily life. Despite acting in good faith and

contributing positively to her community, her life and future remain on hold due to the indefinite pause in adjudication.

62.    Plaintiff **Hamza A. Doe** is a native and citizen of Libya and a licensed physician in Colorado, Pennsylvania, Florida, and several other states through the Interstate Medical Licensure Compact. He and his wife have lived legally in the United States since 2014 and have been permanent residents for approximately five years, raising three young U.S. citizen children. He currently serves multiple hospitals in the Denver metro area and has practiced in other states, dedicating many years to patient care and consistently contributing to the health and well-being of the communities he serves. His wife, plaintiff **Marwa G. Doe**, has a pending N-400 application in the same situation. Recently, USCIS placed a hold on processing their applications because they are from a designated country, significantly impacting the family during a period of nationwide physician shortages. This uncertainty has made it difficult for him to fully commit to his professional responsibilities, limiting his ability to take on longer hospital shifts, expand his practice, and provide additional care, while causing considerable stress. At home, the pause has created persistent anxiety, leaving the family feeling immobilized and uncertain about their future. They hope for a prompt resolution so they can complete their path to citizenship and allow him to continue serving his patients and community without this ongoing burden.

63.    Plaintiff **Marwa G. Doe**, a native and citizen of Libya, has had her N-400 application paused, together with her husband, Plaintiff **Hamza Doe**. She has lived legally in the United States since 2014 and has been a permanent resident for approximately five years. She and her husband are raising three young U.S. citizen children, having built their entire family life in the country. As a full-time stay-at-home mother, she dedicates herself to nurturing their children, managing the household, and instilling strong values, while her husband serves as a physician

addressing the nationwide doctor shortage. Recently, USCIS placed a hold on their naturalization applications due to their country of origin, causing significant stress and uncertainty that has affected their family life and planning for their children's future. The emotional toll is particularly heavy for her, as she seeks stability and certainty for her children. The family hopes for a swift resolution to this hold so they can complete the naturalization process, regain stability, and continue contributing fully to their community.

64.    Plaintiff **Anas G. Doe** is a native of Libya and an Assistant Professor and physician in St. Louis, Missouri. Lawfully present in the U.S. for several years, he has fully complied with immigration laws. He completed postgraduate and advanced gastroenterology training in the U.S. and works at Missouri's only center equipped for complex inflammatory bowel disease cases, receiving referrals statewide and from surrounding regions. For six years, he has provided continuous patient care, trained medical students and gastroenterology fellows, and led clinical research and therapeutic trials. Any disruption to his status would affect patient care, research continuity, and professional advancement. He filed Form I-485 in good faith, including his wife as a dependent, but his application remains paused without explanation. Holding H-1B status until June 2026, he faces risk to his lawful residence and work, and the delay has caused substantial hardship, including preventing travel to care for elderly parents. This uncertainty disrupts institutional stability and his ability to fully commit to clinical and academic duties, and he respectfully requests timely adjudication.

65.    Plaintiff **Asawer H. Doe**, a citizen of Libya, is a dependent under her husband, Plaintiff **Anas Doe's** adjustment of status application, which has since stalled. She holds a degree in pharmacy and had planned to pursue her professional career as a pharmacist in the United States. However, the prolonged pause in her and her husband's adjustment of status applications

has delayed her career development and prevented her from making concrete plans for licensure, employment, and long-term professional stability. The uncertainty has caused significant personal hardship, including persistent anxiety and emotional stress on their family. It has also prevented her from traveling internationally to care for her elderly parents, causing further emotional distress. She has consistently acted in good faith and remained fully compliant with U.S. immigration laws.

66.    Plaintiff **Mattathie G. Doe** is a native and citizen of Congo who was granted asylum in 2019 and has been a lawful permanent resident since May, 2020. She became eligible to apply for U.S. citizenship in March 2025 and submitted her N-400 application in April 2025, complying fully with all immigration requirements and paying the required fees. She attended and passed her interview, and was scheduled for her oath ceremony in January, 2026. However, it was canceled on December 1, 2025. Despite meeting all eligibility requirements and having no adverse factors, her case has remained frozen. This situation has caused ongoing stress, anxiety, and emotional hardship, particularly as she had planned to travel internationally in 2026 to attend her younger sister's wedding, whom she has not seen in over a decade. The cancellation of her oath ceremony has left her uncertain about when she will see her family, creating a heavy emotional burden that affects her personal life and her ability to focus and find joy in her work as a Certified Public Accountant. She seeks relief so that the pause on her case is lifted, allowing her to move forward after years of compliance and good faith reliance on the U.S. immigration system.

67.    Plaintiff **Alain B. Doe** is a native and citizen of Burundi who has lived in the United States since November 2010. Granted asylum in 2016, he applied for permanent residence in 2017, which was approved in 2019 after USCIS corrected a processing delay. His immigration

journey has involved significant hardship: he was forced to leave behind his wife, biological son, and stepdaughter due to persecution, and petitions filed for them were denied after prolonged processing, during which he lost his son and later his wife returned to Rwanda without a formal divorce. He first applied for naturalization in October 2023, but his application was denied after he was unable to attend a second interview on September 27, 2024 due to his wife's death, despite assurances from counsel that USCIS would be notified. He re-applied in January 2025, attended an interview in July 2025, declined to provide a sworn statement without counsel, and was advised a second interview would be scheduled, though it was later cancelled. Throughout this process, he has endured severe emotional distress, sought professional treatment, and remains under care for depression and anxiety, persevering for his children, partner, and newborn child, with the sole goal of becoming a U.S. citizen in the country he calls home.

68.    Plaintiff **Muhammed E. Doe** is a native of Libya who entered the U.S. on an H-1B visa in November 2024, sponsored by a prestigious Texas hospital, following extensive national and international research, and was approved for an EB-1A petition. In July 2025, he filed his Form I-485 for adjustment of status as both his EB-1A and EB-2 NIW petitions were approved. His interview was waived due to his straightforward, continuous lawful status. However, adjudication has been paused, causing significant personal and professional hardship. He is a Research Fellow and physician-scientist, leading multicenter trials in robotic surgery for diverticulitis and research on colorectal cancer and endometriosis, benefiting patients nationwide. He is scheduled to begin a new position in early 2026 requiring permanent resident status; without approval, he cannot assume this role or continue his work. The delay has caused emotional distress, as he has not seen his family in Libya for over a year and cannot safely travel to care for his ill father. He has fully complied with all immigration laws, yet the pause threatens his career,

research, and family.

69. Plaintiff **Iman N. Doe** is a citizen of Iran and is a PhD student in Chemical Engineering in Chicago. He entered the United States on an F-1 visa in July 2022 and filed an NIW EB-2 I-140 petition in March 2023, which was approved in October 2023. After his priority date became current on July 1, 2024, he filed an I-485 application with his spouse. Although the case was marked "ready to be scheduled" in September and December 2024, the interview was not held until August 2025, after which further investigation was requested; he responded to the RFE in mid-October 2025 and has now faced more than 18 months of continued delay with no updates. This prolonged and indefinite hold has caused significant personal and professional hardship, including severe stress, inability to visit family for nearly four years, and missing major family events. Professionally, the uncertainty has restricted access to internships and fellowships that require permanent residency or citizenship, limiting his ability to grow, contribute meaningfully, and advance impactful research in their fields.

70. Plaintiff **Pegah S. Doe** is a citizen of Iran and is a PhD student in Chemical Engineering. She is a derivative of her husband, Plaintiff **Iman N. Doe's** I-485 application. She entered the U.S. on an F-2 visa in July 2022, changed to F-1 status in March 2023, and filed a derivative Form I-485 with her spouse. She completed biometrics and received her EAD in August 2024, and her case was marked "ready to be scheduled for an interview.' Their interview occurred in August 2025, during which further investigation was requested, and her spouse responded to an RFE in October 2025. After 18 months with no updates, the delay and hold have caused significant stress, disrupted daily life, and restricted professional opportunities. Despite this, she has excelled academically, receiving awards for teaching and research, and continues to focus on healthcare research and mentoring young women in STEM. The pause has also caused

profound personal strain, as she and her husband have been separated from family for nearly four years, missing milestones and coping with grief, while professional delays limit access to fellowships and internships that require permanent residency, hindering her long-term goal of a career in academia and teaching.

71.     Plaintiff **Kwadzovi A. Doe** is a native and citizen of Togo who entered the United States lawfully on a B1/B2 visa and is seeking adjustment of status and employment authorization. He is married to a naturalized U.S. citizen, originally from Togo, who serves on active duty in the U.S. military. They are expecting their first child in February 2026. The pause on green card and work permit adjudications has caused him and his family significant hardship. He cannot work legally, leaving his wife as the sole financial provider while managing the demands of pregnancy and military service. This creates ongoing financial stress, affects their ability to cover basic living expenses, and adds emotional strain. The uncertainty of his immigration status prevents him from planning for the future, securing stable employment, and preparing for the arrival of their child. Despite his strong U.S. ties, the delay disproportionately harms him, making it difficult to support his family and build a stable life.

72.     Plaintiff **Sylvie E. Doe** is a native and citizen of Haiti who entered the United States via Haitian Humanitarian Parole in May 2024. She met her now-husband in October 2024, and they married in April 2025. Shortly after, they filed Forms I-130, I-485, and I-765. She has a medical condition involving uterine fibroids, including a 10 cm³ mass, causing severe pain, prolonged periods, and occasional hospitalization. Treatment is possible with health insurance, which she could obtain with employment authorization, but USCIS has not adjudicated her applications due to the pause. She poses no risk to the community, has no criminal history, and lives with her husband and his family. The uncertainty has caused significant stress for both her

and her husband. They respectfully request that USCIS adjudicate her case so they can build a stable life together and address critical medical needs.

73.    Plaintiff **Shelmira M. Doe** is a native and citizen of Venezuela who entered the United States in 2021 on a K-1 visa after an immigration process that began in 2019 and was delayed by COVID-19 and heightened scrutiny related to her nationality, including a three-month period of administrative processing following her U.S. Embassy interview in Rio de Janeiro. In February 2024, she timely filed Form I-751 to remove conditions on her residence, and in January 2025, she filed Form N-400 for naturalization, but has received no update on her interview. The recent USCIS pause affecting Venezuelan nationals has indefinitely stalled both cases, causing significant stress and anxiety as she has only two years remaining on her I-797 extension and fears losing lawful status despite full compliance with immigration laws. As a pregnant woman preparing to welcome her first child, the ongoing uncertainty has severely impacted her mental health and ability to plan for her family's stability, leaving her feeling vulnerable and emotionally overwhelmed despite her strong ties to the United States and her U.S. citizen family.

74.    Plaintiff **Ali R. Doe** is a native and citizen of Iran who is lawfully present in the United States on an F-1 student visa and pursuing a Ph.D. in Biomedical Engineering focused on medical device design to improve U.S. healthcare outcomes. On July 23, 2025, he filed Form I-140 under the EB-2 National Interest Waiver category based on his education, research, publications, and patents. Since filing, he has received no individualized notice from USCIS and has learned through public announcements that adjudications for Iranian nationals have been paused, effectively stalling his petition solely due to his nationality despite full legal compliance. This indefinite delay has caused significant personal and professional hardship, including severe stress, anxiety, disrupted sleep, and impaired academic productivity, while undermining his

long-term research and career planning. Due to strict travel and visa restrictions on Iranian nationals, he has been unable to visit his family for years, as leaving the United States would likely prevent his return. ¶

75.    Plaintiff **Jose H. Doe** is a native of Venezuela and a medical doctor who fled the country in 2018 due to persecution by the ruling regime. Granted asylum in the United States in 2020, he has since worked to build a stable and fulfilling life for himself and his family. He became a permanent resident in 2021 and has dedicated the past five years to rebuilding his life, completing a Master of Science in Nursing while working full-time at its affiliated hospital, and providing high-quality healthcare, particularly to vulnerable populations. He is deeply affected by the indefinite pause on immigration processes for Venezuelans, which has created barriers to family reunification and restricted his ability to travel freely. The prolonged uncertainty has caused emotional and practical hardships, undermining his family's stability. He views the pause as arbitrary and discriminatory, disregarding his full compliance with immigration laws, his professional and academic contributions, and the life he has built in accordance with the Immigration and Nationality Act. ¶

76.    Plaintiff **Mohammadamin M. Doe**, a native and citizen of Iran, holds a PhD in Electrical Engineering and is married to Plaintiff **Shirin A. Doe**, a PhD candidate in Chemical Engineering. In October 2025, they filed adjustment of status applications based on his approved I-140 National Interest Waiver. At the time, he was a postdoctoral researcher on F-1 OPT, and because adjustment made him ineligible for STEM OPT, he relied entirely on timely EAD issuance to continue working. He was actively advancing in multiple non-speculative hiring processes for senior research and industry positions. The sudden USCIS pause on adjudications affecting certain countries, including Iran, halted his EAD processing, causing severe financial

hardship, forcing the couple to rely on limited savings, and jeopardizing both his career and his wife's academic and professional future. Beyond financial and professional harm, the pause has caused profound emotional distress, as they have been unable to see their families for years and are trapped in uncertainty, unable to work or travel.

77. Plaintiff **Shirin A. Doe**, an native and citizen of Iran, is PhD candidate in Chemical Engineering and has a pending adjustment of status application based on her husband's approved I-140 National Interest Waiver recognizing his contributions to U.S. national interests. The sudden pause in adjudications, however, left her overwhelmed with fear and uncertainty. Her husband lost his work authorization despite lawful status, eliminating their financial security overnight and forcing them to rely on limited savings. This disruption has also jeopardized her academic and professional future, as her PhD program depends on internships and research opportunities that are now uncertain. Having entered the United States on single-entry visas, she has not seen her family in over three years and now faces constant fear and helplessness, trapped in uncertainty, unable to work or travel. Despite their lawful presence and qualifications, they are being disproportionately harmed due to their country of origin, resulting in profound emotional distress and lasting personal, academic, and financial damage.

78. Plaintiff **Alexander H. Doe**, a citizen of Iran, arrived in the United States in June 2014 and applied for asylum due to persecution in Iran, which was granted on October 7, 2021. He has maintained a clean record, complied fully with U.S. law, and worked as a Senior Network Engineer, paying taxes since receiving his first Employment Authorization Document. He married his wife, Lindsey, on April 19, 2021, and they have a two-year-old daughter. He was granted a conditional green card, applied to remove the conditions, and filed for naturalization, both of which remain pending. The ongoing uncertainty in his immigration status has caused significant

emotional and psychological distress, exacerbating his PTSD from past persecution and contributing to his wife's episodes of depression. As the primary breadwinner with no extended family in California, any disruption to his work authorization threatens his family's financial security and home. The inability to travel abroad and access professional opportunities requiring U.S. citizenship further limits his career advancement. After fleeing Iran, he had hoped to find safety and stability in the United States, but the current situation has left him and his family in profound uncertainty and fear for their future.

79.    Plaintiff **Paing Y. Doe** is a citizen of Myanmar who moved to Singapore in 2009 to pursue nursing, working as a critical care registered nurse until 2024. She met her husband in 2017 and married in March 2022, and after their marriage, they decided to establish their life in the United States. In 2023, her husband moved to Chicago to secure employment and housing while her immigrant visa was processed, and she relocated to the U.S. in early 2024. She currently resides in the United States as a conditional permanent resident and works in Chicago as a cardiology registered nurse, providing direct care in a high-acuity setting while fully complying with all immigration laws. The USCIS processing pause has placed her in prolonged uncertainty, threatening her legal status, disrupting her professional plans, and preventing her and her husband from establishing a stable future. Given her history of displacement and years spent building a lawful life abroad, this uncertainty has caused significant emotional distress and anxiety. Despite complying fully with the law and continuing to serve as a healthcare professional helping save the lives of U.S. citizens and residents every day, she lives in constant fear about her future, her ability to remain with her husband, and their ability to maintain the life they have started together, with the stress of this ongoing uncertainty overshadowing what should have been a hopeful new chapter in their lives.

80.     Plaintiff **Arash R. Doe** is a citizen of Iran who has lived outside the country for over twelve years and has not traveled there in more than ten, having built his education, career, and personal life in full compliance with all laws and immigration requirements. He has worked as a Global Technical Support Manager for a U.S. employer since November 2022, but his L-1A status prevents any change in role or title until he obtains permanent residence, limiting career advancement and new opportunities. The prolonged pause has placed him in ongoing uncertainty, disrupting long-term plans, preventing family reunification, and causing significant professional setbacks, financial instability, and emotional strain. Despite full legal compliance, he continues to bear consequences beyond his control and seeks only a fair and timely opportunity to proceed so he may continue contributing professionally and restore stability to his life.

81.     Plaintiff **Francys C. Doe** is a native and citizen of Venezuela who entered the U.S. on a tourist visa in April, 2024, and married a U.S. citizen in July, 2024. She completed biometrics and received employment authorization in October, 2024. She and her husband attended their green card interview in February, 2025, and were told a decision would follow, but on June 25, 2025, she received notice that the interview had been canceled. As of December 3, 2025, her attorney advised that the case is likely on hold, with no final adjudication. This prolonged uncertainty has caused her significant anxiety and stress, limited her mobility, delayed critical financial decisions, and restricted her professional growth, forcing her to decline job opportunities and refrain from international travel. She seeks a fair and timely adjudication so she can secure legal status and move forward with her life, providing stability for herself and her family.

82.     Plaintiff **Javier Q. Doe** is a native and citizen of Venezuela living in Tennessee with his pregnant wife and two daughters. He applied for adjustment of status through marriage in

May 2025 and attended a green card interview in August 2025, where the officer twice indicated approval. Since then, his case has been frozen due to the government's pause on applications affecting Venezuelans, leaving him without a green card or work authorization. This has forced him to remain in an unsustainable job, limiting his career growth and financial security, while the ongoing uncertainty has severely affected his physical and mental health, causing panic attacks, chest and back pain, insomnia, and difficulty functioning daily. His condition has impacted his ability to parent and manage routine tasks, placing additional responsibilities on his pregnant wife, while the stress affects their children, who have nightmares about him being taken by immigration authorities. Despite their efforts to stay stable, the family faces overwhelming emotional and financial pressure, and he continues to seek consistent, Spanish-speaking, trauma-informed therapy.

83.    Plaintiff **Mohammad J.L. Doe**, a native and citizen of Iran, and PhD student in the United States on an F-1 visa, has demonstrated strong academic performance, earning multiple fellowships and scholarships. The ongoing delay in processing his green card application has caused significant stress, creating uncertainty that threatens both his studies and future career opportunities in the U.S. This delay also profoundly affects his wife, Plaintiff **Reihaneh D. Doe**, whose wife cannot register for classes as an F-2 dependent until her green card application is approved, putting her university admission at risk. The situation has caused substantial emotional strain for both plaintiffs, affecting their professional paths, personal well-being, and ability to plan for the future.

84.    Plaintiff **Reihaneh Doe**, a native and citizen of Iran, and wife to Plaintiff **Mohammad Doe**, admitted to a U.S. university for an important opportunity in her academic and professional growth, cannot register for classes as an F-2 dependent under her husband's and her

green card applications are approved. The delay puts her admission at risk and has caused profound stress for both of them. Being unable to attend school is deeply distressing, as education represents years of preparation, purpose, and hope for the future. The uncertainty has created constant anxiety, emotional strain, and a persistent sense of limbo, affecting her mental well-being, focus, and ability to plan for her personal, academic, and professional life.

85.    Plaintiff **Iman M. Doe** is a native and citizen of Iran who has lawfully resided in the United States since 2014, entering initially in G-1 status and later changing to F-1 status, earning a bachelor's degree in finance in 2020 and a Juris Doctor from an ABA-accredited New York law school in 2024. He is a New York–licensed attorney and has worked as a Tax Consultant since September 2024, providing specialized tax advisory and compliance services to large U.S. corporations. His employer sponsored an H-1B petition selected in the FY26 lottery and timely filed in June 2025; after his OPT ended, he entered a valid cap-gap extension through April 1, 2026. An October 2025 RFE based on a SEVIS system error was resolved through a DSO data fix, and his SEVIS record is active, yet the petition has remained pending for over six months. He has maintained lawful status at all times, complied with U.S. immigration laws, paid taxes, and now faces the risk of job loss and significant hardship due solely to the prolonged delay.

86.    Plaintiff **Esmaeil M. Doe** is a citizen of Iran and a postdoctoral researcher at a prestigious university in Illinois. He filed applications for adjustment of status and employment authorization on August 21, 2025, while maintaining lawful J-1 status set to expire on December 31, 2025. USCIS has taken no action on his employment authorization, and as a result, beginning January 1, 2026, Esmaeil faces the loss of his job, income, and employer-provided health insurance. He submitted an expedite request on December 3, 2025, based on severe financial loss to himself and his employer, which USCIS denied two days later. Esmaeil is the primary operator

of two major research projects funded by industry groups, and the continued delay has caused him significant financial harm, professional disruption, and emotional distress, undermining his stability and ability to remain lawfully employed in the United States. ¶

87.   Plaintiff **Gisoo D. Doe** is a citizen of Iran who filed an employment-based immigrant petition (Form I-140) with USCIS in September 2024. More than fifteen months later, USCIS has issued no decision, leaving her case stalled as part of the nationwide adjudication pause implemented in late 2025. Gisoo is scheduled to graduate in May 2026, and the lack of adjudication places her at imminent risk of losing lawful status at a critical transition point in her academic and professional career, causing significant fear and uncertainty. The delay restricts her ability to pursue lawful employment and continue advanced scientific research with direct relevance to U.S. industry, infrastructure, and long-term economic productivity. The pause has also destabilized her family, as her husband, also an Iranian national working under Optional Practical Training, has been unable to secure stable employment due to uncertainty surrounding their future immigration status. The prolonged suspension of adjudication has caused Gisoo substantial emotional distress, professional disruption, and ongoing uncertainty about her ability to lawfully remain and contribute her skills in the United States.¶

88.   Plaintiff **Faranak K. Doe** is a citizen of Iran who entered the United States as a PhD student in Electrical Engineering and is currently employed as an Electrical Engineer working on smart city and energy-efficient infrastructure projects in Texas. Her application for adjustment of status has remained pending without adjudication, placing her life and career in prolonged uncertainty despite her continued lawful presence and professional contributions. Although she maintains lawful status through Optional Practical Training until May 2026, she will thereafter lack an underlying nonimmigrant status and must rely solely on employment

authorization, preventing her from making stable professional and personal plans. During this delay, Faranak experienced the death of her father and sought permission to travel to Iran to grieve with her family, but received no response, causing profound emotional distress. She has also gone through a divorce while residing in the United States and cannot safely return to Iran, where divorced women often lack meaningful social and familial support. The prolonged failure to adjudicate her application has caused Faranak significant emotional harm, legal instability, and ongoing fear about her ability to remain in the United States.

89.    Plaintiff **Shahnaz S. Doe** is a citizen of Iran whose applications for adjustment of status were filed by her U.S. citizen daughter in June 2024 and remain pending without adjudication. She is lawfully present in the United States and has been married to her husband for more than forty years; he has already completed his immigration process and resides lawfully in the United States. Shahnaz provides daily childcare for her eight-year-old U.S. citizen granddaughter, allowing both parents to maintain full-time professional employment. The prolonged uncertainty surrounding her case has caused significant emotional distress, fear of family separation, and instability for her and her immediate family.

90.    Plaintiff **Astrid I. Doe** is a citizen of Venezuela who entered the United States lawfully on an F-1 student visa after receiving a significant athletic scholarship and has complied with U.S. immigration laws since her arrival in 2016. She has pending applications for adjustment of status and employment authorization that remain unadjudicated, leaving her unable to work lawfully despite being qualified and willing to do so. As a result, Astrid has suffered significant financial hardship, including difficulty meeting mortgage and ongoing household obligations, creating severe stress and anxiety and threatening her housing stability. The delay has also burdened her employer, which has been forced to hire outside personnel to meet staffing and

operational requirements that Astrid would otherwise fulfill. Returning to Venezuela is not a viable or safe option for Astrid and would also terminate her pending immigration process, leaving her trapped in prolonged uncertainty. The continued failure to adjudicate her applications has caused Astrid substantial emotional distress, financial instability, and fear about her ability to remain and build a stable future in the United States.

91.    Plaintiff **Behnam T. Doe** is a citizen of Iran whose application for adjustment of status has remained pending since March 2023, despite his full compliance with the process and completion of an in-person interview in May 2025. USCIS instructed Behnam to expect a decision within 120 days, but no decision or meaningful update has been issued, leaving his case stalled without explanation. As a result, Behnam has been unable to plan the next stage of his professional career, commit to employment opportunities, or participate fully in academic and research activities, causing ongoing stress and instability. The prolonged uncertainty has been particularly distressing given his nationality and the heightened risk of sudden policy shifts, scrutiny, or restrictions. USCIS's continued failure to adjudicate his application has caused Behnam significant emotional distress, professional disruption, and fear about his ability to move forward with his life in the United States.

92.    Plaintiff **Payman P. Doe** is a citizen of Iran who holds a Ph.D. in Electrical Engineering and works as a Staff Electrical Engineer on critical infrastructure projects in the United States. He timely filed a STEM OPT extension with premium processing before his prior work authorization expired, as well as an application for adjustment of status based on an approved EB-2 National Interest Waiver petition, yet both matters remain subject to uncertainty due to the adjudication pause. Although Payman has complied with all immigration requirements and maintained lawful status since entering the United States, he faces the imminent risk of losing

his job, income, and lawful status, causing severe anxiety and fear. He is married and has an eight-month-old U.S. citizen daughter, and the possibility of losing employment or being forced to leave the United States has caused profound distress regarding his family's safety and future. The continued failure to adjudicate his applications has caused Payman significant emotional harm, financial instability, and fear of country-based discrimination preventing him from remaining lawfully employed in the United States.

93.    Plaintiff **Khatereh S. Doe** is a citizen of Iran and a Ph.D. student specializing in food microbiology and food safety whose Form I-140 immigrant petition has remained pending for approximately twenty-two months without adjudication. Her research focuses on preventing microbial contamination in food and strengthening food safety systems that protect U.S. public health and agricultural products. As Khatereh approaches graduation, the lack of adjudication has left her unable to plan post-graduation employment or postdoctoral training, causing significant professional disruption at a critical transition point. The prolonged delay has also caused persistent anxiety and difficulty concentrating, particularly given heightened scrutiny associated with her country of birth. The uncertainty has restricted her ability to travel to see family and has created serious personal consequences, including fear about marriage and family planning due to time-sensitive fertility concerns. Despite years of lawful presence, extensive vetting, and service as a teaching assistant mentoring U.S. students, the continued failure to adjudicate her petition has left Khatereh's professional future, personal life, and ability to contribute to the United States in prolonged and distressing limbo.

94.    Plaintiff **Marjan A. Doe** is a citizen of Iran who entered the United States lawfully in 2021 on an F-1 student visa after completing a master's degree in Computer Science in Canada and later earning a master's degree in Materials Science and Engineering. She is

currently employed as a Senior Applied Scientist in Machine Learning at Microsoft Corporation under F-1 Optional Practical Training. Marjan timely filed a STEM OPT extension application, which remains pending and is now subject to the nationwide adjudication pause affecting Iranian nationals. If her application is not adjudicated before her current work authorization expires, she will lose the ability to work lawfully and be forced to leave the United States, causing severe professional harm and separation from her husband. The uncertainty has placed her career, financial stability, and family unity at immediate risk. Returning to Iran is not a safe option for Marjan, as she openly opposed the Iranian regime and participated in the "Woman, Life, Freedom" movement, exposing her to potential retaliation if forced to return. Despite years of lawful presence, extensive vetting, and full compliance with immigration requirements, the continued failure to adjudicate her application has caused Marjan significant emotional distress, professional instability, and fear about her safety and future.

95. Plaintiff **Hamed S. Doe** is a citizen of Iran who recently earned a Ph.D. in Mechanical Engineering, with specialized research in indoor air quality, HVAC systems, and the airborne transmission of viruses affecting public health. He received a full-time job offer from a major U.S. HVAC manufacturer scheduled to begin in January 2026, contingent on obtaining Optional Practical Training authorization, and timely filed his OPT application with premium processing. Despite USCIS's published processing timeframe, his application has received no decision following the nationwide adjudication pause, placing his employment at immediate risk. Hamed is currently within his post-graduation grace period and, due to the delay, is unable to work legally, earn income, or secure health insurance, exposing him to serious financial hardship and the imminent risk of losing lawful status through no fault of his own. The uncertainty has caused significant fear and distress, particularly given guidance treating Iranian nationality as a

negative factor, which threatens both his current job offer and future employment prospects. The continued failure to adjudicate his application has left Hamed facing severe professional disruption, financial instability, and emotional harm at a critical transition point in his career.

96.    Plaintiff **Minoo M. Doe** is a citizen of Iran and a Ph.D. candidate in Educational Psychology who has lawfully resided in the United States for several years while completing advanced doctoral training and contributing research focused on educational systems, child development, and outcomes for underserved students. She filed an EB-2 National Interest Waiver petition in good faith, supported by extensive evidence of her research contributions to U.S. educational institutions and public interests, but her petition has not been adjudicated and was placed into indefinite delay following agency-wide screening announcements in late 2025. Despite full compliance with all requirements, the lack of adjudication has disrupted Minoo's time-sensitive doctoral milestones, research appointments, funding eligibility, and post-graduation employment planning, causing concrete professional harm. The prolonged uncertainty has also caused sustained anxiety and emotional distress and has prevented her from making basic life decisions related to housing, employment continuity, travel, and long-term stability. The continued failure to adjudicate her petition has left Minoo's academic career, professional future, and personal well-being in prolonged and destabilizing limbo through no fault of her own.

97.    Plaintiff **Aliakbar Y. Doe** is a citizen of Iran who has lived continuously and lawfully in the United States for more than twelve years and is currently employed as a postdoctoral researcher in Michigan. He plays a key role in a federally funded research program scheduled to continue through 2026, yet his pending immigration filings—including a time-sensitive H-1B extension and adjustment-related applications—have been placed into uncertainty following the nationwide adjudication pause affecting Iranian nationals. As a result,

Aliakbar faces the imminent risk of losing lawful work authorization and being forced to stop his research and leave the United States despite full compliance with all immigration requirements and prior approvals. The delay threatens the loss of his career, lawful status, and the academic and community ties he has built over more than a decade. The continued failure to adjudicate his applications has caused Aliakbar severe emotional distress, fear, and professional instability through no fault of his own.

98.     Plaintiff **Seyedhossein H. Doe** is a citizen of Iran and a member of the Kurdish and Sunni minority community who is lawfully employed in the United States as a biomedical researcher contributing to scientific and public-health efforts. He filed an application for adjustment of status based on an EB-2 National Interest Waiver, but his case has been subjected to an unexplained and prolonged pause despite full compliance with all immigration requirements. The lack of adjudication has left Seyedhossein unable to make long-term professional or personal plans and has caused ongoing fear, anxiety, and uncertainty about his future in the United States. The continued government inaction has resulted in significant emotional distress and professional instability through no fault of his own.

99.     Plaintiff **Noushin A. Doe** is a citizen of Iran who has lawfully resided in the United States for more than eight years, maintaining continuous legal status, full compliance with immigration laws, and no criminal or immigration violations. She has multiple employment-based immigrant petitions and related applications pending with USCIS, yet her case has been subjected to an indefinite pause and heightened scrutiny that explicitly treated her Iranian nationality as a negative factor. Despite recently receiving H-1B approval and changing roles to work in a position more closely aligned with her professional expertise, the uncertainty surrounding her status places her at imminent risk of losing her ability to work and falling out of lawful status

through no fault of her own. The pause has also stalled her green card process, compounding professional and financial instability. The impact has been deeply personal as well: Noushin has been unable to travel for more than six years and could not visit her family after her father suffered a stroke, causing profound emotional distress. After years of building her life in the United States in good faith, the indefinite delay and nationality-based treatment have left her in prolonged limbo, resulting in significant emotional, financial, and professional harm.

100.    Plaintiff **Alireza A. Doe** is a citizen of Iran who entered the United States on an F-1 student visa in July 2021, accompanied by his wife, **Plaintiff Sara Yazdanpanah Fadaee**, also an Iranian citizen. Alireza completed his PhD with top academic distinction and is now employed as an Assistant Professor of Finance at Elizabethtown College, while maintaining lawful status under Optional Practical Training. His employer has filed an H-1B petition on his behalf, yet the recent suspension of adjudications affecting Iranian nationals places him at imminent risk of falling out of lawful status despite full compliance with all immigration laws. Alireza and Sara have lived lawfully in the United States for more than four years, have no criminal or immigration violations, and have actively contributed to their community and academic institutions. They are also the parents of two U.S. citizen children, whose lives would be profoundly disrupted if the family were forced to leave the United States and relocate to a country unfamiliar to them, where they do not speak the language and have no meaningful ties. The adjudication pause has placed the family in severe uncertainty, threatening their lawful status, professional stability, and the well-being of their children, causing significant emotional distress through no fault of their own.

101.    Plaintiff **Mohammad M. Doe** is a citizen of Iran and a doctoral candidate in civil engineering at a public university in Florida, where his research focuses on infrastructure

resilience, disaster recovery, and planning in disaster-prone regions. He has lawfully resided in the United States since 2021 in F-1 status and, due to a single-entry visa, has been unable to travel internationally during this period. Based on peer-reviewed publications and work on federally and state-funded research projects supporting hurricane resilience and infrastructure mitigation for Florida communities, Mohammad filed an EB-2 National Interest Waiver petition, which was approved in June 2025. After becoming eligible, he filed applications for adjustment of status and employment authorization in October 2025 while preparing to transition into academic or research employment. Following USCIS's adjudication pause, his case has been placed in prolonged uncertainty, leaving him unable to accept employment despite being qualified and competitive, and placing him at risk of losing lawful status through no fault of his own. The delay has caused significant professional harm by foreclosing time-sensitive academic and research opportunities, disrupting publication and career continuity, and disadvantaging him solely based on nationality. It has also restricted his ability to travel for family, academic, or professional obligations. The ongoing pause has resulted in serious financial insecurity, professional stagnation, legal uncertainty, and sustained emotional distress, threatening to undermine years of education, research, and public-interest contributions made in good-faith reliance on timely and lawful adjudication.

102.    Plaintiff **Fahimeh S. Doe** is a citizen of Iran and a researcher in artificial intelligence whose work focuses on data-driven analysis in high-impact fields such as environmental modeling and medical diagnosis. Despite steady academic progress, publications, and professional service, the suspension of immigration adjudications has placed her career in jeopardy. Because many research roles require work authorization and access to sensitive or export-controlled data, the uncertainty surrounding her immigration status has caused employers

and institutions to decline consideration of her candidacy solely due to perceived risk tied to her nationality. This has resulted in lost opportunities, stalled career progression, and reputational harm. The ongoing pause has caused Fahimeh significant fear, frustration, and emotional distress, leaving her unable to plan professionally or move forward despite full compliance with immigration laws.

103.    Plaintiff **S. Nooshan Mirmohammadal**i is a citizen of Iran and a doctoral candidate in nutrition science whose application for permanent residence has been placed on indefinite hold. This pause has jeopardized her ability to complete her degree and transition into lawful employment, as her academic funding is guaranteed only through May 2027 and she must graduate and secure work authorization by that time to avoid losing years of specialized training. Without timely adjudication, she will be unable to lawfully enter the workforce, resulting in irreparable professional harm and the loss of substantial U.S. investment in her education and research. The delay has also caused severe personal hardship: Seyedeh has been separated from her parents for more than three years, her father is ill, and because visa processing for Iranian students is effectively suspended, leaving the United States would likely prevent her return. Her research addresses diet-related drivers of chronic kidney and cardiovascular disease, areas of significant public health importance in the United States. The adjudication pause has placed her education, career, and family unity at risk, causing ongoing fear, emotional distress, and uncertainty despite full compliance with all immigration requirements.

104.    Plaintiff **Sobhan Z. Doe** is a citizen of Iran who entered the United States in July 2021 in lawful F-1 status and is a Ph.D. student at a public research university in Tennessee conducting advanced agricultural research aimed at reducing crop losses and supporting U.S. food production. He filed Forms I-485 and I-765 in October 2025, but his case has been placed on

indefinite hold, preventing him from planning post-graduation employment or committing to long-term research projects and causing significant professional disruption. With less than one year of valid status remaining, the uncertainty has created severe stress, instability, and difficulty focusing on his work. As an Iranian student holding a single-entry visa, he has been unable to leave the United States for approximately five years and was unable to be with his family after the deaths of three close relatives. The adjudication pause has caused Sobhan substantial emotional distress, professional harm, and ongoing uncertainty despite full compliance with all immigration requirements.

105. Plaintiff **Zhina R. Doe** is a citizen of Iran who has been lawfully present in the United States since 2021 and is a Ph.D. candidate in planning, design, and construction. She timely filed an application for Optional Practical Training and paid for premium processing, yet USCIS has taken no action, placing her at immediate risk of losing lawful employment when her current authorization expires. Zhina's approved EB-2 National Interest Waiver recognizes her work in building energy efficiency and energy standards that support U.S. utilities and state governments in reducing costs and advancing national energy goals. The adjudication pause threatens the immediate loss of her job and income, disrupts ongoing public-interest projects for which she was specifically trained, and places her at risk of eviction after she entered a residential lease in reliance on continued lawful employment. With no family or financial support in the United States, the uncertainty has caused severe stress, financial instability, and fear of homelessness. The continued failure to adjudicate her application has caused Zhina significant professional and emotional harm through no fault of her own.

106. Plaintiff **Shahab Z. Doe** is a citizen of Iran who has been lawfully present in the United States since August 2021 and is a Doctor of Pharmacy and biomedical engineering fellow

at a research hospital in New Jersey, where his work focuses on improving care for diabetic patients in the United States. USCIS approved his EB-2 National Interest Waiver recognizing the national importance of his research, and he filed an application for adjustment of status in reliance on that approval. Despite his spotless immigration record and extensive vetting, his application has been effectively frozen under recent USCIS policies that treat Iranian nationality as a negative factor, creating an indefinite pause through no fault of his own. This uncertainty has disrupted his ability to plan his professional future and threatens work that directly benefits American patients. The pause has also caused severe personal hardship, as Shahab has been separated from his parents for nearly five years and cannot travel to see them or reunite due to visa restrictions and the risk of losing his lawful status. The continued failure to adjudicate his case has caused Shahab significant emotional distress, professional instability, and ongoing fear that his life and career in the United States will be undone despite his full compliance and approved national interest status.

107.   Plaintiff **Hoseyn A. Doe** is a citizen of Iran and a third-year Ph.D. candidate in mechanical engineering at a leading public research University in Georgia, where he maintains lawful F-1 status through December 2027. USCIS approved his EB-2 National Interest Waiver petition in May 2024, formally recognizing that his work serves the national interest of the United States. Since that approval, Hoseyn has led advanced research at the intersection of artificial intelligence and biotechnology, developed an AI-driven educational platform with demonstrated national relevance, and received multiple institutional awards for research, mentorship, and innovation. Despite this recognition, the pause in adjudicating his permanent residence application has left him unable to fully commercialize or scale his work, participate in time-sensitive research initiatives, or pursue funding and opportunities reserved for permanent residents. In the rapidly evolving AI sector, this delay risks permanent loss of market opportunity,

undermines U.S. innovation goals, and has caused Hoseyn significant professional disruption, uncertainty, and emotional distress despite full legal compliance and an approved national interest determination.

108.    Plaintiff **Sima M. Doe**, the spouse of Hoseyn A. Doe is a citizen of Iran and a third-year Ph.D. candidate in mathematics and statistics at a public University in Georgia, where she maintains lawful F-1 status through May 2028. Her research includes advanced statistical and computational modeling with applications in cancer research and artificial intelligence, supported by competitive fellowships and collaborations with U.S. and international institutions. Sima has taught and tutored approximately 2,000 students primarily U.S. citizens mentored undergraduate researchers leading to peer-reviewed publications, and served in leadership roles within academic organizations. The pause in her family's immigration process has stalled her professional trajectory, restricted access to research opportunities and grants tied to permanent status, and imposed ongoing psychological strain. The prolonged uncertainty has prevented her from making long-term academic and personal commitments and has caused substantial emotional hardship, compounded by the fact that she and Hoseyn were forced to marry in the United States without their families present due to travel restrictions.

109.    Plaintiff **Khazar D. Doe** is a citizen of Iran and a medical doctor who has lawfully resided in the United States and fully complied with all immigration requirements while preparing for a U.S. medical career. After years of unpaid academic preparation, clinical observerships, and passing multiple steps of the U.S. Medical Licensing Examination, Khazar filed an EB-2 National Interest Waiver petition and, together with his spouse, filed applications for adjustment of status and employment authorization in October 2025. Due to the adjudication pause, his employment authorization has not been issued, leaving him unable to work, earn

income, or obtain health insurance. Each missed year of adjudication prevents him from entering the medical residency Match, permanently diminishing his competitiveness and undermining years of education and preparation that cannot be recovered. The delay has also placed significant strain on his household, as his spouse—an F-1 doctoral student—faces uncertainty in planning internships, research appointments, and future employment. The prolonged pause has caused Khazar severe professional harm, financial insecurity, and ongoing emotional distress, leaving his medical career and future in the United States in prolonged limbo through no fault of his own.

110.    Plaintiff **Hamid H. Doe** is a citizen of Iran who has lawfully resided in the United States since May 2022 and filed an application for adjustment of status in June 2025, which has remained unadjudicated due to the adjudication pause. He is currently in lawful J-1 status through June 2026, but the delay has placed him at risk of unemployment, loss of health insurance, and financial instability. Hamid is a postdoctoral researcher in medical science whose work applies artificial intelligence and machine learning to drug discovery and healthcare research, directly benefiting U.S. medical innovation. Because his adjustment application remains pending, he was unable to accept a position with a federal research institution that requires permanent residency, resulting in lost professional opportunities and jeopardizing ongoing research projects. The uncertainty has caused significant emotional distress, particularly due to prolonged separation from his elderly parents in Iran, whom he has not seen since 2022. The continued failure to adjudicate his application has caused Hamid substantial professional harm, financial insecurity, and ongoing anxiety through no fault of his own.

111.    Plaintiff **Hamid S. Doe** is a citizen of Iran who resides in Arizona and is a Ph.D. candidate in mechanical engineering conducting advanced research in materials science, additive manufacturing, and mechanical characterization—fields directly aligned with U.S. scientific and

technological priorities. USCIS approved his EB-2 National Interest Waiver petition, confirming that his work serves the national interest, and he filed an application for adjustment of status in August 2024. Despite this approval and full compliance with immigration laws, adjudication of his application has been paused under recent USCIS policies that appear to treat nationality as a negative factor. The prolonged uncertainty has disrupted his ability to focus fully on research, plan future academic and professional opportunities, and commit to long-term projects and collaborations. The ongoing delay has caused Hamid significant anxiety, professional disruption, and emotional distress through no fault of his own.

112.    Plaintiff **Soheyla S. Doe** is a citizen of Iran and the dependent applicant on her husband Hamid Safari's adjustment of status application. She has lawfully resided in the United States and fully complied with all immigration requirements. The pause in adjudicating their applications has placed her life in prolonged uncertainty, affecting basic family planning, housing decisions, and long-term stability. Living under constant unpredictability despite her husband's approved national-interest petition has caused Soheyla ongoing stress, emotional exhaustion, and fear about their future in the United States, even as they seek only lawful adjudication and the ability to continue building a stable life.

113.    Plaintiff **Hasti H. Doe** is a 23-year-old citizen of Iran who filed an application for adjustment of status in October 2023 and has waited more than a year without adjudication or explanation. She is lawfully present in the United States, pursuing an undergraduate degree with a career focus in healthcare management, and is employed in a hospital emergency department supporting patient care. The prolonged pause places her at constant risk of losing her ability to work, continue her education, maintain health insurance, and remain lawfully in the country where she has built her life. The delay has also caused severe emotional harm, including chronic

anxiety and fear about sudden loss of status and family separation. Hasti's mother is her only immediate family member in the United States and cannot safely return to Iran; separation would likely be permanent. Returning to Iran is not a viable option, as she would face loss of basic rights and personal safety as a woman. Despite full compliance with all immigration requirements, the ongoing failure to adjudicate her application has left her trapped in legal limbo, unable to plan her future or continue her education and healthcare work without constant fear and instability.

114.    Plaintiff S. **Mojtaba Doe** is a citizen of Iran and the principal applicant on an adjustment of status application filed in October 2025. He is a Ph.D. candidate in mechanical engineering whose research focuses on microfluidic and microscale technologies supporting biomedical discovery, diagnostics, and therapeutic development—work aligned with U.S. critical and emerging technology priorities. Despite full compliance with immigration laws and the advanced stage of his doctoral training, adjudication of his application has been indefinitely paused under USCIS policies that treat Iranian nationality as a negative factor. As a final-year Ph.D. student approaching graduation, this uncertainty threatens his ability to lawfully transition into post-graduation research employment, undermines his academic focus, and places his professional future in jeopardy. The prolonged delay has caused significant emotional distress, disrupted long-term career planning, and left him unable to provide stability for his family despite years of lawful residence and contribution.

115.    Plaintiff **Melika B. Doe** is a citizen of Iran and the dependent applicant on her husband Seyedmojtaba Tabarhoseini's adjustment application. She is a Ph.D. candidate in industrial engineering whose research applies advanced modeling, machine learning, and data analysis to address the U.S. opioid crisis by improving overdose risk assessment and harm-reduction strategies. The indefinite pause in adjudicating their case has caused her severe

anxiety, physical stress symptoms, and impaired ability to focus on her research and plan for post-graduation employment. As she approaches the final years of her doctoral program, the lack of immigration stability limits her job prospects, delays career decisions, and prevents reunification with family members abroad. Despite full compliance with all legal requirements and sustained contributions to U.S. research and academic communities, Melika remains trapped in prolonged uncertainty that has caused ongoing emotional and professional harm.

116.    Plaintiff **Amin M. Doe** is a citizen of Iran who is married to a United States citizen and filed an application for adjustment of status in February 2025. USCIS approved the Form I-130 confirming the validity of the marriage following an in-person interview in August 2025, yet Amin's adjustment application has remained unadjudicated for months without explanation. He is lawfully present in the United States in F-1 status and is completing a Ph.D. in electrical engineering at a technical university in Massachusetts. The prolonged delay has placed the couple in severe uncertainty and fear, including the risk that Amin may fall out of status upon completing his degree. Returning to Iran is not a viable option, as Amin left the country before compulsory military service and faces a serious risk of detention or punishment if forced to return, particularly due to his ties to the United States and marriage to a U.S. citizen. The continued delay has caused profound emotional distress, fear of family separation, and professional harm, as employers in his field are reluctant or unable to hire Iranian nationals without permanent residence due to export-control restrictions. Despite full compliance with immigration laws and successful vetting, Amin and his U.S. citizen spouse remain trapped in prolonged limbo with no clear path forward.

117.    Plaintiff **Katiana C. Doe** is a citizen of Haiti who has a long-pending family-based adjustment of status application. Her father, now a U.S. citizen, filed a petition for

her in 2017, which USCIS approved in 2023, and she filed Form I-485 in July 2023. Although her interview was completed successfully, her case remains stalled due to visa backlogs and the adjudication pause. Katiana currently relies on Temporary Protected Status and has applied for work authorization based on her pending adjustment, but that application has remained unadjudicated for months, placing her at imminent risk of losing her job when her current authorization expires. She is the primary provider for two U.S. citizen children, including a child with ADHD who requires tutoring and medical care. Loss of employment would also result in loss of health insurance needed to manage her Type 2 diabetes and anxiety, and would jeopardize her family's housing and basic necessities. The prolonged delay has caused Katiana severe emotional distress, financial insecurity, and fear of homelessness, despite her full compliance with immigration requirements and years-long reliance on the lawful process.

118.    Plaintiff **Dina M. Doe** is a citizen of Iran engaged in advanced medical research in radiology whose EB-2 National Interest Waiver petition has been approved in recognition of her nationally important work, including more than thirty peer-reviewed publications. Despite this approval and full compliance with immigration laws, adjudication of her adjustment-of-status and related applications has been indefinitely delayed, leaving her in constant uncertainty. Dina is scheduled to begin medical residency training in July 2026, a position she has worked toward for years and which requires stable immigration status; the ongoing delay threatens to eliminate this opportunity through no fault of her own. She has been unable to travel outside the United States since 2021, resulting in prolonged separation from her parents and significant emotional distress. The delay has also caused serious financial hardship because she is unable to work lawfully and contribute to household income despite being fully trained and ready to serve patients in the United States.

119.   The spouse of **Dina M. Doe** is **Plaintiff S. Alireza Doe**, a citizen of Iran and a resident physician working at a hospital in New York. The delay in adjudicating his wife's employment authorization and adjustment application has directly affected him, his household, and his ability to plan his professional and personal future. As a medical resident with intense clinical responsibilities, he bears the full financial burden of the household while living under constant uncertainty about whether his spouse will be permitted to work or remain lawfully in the United States. The prolonged instability has placed significant emotional and financial strain on their marriage and threatens the stability of their family life, even as S. Alireza continues providing critical patient care within the U.S. healthcare system.

120.   Plaintiff **Navid H. Doe** is a citizen of Iran and a scientist in the United States who filed an adjustment-of-status application under the EB-2 National Interest Waiver category with a current priority date, but his case has remained unadjudicated for more than fourteen months and was formally paused by USCIS on December 2, 2025, based solely on his country of birth. He is currently in F-1 status through Optional Practical Training, which expires in January 2026, after which he will remain in the United States only pursuant to a pending I-485, creating significant fear and uncertainty given recent enforcement actions. The delay has caused substantial professional harm by preventing access to research positions that require permanent-resident status, has blocked international travel and separated him from his elderly mother for many years, and has caused ongoing emotional distress despite his full compliance with U.S. immigration laws and good-faith pursuit of permanent residence.

121.   Plaintiff **Milad H. Doe** is a citizen of Iran who has been lawfully present in the United States since 2022 as an F-1 student and is currently pursuing a PhD in nutritional sciences. He is the beneficiary of an approved EB-1A immigrant petition and filed a Form I-485 application

for adjustment of status in 2025, but his case has remained pending without action due to a reported pause affecting Iranian nationals. This delay has placed him in ongoing fear that his lawful status could expire before adjudication, jeopardizing his ability to complete his doctoral studies and pursue post-doctoral or research opportunities, as many employers will not consider Iranian nationals without permanent residence. The prolonged uncertainty has caused severe emotional distress and has prevented him from traveling to see his family without risking his future in the United States. Returning to Iran is not a safe or realistic option due to his Azeri ethnic background, his profile as a U.S.-educated academic, the risk of forced military service, and the broader dangers faced by individuals with U.S. ties. Despite full compliance with all immigration laws and good-faith filing, the ongoing delay has left him in prolonged instability and fear, preventing him from moving forward with his life and career.

122.    Plaintiff **Parisa M. Doe** is a citizen of Iran who has been lawfully present in the United States since 2017 and has continuously maintained lawful status while pursuing advanced research in data science and computational biology focused on improving drug discovery and medical innovation. She lives in Pennsylvania. Her work supports the development of safer and more effective treatments, directly benefiting patients, healthcare providers, and the broader public by helping reduce costs and accelerate medical breakthroughs. Due to visa-related travel restrictions, she has been unable to visit her family abroad for nearly nine years, enduring prolonged separation with the expectation that permanent residence would allow reunification. She filed her adjustment of status application in good faith and full compliance with the law, yet her case has been placed on an indefinite pause under recent adjudication policies. This unexplained suspension has caused severe emotional distress and professional instability, preventing long-term planning and undermining years of lawful effort, contribution, and reliance

on the immigration system's promise of fair and timely adjudication. ¶

123.    Plaintiff S. **Rahman** S. **Doe** is a citizen of Iran who has been lawfully present in the United States since 2021 and has continuously maintained valid immigration status while conducting advanced engineering research focused on improving water efficiency, sustainable agriculture, and infrastructure resilience in resource-scarce environments. His work—recognized by USCIS as being of national importance—supports innovations in high-efficiency farming and advanced materials processing that help conserve water, strengthen food systems, and benefit American communities facing climate and resource challenges. Despite approval of his immigrant petition, his adjustment of status and travel applications have been frozen under recent nationality-based adjudication pauses, leaving his career in prolonged uncertainty. The lack of permanent status has made employers hesitant to hire him, placing his research contributions and professional future at risk. He has not been able to travel to see his family for nearly five years, including during a serious illness suffered by his father, because his travel authorization remains stalled. The indefinite delay has caused severe emotional distress, disrupted his ability to plan his future, and left him in legal limbo despite full compliance with U.S. immigration laws and good-faith reliance on the system. ¶

124.    Plaintiff **Mohammadreza G. Doe** is a citizen of Iran who has been lawfully present in the United States for many years, has continuously maintained valid status, and has fully complied with all U.S. immigration laws while pursuing advanced scientific training and research. His adjustment of status application, based on an approved National Interest Waiver, has been effectively paused with no clear timeline for adjudication, creating prolonged uncertainty that appears to be driven in part by nationality-based treatment. His doctoral research focuses on developing medical technologies aimed at improving healthcare outcomes, including innovations

related to sepsis management that have the potential to save lives, reduce healthcare costs, and generate economic value through commercialization and innovation for the benefit of patients and communities in the United States. Despite USCIS's prior determination that his work serves the national interest, the ongoing pause has prevented him from committing to long-term research, entrepreneurial ventures, or professional opportunities that require immigration stability. The uncertainty has also caused significant personal hardship, as he is in a committed relationship with a U.S. citizen but cannot plan marriage or family decisions without knowing whether he will be allowed to remain in the country. The indefinite delay has resulted in persistent anxiety, fear, and instability, leaving him unable to plan his future despite years of lawful presence, good-faith reliance on the immigration system, and meaningful contributions to science, innovation, and healthcare in the United States.¶

125.    Plaintiff **Souraya H. Doe** is a 73-year-old widow and citizen of Syria who applied for adjustment of status through a petition filed by her U.S. citizen daughter so that she could live with her children and no longer remain alone in an increasingly unsafe environment. The freeze on USCIS adjudications halted processing of her I-130 and I-485 applications and prevented issuance of her approved work authorization, leaving her in prolonged uncertainty and deep distress. She has lived separated from her children for many years and has not been able to see them together for eight years, while ongoing conflict and instability in Syria continue to threaten her safety and well-being. Her daughter, who has long hoped to care for her mother after years of separation, is devastated by the indefinite delay and fears for her mother's safety and emotional health. The inability to obtain lawful status has left Souraya unable to live independently or fully integrate into her daughter's household, despite always complying with immigration rules during prior visits. The continued pause has caused significant emotional, financial, and family hardship,

preventing a long-planned reunification and placing an elderly woman in continued vulnerability solely due to delayed adjudication.

126.    Plaintiff **Misagh E. Doe** is an Iranian citizen who entered the United States in January 2019 on a student visa, completed a Ph.D. in 2025, and has since been working lawfully under Optional Practical Training as a geotechnical engineer contributing to major public infrastructure projects that support transportation safety and national development. His specialized work directly serves the public interest by supporting large-scale infrastructure relied upon by millions of Americans. He applied for and received approval of an EB-2 National Interest Waiver based on these contributions, then filed for adjustment of status once his priority date became current, but his application has since been paused with no timeline for adjudication. This pause places him at risk of losing lawful employment when his work authorization expires, despite an approved immigrant petition recognizing the national importance of his work. The delay threatens his career, financial stability, and professional standing, while also disrupting projects and teams that rely on his expertise. On a personal level, the indefinite uncertainty has caused significant stress and anxiety, leaving him unable to plan for the future or feel secure in daily life. The continued pause now jeopardizes his ability to keep contributing to critical U.S. infrastructure and has caused serious professional and personal harm through no fault of his own.

127.    Plaintiff **Mostafa M. Doe** is a citizen of Afghanistan who has lived lawfully in the United States since 2017 and was granted asylum in 2024 after years of compliance with U.S. immigration laws. He filed for adjustment of status in early 2025, but his application has remained pending with no timeline, leaving him in ongoing uncertainty despite having lawful status, no criminal history, and deep ties to the United States. He is employed as a software engineer, contributes to the U.S. economy, and is married to a U.S. citizen, yet the lack of

permanent resident status has limited his career advancement, prevented long-term financial stability such as home ownership, and caused persistent anxiety and fear. The delay has also prevented him from safely traveling to see his elderly parents, one of whom has serious health conditions, forcing him to miss major family events that can never be recovered. Returning to Afghanistan is not a safe option, as confirmed by his receipt of Chief of Mission approval for a Special Immigrant Visa based on serious threats he would face there. The continued delay has left him in legal limbo, undermining his stability, professional growth, family unity, and emotional well-being through no fault of his own.

128.    Plaintiff **Samad A. Doe** is an Iranian national who entered the United States lawfully in 2019 on a student visa, completed a Ph.D., and has since worked as a scientist developing methods to diagnose and treat serious neurological diseases that affect countless American families. His research and professional work focus on early-stage drug discovery and medical innovation with clear public-health benefits. USCIS approved his EB-2 National Interest Waiver in recognition of the value of his work, and he filed for adjustment of status in mid-2025 after his priority date became current. Despite full compliance with all immigration requirements, his case has been frozen under USCIS Policy Memorandum PM-602-0192 solely because of his country of birth, and that same policy instructs officers to treat his nationality as a negative factor, placing him at risk of denial unrelated to merit. This indefinite pause has left him unable to plan his career, pursue stable employment opportunities, or focus fully on research that could improve or save lives, while also preventing him from traveling to see his aging parents, whom he has not seen in more than six years due to visa and reentry risks. The prolonged uncertainty has caused significant professional disruption and emotional distress, undermining the very contributions USCIS previously deemed to be in the national interest, and leaving his future in the United States

dependent not on his qualifications or conduct, but solely on where he was born.¶

129.    Plaintiff **Mohammed A. A. Doe** is a Yemeni national who entered the United States lawfully in 2014 as a student, maintained legal status for years, and later received asylum after prolonged and heightened vetting based solely on his nationality. He is now a small-business owner who operates multiple retail locations in the United States, employs American workers, and has paid substantial state and federal taxes, contributing directly to the local economy and his community. Despite full compliance with U.S. immigration laws, his asylum-based adjustment of status application has been paused, and his request for a refugee travel document was denied even during a medical emergency involving his infant son, leaving him unable to care for his child or reunite with his wife, who is completing medical training abroad and raising their child alone. The indefinite immigration pause has caused severe emotional distress, family separation, and professional harm, preventing him from expanding his business, traveling for urgent family needs, or living a stable family life. He has never committed a crime, has consistently followed the legal process, and asks only to be judged on his conduct and contributions rather than his nationality, so that he may continue working, supporting American employees, and reuniting with his family.¶

130.    Plaintiff **Kasra S. Doe** is a citizen of Iran who lawfully entered the United States in 2021 and has continuously maintained valid immigration status, with no criminal or immigration violations. Kasra filed applications for adjustment of status and work authorization based on an approved EB-2 National Interest Waiver after USCIS determined that Kasra's work is important to the United States. That work focuses on developing advanced wildfire modeling and risk-mitigation technologies that help utilities and public agencies prevent catastrophic wildfires, protect communities, and improve public safety, particularly in high-risk and underserved areas. Despite full compliance with all legal requirements, Kasra's case has been frozen due to a

nationality-based suspension of adjudications, creating immediate and severe harm. Kasra's work authorization is set to expire, placing employment, financial stability, and the ability to continue contributing to critical wildfire-prevention efforts at risk. The uncertainty has caused significant stress and anxiety, disrupted long-term career planning, and foreclosed job and entrepreneurial opportunities that could have created U.S. jobs and advanced life-saving technology. Travel restrictions tied to nationality have also prevented Kasra from seeing family for years and from participating in professional collaborations essential to advancing this work. The ongoing pause has left Kasra in prolonged legal and personal limbo, despite having done everything required under the law.

131. Plaintiff **S. Mahmoud M. Doe** is a citizen of Iran who has been lawfully present in the United States since entering in student status and has complied with all immigration requirements while completing advanced doctoral training in computer science and engineering in the state of Nevada, with a professional focus on artificial intelligence systems applied to healthcare, data processing, and resource optimization that benefit everyday Americans through improved medical technology and public health outcomes. Seyed filed employment-based immigration petitions in good faith and secured a federally funded research position in the state of Virginia focused on health technology innovation, but adjudication of the pending filings was placed into indefinite delay as part of the nationality-based pause. As a result, Seyed has been unable to begin authorized employment, transition from academic status into federally funded research, or plan housing, employment, or long-term stability, causing substantial professional harm, financial uncertainty, and disruption to work intended to advance U.S. healthcare and technology priorities despite full legal compliance.

132. Plaintiff **Mahsa P. Doe** is the spouse of Plaintiff S. Mahmoud M. Doe. She is a

citizen of Iran who has been lawfully present in the United States and has complied with all immigration requirements while pursuing advanced scientific research in the state of Nevada focused on biomedical and physiological systems that affect chronic disease and public health outcomes for everyday Americans. Mahsa's lawful ability to continue research activity and plan professional advancement has been destabilized by the same adjudication pause affecting the household, which has interrupted employment continuity, delayed future opportunities, and prevented long-term planning related to work, housing, and family life. The prolonged uncertainty has caused professional disruption and emotional strain by placing years of specialized training and ongoing research at risk, despite Mahsa's good-faith compliance with U.S. immigration laws and continued contribution to scientific work that supports public health and medical understanding.

133.    Plaintiff **Marjan D. Doe** is a citizen of Australia, born in Iran, who has been lawfully present in the United States and filed an employment-based immigrant petition in good faith to continue long-term work in clinical research. Marjan has built a career focused on supporting medical research and clinical trials that improve patient safety and treatment outcomes, contributing to advances in areas such as cardiovascular disease, neurological injury, and critical care that directly benefit everyday Americans. Despite full compliance with immigration laws and maintaining lawful status, Marjan's case has been paused or left pending without action, creating ongoing uncertainty about the ability to remain and work in the United States. This delay places Marjan at risk of losing work authorization, professional stability, and the opportunity to continue contributing to U.S. healthcare research, while also making international travel risky and limiting the ability to see family or respond to emergencies abroad. The prolonged pause has caused significant stress and anxiety, prevented long-term planning, and

disrupted a career built over many years outside Iran, leaving Marjan's future dependent on an unexplained and indefinite adjudication delay beyond personal control.

134.    Plaintiff **Saman Z. Doe** is a citizen of Iran who has been lawfully present in the United States since 2017 and has continuously maintained valid immigration status while completing advanced doctoral training and building a professional research career. Saman filed an adjustment of status application based on an approved National Interest Waiver and completed all required steps in good faith, yet the application has been placed on indefinite pause. Saman works in advanced thermal and energy systems research, focusing on improving efficiency, safety, and performance in technologies that support everyday American needs such as energy reliability, manufacturing, and infrastructure. The ongoing delay has created professional instability by limiting the ability to plan long-term research projects, participate fully in collaborations, and commit to multi-year work that requires immigration continuity. The pause has also restricted travel necessary for professional engagement and has imposed ongoing uncertainty that affects financial planning, housing decisions, and family stability, despite full compliance with U.S. immigration laws and long-standing contributions to U.S. research priorities.

135.    Plaintiff **Mahnaz V. Doe** is a citizen of Iran and the dependent applicant on Saman's adjustment of status application, and has also maintained lawful status in the United States while building a professional career based on advanced graduate education. Mahnaz's work has focused on research, policy analysis, and data-driven programs that support public-interest initiatives and nonprofit and research efforts benefiting American communities. Because Mahnaz's immigration status is tied to Saman's paused application, the delay has limited the ability to pursue stable, long-term professional opportunities and has disrupted career planning and economic security. The uncertainty has prevented meaningful life planning, including housing

and future employment decisions, and has imposed ongoing emotional and professional strain despite lawful presence, good-faith filings, and consistent compliance with all immigration requirements.

136.    Plaintiff **Percy I. Doe** is a citizen of Nigeria who has been lawfully present in the United States since filing an asylum application in 2018 and has fully complied with all immigration requirements while waiting for adjudication. Percy attended a long-delayed asylum interview in December 2025 and provided all requested information in good faith, yet the application has remained unresolved with no decision or timeline. The continued delay, combined with recent immigration actions affecting Nigerian nationals, has created serious uncertainty about whether the asylum process will move forward at all. This prolonged limbo has caused significant emotional distress, fear, and instability, as Percy relies on the asylum process for personal safety, lawful protection, and the ability to rebuild a stable life in the United States after fleeing harm. Despite years of lawful presence and cooperation with the process, the lack of adjudication has left Percy vulnerable, unable to plan for the future, and without the security that the asylum system is intended to provide.

137.    Plaintiff **Larissa G. Doe** is a citizen of Burundi who has been lawfully present in the United States for many years and has fully complied with immigration requirements while pursuing asylum protection in good faith. Larissa completed an asylum interview after nearly nine years of waiting, was informed a decision would follow, and then experienced an unexplained cancellation and prolonged silence, leaving the case unresolved despite full cooperation. At the same time, Larissa requested a replacement employment authorization document after a previously approved card was lost, yet adjudication of that request has also been paused, preventing lawful employment. The combined delays have caused serious harm, including loss of

income, inability to secure new employment, mounting financial instability, and difficulty meeting basic living expenses such as housing, food, utilities, and health care. Because asylum protection remains undecided and work authorization remains unissued, Larissa lives in ongoing uncertainty and fear, unable to plan for the future or maintain stability, despite years of lawful presence, community contribution, and reliance on the immigration system to provide safety, protection, and the ability to work and live independently.

138. Plaintiff **Milad M. Doe** is a citizen of Iran who lawfully resides in Oklahoma and filed applications for adjustment of status and employment authorization in good faith, with all filings remaining pending due to the adjudication pause. Milad maintains lawful status through post-completion work authorization that expires in early 2026, and the lack of action places Milad at immediate risk of losing lawful employment and income. Milad works in advanced engineering focused on sensor and detection technologies that support public safety, environmental monitoring, and disaster response, including applications that help protect communities and reduce environmental harm affecting everyday Americans. The pause has created serious professional harm by preventing long-term research planning and continuity of work that depends on stable authorization, while also causing financial instability and inability to plan housing or future employment. The delay has further restricted international travel, preventing Milad from visiting an elderly parent with serious health conditions abroad, and has produced ongoing stress and uncertainty despite full compliance with immigration laws and reliance on timely adjudication.

139. Plaintiff **Masoumeh N. Doe** is a citizen of Iran and the derivative applicant on Milad's adjustment application, lawfully present in the United States in student status while pursuing advanced academic training in Oklahoma. Masoumeh's lawful status and future

professional planning are directly tied to the unresolved adjustment case, and the prolonged pause has limited the ability to plan career development, housing, and long-term stability. The uncertainty has also restricted international travel, preventing Masoumeh from visiting family abroad for several years due to the risk of being unable to return. The continued delay has caused significant emotional and practical hardship, leaving Masoumeh unable to make basic life decisions or rely on the immigration process for stability, despite full compliance with immigration requirements and good-faith participation in the lawful process.

140.    Plaintiff **Nooshin Z. Doe** is a citizen of Iran who has been lawfully present in the United States since 2019 and has continuously maintained valid status while pursuing advanced engineering training and professional work. Nooshin is authorized to work under STEM OPT and works in the medical-device field on diagnostic technology for early detection of eye diseases, supporting public health by improving prevention and patient outcomes. Nooshin filed an employment-based immigrant petition through the EB-2 National Interest Waiver in good faith, but adjudication has been paused under a policy that treats country of birth as a negative factor, leaving lawful immigration planning unresolved. The continued delay has created professional instability, threatens future work authorization and career continuity, and prevents long-term planning despite full compliance with immigration laws. The pause has also caused personal and financial hardship by placing housing stability, family planning, and the ability to remain in the United States with a long-term partner in Maryland in ongoing uncertainty.

141.    Plaintiff **Seyedsajad M. Doe** is a citizen of Iran who has been lawfully present in the United States since 2017 and has continuously maintained valid status while living and working in New Jersey. Seyedsajad works as a scientist in the biotechnology field focused on women's health, contributing to research that improves health outcomes and quality of life for

everyday Americans. Seyedsajad filed employment-based immigration applications in good faith and in full compliance with immigration laws, but adjudication has been placed on indefinite pause under policies treating country of birth as a negative factor. While authorized to work under STEM OPT, the ongoing delay has created severe professional and financial uncertainty by placing continued employment and lawful work authorization at risk despite employer efforts to pursue alternative sponsorship. The pause has also caused significant personal hardship by preventing long-term planning and threatening family stability, as Seyedsajad faces the possibility of job loss, loss of lawful status, and separation from a spouse through no fault of personal conduct.

142.   Plaintiff **Amirsalar B. Doe** is a citizen of Iran who has been lawfully present in the United States since 2021 and has continuously maintained valid F-1 student status while pursuing doctoral research in chemical engineering in Kansas. Amirsalar conducts advanced research at the intersection of chemical engineering and artificial intelligence aimed at improving U.S. industrial manufacturing efficiency, innovation, and competitiveness, work that supports the domestic economy and supply chains relied upon by everyday Americans. In reliance on U.S. immigration law, Amirsalar filed a merit-based employment immigration petition in good faith, but adjudication has been placed on indefinite pause under policies treating country of birth as a negative factor. The delay has created imminent professional harm by preventing lawful planning for post-graduation employment and discouraging employers from pursuing sponsorship, despite a secured job opportunity tied to U.S. education and training. The ongoing pause has also caused severe personal and financial uncertainty by placing lawful status, career continuity, and long-term stability at risk through no fault of compliance or conduct.

143.   Plaintiffs **Abbas K. Doe** and his spouse, **Fatemeh V. Doe**, are citizens of Iran

who have been lawfully present in the United States and filed applications for adjustment of status in December 2025 based on Abbas's approved National Interest Waiver petition, with both applications now paused without action. Abbas maintains lawful work authorization that expires in August 2026 and is the sole income earner for the household, while Fatemeh remains in lawful student status as a dependent applicant. Abbas works as a structural engineer in Georgia on transportation and bridge engineering projects that support the safety, reliability, and modernization of U.S. infrastructure relied upon by everyday Americans, and also contributes to research improving long-term infrastructure performance. The adjudication pause places immediate professional and financial harm on both plaintiffs by threatening loss of lawful employment, household income, and career continuity, while preventing basic life planning and long-term stability. Despite full compliance with immigration laws and good-faith filing, the indefinite delay has left Abbas and Fatemeh facing severe uncertainty, risk of income loss, and disruption to their ability to continue contributing productively to the United States.

144.    Plaintiff **Bahareh S. Doe** is a citizen of Iran who has been lawfully present in the United States in student status and filed for permanent residence through marriage to a lawful permanent resident spouse, submitting adjustment and employment authorization applications in good faith and completing all required steps. Bahareh completed graduate studies and is eligible to work in skilled roles that support the U.S. economy, but the adjudication pause has blocked both marriage-based employment authorization and post-graduation work authorization, leaving no lawful pathway to work despite continued compliance. This delay has created immediate professional harm by preventing employment, causing resume gaps, and eliminating job opportunities solely due to lack of authorization. The pause has also caused significant personal hardship, including inability to plan housing, relocation between Wisconsin and Illinois, or basic

family decisions with a spouse whose life and career are in the United States. Bahareh cannot depart the country due to visa limitations without risking separation, and the ongoing uncertainty has produced sustained financial strain and emotional distress despite full compliance with immigration laws.

145.    Plaintiff **Mehdi S. Doe** is a citizen of Iran who has been lawfully present in the United States in J-1 status since 2021 and is married to a spouse in dependent status, with both maintaining continuous lawful presence and full compliance with immigration requirements. Mehdi is a scientific researcher studying protein behavior and gene regulation in stem cells using advanced microscopy, work that supports medical research and future therapies benefiting everyday Americans. Mehdi is the beneficiary of an approved employment-based immigrant petition recognizing the national importance of this work, yet adjudication of the permanent residence application filed in good faith has been paused due to nationality. The pause prevents long-term career planning, limits research continuity and collaboration, and creates risk to future lawful work authorization despite current valid status. The unresolved delay has caused ongoing professional instability and emotional strain for Mehdi and the spouse, leaving them unable to plan their future despite full legal compliance.

146.    Plaintiff **Reihaneh Z. Doe** is a citizen of Iran who has been lawfully present in the United States and filed an adjustment-of-status application in good faith that has remained paused without action. Reihaneh currently maintains lawful OPT status valid through mid-2026, but the delay places future work authorization and lawful presence at risk despite continued compliance. Reihaneh works in finance as an academic instructor and researcher, contributing to financial education and improved economic decision-making that benefits everyday Americans, yet the uncertainty has already resulted in lost employment opportunities and limits long-term

teaching and research commitments. Reihaneh's spouse is a dependent applicant and a full-time doctoral student without stable income, making the household particularly vulnerable to financial instability if work authorization lapses. The prolonged pause has also prevented travel to see family abroad and has caused sustained professional disruption and emotional strain, leaving Reihaneh unable to plan career, housing, or family decisions despite lawful presence and good-faith filings.

147. Plaintiff **Faezeh E. Doe** is a citizen of Iran who has been lawfully present in the United States in J-1 status since 2022 and filed an adjustment-of-status application in good faith based on an approved National Interest Waiver petition that remains paused without adjudication. Faezeh works in neurological and pharmaceutical research focused on developing treatments to suppress and prevent seizure disorders, work that supports public health by addressing a condition affecting millions of Americans and reducing long-term medical and economic burdens. The continued pause places future lawful status and work authorization at risk before current status expires in 2026, threatening loss of income, health insurance, and interruption of specialized research that depends on sustained continuity. The delay has also prevented international travel, resulting in prolonged separation from immediate family abroad and inability to plan reunification. Despite full compliance with immigration laws and continued lawful presence, the indefinite pause has caused significant professional disruption, financial uncertainty, and ongoing emotional distress.

148. Plaintiff **Saeed B. Doe** is a citizen of Iran who has been lawfully present and employed in the United States and has multiple immigration applications pending without adjudication, including an employment-based immigrant petition, a work-authorizing nonimmigrant petition, and a dependent status application for Saeed's spouse, all filed in good

faith and fully compliant with the law. Saeed is currently authorized to work through post-completion training that expires in 2026, but the unresolved delay places continued employment at immediate risk, as Saeed's employer requires a timely transition to ongoing work authorization to maintain Saeed's role. Saeed's professional work supports public infrastructure and water-management projects that benefit U.S. communities, and disruption of employment would delay ongoing projects and impose additional costs. The prolonged uncertainty has also caused significant family hardship, as Saeed's spouse's lawful status depends entirely on Saeed's filings, leaving the household unable to plan for stability or the future. Travel or return abroad is not a viable option due to safety concerns, and the indefinite delay has resulted in substantial professional disruption, financial insecurity, and ongoing emotional distress despite full compliance with U.S. immigration laws.

149.    Plaintiff **Ali A. Doe** is a citizen of Iran who has been lawfully present in the United States since 2021 and has continuously complied with all immigration requirements while pursuing and completing advanced training in mechanical engineering and filing a good-faith employment-based immigrant petition under the EB-2 National Interest Waiver category. Ali holds a Ph.D. and has a pending immigrant petition that has been placed into uncertainty amid reports of adjudication pauses affecting nationals of certain countries, creating significant anxiety about eligibility to proceed to adjustment of status despite meeting visa bulletin requirements. This delay threatens Ali's ability to plan his professional future and maintain long-term stability after years of lawful presence and reliance on the immigration system. The uncertainty also places substantial strain on Ali's household, as his spouse is lawfully employed in the healthcare field under time-limited work authorization and fears losing the ability to continue providing patient care if immigration status issues remain unresolved. Return abroad is not a viable option due to

safety and employment concerns, and the prolonged lack of clarity has caused serious emotional distress, professional disruption, and instability despite Ali's full compliance and prior vetting by the U.S. government.

150.    Plaintiff **Emile S. Doe** is a citizen of Burkina Faso who has been a lawful permanent resident of the United States since 2020 and filed an application for naturalization in early 2025, which remains pending without adjudication. Emile's case progressed to the interview stage with an estimated decision timeframe, but since mid-2025 the application has exceeded normal processing with no updates or meaningful communication. Emile lives in Massachusetts with a spouse and two U.S.-born children, ages three and six, and the unresolved naturalization application has created uncertainty that restricts travel and long-term family planning. Emile is employed in community health work focused on chronic disease prevention and public wellbeing, serving diverse and immigrant populations whose health and stability depend on trusted community engagement. Despite continuous lawful status and good-faith compliance with immigration requirements, the prolonged pause in adjudication has disrupted Emile's ability to plan for family stability and maintain professional continuity.

151.    Plaintiff **Arian E. Doe** is a citizen of Iran and PhD candidate. Based on his academic record and research contributions, he filed an I-140 Immigrant Petition under the National Interest Waiver category with a priority date of February 2024, and has fully complied with all legal requirements, though he has received no update beyond the receipt notice. His case is now subject to an indefinite pause beyond his control, placing his professional and personal future in prolonged uncertainty, causing ongoing stress and instability, and preventing him from planning his academic career, pursuing long-term research opportunities, or fully committing to future projects in the United States. Despite years of effort and contribution, this situation has

been deeply discouraging; nevertheless, he greatly appreciates the United States and wishes to continue contributing as a researcher and innovator, but without a decision on his petition, he is unable to take meaningful immigration steps or plan a stable professional future.

152.    Plaintiff **SeyedMahbod B. Doe** is a citizen of Iran and a permanent resident of Canada. He is an ECFMG-certified physician with prior primary care experience who currently resides in the United States in lawful J-1 scholar status and has worked since August 2022 as a postdoctoral researcher, where his stem cell-based research addresses serious unmet needs in the treatment of blindness. Committed to becoming a U.S. physician-scientist, he filed an EB-2 National Interest Waiver petition in March 2024 and, when his priority date became current in October 2025, lawfully filed Forms I-485 and I-765, while also applying to U.S. residency programs through ERAS and receiving 22 interviews, including from programs in medically underserved regions. This adjudicative pause now jeopardizes his ability to begin residency despite full legal compliance, disrupting his career and burdening training programs, and he respectfully seeks relief so his applications may be adjudicated and he may continue contributing to patient care and medical and scientific advancement in the United States.

153.    Plaintiff **Mohammad M.Z. Doe** is a citizen of Iran and a Ph.D. candidate in Mechanical Engineering. His work focuses on advanced thermo-fluidic systems, directly supporting vital U.S. industries such as sustainable energy, wastewater management, and industrial process systems. Recognizing the significance of his contributions, the U.S. government approved his I-140 petition under the National Interest Waiver (NIW). Lawfully in the United States since December 2020, on an F-1 visa, he has maintained continuous legal status and filed Form I-485 in June 2025. This pause has placed him in profound professional and personal limbo: it blocks his career advancement, prevents him from securing employment or research funding

commensurate with his expertise, and separates him from his family, including his aging parents whom he has not seen in five years, causing constant stress and uncertainty. Beyond personal hardship, the pause deprives the United States of his vetted, high-impact research, which is designed to solve complex industrial process challenges and advance critical energy and infrastructure systems. Having fully complied with all U.S. laws and demonstrated clear merit, freezing his application serves no national security purpose and jeopardizes both his professional future and the scientific contributions he is prepared to make.

154. Plaintiff **Shaghayegh V. Doe** is a citizen of Iran. She earned her Ph.D. in Electrical and Computer Engineering in January 2025, serving throughout her doctoral studies as a Teaching and Research Assistant and authoring or coauthoring over fifteen peer-reviewed publications. Following graduation, she secured a position as a wireless system engineer where she is currently employed. She is in the United States on F-1 Optional Practical Training (OPT) and has timely submitted her application for the 24-month STEM OPT extension through Form I-765, but as an Iranian national, the administrative pause has directly and severely affected her case. Her EB-2 National Interest Waiver petition (Form I-140) has also been impacted. Although regulations allow her to continue working for up to 180 days beyond her EAD expiration in January 2026 while the STEM OPT application is pending, this temporary relief only extends to July 2026. If USCIS does not resume processing, she risks losing her job and lawful status through no fault of her own, leaving her in prolonged uncertainty solely due to her country of birth.

155. Plaintiff **Shiva G. Doe** is a citizen of Iran. She faces the imminent loss of lawful immigration status due to administrative delays, as her Form I-20 expires in May 2026 and she has no alternative status available because of Virginia Tech's new requirements and her

forthcoming dissertation defense. Her Form I-765 employment authorization, based on her pending Form I-485, has been placed on hold, resulting in the termination of her postdoctoral research position. This uncertainty has substantially disrupted her academic research planning and long-term career trajectory, preventing her from pursuing eligible employment opportunities, including OPT and STEM OPT. She has experienced significant anxiety and depression due to the prolonged uncertainty, necessitating ongoing mental health therapy and medical treatment, and has manifested physical symptoms of stress, including noticeable hair loss. Furthermore, the delay has compelled her to indefinitely postpone a planned visit to her family, whom she has not seen in nine years, causing considerable emotional distress and exacerbating her depressive condition.

156.    Plaintiff **Yasaman E. Doe** is a citizen of Iran, who lawfully entered the United States in August 2019 to pursue graduate education and has continuously maintained lawful status, and she is now in the final year of her Ph.D. in Toxicology, where she has conducted federally funded biomedical research and published peer-reviewed work supporting her eligibility for an EB-2 National Interest Waiver (NIW). She filed Form I-140 NIW petition in August 2024, with a reasonable expectation of adjudication within the posted nine-month timeframe, yet more than seventeen months have passed without any substantive update, request for evidence, or explanation, causing significant uncertainty. The prolonged delay has materially harmed her career at a critical transition point by limiting her ability to compete for industry and postdoctoral positions that require clarity on long-term work authorization, and it has imposed severe personal hardship due to years-long separation from her family in Iran, including the loss of close relatives and her father's surgeries without her presence.Despite full legal compliance, prior screening, and continuous presence in the United States since 2019, she reasonably fears her petition has faced unjustified and prolonged delay.

157.    Plaintiff **Aidasadat M.T. Doe** is a citizen of Iran who lawfully entered the United States on August 15, 2023, on a single-entry F-1 visa to pursue a Ph.D. in Computational Neuroscience, having previously earned a Master's degree in Computer Science in Canada after leaving Iran in 2021, undergoing multiple U.S. and Canadian security screenings, never returning to Iran, and maintaining a clean legal record. She married her U.S.-citizen husband in November 24, 2025, and they timely filed a marriage-based immigration package in December 2025, but the resulting pause has caused severe and ongoing harm by preventing them from building a stable married life, making basic decisions about housing, finances, family planning, and travel, and prolonging separation from her family in Canada. The uncertainty also threatens her ability to pursue time-sensitive research and professional opportunities in a cutting-edge field critical to U.S. scientific leadership and innovation, while forcing her U.S.-citizen husband to live under the constant fear of separation or relocation.

158.    Plaintiff **Ehsan S. Doe** is a citizen of Iran and a Ph.D. candidate whose EB-2 NIW I-140 was approved in October 2023, confirming that his work serves the national interest of the United States; however, the ongoing pause in adjudication of his I-485 and I-765 places his legal status, career trajectory, and family stability in serious jeopardy. With his I-20 expiring upon completion of his Ph.D. in May 2026, the absence of work authorization threatens his ability to transition into postdoctoral research, as universities are reluctant to hire a scientist facing indefinite uncertainty. The hardship profoundly affects his personal life, as after nearly five years in the U.S. on a single-entry visa, he and his family have been unable to visit relatives in Iran, enduring prolonged separation. The suspension has caused severe emotional stress, financial uncertainty, and professional stagnation, leaving his family in legal limbo and threatening their stability in the only home they know.

159.    Plaintiff **Mohammedmehdi A. Doe**, a citizen of Iran first entered the United States in F-1 student status to pursue a Master's in Entrepreneurship and Innovation. He filed for OPT and a STEM OPT extension has been working under the 180-day automatic extension expiring in March 2026. He upgraded to Premium Processing on December 10, 2025, but his application remains pending. He is employed as a Senior Software Engineer after working at startups, in a role highly specialized and directly related to his academic background. He underwent a rigorous Sterling background check, receiving the highest clearance rating, and has fully complied with all immigration laws. The indefinite pause of his STEM OPT application, with no explanation, has caused significant stress, jeopardized his employment, disrupted his ability to plan long-term, and prevented stable financial and housing decisions.

160.    Plaintiff **Behrouz G. Doe** is a citizen of Iran who has lawfully resided in the United States in Florida as a postdoctoral researcher and timely filed for a STEM OPT employment authorization extension, relying on the automatic extension provisions to remain authorized to work while his application is pending. Behrouz's application has been frozen for more than six months without adjudication as part of a nationality-based pause, despite full compliance with immigration requirements and payment of all required fees, placing his lawful status and ability to work at imminent risk. The delay threatens the loss of his employment and income and disrupts his specialized biomedical research on respiratory infectious diseases affecting children, work that supports federally funded projects and benefits public health. The ongoing uncertainty has also created significant family hardship by preventing stable planning for housing, childcare, and continued lawful residence while Behrouz remains in full compliance with U.S. immigration laws.

161.    Plaintiff **Sahar E. Doe** is a citizen of Iran who has lawfully resided in the United

States and obtained approval of an employment-based national interest waiver immigrant petition before timely filing an application for adjustment of status that has remained pending without action. Sahar is currently in lawful F-1 optional practical training status, and continued ability to work and remain lawfully present depends on adjudication of the pending application, creating risk of losing work authorization, employment, and stability despite full compliance with immigration requirements. Sahar works as a faculty member and academic researcher, teaching and mentoring students and contributing to U.S. higher education, and the prolonged uncertainty has disrupted professional planning and imposed ongoing personal strain by preventing meaningful future planning while awaiting a decision.

162.    Plaintiff **Hamidreza H. Doe** is a citizen of Iran who lawfully entered the United States in F-1 status, maintained lawful status at all times, and obtained approval of an employment-based national interest waiver before timely filing an application for adjustment of status and related employment authorization that have been paused without adjudication. Hamidreza is currently authorized to work under optional practical training, but continued lawful presence and employment depend on action on the pending applications, creating an imminent risk of losing work authorization, employment, income, and health coverage despite full compliance with immigration requirements. Hamidreza works in the pharmaceutical and diagnostics field supporting quality control and analysis of products used in cancer care, work that directly benefits U.S. healthcare and public health. The prolonged delay has disrupted professional stability, prevented travel to see close family members abroad, and caused ongoing personal strain by making future planning impossible while the applications remain indefinitely stalled.

163.    Plaintiff **Sara M. Doe** is a citizen of Iran who has lawfully resided in the United

States and timely filed an application for adjustment of status with related employment authorization, including optional practical training, which has been delayed and left pending without action despite good-faith compliance. Sara recently completed doctoral training in materials science and engineering and accepted a competitive consulting role scheduled to begin in early 2026, but the continued delay places work authorization, lawful employment, income, and health coverage at immediate risk. Sara's research has been supported by major U.S. research sponsors and contributes to technological competitiveness, and the inability to proceed has caused concrete professional and financial harm while preventing stable planning for housing, relocation, and family needs. The prolonged uncertainty has also imposed significant personal strain by extending family separation and leaving Sara unable to plan travel or future commitments while remaining fully compliant with U.S. immigration laws.

164. Plaintiff **Fazlollah M. Doe** is a citizen of Iran and a lawful permanent resident of the United States who has resided lawfully in the country for many years and works in the energy sector, applying advanced chemical engineering expertise that supports U.S. industry and infrastructure. Fazlollah filed a family-based petition for a spouse in good faith and later submitted a related adjustment of status application, both of which have remained pending without action following the implementation of a nationwide adjudicative pause. The continued delay has prevented finalization of the spouse's lawful status, placing the family in prolonged uncertainty and blocking long-term professional and personal planning despite full compliance with immigration requirements. The pause has also extended years of family separation by preventing safe travel and reunification with close relatives abroad, causing ongoing personal and professional strain while Fazlollah continues to live and work lawfully in the United States.

165. Plaintiff **S. Masoumeh Doe** is a citizen of Iran who has lawfully resided in the

United States, earned a doctorate in electrical engineering, and has worked as an analog and mixed-signal integrated circuit designer supporting semiconductor technologies critical to U.S. manufacturing and industrial systems. Seyedeh is currently authorized to work under STEM optional practical training, which expires in mid-2026, and timely filed for adjustment of status and related employment authorization that have been paused without adjudication despite full compliance with immigration requirements. The continued delay places the ability to remain employed at risk and creates uncertainty about continued lawful work in a field identified as strategically important to the United States. The prospect of losing authorization would disrupt ongoing technical contributions and impose significant professional and personal strain while Seyedeh remains ready to continue contributing skills and expertise to the U.S. economy.

166.    Plaintiff **Seyedmostafa Z. Doe** is a citizen of Iran who has lawfully resided in the United States for many years, earned a doctorate in engineering, and timely filed an employment-based adjustment of status application supported by approved petitions that has remained pending without adjudication. Seyedmostafa works as a senior transportation planner, supporting public agencies in improving transit systems and efficient use of public funds, and the prolonged delay has made it difficult to plan work commitments, maintain professional momentum, and make basic financial decisions. The uncertainty has been compounded by a scheduled interview that was later cancelled without explanation, reinforcing the indefinite nature of the pause. The continued lack of action has also prevented safe travel to see close family members abroad and has imposed ongoing personal strain while Seyedmostafa remains fully compliant with U.S. immigration laws.

167.    Plaintiff **Nancy C. Doe** is a citizen of Haiti who lawfully entered the United States and timely filed applications for temporary protected status, family-based adjustment of

status, and related employment authorization, all of which have remained pending without resolution after an interview resulted in a continued review. Nancy is married to a U.S. citizen and remains lawfully present based on properly filed applications, but the prolonged delay places her ability to work at risk and threatens loss of income and stability. Nancy works as a registered behavior therapist providing one-on-one support to children with special needs, contributing to community health and care. The uncertainty has also caused significant family hardship by delaying reunification with a minor child abroad and preventing safe travel, while ongoing fear and instability persist despite full compliance with U.S. immigration laws.

168.   Plaintiff **Mohammad K. Doe** is a citizen of Iran who has lawfully resided in the United States in F-1 status and timely filed an employment-based immigrant petition under the national interest waiver category, later requesting expedited processing, yet the petition has remained delayed without meaningful adjudication. Mohammad is authorized to work under optional practical training, but continued lawful employment depends on timely action on pending filings, creating a risk of losing work authorization, income, and health coverage despite full compliance with immigration requirements. Mohammad works as a postdoctoral researcher on federally funded scientific projects that require continuity and long-term planning, and the ongoing delay has disrupted professional commitments, financial stability, and the ability to plan future responsibilities. The prolonged uncertainty has also caused family strain and emotional distress by preventing travel and long-term planning while Mohammad remains ready to continue contributing specialized research skills to the United States.

169.   Plaintiff **Fatemeh F. Doe** is a citizen of Iran who has lawfully resided in the United States as a doctoral student in polymer and coatings technology and timely filed an employment-based national interest waiver immigrant petition, followed by adjustment of status

and related employment authorization applications for her family, all of which have remained delayed without adjudication. Fatemeh teaches and designs graduate-level courses and laboratories, training U.S. students who enter domestic industry, and her specialized expertise supports workforce development and economic activity in materials and manufacturing fields. The prolonged delay has prevented issuance of work authorization, resulting in lost academic and professional opportunities and forcing the family to forgo employment despite full compliance with immigration requirements. The uncertainty has also imposed significant family hardship by limiting financial stability, healthcare access during pregnancy, and the ability to plan for a child who is integrated into life in the United States.

170. Plaintiff **Mahmood T. Doe** is a citizen of Iran who has lawfully resided in the United States for many years, earned a doctorate in civil engineering, and has been continuously employed in the automotive industry, contributing to innovation and nationally significant engineering projects. Mahmood obtained approval of an employment-based national interest waiver immigrant petition and timely filed an application for adjustment of status, which has been paused without adjudication along with related employment authorization, placing continued lawful status and employment at risk despite full compliance with immigration requirements. The delay threatens loss of employment and stability for a household with U.S.-citizen children and has prevented travel to see close family members abroad. The prolonged uncertainty has caused ongoing professional disruption and personal strain while Mahmood remains ready to continue contributing specialized expertise to the U.S. economy.

171. Plaintiff **Kamyab V. Doe** is a citizen of Iran who lawfully entered the United States in F-1 status and has an affirmative asylum application that has remained pending for more than three years without interview or decision, despite full compliance with immigration

requirements. Kamyab holds employment authorization tied to the pending asylum case, but the indefinite pause has imposed ongoing instability by making lawful work, income, health coverage, and future planning contingent on a case with no timeline for resolution. The prolonged delay has disrupted educational and professional development, including jeopardizing admission to advanced professional training due to ineligibility for federal aid while the case remains unresolved. The pause has also prevented international travel, resulting in prolonged separation from extended family abroad and the inability to see close relatives before their passing, causing significant personal hardship and emotional strain while Kamyab continues to live and work lawfully in the United States.

172.    Plaintiff **Hava D. Doe** is a citizen of Iran who has lawfully resided in the United States in F-1 student status and timely filed an immigration-related application that remains pending without adjudication. Hava has secured a postdoctoral research position set to begin immediately after graduation, but the unexplained delay threatens the ability to work lawfully, continue research, and maintain lawful presence despite full compliance with immigration requirements. The pause has also created significant family hardship, as Hava must remain lawfully present to support two college-aged sons in the United States, and the lack of timely adjudication places the older son at risk of losing immigration eligibility due to age-related consequences. The ongoing uncertainty has imposed severe personal, professional, and family strain while Hava remains ready to continue contributing to U.S. research and education.

173.    Plaintiff **Ramin S. Doe** is a citizen of Iran who has lawfully resided in the United States as a doctoral student and obtained approval of an employment-based national interest waiver immigrant petition before timely filing adjustment of status and related employment authorization applications that have been paused without adjudication. Ramin is completing final

doctoral requirements and seeking academic employment aligned with nationally beneficial research, but the delay threatens issuance of work authorization, lawful status after student status concludes, and the ability to accept time-sensitive professional opportunities. The pause also places Ramin's spouse at risk, as her ability to begin U.S. medical training depends on continued lawful status and work authorization tied to the pending applications. The prolonged uncertainty has disrupted career planning, jeopardized years of lawful education and professional investment, and imposed significant personal strain while Ramin remains fully compliant with U.S. immigration laws.

174.    Plaintiff **Bob P-L. Doe** is a citizen of Haiti who lawfully entered the United States under humanitarian parole and timely filed family-based adjustment of status and related employment authorization as the spouse of a U.S. citizen, which have remained pending without adjudication following the imposition of holds. Bob is an international medical graduate seeking to continue medical training and serve U.S. communities, but the lack of action has left him unable to work lawfully and has created financial instability and ongoing fear despite full compliance with immigration requirements. The prolonged pause also threatens family unity and future planning by preventing lawful employment and stability while returning to Haiti is unsafe, leaving Bob and his U.S.-citizen spouse in continued uncertainty.

175.    Plaintiff **Saharnaz E. Doe** is a citizen of Iran who has lawfully resided in the United States as a final-year dental student and clinical research fellow in an advanced standing doctoral program preparing internationally trained dentists for U.S. licensure, and who obtained approval of an employment-based national interest waiver immigrant petition before immigration processing was paused. Saharnaz relies on timely employment authorization to complete clinical training, continue research collaborations, and lawfully work as a dentist and clinical researcher,

but the ongoing delay places the ability to practice, repay educational loans guaranteed by family members, and honor professional commitments at immediate risk. The pause has also disrupted ongoing health-related research projects intended to extend beyond graduation, resulting in lost institutional investment and curtailed contributions to patient care and clinical science. The prolonged uncertainty has further imposed personal hardship by preventing family reunification and future planning despite Saharnaz's full compliance with U.S. immigration laws and documented contributions to healthcare and research in the United States.

176.    Plaintiff **Thinzar L. Doe** is a citizen of Burma (Myanmar) who lawfully entered the United States in F-1 status, timely applied for temporary protected status, and later filed family-based adjustment of status with related employment authorization and travel permission after marrying a U.S. citizen, all in good faith and without any unlawful presence. Thinzar's applications have been paused without adjudication despite completion of an interview indicating the case was otherwise ready for approval, leaving work authorization and lawful mobility unresolved. The delay places immediate risk on continued employment, household income, and the ability to drive and meet basic daily needs, while creating ongoing fear and instability as temporary protections lapse. The prolonged uncertainty has also disrupted family planning and imposed significant emotional and financial strain despite Thinzar's full compliance with U.S. immigration laws.

177.    Plaintiff **Emad S. Doe** is a citizen of Iran who has lawfully resided in the United States as a postdoctoral researcher in environmental engineering and timely filed an employment-based national interest waiver immigrant petition that has remained pending without adjudication for an extended period. Emad's work focuses on environmental and wastewater monitoring to support public health and early detection of disease outbreaks, but the ongoing

pause has created job insecurity and prevented long-term research planning, grant pursuits, and professional advancement despite full compliance with immigration requirements. The prolonged uncertainty has also caused significant personal hardship by limiting income stability, housing planning, and the ability to travel to see family abroad, while exacerbating stress and health challenges without a local support system. The indefinite delay has left Emad unable to plan his career or personal life while continuing to contribute specialized expertise that benefits public health in the United States.

178.    Plaintiff **Anwaar A. Doe** is an individual who was born in Iran and lawfully completed the immigration process through naturalization and reached the final stage of citizenship, only to have a scheduled oath ceremony abruptly cancelled without explanation days before it was to occur. Anwaar is married to a U.S. citizen serving in the armed forces and is the primary caregiver for young children, but the sudden cancellation triggered severe emotional and psychological distress, including anxiety, depression, and fear that has interfered with daily functioning and the ability to leave the home or independently care for family needs. Anwaar's distress is compounded by a lifelong history of displacement and lack of nationality, having been born in a refugee context without secure citizenship despite ancestral ties elsewhere. The unexplained halt at the final stage of naturalization has left Anwaar in prolonged uncertainty, undermining emotional stability, family functioning, and the sense of safety that lawful status was meant to provide.

179.    Plaintiff **Kyaw T. Doe** is a citizen of Myanmar who has lawfully resided in the United States and timely filed family-based adjustment of status and related employment authorization after marrying a U.S. citizen, all of which have been indefinitely paused without adjudication. Kyaw works as a software engineer on advanced technology initiatives that support

housing access, but continued lawful employment depends on timely action on the pending applications, creating a risk of job loss, loss of income, and disruption of long-planned household stability. The pause has also imposed significant hardship on Kyaw's U.S.-citizen spouse, who followed all legal requirements to build a shared life, by placing housing plans and family stability on hold. The prolonged uncertainty has caused ongoing emotional and financial strain despite Kyaw's full compliance with U.S. immigration laws.

180. Plaintiff **Mahdi G. Doe** is a citizen of Iran who has lawfully resided in the United States since entering as a student, earned a doctorate in physics, and now works as a postdoctoral researcher contributing to advanced scientific research that supports U.S. innovation and leadership. Mahdi obtained approval of an employment-based national interest waiver and timely filed adjustment of status and related employment authorization applications, which have been paused without adjudication despite full compliance and completion of required processing steps. Mahdi remains in lawful status under optional practical training, but continued lawful employment depends on issuance of work authorization, creating uncertainty that threatens income, job stability, and continuity of ongoing research. The prolonged delay has caused significant personal strain by preventing career and life planning and by placing years of lawful education and research contributions at risk while Mahdi remains ready to continue serving U.S. scientific interests.

181. Plaintiff **Fatemehsadat T. Doe** is a citizen of Iran who has lawfully resided in the United States, recently completed a doctorate in electrical engineering, and accepted a postdoctoral research position to continue work in integrated photonics, a field that supports advanced technology development. Fatemehsadat timely filed an optional practical training application with expedited processing, but adjudication has been paused, preventing lawful

employment and delaying the start of the postdoctoral appointment despite full compliance with immigration requirements. The pause has resulted in loss of income, inability to begin funded research, and uncertainty about maintaining housing and basic living expenses. The prolonged delay has placed the postdoctoral opportunity at risk and caused significant personal and professional strain while Fatemehsadat remains ready to continue contributing research expertise in the United States.

182.    Plaintiff **Sara L. Doe** is a citizen of Iran who has lawfully resided in the United States and timely filed an application for adjustment of status based on an approved employment-based national interest waiver, which has remained pending without action. Sara is a doctoral candidate in computer science collaborating on a funded medical research project using advanced artificial intelligence methods to study a rare disease, work that supports U.S. healthcare research and innovation. The ongoing pause places work authorization and the ability to complete academic and professional commitments at risk, preventing long-term employment planning and jeopardizing financial stability for the household. Sara's spouse, Plaintiff **Mohammad S.T. Doe is** a derivative applicant whose lawful status and ability to remain in the United States are directly tied to the pending application, amplifying the family's financial and personal uncertainty. The prolonged delay has caused significant professional and personal strain by leaving the family unable to plan their future despite full compliance with U.S. immigration laws and good-faith filing of all applications.

183.    Plaintiff **Mitra B. Doe** is an Iranian citizen lawfully present in the United States in F-1 status on post-completion practical training who filed an employment-based immigrant petition under the National Interest Waiver category in July 2024 in good faith and remains eligible to proceed because the priority date is current, but adjudication has been paused without

resolution. Mitra works as an architectural designer specializing in complex, large-scale building projects that support U.S. infrastructure and long-term economic activity, where continuity and project-specific expertise are critical to maintaining schedules and design integrity that benefit everyday Americans through safer, more durable built environments. The delay prevents Mitra from filing for adjustment of status and related work authorization, creating a risk of losing lawful employment and status when current authorization expires in 2026, despite timely compliance with all immigration requirements. This uncertainty has disrupted career planning undertaken in reliance on the expected filing timeline, threatens ongoing professional contributions that depend on sustained involvement, and has caused significant stress and inability to plan for the future, even though Mitra has fully complied with U.S. immigration laws and seeks only timely adjudication to continue working lawfully.¶

184.    Plaintiff **Seyedheydar M. Doe** is an Iranian citizen lawfully present in the United States in F-1 status who filed an application for adjustment of status in November 2025 in good faith, which has been paused since December 2025 without explanation, placing continued lawful presence and long-term educational planning at risk. Seyedheydar is a doctoral student in biochemistry, cellular, and molecular biology whose research focuses on biomedical science with the potential to improve disease treatment and strengthen the U.S. healthcare system, contributing to public health and economic innovation that benefits everyday Americans. The unresolved pause has disrupted the ability to concentrate on coursework and early-stage research, limited opportunities for internships and hands-on experience, and restricted international travel needed for scientific conferences and collaboration. The delay also affects Seyedheydar's spouse, Plaintiff **Fatemeh M.H. Doe**, an Iranian citizen in lawful F-2 status who filed a derivative adjustment application in good faith that was paused at the same time, limiting the ability to study,

work, or gain experience and preventing travel to visit family abroad due to an expired visa. With most immediate family members residing outside the United States, the pause has caused family separation concerns, emotional distress, and inability to plan for emergencies, despite full compliance with immigration laws and timely filings by both Seyedheydar and Fatemeh.

185.    Plaintiff **Sina L. Doe** is an Iranian citizen lawfully present in the United States under STEM optional practical training valid through October 2026 who filed an employment-based immigrant petition in January 2025 in good faith, which remains pending and effectively paused, preventing progression despite being complete and properly filed. Sina's continued lawful presence and work authorization depend on timely adjudication, and the delay places employment, income, health coverage, and immigration status at risk, making future planning impossible. Sina's professional work includes research in clean energy technologies, solar power systems, and the application of ultrasound imaging and artificial intelligence to identify birth complications, contributing to U.S. sustainability goals, healthcare outcomes, and technological innovation that benefit everyday Americans. The pause has prevented long-term research commitments and access to stable funding and has imposed travel restrictions because an expired visa would interrupt lawful status, resulting in prolonged separation from immediate family abroad for more than a decade. Despite full compliance with immigration laws and years of lawful contribution, the unresolved delay has caused ongoing emotional distress, disrupted career stability, and undermined Sina's ability to continue contributing without constant risk of sudden disruption.

186.    Plaintiff **Amirhossein H. Doe** is an Iranian citizen lawfully present in the United States on H-1B status who filed an adjustment of status application in October 2025 in good faith, which has remained pending with no updates since the biometrics appointment in November

2025. Amirhossein works as a research scientist in imaging science, developing and validating satellite remote sensing algorithms for NASA- and USGS-sponsored projects that assess surface temperature, water quality, and land change, supporting U.S. environmental monitoring, public safety, and scientific advancement. The pause in adjudication has created significant uncertainty for continued lawful employment, as federal research funding reductions place his position at risk and limit the ability to transition to alternative employment without permanent residency. Travel restrictions prevent him from visiting his father in Iran, including during past medical emergencies, causing ongoing emotional strain and family separation. Despite full compliance with immigration laws and substantial personal investment in parallel immigrant petitions, the unresolved delay threatens career stability, research contributions, lawful status, and the ability to maintain family ties while undermining the planning of professional and personal life.¶

187.    Plaintiff **Farnaz N. Doe** is an Iranian citizen lawfully present in the United States who filed a PERM-based immigrant petition and related adjustment of status and work authorization applications in good faith, which remain pending, preventing timely continuation of lawful employment. Farnaz works as a research scientist specializing in sustainable building design and the use of wood waste in affordable housing, presenting findings at international conferences and serving as a peer reviewer for multiple academic journals, contributing to U.S. research quality, innovation, and the built environment. The pause in adjudication has forced her to decline career advancement opportunities, limited travel for professional representation, and restricted international engagement, while the impending expiration of work authorization in August 2026 threatens the ability to continue employment and support basic living expenses. Personal and family life has also been affected, including inability to visit an elderly mother, missed family events, and disrupted long-term fertility planning, creating ongoing uncertainty

despite full compliance with immigration laws and timely filing of all applications.¶

188.    Plaintiff **Nima A. Doe** is an Iranian citizen lawfully present in the United States under OPT-based employment authorization valid through June 2026 who filed an employment-based immigrant petition in October 2023 and related adjustment of status and work authorization applications in October 2025 in good faith, which have been paused since December 2025 without further action. Nima works as a postdoctoral researcher specializing in organ cryopreservation, conducting advanced experiments and long-term projects that support U.S. biomedical research, transplantation technology, and healthcare innovation, benefiting patients and the medical system. The pause prevents timely continuation of lawful employment, placing work authorization, income, health coverage, and ongoing research at risk, while travel abroad for family emergencies carries the risk of losing status. This unresolved delay has caused constant anxiety, disrupted career planning, and limited the ability to make personal and professional commitments despite full compliance with immigration laws, completed biometrics, and timely filing of all applications.¶

189.    Plaintiff **Farzad V. Doe** is an Iranian citizen lawfully present in the United States who filed an EB-2 National Interest Waiver immigrant petition in good faith, which remains pending without explanation or timeline due to a nationality-based pause in adjudication. Farzad is a Ph.D. student in mechanical engineering specializing in artificial intelligence applications for advanced manufacturing, contributing to U.S. technological leadership, economic competitiveness, and national security while also engaging in campus leadership and volunteer service that benefit the broader community. The pause has disrupted the ability to plan research, make academic and career commitments, and participate in professional activities, while restrictions on international travel prevent visits with family for more than two years, causing

ongoing emotional strain. Despite full compliance with immigration laws and additional security requirements, the unresolved delay has created professional uncertainty and personal hardship, undermining the ability to continue contributing to U.S. research, innovation, and public benefit.

190. Plaintiff **Mohammad H. Doe** is an Iranian citizen lawfully present in the United States on H-1B status through September 2026 who filed an adjustment of status application in good faith based on an approved EB-2 National Interest Waiver petition, which remains paused indefinitely due to nationality-based restrictions despite full compliance with U.S. immigration laws. Mohammad is a resident physician with an M.D. and MPH, employed at an academic medical center where he provides patient care and conducts biomedical research that advances U.S. healthcare outcomes and supports medical education, directly benefiting public health. The prolonged delay places his lawful employment, income, health insurance, and career trajectory at serious risk, as any disruption to H-1B status would impede his ability to continue training and working in his field, which requires uninterrupted medical residency. The pause also affects his spouse, Plaintiff **Sahar A. Doe**, whose H-4 status and employment authorization are directly tied to his immigration case, creating shared uncertainty over lawful presence, family stability, and the ability to work. Their seven-week-old daughter, further amplifies the impact, as the family cannot plan for childcare, homeownership, or travel to visit extended family, and they have been unable to receive postpartum support from relatives due to travel restrictions. The ongoing uncertainty has caused continuous emotional stress, anxiety, and fear about their future, preventing even basic life planning, while returning to Iran is not realistic due to professional, economic, and political instability. Despite fully complying with all immigration requirements and submitting all applications in good faith, the unresolved pause has disrupted Mohammad's professional contributions to U.S. healthcare, undermined family stability, and imposed severe personal and

emotional hardship.

191.    Plaintiff **Marco A. Doe** is a Venezuelan citizen who has lawfully resided in the United States since 2011 on F-1 status and through Temporary Protected Status (TPS) until its termination in November 2025, and who filed an adjustment of status application based on his marriage to a United States Citizen, in good faith in August 2025, which remains pending with no movement despite timely response to an RFE. Marco previously worked for the Indiana Department of Natural Resources for nearly seven years and is currently at risk of losing employment and income due to the pause, which has already placed him on a leave of absence and disrupted the ability to meet basic living expenses, child support, medical needs, and household obligations. He has been unable to obtain work authorization or legal status, creating ongoing fear, anxiety, and adverse impacts on mental and physical health, including disrupted sleep and difficulty concentrating, while the unresolved delay prevents planning for personal, professional, and family stability despite full compliance with immigration laws.

192.    Plaintiff **Adolfo P. Doe** is a Venezuelan citizen who arrived in the United States in March 2023 under Temporary Protected Status and filed an adjustment of status application based on marriage to a US citizen in June 2025, along with work authorization, in good faith and in full compliance with immigration laws. Adolfo's employment is physically demanding, and he continued working with neck and wrist injuries due to fear of job loss, as the abrupt cancellation of TPS and delay in work authorization prevented taking time off or seeking alternative employment. The pause in adjudication, including the descheduling of his green card interview in December 2025, disrupted personal and family plans, including anniversary travel and reunions with extended family, and caused prolonged stress and uncertainty despite months of legal guidance to ensure compliance. The unresolved delay has limited Adolfo's ability to work, plan

travel, and maintain stability, imposing ongoing emotional and professional hardship on him and his spouse.

193. Plaintiff **Aye K. Doe** is a Burmese citizen lawfully present in the United States on F-1 status who filed an asylum application in October 2025 due to the immediate and life-threatening dangers in Myanmar, while her husband and son, both F-2 dependents, also filed asylum applications. Her husband holds a pending approved EB-3 I-140 petition awaiting a current priority date to apply for adjustment of status. The indefinite pause in adjudications has left her and her family in constant fear for their safety and legal status, preventing them from working lawfully, planning their lives, or taking any steps to secure their future. The uncertainty has caused extreme emotional and psychological hardship, disrupting their ability to care for their child, maintain stability, and feel secure in the United States. Returning to Myanmar is not a viable option due to ongoing political persecution, armed conflict, and targeted threats. Despite full compliance with immigration laws and timely filing of all applications, the administrative suspension has placed the family in an untenable situation, leaving them trapped in indefinite limbo with no certainty, protection, or peace of mind.

194. Plaintiff **Neda I. Doe** entered the United States in 2017 on a student visa and has maintained continuous lawful status, earning a Master of Fine Arts in Dramatic Arts with a concentration in Puppetry. Neda is currently present under an O-1 visa valid through June 2026 and filed an EB-1 immigrant petition with an approved I-140, followed by timely I-485 and I-765 filings. Neda is a Ph.D. student in Florida, researching pedagogical methods using puppetry and performance art to teach complex subjects, and has supported the educational development of over 5,000 students across multiple states. In addition, Neda works as a freelance artist producing educational performances nationwide with tour bookings extending through 2028. The pause in

adjudication threatens Neda's teaching, research, artistic work, and doctoral studies, creating significant professional instability, travel limitations, and emotional distress despite full compliance with immigration laws.

195.    Plaintiff **Amir B. Doe** entered the United States in 2016 on a student visa to pursue a Ph.D. in English, specializing in American culture and literature, and has maintained lawful status since. Amir completed his Ph.D., and began teaching. He timely filed for permanent residency with USCIS, including I-140, I-485, and I-765 petitions for himself and his wife, Plaintiff **Andisheh G. Doe**. Since the USCIS pause in adjudications, Amir has been unable to obtain employment authorization, jeopardizing his H-1B renewal, teaching of over 100 students per semester, committee advising for 3,400 students annually, research, and financial stability. The pause has also disrupted family life, requiring his wife to relocate for work and preventing him from visiting or supporting family in Iran. Amir's scholarship and teaching contribute to public understanding of American culture, and delays in adjudication threaten the continuity of his professional, academic, and family responsibilities despite full compliance with immigration laws.

196.    Plaintiff **Jaackeirelys G. Doe** is a Venezuelan national who entered the United States in July 2023 on valid humanitarian parole and has complied fully with immigration laws. Jaackeirelys has a pending defensive asylum case and a pending I-130 petition filed in good faith, which cannot move forward due to the current processing pause. The delay has prevented Jaackeirelys from adjusting status, creating ongoing uncertainty and stress, making it difficult to plan education, career, and family life. Jaackeirelys is pursuing an International Business degree and has been actively building a life with her U.S. citizen spouse, but the pause has disrupted the ability to make ordinary plans such as housing, joint investments, and starting a family. Travel is

limited, and the pause has caused significant concern over potential forced separation from her husband. Jaackcirelys contributes to the community through lawful presence, engagement in education, and compliance with U.S. immigration requirements, but the interruption in processing has left everyday life and long-term plans unsettled.

197.    Plaintiff **Amirhosein R. Doe** is an Iranian national who entered the United States in 2021 to pursue a Ph.D. in Earth Science & Engineering and has maintained full compliance with immigration laws. Amirhosein has a pending I-140 petition under the EB-2 National Interest Waiver and a STEM OPT extension, both filed in good faith, which cannot advance due to the processing pause, preventing adjustment of status and creating uncertainty about lawful presence. Amirhosein conducts research in carbon capture, mine water remediation, and rare earth element extraction, contributing to U.S. academic institutions, funded projects, and employees, while mentoring students and providing advanced technical training. Amirhosein has been unable to visit family for over three years, faces travel restrictions, and experiences ongoing stress and professional uncertainty, with the pause disrupting the ability to continue research, maintain employment, and plan for long-term life and career in the United States.

198.    Plaintiff **Fatemeh R. Doe** is an Iranian national and postdoctoral researcher in industrial engineering who has maintained lawful status in the United States on a valid H-1B visa. Fatemeh filed I-485, I-765, and I-131 applications in good faith, which have been paused for several months, preventing adjustment of status, employment, and travel. Fatemeh conducts research that contributes to industrial engineering and academic innovation while mentoring students and advancing collaborations, but the pause has disrupted the ability to continue work, maintain professional stability, and plan a long-term career. Fatemeh has not been able to visit family for over three years, experiences ongoing stress and uncertainty, and faces the risk of

losing lawful work authorization and financial security despite full compliance with immigration laws.

199.    Plaintiff **Mehrnoosh E. Doe** is an Iranian national and medical doctor conducting cancer research who has maintained lawful status in the United States on an H-1B visa. Mehrnoosh has a pending I-140 and I-485 filed in good faith, which have been delayed, preventing adjustment of status, work authorization, and the ability to begin U.S. medical residency. Mehrnoosh's research and clinical training contribute to ongoing cancer research and U.S. healthcare needs, while supporting continuity in academic and medical programs, but the pause has disrupted professional planning, employment, and contributions to the public benefit. Living in the United States, Mehrnoosh experiences stress and uncertainty, faces risk to lawful status and employment, and is unable to plan personal or family life, including future residency and household stability, despite full compliance with immigration laws.

200.    Plaintiff **Fatema H. Doe** is an Afghan national who has maintained lawful status in the United States and complied fully with immigration requirements. Fatema filed a Form I-131 in good faith, which has been delayed due to the processing pause, preventing travel and creating uncertainty in personal and professional life. Fatema works full-time at a nonprofit public University in Colorado and holds unique responsibilities that require travel for professional obligations, including attending international conferences, but the delay has disrupted these duties and limited the ability to fulfill essential work. Living in the United States, Fatema has been unable to visit or assist family abroad, including a fiancé and close relatives with serious medical needs, causing ongoing emotional hardship and stress while preventing planning for personal and family life despite full compliance with immigration laws.

201.    Plaintiff **Patricia P. Doe** lawfully entered the United States in January 2022 on an

F-1 student visa to pursue a bachelor's degree while competing as a student-athlete and maintained lawful status throughout. After her mother obtained lawful permanent resident status, an I-130 petition was filed on her behalf in July 2024, and Patricia timely filed Forms I-485, I-131, and I-765 in July 2025 in good faith. Patricia recently graduated with degrees in Chemistry and Biological Sciences and has been unable to begin her professional career due to the prolonged delay in adjudicating the I-765, resulting in lost job opportunities and professional harm. The delay in her I-131 has prevented travel outside the United States, including visits to her elderly grandparents, creating family separation and emotional hardship. Patricia is left unable to plan her professional, personal, or family future, causing ongoing uncertainty and stress despite full compliance with immigration laws.

202. Plaintiff **Aung K. Doe** is a citizen of Myanmar who is lawfully present in the United States as an asylum applicant and filed an asylum application in August 2024 in good faith compliance with immigration law. Aung's case has been paused without adjudication, leaving the application unresolved and extending a period of uncertainty about lawful protection. The delay has caused ongoing fear of return to Myanmar, where Aung does not feel safe, and has interfered with the ability to focus on studies, form stable relationships, and plan for the future. Without timely adjudication, Aung remains unable to secure any stability, resulting in continued emotional distress and practical harm tied directly to the suspension of decision-making on the pending application.

203. Plaintiff **Cherry K. Doe** is a citizen of Myanmar who is lawfully present in the United States as an asylum applicant and filed an application for asylum in January 2025, in good faith compliance with immigration law. Cherry's case has been paused, leaving the application unresolved and prolonging uncertainty about protection from return to Myanmar. The delay has

caused continuous fear and anxiety, making it difficult to feel secure or make long-term plans. Each day without adjudication increases the stress of living under potential threat, leaving Cherry unable to achieve stability or plan for the future, resulting in ongoing emotional and practical harm directly tied to the suspension of the immigration process.

204. Plaintiff **Hlaing T. Doe** is a citizen of Myanmar who is lawfully present in the United States as an asylum applicant and filed an application on September 26, 2024, in good faith compliance with immigration law. Hlaing's case has been paused, leaving the application unresolved and prolonging uncertainty about protection from return to Myanmar. The delay has caused ongoing fear and anxiety that affects nearly every aspect of daily life, including the ability to focus on school, plan for housing or work, and make decisions about the future. Hlaing experiences persistent stress in trying to maintain a sense of normalcy, as routine activities and long-term plans are overshadowed by the possibility of being forced to return to a place where personal safety and freedoms are at risk. Each day without adjudication increases uncertainty and strain, making it impossible for him to move forward with confidence or security.

205. Plaintiff **Khant S. Doe** is a citizen of Myanmar who applied for asylum in the United States in September 2025. He has complied with all immigration requirements in good faith. Khant's case has been paused due to the suspension of immigration adjudications affecting applicants from Myanmar, leaving Khant uncertain about personal safety and unable to plan for the future. The delay makes it difficult to focus on daily tasks or long-term goals, and Khant experiences ongoing anxiety and fear of returning to Myanmar. The pause prevents Khant from living with stability and safety, limiting the ability to pursue goals and contribute fully to life in the United States.

206. Plaintiff **Myo A. Doe** is a citizen of Myanmar who filed for asylum in the United

States in December 2024, and whose application has been paused indefinitely. Myo has complied with immigration laws and filed in good faith. The pause in adjudication prevents Myo from securing lawful presence and leaves Myo unable to plan for a stable future, pursue personal or professional goals, or make long-term decisions. Myo cannot safely return to Myanmar due to a risk of persecution, violence, or punishment, and the delay in the case causes ongoing fear and uncertainty that affects daily life. Myo relies on the United States for safety and stability, and the indefinite pause restricts the ability to live without fear and contribute fully to the community.

207.    Plaintiff **Saw Z. Doe** is a citizen of Myanmar who filed for asylum in the United States on July 1, 2025, and whose application has been paused indefinitely. Saw has complied with immigration laws and filed in good faith. The pause prevents Saw from securing lawful presence and leaves Saw living in ongoing fear and uncertainty, unable to plan for the future, pursue education, or focus on personal goals. Saw cannot safely return to Myanmar due to the risk of persecution, threats, and violence, and the indefinite delay in adjudication causes daily anxiety that affects her ability to engage fully in the community. Saw relies on the United States for safety, stability, and the opportunity to live without fear, build relationships, and contribute positively to society.

208.    Plaintiff **Wint A. Doe**, is a citizen of Myanmar who filed for asylum and withholding of removal in the United States in November 2024, and whose application has been paused indefinitely. The pause prevents Wint from obtaining lawful presence, planning for long-term goals, and participating fully in community activities. Wint cannot safely return to Myanmar due to the risk of persecution and violence, and the indefinite delay limits his ability to pursue education, work, and other opportunities that support personal growth and contribution to society. Wint depends on the United States for stability and the chance to live a structured,

productive life, engage meaningfully with peers, and build a future without the constant interruption and uncertainty caused by the paused adjudication.

209.    Plaintiff **Ye M. Doe** is a citizen of Myanmar who filed for adjustment of status in the United States and whose application has been paused since June 2025, following a response to a request for evidence. He has complied with all US immigration laws and filed in good faith. The pause leaves him in ongoing uncertainty that disrupts daily life, making it difficult to plan for education, work, or housing, and preventing him from establishing routines that support independence and stability. He is unable to make long-term decisions, pursue personal or professional growth, or take steps that would allow him to fully contribute to his community. The delay has created a persistent state of limbo, interfering with his ability to build a secure and productive life, participate in meaningful activities, and establish the foundation needed for a stable future in the United States.

210.    Plaintiff **Zaw L. Doe**, a citizen of Myanmar, filed a good-faith application for asylum in the United States in November 2024. Despite fully complying with all immigration laws, his application has been paused indefinitely. The pause has left him in a prolonged state of uncertainty that makes it difficult to organize daily life, pursue stable work opportunities, or make any long-term plans. He cannot return safely to Myanmar due to the risks associated with his identity and beliefs, and the delay prevents him from establishing security or taking steps toward independence. The indefinite hold limits his ability to contribute meaningfully to the community, participate fully in day-to-day life, and focus on personal growth. He depends on the United States for the opportunity to live safely, develop skills, and engage in society without constant disruption, and the pause undermines his ability to build a stable, forward-looking life.

211.    Plaintiff **Amslyne K. Doe** is a Haitian national who filed for adjustment of status

in the United States with her husband, a U.S.-born citizen, and whose application has been paused indefinitely, despite fully complying with US immigration laws. The pause leaves her family in ongoing uncertainty, disrupting daily life, shared responsibilities, and household routines, and limiting her ability to work, provide for her children, and support her spouse's frequent work travel. She depends on her pending work authorization to maintain financial stability, manage household logistics, and care for three children. She is unable to plan for long-term housing, education, or career development, and the delay creates stress that affects both her household and her ability to contribute meaningfully to her community. The ongoing uncertainty undermines the stability of a blended family built on shared support and trust, restricting her capacity to live productively, support her spouse and children, and maintain a secure and well-functioning home.

212.   Plaintiff **Isis M. Doe** is a Legal Permanent Resident from Syria living in Massachusetts and works in electrical and computer engineering, having completed a Master's degree and served as a system test engineer before building a small food business and contributing to retail construction projects, which support local economic growth and job creation. Isis filed for naturalization in good faith and has complied fully with U.S. immigration laws, but USCIS canceled the interview after Syria was added to a ban list, creating a pause in the naturalization process. The cancellation has caused ongoing anxiety and uncertainty, disrupted career advancement and professional collaborations, restricted the ability to travel for work and personal matters, and limited long-term planning for personal, educational, and entrepreneurial goals. Isis's ability to fully contribute as a law-abiding, productive member of society has been interrupted, and the delay has intensified stress and uncertainty about life stability, future opportunities, and integration into the community.

213.   Plaintiff **Shahnaz R. Doe** is an Iranian citizen living in Texas and works in

biomedical engineering, developing advanced polymeric materials and polymeric prodrug nanomedicines to improve treatments for musculoskeletal, inflammatory, and autoimmune diseases, supporting U.S. biomedical research, public health, and innovation. Shahnaz filed an I-485 application under the National Interest Waiver in good faith and has complied fully with U.S. immigration laws, but her case has remained pending without action, creating a pause in adjudication. This delay has caused ongoing anxiety and uncertainty, disrupted research planning and professional collaborations, limited opportunities for career advancement, and created the risk of losing lawful status, employment, income, and health insurance. It has also prevented travel to visit family abroad, complicated long-term personal and professional decision-making, and imposed significant emotional and mental stress, affecting the ability to focus fully on research and contribute to scientific progress. The pause in adjudication has undermined the stability Shahnaz needs to maintain her professional trajectory, support her family relationships, and plan for future contributions to the United States.¶

214.    Plaintiff **Vahid N. Doe** is a citizen of Iran who has lived in the United States for more than seven years in lawful status, during which time Vahid studied and worked in compliance with immigration requirements and pursued scientific research intended to contribute to academic knowledge that supports innovation and the broader U.S. economy. After years of lawful residence and reliance on established immigration pathways, Vahid filed an employment-based immigrant petition in good faith and now faces an indefinite pause in adjudication that is unrelated to any deficiency or misconduct. The delay has halted professional advancement, disrupted long-term planning, and created ongoing uncertainty despite prior vetting and sustained compliance with the law. As a result of the continued hold, Vahid's ability to remain professionally stable and continue contributing research benefiting everyday Americans is

materially impaired.

215.    Plaintiff **Jose M. Doe**, a citizen of Venezuela, is lawfully present in the United States and is married to a United States citizen, with whom he has resided continuously since filing his application for permanent residence in March 2024. His U.S. citizen spouse filed a Petition for Alien Relative on his behalf, and Plaintiff concurrently filed an Application for Adjustment of Status, both of which were accepted and processed by USCIS, including completion of biometrics. Despite full compliance with all requirements, Jose's applications have remained pending for an unreasonably prolonged period with no adjudication or interview, leaving him without work authorization and unable to contribute financially to his household. The full financial burden has fallen on his spouse, a U.S. military veteran with service-connected PTSD and anxiety, exacerbating both parties' mental and emotional distress and undermining household stability. The delay has also prevented Jose from traveling internationally to visit ill relatives, compounding the emotional hardship. An interview was scheduled in December 2025 following the filing of a Mandamus Lawsuit, but it was canceled shortly before the scheduled date. The cancellation was devastating, extinguishing the hope and relief we had felt after months of waiting and preparation, intensifying feelings of helplessness, despair, and anxiety, and leaving both Plaintiff and his spouse in ongoing emotional, financial, and legal hardship despite good-faith reliance on the immigration system and full compliance with all applicable laws.

216.    Plaintiff **Sol K. Doe** is a native and citizen of Venezuela who entered the United States in 2019 and has lived in the country for several years in lawful compliance with immigration requirements, relying on the U.S. immigration system in good faith. Sol filed a naturalization application that has remained pending and unadjudicated since August 2025 despite full compliance with all instructions and eligibility requirements. The prolonged pause has created

sustained uncertainty that has disrupted Sol's ability to plan for the future, undermined personal and professional stability, and imposed ongoing stress unrelated to any deficiency or misconduct. As a result of the continued delay, Sol remains unable to move forward with long-term decisions despite lawful presence and consistent adherence to the law.

217.    Plaintiff **Kyaw Z. Y. Doe**, a citizen of Myanmar, has been directly affected by the unlawful suspension of immigration adjudications by the Department of Homeland Security and the U.S. Citizenship and Immigration Services. Kyaw has complied fully with all immigration laws and requirements and has relied on the U.S. immigration system in good faith as a law-abiding individual. The prolonged pause in adjudication has caused severe uncertainty, leaving Kyaw in a state of extreme fear and frustration, unable to determine when he will be permitted to resume his life with peace and security. This indefinite delay has disrupted his ability to plan for the future and undermined personal stability, despite the absence of any deficiency, misconduct, or noncompliance on his part.

218.    Defendant Donald J. Trump is the President of the United States and is sued in his official capacity. He issued Presidential Proclamation 10949 and directed the development and implementation of the challenged "security posture" and adjudication freezes through the Department of Homeland Security and its component agencies.

219.    Defendant United States Department of Homeland Security (DHS) is a cabinet-level department of the United States charged with administering and enforcing the immigration laws. DHS issued Policy Alert PA-2025-26, directed the extension of 8 U.S.C. § 1182(f) entry authority into domestic adjudications, and oversees USCIS.

220.    Defendant Kristi Noem is the Secretary of DHS and is sued in her official capacity. She is responsible for supervising DHS, issuing and implementing Policy Alert

PA-2025-26, and directing USCIS to adopt the challenged adjudicatory freezes and nationality-based security posture.

221. Defendant United States Citizenship and Immigration Services (USCIS) is a component agency of DHS charged with adjudicating applications for naturalization, adjustment of status, asylum, and employment authorization. USCIS issued Policy Memorandum PM-602-0192 and is responsible for freezing or delaying domestic adjudications under the challenged directives.

222. Defendant Joseph B. Edlow is the Director of USCIS and is sued in his official capacity. He is responsible for directing USCIS operations and implementing Policy Memorandum PM-602-0192 and related adjudication freezes.

223. Defendant Dorothy Michaud is the Field Office Director of USCIS's Boston Office and is sued in her official capacity. She is responsible for directing USCIS operations and implementing Policy Memorandum PM-602-0192 and related adjudication freezes at the Boston Field Office..

224. The challenged directives remain in effect and continue to bind USCIS adjudicators at the direction of Defendants.

### IMMIGRATION AND NATIONALITY ACT
### STATUTORY AND REGULATORY FRAMEWORK

**Naturalization (INA §§ 310–319; 8 U.S.C. §§ 1421, 1446–1448; 8 C.F.R. Part 335)**

225. Congress vested exclusive naturalization authority in USCIS and mandated adjudication of naturalization applications. 8 U.S.C. § 1421(a).

226. Section 1446 provides that USCIS "shall conduct" an investigation and

examination of each applicant. 8 U.S.C. § 1446(a), (d).

227. Section 1447 provides that, once eligibility is established, USCIS "shall grant" naturalization and administer the oath. 8 U.S.C. § 1447(a)–(b).

228. Implementing regulations are similarly mandatory: 8 C.F.R. § 335.3(a) requires USCIS to determine whether to grant or deny an application following examination.

Adjustment of Status (INA § 245; 8 U.S.C. § 1255; 8 C.F.R. §§ 245.1–245.2)

229. Section 245 authorizes eligible noncitizens who have been inspected or paroled into the United States to apply for adjustment of status and directs USCIS to adjudicate those applications through individualized determinations of admissibility, visa availability, and statutory eligibility. By statute, the process is not discretionary once an application is properly filed: Congress provided that eligible applicants "may apply," and that USCIS must determine eligibility based on evidence and statutory criteria.

230. The implementing regulations confirm that obligation. Under 8 C.F.R. § 245.2(a)(1), USCIS must accept and process properly filed applications that are accompanied by required fees and initial evidence. Section 245.2(a)(5)(i) further mandates action, stating that an officer "shall adjudicate" an adjustment application and must notify the applicant of the decision. Related regulations require USCIS to request additional evidence if needed, and—after evidence is submitted—to make a determination to approve or deny the application, not to withhold action indefinitely.

231. Congress designed adjustment as an adjudicatory benefit tied to statutory eligibility and timely access to permanent residence. The statutory and regulatory framework assumes movement toward a final decision once (1) a visa is available, (2) the applicant submits the required fees and evidence, and (3) USCIS completes any necessary background review. That

design is reflected in the mandatory "shall adjudicate" language and the absence of any authority to suspend adjudication based on nationality.

232.    Nothing in § 245 or its implementing regulations authorizes USCIS to refuse to act on properly filed applications, to place entire nationalities into open-ended abeyance, or to treat nationality itself as evidence of inadmissibility or risk. The freeze thus contradicts Congress's requirement of individualized adjudication and converts a mandatory statutory process into an indefinite suspension untethered to any statutory criteria.

Asylum (INA § 208; 8 U.S.C. § 1158; 8 C.F.R. Part 208)

233.    Section 208 provides that "any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival…) may apply for asylum," 8 U.S.C. § 1158(a)(1), and mandates adjudication of such applications. Congress imposed specific procedural requirements governing affirmative asylum, including deadlines and mandatory processing obligations. Section 1158(d)(5)(A) directs DHS to conduct an initial interview within 45 days and to complete adjudication within 180 days absent exceptional circumstances—reflecting Congress's intent that asylum claims be decided, not suspended.

234.    The implementing regulations mirror these statutory obligations. Under 8 C.F.R. § 208.9, USCIS must interview asylum applicants to evaluate eligibility, credibility, and statutory bars. Section 208.14 requires adjudicators to take action following an interview—granting asylum, denying it, or referring the application to the Department of Justice for removal proceedings. These steps form a mandatory adjudicatory sequence: interview; evaluate evidence; issue a decision or referral. The regulations contemplate continuous processing and expressly provide for actions at each stage, not indefinite holds.

235. The statutory design recognizes asylum as a humanitarian protection grounded in international and domestic law, with specific protections for timely adjudication and eligibility to obtain work authorization during the process. Congress required DHS to move cases forward through individualized adjudication and to complete them within prescribed timeframes. Nothing in § 1158 or Part 208 authorizes DHS or USCIS to halt asylum adjudications categorically, to suspend interviews across the board, or to impose moratoria based solely on nationality. Such freezes convert a mandatory adjudicatory framework into an open-ended asylum limbo that Congress expressly sought to prevent through statutory deadlines and individualized assessment requirements.

Employment Authorization (INA § 208(d); 8 C.F.R. §§ 208.7, 274a.12)

236. Section 208(d) and implementing regulations require DHS to process work authorization applications for eligible asylum applicants and renewal applicants.

237. Regulations provide that DHS "shall grant" employment authorization after required timeframes. 8 C.F.R. § 208.7(a).

238. The regulatory scheme imposes mandatory duties to accept, process, and adjudicate work authorization applications and contains no authority for categorical or indefinite suspension.

Prohibition on Nationality-Based Discrimination (8 U.S.C. § 1152(a)(1)(A))

52. For much of the twentieth century, the federal immigration system was structured around national-origin quotas that explicitly allocated immigration benefits on the basis of nationality and race. The Immigration Act of 1924 imposed formal national-origin limits that restricted immigration from Asia, Africa, and southern and eastern Europe.

53. Although the 1952 Immigration and Nationality Act carried forward elements of the

quota system, Congress repudiated nationality-based allocation in the Immigration and Nationality Act of 1965, Pub. L. No. 89-236. The 1965 amendments abolished the national-origin quota system and replaced it with a uniform preference system based on family and employment categories.

54.    As part of this shift, Congress enacted § 202(a)(1)(A), now codified at 8 U.S.C. § 1152(a)(1)(A), which provides that **"no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."**

55.    Section 202(a)(1)(A) was designed as a categorical barrier against the reintroduction of nationality-based preferences or penalties in the allocation of immigration benefits. Legislative history reflects Congress's express intent to ensure that nationality could not serve as a proxy for eligibility or risk.

56.    Although § 202(a)(1)(A) applies directly to immigrant visa issuance abroad, it necessarily informs the treatment of immigrant-visa-dependent domestic benefits—particularly adjustment of status and naturalization—which derive from visa eligibility and share the same statutory framework. Domestic adjudication of these benefits must therefore be free from nationality-based discrimination.

57.    The INA reflects Congress's deliberate structural choice: *individualized* adjudication based on statutory eligibility criteria, not categorical judgments based on nationality and/or country of birth. The challenged directives substitute nationality for individualized evidence, contrary to this core statutory design.

58.    Defendants' policy of placing all applicants from thirty-nine designated countries into open-ended "security posture" holds reintroduces nationality and/or country of birth as a

controlling factor in domestic adjudication, effectively reviving the very form of discrimination Congress abolished in 1965.

59.    Nothing in the INA authorizes DHS or USCIS to treat nationality and/or country of birth as a basis for suspending adjudication or imposing heightened scrutiny absent individualized findings. To the contrary, nationality-based distinctions in the domestic context conflict with the statutory command of individualized adjudication and Congress's explicit rejection of national-origin systems.

60.    The challenged directives thus contravene § 202(a)(1)(A)'s nondiscrimination principle and undermine Congress's objective of eliminating nationality-based barriers to lawful immigration benefits.

**LIMITS OF INA § 212(f) AND ITS
INAPPLICABILITY TO DOMESTIC ADJUDICATIONS**

55.    While INA § 212(f), codified at 8 U.S.C. § 1182(f), authorizes the President to "suspend the entry" of noncitizens whose admission would be detrimental to the interests of the United States, the statutory text is expressly confined to entry—**not adjudication of applications for individuals already physically present in the United States.**

56.    Section 212(f) operates at consulates and the border, and governs visa issuance abroad and admission at ports of entry. It does not grant authority to override domestic adjudication obligations imposed by Congress on USCIS. In this suit, Plaintiff does not challenge the Executive's authority to regulate or limit the entry of certain foreign nationals into the United States.

57.    Congress created a structural division between border entry authority and domestic adjudication authority: the former resides with the President and the Departments of State and Homeland Security; the latter resides with USCIS under chapters 4, 5, and 12 of the INA. See 8

U.S.C. §§ 1421–1448, 1255, 1158.

58. Nothing in § 1182(f) authorizes the President or DHS to: (a) suspend naturalization interviews or oath ceremonies; (b) halt or delay adjustment of status adjudications; (c) freeze affirmative asylum adjudications; or (d) suspend employment authorization tied to applications in the domestic system.[1]

59. Congress could have granted the Executive authority to suspend domestic adjudications based on nationality or security posture; it did not. Instead, Congress imposed mandatory adjudication duties and prohibited nationality-based and birthplace discrimination.

60. Defendants' reliance on § 1182(f) to justify domestic adjudication freezes exceeds statutory authority, alters the statutory scheme Congress enacted, and is ultra vires.

## CLAIMS FOR RELIEF

## COUNT I — ULTRA VIRES EXECUTIVE ACTION

63. Plaintiffs incorporate the preceding paragraphs.

64. The INA grants the President limited authority under § 1182(f) to suspend entry, but does not authorize domestic adjudication freezes.

65. USCIS is statutorily required to adjudicate naturalization, adjustment, asylum, and employment authorization applications and lacks authority to suspend adjudication en masse or based solely on nationality and/or place of birth.

66. The challenged directives convert § 1182(f) entry authority into domestic adjudication moratoria, exceeding statutory limits and displacing mandatory adjudicatory obligations.

67. The directives conflict with statutory requirements, including the mandatory

---

[1] In *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), the Supreme Court addressed only the scope of § 1182(f) with respect to entry and consular visa issuance. The Court did not extend § 1182(f) to domestic adjudications and did not hold that it overrides statutory adjudication mandates.

"shall" language in §§ 1446–1447 and § 1158(d)(5) and adjudication requirements in 8 C.F.R. §§ 208.9 and 245.2.

68. Defendants acted outside the scope of delegated authority and contrary to the statutory framework Congress enacted.

69. Because Congress did not authorize these measures, the challenged directives are ultra vires and must be set aside.

## COUNT II — APA VIOLATION: CONTRARY TO LAW (5 U.S.C. § 706(2)(A), (C))

70. Plaintiffs incorporate preceding paragraphs.

71. The challenged directives conflict with statutory mandates requiring adjudication of naturalization, adjustment, asylum, and employment authorization applications and prohibiting nationality discrimination.

72. The directives exceed the limited authority conferred by § 1182(f) and substitute nationality-based criteria for individualized statutory eligibility.

73. The directives prevent USCIS from performing mandatory adjudicatory duties.

74. As such, the directives are contrary to law within the meaning of § 706(2)(A) and (C).

## COUNT III — APA VIOLATION: ARBITRARY AND CAPRICIOUS (5 U.S.C. § 706(2)(A))

75. Plaintiffs incorporate preceding paragraphs.

76. The directives were issued without explanation, evidentiary basis, or reasoned decision-making.

77. The directives lack: criteria for case-by-case determination; timelines; sunset provisions; standards for lifting holds; and mechanisms for review or exemption.

78.     Defendants failed to consider reliance interests, statutory mandates, or less restrictive alternatives such as individualized background checks.

79.     The breadth, duration, nationality and/or country of birth basis of the freezes render them arbitrary and capricious.

### COUNT IV — APA VIOLATION: NOTICE-AND-COMMENT (5 U.S.C. § 553)

80.     Plaintiffs incorporate preceding paragraphs.

81.     The directives impose binding consequences on adjudication, alter rights and obligations, and suspend statutory duties, and thus are substantive rules requiring notice-and-comment.

82.     DHS and USCIS did not publish proposed rules, solicit comment, or provide public notice prior to implementation.

83.     By adopting substantive rules without notice-and-comment, Defendants violated § 553 and § 706(2)(D).

### COUNT V — EQUAL PROTECTION (FIFTH AMENDMENT)

84.     Plaintiffs incorporate preceding paragraphs.

85.     Plaintiffs are all physically present in the United States and are entitled to equal protection under the Fifth Amendment.

86.     The directives single out nationals of thirty-nine countries for adverse adjudicatory treatment solely based on nationality or place of birth, without individualized assessment.

87.     Nationality is not a permissible criterion for domestic adjudication of naturalization, adjustment, asylum, or employment authorization.

88.     The directives revive a form of nationality and/or place of birth discrimination Congress abolished in 1965 and lack rational basis as applied to individuals already in the United

States.

## COUNT VI — VIOLATION OF PROCEDURAL DUE PROCESS
## (FIFTH AMENDMENT)

89.     Plaintiffs incorporate the preceding paragraphs.

90.     Plaintiffs are all physically present in the United States and are entitled to the protections of the Fifth Amendment's Due Process Clause. Congress has created mandatory adjudicatory schemes governing adjustment of status, asylum, naturalization, and employment authorization, which require USCIS to adjudicate properly filed applications through individualized decisionmaking.

91.     Defendants' challenged directives deprive Plaintiffs of due process by suspending adjudication of his application without notice, without an individualized determination, and without any meaningful opportunity to be heard. Plaintiffs' applications have been placed into indefinite abeyance based solely on nationality and/or country of birth, rather than on evidence, statutory criteria, or case-specific findings.

92.     Defendants provided no advance notice of the suspension, no explanation of its basis, no standards governing its duration, and no mechanism to contest, appeal, or seek exemption from the freeze. Plaintiff is denied the ability to obtain a decision—approval or denial—through the procedures Congress prescribed.

93.     By imposing an open-ended, nationality-based suspension of domestic adjudications without notice or process, Defendants have deprived Plaintiffs of liberty and property interests without due process of law, in violation of the Fifth Amendment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Declare that Policy Alert PA-2025-26, Policy Memorandum PM-602-0192 and

the "significant negative factor" analysis announced by Defendants exceed the authority granted by the INA and are unlawful;

2.    Declare that the directives violate the APA, including § 553 procedural requirements and § 706 substantive constraints;

3.    Vacate the directives as applied to domestic USCIS adjudications, including naturalization, adjustment of status, affirmative asylum, and employment authorization;

4.    Enjoin Defendants from applying the vacated directives in domestic adjudications or imposing nationality-based suspensions absent statutory authority;

5.    Order Defendants to adjudicate Plaintiffs' applications in accordance with statutory and regulatory requirements;

6.    Award attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and,

7.    Grant any further relief the Court deems just and proper.

RESPECTFULLY SUBMITTED
January 2, 2026

/s/ Melissa Allen Celli
Melissa Allen Celli
Strehorn, Ryan, & Hoose
100 Main Street, 3rd Floor
Northampton, MA 01060
(O)413-341-3918
(E) mcelli@strhlaw.com


/s/ James O. Hacking, III
James O. Hacking, III
MO Bar # 46728
Hacking Immigration Law, LLC
10121 Manchester Road, Suite A
St. Louis, MO 63122

(O) 314.961.8200
(F) 314.961.8201
(E) jim@hackingimmigrationlaw.com

**ATTORNEYS FOR PLAINTIFFS**

AKMURAT O. DOE,  et al,

   Plaintiffs,

v.

DONALD J. TRUMP, et al.,

   Defendants.

Case No.   1:25-cv-13946-JEK

## SECOND AMENDED CLASS ACTION COMPLAINT

### INTRODUCTION

1.      Two hundred and one (201) immigrants bring this class action, on behalf of themselves and all others similarly situated, to challenge Defendants' implementation of categorical and indefinite restrictions on the adjudication of immigration benefits inside the United States.[2] Relying on Presidential Proclamations 10949 and 10998 and subsequent DHS and USCIS directives—including Policy Alert PA-2025-26 and Policy Memoranda PM-602-0192 and PM-602-0194—Defendants have implemented a nationwide adjudicative hold on immigration benefits for foreign nationals of thirty-nine designated countries inside the United States for nationals.

2.      These policies halt or delay naturalization, adjustment of status, asylum, and employment

---

[2] The accurate number of plaintiffs have increased from 197 to 201 as a result of the dismissal of two plaintiffs whose claims have become moot, and the inclusion of some spouse-derivative plaintiffs who were inadvertently omitted from the First Amended Complaint.

-119-

authorization for hundreds of thousands of noncitizens who are lawfully present in the United States and statutorily entitled to individualized adjudication. The adjudicative hold is categorical, indefinite, and triggered without individualized assessment. The adjudicative hold targets applicants based on country of birth and/or country of citizenship, rather than individualized evidence or case-specific concerns.

3.     As implemented, the challenged policies suspend final adjudication of affirmative asylum applications; place applicants from thirty-nine designated countries into open-ended "security posture" holds; suspend naturalization interviews and oath ceremonies; suspend green card interviews and final adjudication; and delay issuance and renewal of employment authorization. They also instruct USCIS adjudicators to treat mere nationality from one of the thirty-nine designated countries as a "significant negative factor" in evaluating eligibility and discretion, even in the absence of any individualized derogatory information or security concern.

4.     Nothing in the Immigration and Nationality Act authorizes DHS or USCIS to suspend adjudications en masse, to replace individualized assessments with nationality-based review, or to convert the President's authority under 8 U.S.C. § 1182(f) over the entry of foreign nationals into a categorical domestic adjudicative hold. The INA assigns USCIS mandatory adjudicatory duties and expressly prohibits nationality-based discrimination in the allocation of immigration benefits.

5.      Nor does the Administrative Procedure Act permit agencies to impose binding rules of general applicability without statutory authorization, without reasoned explanation, and without notice-and-comment rulemaking. The challenged directives are substantive rules with immediate legal consequences, promulgated without compliance with the APA and constitute final agency action reviewable under 5 U.S.C. § 704.

6.     The consequences are profound. Naturalization applicants who have been approved are pulled from oath ceremonies. Adjustment applicants are denied green cards, work authorization, and advance parole, and remain separated from family. Asylum seekers lose work authorization and employment. Students fall out of status. Families confront eviction, job loss, and prolonged insecurity. Immigrants face daily financial, emotional, and legal harm from the indefinite suspension of their

immigration cases.

7.    Plaintiffs seek certification of this action as a class action under Federal Rule of Civil Procedure 23(b)(2); declaratory relief; an order under 5 U.S.C. § 706(2) setting aside the challenged directives as contrary to law, arbitrary and capricious, and promulgated without notice-and-comment rulemaking; an injunction prohibiting further reliance on those directives in domestic adjudications; and an order under 5 U.S.C. § 706(1) compelling Defendants to resume and complete adjudication of Plaintiffs' pending applications in accordance with the mandatory duties imposed by the Immigration and Nationality Act, governing regulations, and the Administrative Procedure Act.

## FACTUAL ALLEGATIONS

### Presidential Proclamation 10949

8.    On June 4, 2025, President Donald J. Trump issued Presidential Proclamation 10949, invoking INA § 212(f), 8 U.S.C. § 1182(f), to restrict the entry of nationals of nineteen designated countries, and directing the Department of Homeland Security to adopt a heightened "security posture" toward individuals from those countries. Attached as Exhibit A and incorporated herein by reference.

9.    The Proclamation identified nineteen countries subject to heightened restrictions, but it drew distinctions between those subject to a total entry suspension and those subject to partial or conditional restrictions.

10.    The Proclamation imposed a complete entry ban on nationals of Afghanistan, Burma, Chad, Republic of the Congo, Equatorial Guinea, Eritrea, Haiti, Iran, Libya, Somalia, Sudan, and Yemen, blocking their admission to the United States absent narrow discretionary waivers. For nationals of seven additional countries—Burundi, Cuba, Laos, Sierra Leone, Togo, Turkmenistan, and Venezuela—the Proclamation ordered heightened screening and processing requirements as conditions of entry rather than a complete bar.

### DHS Policy Alert PA-2025-26

11.    On November 27, 2025, DHS issued Policy Alert PA-2025-26. Attached as Exhibit B and incorporated herein by reference. The Policy Alert instructed DHS components, including USCIS, to

implement an "enhanced security posture" and "tiered risk framework" for nationals of the nineteen countries, and directed that nationality would trigger additional review.

12.     In the accompanying November 27th press release issued by Defendant USCIS, Defendant Joseph Edlow stated that "[e]ffective immediately, I am issuing new policy guidance that authorizes USCIS officers to consider country-specific factors as significant negative factors when reviewing immigration requests" (emphasis added). Attached as Exhibit C and incorporated herein by reference.

13.     Although § 212(f) pertains solely to entry, DHS interpreted the Proclamation and Policy Alert to apply to domestic immigration adjudications conducted by USCIS and directed USCIS to implement internal procedures applying the heightened posture to pending applications within the United States.

### Policy Memorandum PM-602-0192

14.     On December 2, 2025, USCIS issued Policy Memorandum PM-602-0192. Attached as Exhibit D and incorporated herein by reference. The Memorandum ordered a nationwide hold on all affirmative asylum adjudications and directed adjudicators to place pending benefit requests by nationals of the nineteen designated countries into indefinite "security posture" holds. PM-602-0192 provided no exceptions to the adjudicative hold for any category of applicant or benefit type.

15.     USCIS issued PM-602-0192 without publishing a proposed rule, without soliciting public comment, without any fact-finding, and without notice-and-comment rulemaking. No notice appeared in the Federal Register, and affected applicants received no advance warning that their pending cases would be suspended.

16.     PM-602-0192 did not articulate criteria, standards, or factual triggers for suspending adjudications; did not specify goals, timelines, or sunset provisions; and did not identify mechanisms for resuming adjudication.

17.     The Memorandum did not require individualized assessments or evidence-based determinations, but instead relied on nationality alone to place applications on hold, without any showing

of derogatory information, ineligibility, or security concern.

18.    USCIS provided no mechanism for affected applicants to contest the hold, seek expedited review, or request exemption. No administrative process exists for challenging the ongoing suspension.

<b>Immediate Consequences of PM-602-0192</b>

19.    Following issuance of PM-602-0192, USCIS cancelled scheduled asylum interviews, adjustment interviews, naturalization interviews, and naturalization oath ceremonies. Notices cited "policy guidance" or "security review" without identifying individualized statutory grounds.

20.    During the same period, USCIS delayed or withheld adjudication of employment authorization applications and renewals tied to frozen asylum and adjustment cases, as well as various other types of immigration cases, causing lapses in work authorization and loss of employment.

<b>Presidential Proclamation 10998</b>

21.    On December 16, 2025, President Trump issued Presidential Proclamation 10998, titled "Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States," effective January 1, 2026. Attached as Exhibit E and incorporated herein by reference. PP 10998 substantially expanded the scope and severity of the entry restrictions imposed by PP 10949.

22.    PP 10998 continued the full entry ban on nationals of the original twelve countries subject to complete suspension under PP 10949: Afghanistan, Burma, Chad, Republic of the Congo, Equatorial Guinea, Eritrea, Haiti, Iran, Libya, Somalia, Sudan, and Yemen. It continued partial restrictions on nationals of Burundi, Cuba, Togo, and Venezuela.

23.    PP 10998 imposed full entry suspensions on nationals of seven additional countries—Burkina Faso, Laos, Mali, Niger, Sierra Leone, South Sudan, and Syria—as well as on individuals traveling on documents issued or endorsed by the Palestinian Authority. Of these, Laos and Sierra Leone had previously been subject only to partial restrictions under PP 10949; PP 10998 elevated them to complete entry bans.

24.    PP 10998 further imposed partial entry restrictions on nationals of fifteen additional countries: Angola, Antigua and Barbuda, Benin, Côte d'Ivoire, Dominica, Gabon, The Gambia, Malawi,

Mauritania, Nigeria, Senegal, Tanzania, Tonga, Zambia, and Zimbabwe. It also modified the restrictions on Turkmenistan, lifting the nonimmigrant visa suspension while maintaining the suspension on immigrant visa entry.

25.    In total, PP 10949 and PP 10998 together restrict or suspend the entry of nationals from thirty-nine countries, plus individuals traveling on Palestinian Authority-issued documents.

26.    PP 10998 significantly narrowed the categorical exceptions to the entry restrictions. PP 10949 had provided a broad categorical exception for immigrant visas issued to family members of individuals in the United States. PP 10998 eliminated that exception. The Proclamation stated that "immigrant visas for family members of individuals in the United States will no longer be a broad categorical exception," asserting without individualized support that "[f]amilial ties can serve—and, in the past, have in fact served . . . as unique vectors for fraudulent, criminal, or even terrorist activity." The remaining categorical exceptions under PP 10998 are limited to lawful permanent residents, dual nationals traveling on non-designated passports, certain diplomats and NATO officials, athletes traveling for the World Cup or Olympics, Special Immigrant Visa holders who are U.S. Government employees, and immigrant visas for ethnic and religious minorities facing persecution in Iran.

27.    Presidential Proclamation 10998 contains an express carve-out limiting its scope in two respects relevant to this litigation. First, the Proclamation provides that it "shall not apply to an individual who has been granted asylum by the United States or to a refugee who has already been admitted to the United States." PP 10998, § 8(d). Second, the Proclamation provides that "[n]othing in this proclamation shall be construed to limit the ability of an individual to seek asylum, refugee status, withholding of removal, or protection under the Convention Against Torture, consistent with the laws of the United States." *Id.* The first sentence excludes from the Proclamation's restrictions a population the policy memoranda nevertheless include: individuals who have been granted asylum, including those seeking adjustment of status to lawful permanent residence based on their asylum grant. The second sentence forecloses any reading of the Proclamation that would limit the ability of an individual to seek asylum, including by suspending the adjudication of pending asylum applications. Despite these express

limitations, Policy Memoranda PM-602-0192 and PM-602-0194 impose adjudicative holds on (a) applications filed by individuals already granted asylum, and (b) all pending Form I-589 asylum applications without regard to nationality. The policy memoranda thus extend the adjudicative hold to two populations the Proclamation itself excludes from its restrictions.

28.    The policy memoranda expressly invoke Presidential Proclamations 10949 and 10998 as the foundation for the adjudicative hold. PM-602-0192 cites the Proclamations as background and authority for the comprehensive review and adjudicative hold it implements; PM-602-0194 likewise relies on the Proclamations' findings to extend the hold to additional countries. Yet the blanket adjudicative hold on affirmative asylum applications imposed by the Policy Memoranda has no foundation in the Proclamations. Proclamation 10998's express asylum carve-out in § 8(d) forecloses any reading under which the Proclamation could authorize a suspension of asylum adjudication. The Policy Memoranda's blanket asylum hold accordingly extends beyond—and conflicts with—the very Proclamations the Policy Memoranda invoke as their authority.

29.    Like PP 10949, PP 10998 was directed at the entry of foreign nationals into the United States. The Proclamation's stated justifications—deficiencies in foreign governments' screening, vetting, and information-sharing practices; visa overstay rates; and country-specific security conditions—relate to the assessment of individuals seeking admission at the border or through consular visa processing. PP 10998 does not address, authorize, or reference the adjudication of applications for immigration benefits filed by individuals already present within the United States.

<strong>Policy Memorandum PM-602-0194</strong>

30.    On January 1, 2026, USCIS issued Policy Memorandum PM-602-0194, titled "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries." Attached as Exhibit F and incorporated herein by reference. PM-602-0194 extended the adjudicative hold imposed by PM-602-0192 to nationals of all countries identified in PP 10998, expanding the hold from nineteen to thirty-nine countries plus individuals traveling on Palestinian Authority-issued documents.

31.    PM-602-0194 did not supersede PM-602-0192. The Memorandum states that it "does not

-125- <s>125</s>

supersede the guidance in [PM-602-0192] . . . except as specified under the 'Exceptions to the Adjudication Hold.'" Both policy memoranda remain in effect simultaneously.

32.    PM-602-0194 applies the adjudicative hold based on an individual's nationality, country of birth, or acquisition of Citizenship by Investment in a designated country, as well as to individuals traveling on Palestinian Authority-issued documents. The hold applies to all pending benefit applications regardless of entry date.

33.    PM-602-0194 explicitly eliminated the broad exemption for family-based immigrant visa applications that had existed under PP 10949. Footnote 6 of the Memorandum states: "Immigrant visas for family members of individuals in the United States will no longer be automatically or broadly exempt from PP 10949 and PP 10998 restrictions or requirements. Family-based immigrant visa applications are now subject to the same review, restrictions, or additional scrutiny as other benefit requests."

34.    PM-602-0194 identifies ten categories of applications that are excepted from the adjudicative hold: (1) Form I-90 applications to replace a permanent resident card; (2) Form N-565 applications for replacement naturalization or citizenship documents; (3) Form N-600 applications for a certificate of citizenship, except for nationals of Yemen and Somalia; (4) certain limited categories of Form I-765 employment authorization applications—specifically, initial filings under 8 C.F.R. § 274a.12(c)(8) subject to the *Asylumworks v. Mayorkas* processing requirements, limited filings under 8 C.F.R. § 274a.12(c)(11) where law enforcement has requested the filing, and limited filings under 8 C.F.R. § 274a.12(c)(14) where law enforcement has requested the filing; (5) Form I-910 applications for civil surgeon designation, but only for physicians who are United States citizens or nationals; (6) benefit requests filed by athletes or athletic team members, including coaches, support personnel, and immediate relatives, for the purpose of participating in the World Cup, Olympics, or other major sporting events as determined by the Secretary of State; (7) benefit requests that are a priority for law enforcement and where ICE has specifically requested USCIS take adjudicative action; (8) benefit requests filed by aliens whose entry would serve a United States national interest; (9) benefit requests for programs that are terminated or discontinued as a result of an Executive Order, Proclamation, Federal Register Notice, or

Directive; and (10) automatic termination decisions for ancillary benefit requests when an individual is granted permanent resident status or becomes a naturalized citizen.

35.     None of the ten enumerated exceptions applies to the core benefit categories at issue in this case: adjustment of status, naturalization, affirmative asylum, or the employment authorization applications filed by or on behalf of Plaintiffs. The exceptions are limited to replacement documents, narrow categories of employment authorization unrelated to Plaintiffs' applications, and special circumstances involving law enforcement, sporting events, or program terminations. The eighth exception—benefit requests that would serve a "United States national interest"—requires a case-by-case determination and approval from headquarters, and no Plaintiff has received such a determination.

36.     PM-602-0194 directed that "[w]ithin 90 days of this memorandum issuance, and in consultation with OP&S and the Fraud Detection and National Security Directorate, USCIS will prioritize a list for review, interview, and re-interview, and issue operational guidance." That 90-day period expired on or about April 1, 2026. USCIS has not issued the operational guidance contemplated by PM-602-0194.

37.     PM-602-0192 directed that USCIS would issue operational guidance within 90 days of the memorandum's December 2, 2025 issuance. That self-imposed deadline expired on or about March 2, 2026. PM-602-0194 directed that USCIS would issue operational guidance within 90 days of its January 1, 2026 issuance. That deadline expired on or about April 1, 2026. Both deadlines have now passed.

38.     No operational guidance has been issued under either Policy Memorandum. On March 3, 2026, Defendants represented to the Court that USCIS had implemented certain unrelated changes to its screening and vetting practices, but Defendants did not issue, attach, or describe any operational guidance modifying or implementing the adjudicative hold policy. On March 30, 2026, USCIS published a public update on its website regarding strengthened screening and vetting practices, but that update likewise did not contain operational guidance modifying or implementing the adjudicative hold policy. On April 1, 2026, Defendants again represented that USCIS had updated certain practices and had established an internal process for lifting holds on individual or group cases, but Defendants again did not issue, attach, or describe any operational guidance modifying or implementing the adjudicative hold policy.

39.     On April 30, 2026, this Court granted in part Plaintiffs' motion for a preliminary injunction, concluding that Plaintiffs were likely to succeed on their claims that the adjudicative hold policy is contrary to law and arbitrary and capricious, and that the significant negative factor policy is contrary to law as applied to adjustment-of-status and employment authorization applications. The Court further concluded that the challenged directives constitute final agency action subject to judicial review.

40.     On May 7, 2026, the Court extended preliminary injunctive relief to all Plaintiffs in the consolidated actions and ordered Defendants to immediately lift the adjudicative hold as to those Plaintiffs and cease applying the significant negative factor policy to their adjustment-of-status and employment authorization applications.

41.     As of the filing of this Second Amended Complaint, the adjudicative hold imposed by PM-602-0192 and PM-602-0194 remains in effect. No operational guidance has been issued. The hold has not been lifted as to any of the Plaintiffs. Defendants have provided no timeline for the issuance of operational guidance, no timeline for the lifting of the hold, and no end date for the policy. As a result of the continuing adjudicative hold, Defendants have failed to complete adjudication of Plaintiffs' pending applications within the timeframes and adjudicatory framework contemplated by the INA, governing regulations, and the APA. Plaintiffs' applications remain pending without final agency action and without any identified endpoint for adjudication.

42.     Like PM-602-0192, PM-602-0194 was issued without publishing a proposed rule, without soliciting public comment, and without notice-and-comment rulemaking. No notice appeared in the Federal Register. PM-602-0194 contains the same disclaimer that the memorandum "is intended solely for the guidance of USCIS personnel" and "may not be relied upon to create any right or benefit, substantive or procedural, enforceable under law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

**Cumulative Effect**

43.     The cumulative effect of Presidential Proclamations 10949 and 10998, Policy Alert PA-2025-26, and Policy Memoranda PM-602-0192 and PM-602-0194 has been a de facto nationwide

adjudicative hold on statutory immigration adjudications—including affirmative asylum, adjustment of status, naturalization, and employment authorization—for nationals of thirty-nine countries and holders of Palestinian Authority-issued documents. The adjudicative hold remains categorical, indefinite, and untethered to individualized factual determinations.

44.    It operates without individualized assessment, without statutory authorization for domestic adjudication holds, and without any publicly available mechanism through which affected applicants may seek individualized review, reconsideration, or release from the adjudicative hold. It applies to individuals who have been lawfully present in the United States for years, who have completed all steps required of them, and who in many cases have already been approved for the benefits they seek, awaiting only the ministerial act of an oath ceremony or the issuance of a document.

45.    As a result of the ongoing adjudicative hold challenged in this action, Plaintiffs have been compelled to file subsequent applications for relief over the past several months. These subsequent applications are integral to the full scope of relief sought and should likewise be included and removed from the hold, as they further demonstrate the continuing and unremedied nature of the harm at issue.

## CLASS ALLEGATIONS

46.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and seek certification of two subclasses.

47.    Subclass 1 (Designated-Country Nationals): All individuals who are nationals of a country identified in Presidential Proclamation 10949 or Presidential Proclamation 10998, and who have or had an application or petition for an immigration benefit pending before USCIS that was subjected to an adjudicative hold pursuant to USCIS Policy Memorandum PM-602-0192 or PM-602-0194, and whose pending application has been subjected to the significant negative factor policy in USCIS Policy Alert PA-2025-26.

48.    Subclass 2 (Asylum Applicants): All individuals who have or had a pending Form I-589 application for asylum that was subjected to a blanket adjudicative hold pursuant to USCIS Policy Memorandum PM-602-0192 or PM-602-0194.

49.    Both subclasses are so numerous that joinder of all members is impracticable. Subclass 1 encompasses nationals of thirty-nine countries whose immigration benefit applications have been subjected to nationality-based adjudicative holds. The named Plaintiffs alone include approximately 197 individuals from more than twenty countries, and they represent only those applicants who have retained counsel in this litigation—a fraction of the affected population. Subclass 2 encompasses every individual with a pending Form I-589 asylum application subjected to the blanket adjudicative hold. As of the third quarter of fiscal year 2025, USCIS reported approximately 1.5 million pending asylum applications, according to USCIS reporting. The blanket hold imposed by the Policy Memoranda applies to all of them regardless of nationality.

50.    There are questions of law and fact common to each subclass that predominate over any individual issues. The challenged directives impose categorical holds triggered by objective criteria—nationality for Subclass 1, and the filing of an asylum application for Subclass 2. Both challenged positions operate through categorical criteria rather than individualized adjudicatory determinations. Common questions include: (a) whether the Policy Memoranda and Policy Alert constitute final agency action reviewable under the APA; (b) whether the challenged directives exceed the authority conferred by INA § 212(f); (c) whether the directives violate statutory mandates requiring individualized adjudication; (d) whether the directives are arbitrary and capricious; (e) whether the directives are substantive rules promulgated without notice-and-comment rulemaking in violation of 5 U.S.C. § 553; and (f) whether the directives violate procedural due process. Subclass 1 additionally shares the common question of whether singling out nationals of thirty-nine designated countries for adverse adjudicatory treatment violates equal protection. Subclass 2 additionally shares the common question of whether the blanket asylum hold conflicts with Section 8(d) of Presidential Proclamation 10998, which expressly provides that the Proclamation shall not limit the ability of an individual to seek asylum.

51.    The claims of the named Plaintiffs are typical of the claims of the members of each subclass. Every named Plaintiff's claims arise from the same challenged directives, challenge the same categorical holds, and seek the same declaratory and injunctive relief as every other class member. The

named Plaintiffs proposed as representatives for Subclass 1 include nationals of more than twenty of the thirty-nine designated countries who have had a range of immigration benefit applications—including adjustment of status, naturalization, employment authorization, immigrant petitions for alien workers, and travel documents—subjected to the nationality-based holds. The named Plaintiffs proposed as representatives for Subclass 2 include asylum applicants whose cases have been subjected to the blanket hold regardless of nationality, including applicants from countries not among the thirty-nine designated nations.

52.    The named Plaintiffs will fairly and adequately protect the interests of each subclass. The named Plaintiffs share the same interest as every member of both subclasses: ending the challenged adjudicative hold policies and restoring individualized adjudication under governing statutory and regulatory standards.

53.    No named Plaintiff has interests antagonistic to the class. The existence of two subclasses does not create antagonism; the subclasses challenge related but independent directives, and the relief sought for each is complementary rather than competing.

54.    Certification under Rule 23(b)(2) is appropriate because Defendants have acted on grounds generally applicable to each subclass. For Subclass 1, the Policy Memoranda and Policy Alert impose blanket adjudicative holds and a significant negative factor policy on every applicant who is a national of a designated country. For Subclass 2, the Policy Memoranda impose a blanket hold on every pending asylum application without regard to nationality or individual circumstances. The relief sought—a declaration that the challenged policies are unlawful and an injunction prohibiting their enforcement—is inherently indivisible and applies to each subclass as a whole.

55.    Plaintiffs further move for appointment of James O. Hacking, III, of Hacking Immigration Law, LLC and Stefanie Fisher-Pinkert as class counsel pursuant to Rule 23(g). Counsel identified this litigation, assembled a plaintiff group of approximately 197 individuals from more than twenty countries, conducted extensive factual investigation, briefed and argued the motion for preliminary injunction, obtained and analyzed two certified administrative records produced by the government, and

have vigorously prosecuted this action since its filing.

JURISDICTION AND VENUE

56.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution, the Immigration and Nationality Act, and the Administrative Procedure Act.

57.    Judicial review is available under the Administrative Procedure Act, 5 U.S.C. §§ 702 and 704, because Plaintiffs challenge final agency actions that impose binding consequences, suspend statutory adjudication duties, and inflict concrete injuries. Sovereign immunity is waived for claims seeking non-monetary relief.

### A. The Challenged Directives Are Final Agency Action.

58.    Policy Alert PA-2025-26, Policy Memoranda PM-602-0192 and PM-602-0194, and the policy guidance directing USCIS officers to consider country-specific factors as "significant negative factors" each consummate the agency's decision-making process. PA-2025-26 took effect immediately upon issuance and supersedes all prior guidance. The Policy Memoranda direct USCIS personnel to immediately implement the adjudicative hold and remain in effect "until lifted or modified by the USCIS Director through a subsequent memorandum." Although the Policy Memoranda contemplated the issuance of "operational guidance" within 90 days, both 90-day deadlines have passed without the issuance of any such guidance and without any modification of the adjudicative hold, as set forth above. The challenged directives are not tentative or interlocutory; they are the agency's final word on its policy. The operational-guidance deadlines identified in PM-602-0192 and PM-602-0194 have expired without rescission or meaningful modification of the adjudicative hold policy.

59.    The challenged directives are also actions by which rights and obligations have been determined and from which legal consequences flow. USCIS adjudicators are bound to apply the directives. Plaintiffs' applications remain in indefinite adjudicative limbo without final agency action on the underlying benefit requests. Plaintiffs' adjudications, when and if they occur, are subject to a nationality-based negative presumption under the significant negative factor policy. The directives are accordingly final agency action subject to judicial review under 5 U.S.C. § 704.

60.    The relief sought is authorized under 5 U.S.C. § 706, which empowers courts to set aside agency actions that exceed statutory authority, conflict with governing law, or violate procedural requirements, and to compel agency action unlawfully withheld or unreasonably delayed.

### B. Venue.

61.    Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(e)(1). Plaintiffs Akmurat O. Doe, S. Ferdows A. Doe, Sahar E. Doe, Larissa G. Doe, Isis M. Doe, and Emile S. Doe reside within this District. USCIS maintains a Field Office in Boston that conducts and withholds adjudications affecting Plaintiffs in this District, and Defendant Dorothy Michaud directs operations at that office. The challenged directives are nationwide policies applied uniformly across all USCIS offices, including the Boston Field Office, and a substantial part of the events giving rise to this action—including the implementation of adjudicative holds, the cancellation of interviews and oath ceremonies, and the withholding of employment authorization—occurred and continues to occur in this District.

### C. No Jurisdiction-Stripping Provision Bars Review.

62.    This case does not fall within any statutory exclusion from judicial review. Plaintiffs do not seek review of an individual removal order, consular visa issuance, or discretionary adjudicatory determination. They challenge agency policies and procedures of general applicability. The jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(B)(i) and (ii) do not apply to such collateral challenges.

### PARTIES

#### Defendants

63.    Defendant Donald J. Trump is the President of the United States and is sued in his official capacity. He issued Presidential Proclamations 10949 and 10998 and directed the development and implementation of the challenged "security posture" and adjudication adjudicative holds through the Department of Homeland Security and its component agencies.

64.    Defendant United States Department of Homeland Security (DHS) is a cabinet-level department of the United States charged with administering and enforcing the immigration laws. DHS

issued Policy Alert PA-2025-26, directed the extension of 8 U.S.C. § 1182(f) entry authority into domestic adjudications, and oversees USCIS, including USCIS's issuance and implementation of Policy Memoranda PM-602-0192 and PM-602-0194 and the adjudicative hold policy set forth therein.

65.     Defendant Markwayne Mullin is the Secretary of the Department of Homeland Security and is sued in his official capacity. He is responsible for supervising DHS, issuing and implementing Policy Alert PA-2025-26, overseeing USCIS's issuance and implementation of Policy Memoranda PM-602-0192 and PM-602-0194, and directing USCIS to adopt and maintain the challenged adjudicative holds and the nationality-based significant negative factor policy. Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Mullin is the proper defendant in place of former Secretary Kristi Noem.

66.     Defendant United States Citizenship and Immigration Services (USCIS) is a component agency of DHS charged with adjudicating applications for naturalization, adjustment of status, asylum, employment authorization, immigrant petitions for alien workers, and other immigration benefits. USCIS issued Policy Alert PA-2025-26 and Policy Memoranda PM-602-0192 and PM-602-0194 and is responsible for implementing the adjudicative holds and the nationality-based significant negative factor policy on domestic adjudications under the challenged directives.

67.     Defendant Joseph B. Edlow is the Director of USCIS and is sued in his official capacity. He is responsible for directing USCIS operations, including the issuance and implementation of Policy Alert PA-2025-26, Policy Memoranda PM-602-0192 and PM-602-0194, the adjudicative hold policy, and the nationality-based significant negative factor policy. He publicly announced on November 27, 2025 that USCIS officers are authorized to consider country-specific factors as "significant negative factors" when reviewing immigration requests.

68.     Defendant Dorothy Michaud is the Field Office Director of the USCIS Boston Field Office and is sued in her official capacity. She is responsible for directing USCIS operations and implementing the challenged adjudicative holds at the Boston Field Office.

69.     The challenged directives—including Presidential Proclamations 10949 and 10998, Policy Alert PA-2025-26, and Policy Memoranda PM-602-0192 and PM-602-0194—remain in effect and

continue to bind USCIS adjudicators at the direction of Defendants. Neither policy memorandum has been rescinded, modified, or superseded except to the extent that PM-602-0194 provides limited exceptions to the adjudicative hold. No operational guidance has been issued under either memorandum.

**Plaintiffs**

### A. Naturalization Applicants

70.     Plaintiffs in this category are noncitizens who have applied for naturalization under 8 U.S.C. § 1421 et seq. Each is a lawful permanent resident who satisfies the statutory eligibility requirements for naturalization, including the residency and good-moral-character requirements of 8 U.S.C. § 1427(a). Many have completed the personal investigation required by 8 U.S.C. § 1446(a), passed their naturalization examination, and been recommended for or formally approved for citizenship; certain Plaintiffs in this category have had oath ceremonies scheduled and then canceled as a result of the challenged directives. Defendants are subject to a mandatory, non-discretionary duty to adjudicate naturalization applications and, once eligibility is established, to grant naturalization and administer the oath of allegiance. 8 U.S.C. §§ 1446(b), (d), 1447(a)–(b). The challenged directives have caused USCIS to suspend adjudication of naturalization applications filed by Plaintiffs from the designated countries, including by canceling scheduled oath ceremonies and refusing to schedule new ones.

71.     Plaintiffs in this category include: Alain B. Doe (Burundi); Alexander H. Doe (Iran); Anwaar A. Doe (Iran); Arash E. Doe (Iran) (oath ceremony canceled); Emile S. Doe (Burkina Faso); Hamza A. Doe (Libya); Inimfon J. Doe (Nigeria) (oath ceremony canceled); Isis M. Doe (Syria); Jose H. Doe (Venezuela); Khalida N. Doe (Afghanistan); Marwa G. Doe (Libya); Mattathie G. Doe (Congo); Mohamed M. Doe (Sudan); Sawsan M. Doe (Sudan); Seyed M. R. Doe (Iran) (oath ceremony canceled); Shelmira M. Doe (Venezuela); Sol R. Doe (Venezuela).

### B. Adjustment of Status — Employment-Based (Approved I-140)

72.     Plaintiffs in this category are noncitizens who have obtained approval of an employment-based immigrant petition (Form I-140) and have a pending application for adjustment of status (Form I-485) to lawful permanent residence. USCIS has already determined that each Plaintiff in

this category qualifies for an employment-based immigrant visa; what remains is the ministerial act of granting the I-485 application. The challenged directives have placed those applications on indefinite hold solely because of the applicants' nationality or country of birth.

73.      Plaintiffs in this category include: Abbas K. Doe (Iran); Aliakbar Y. Doe (Iran); Arash R. Doe (Iran) Astrid I. Doe (Venezuela); Dina M. Doe (Iran); Ehsan S. Doe (Iran); Faezeh E. Doe (Iran); Faranak K. Doe (Iran); Farzad Z. Doe (Iran); Fatemeh R. Doe (Iran); Fatemeh V. Doe (Iran) (spouse dependent of Abbas K. Doe); Fatemehsadat T. Doe (Iran); Hamid S. Doe (Iran); Hamed S. Doe (Iran); Hoseyn A. Doe (Iran); Iman N. Doe (Iran); Khazar D. Doe (Iran); Afshin A. Doe (Iran) (spouse dependent of Khazar D. Doe); Mahdi G. Doe (Iran); Mahmood T. Doe (Iran); Maryam T. Doe (Iran) (spouse dependent of Mahmood T. Doe); Mahnaz V. Doe (Iran) (derivative spouse of Saman Z. Doe); Mehdi A. Doe (Iran); Masoumeh B. Doe (Iran) (derivative spouse of Mehdi A. Doe); Milad H. Doe (Iran); Mina R. Doe (Iran) (derivative spouse of Farzad Z. Doe); Misagh E. Doe (Iran); Mohammad H. Doe (Iran); Mohammad M. Doe (Iran); Mohammad M.Z. Doe (Iran); Mohammadamin M. Doe (Iran); Mohammadreza G. Doe (Iran); Mohammad S.T. Doe (Iran) (derivative spouse of Sara L. Doe); Muhammed E. Doe (Libya); Navid H. Doe (Iran); Neda I. Doe (Iran); Nima A. Doe (Iran); Parisa M. Doe (Iran); Payman P. Doe (Iran); Mohtaram B. Doe (Iran) (derivative spouse of Payman P. Doe); Pegah S. Doe (Iran) (spouse dependent of Iman N. Doe); Pedram R. Doe (Iran); Ramin S. Doe (Iran); S. Alireza Doe (Iran) (derivative spouse of Dina M. Doe); S. Ferdows A. Doe (Iran); S. Nooshan Doe (Iran); S. Rahman S. Doe (Iran); Sahar E. Doe (Iran); Sahar A. Doe (Iran) (derivative spouse of Mohammad H. Doe); Saharnaz E. Doe (Iran); Saeedeh P. Doe (derivative spouse of Arash R. Doe); Samad A. Doe (Iran); Saman Z. Doe (Iran); Sara L. Doe (Iran); Seyedmostafa Z. Doe (Iran); Shahab Z. Doe (Iran); Shirin A. Doe (Iran) (derivative spouse of Mohammadamin M. Doe); Sima M. Doe (Iran) (Spouse of Hoseyn A. Doe); Soheyla S. Doe (Iran) (derivative spouse of Hamed S. Doe).

### C. Adjustment of Status — Employment-Based (Concurrent I-140 and I-485)

74.      Plaintiffs in this category have filed both an employment-based immigrant petition (Form I-140) and an application for adjustment of status (Form I-485) concurrently, or have a pending I-140

paired with a pending I-485. Neither the I-140 nor the I-485 on an employment basis has been adjudicated. The challenged directives have suspended processing of both applications, leaving these Plaintiffs unable to obtain either the immigrant visa approval or the green card to which they seek to establish entitlement. The challenged directives have placed their applications on indefinite hold, leaving them unable to obtain lawful permanent residence, work authorization, or advance parole despite their lawful presence and compliance with all immigration requirements.

75.    Plaintiffs in this category include: Ali A. Doe (Iran); Alireza N. Doe (Iran); Amir B. Doe (Iran); Amirhossein H. Doe (Iran); Anas G. Doe (Libya); Asawer H. Doe (Libya) (derivative spouse of Anas G. Doe); Behnam T. Doe (Iran); Esmaeil M. Doe (Iran); Fahimeh S. Doe (Iran); Farnaz N. Doe (Iran); Mahsa P. Doe (Iran) (derivative spouse of S. Mahmoud M. Doe); Fatemeh F. Doe (Iran); Fatemeh M.H. Doe (Iran) (derivative spouse of Seyedheydar M. Doe); Hamid H. Doe (Iran); Hamidreza H. Doe (Iran); Kasra S. Doe (Iran); Khatereh S. Doe (Iran); Mohammad J.L. Doe (Iran); Masoumeh N. Doe (Iran) (derivative spouse of Milad M. Doe); Mehrnoosh E. Doe (Iran); Melika B. Doe (Iran) (derivative spouse of S. Mojtaba Doe (Iran); Milad M. Doe (Iran); Noushin A. Doe (Iran); Reihaneh D. Doe (Iran) (derivative spouse of Mohammad J.L. Doe); Reihaneh Z. Doe (Iran); Reza K. Doe (spouse derivative of Reihaneh Z. Doe); Sara M. Doe (Iran); S. Mahmoud M. Doe (Iran); S. Masoumeh Doe (Iran); S. Mojtaba Doe (Iran); Seyedali M. Doe (Iran); Seyedheydar M. Doe (Iran); Seyedhossein H. Doe (Iran); SeyedMahbod B. Doe (Iran); Shekoufeh M. Doe (Iran) (derivative spouse of Ali A. Doe); Shahnaz R. Doe (Iran); Shiva G. Doe (Iran); Sobhan Z. Doe (Iran);

### D. Employment-Based Immigrant Petitioners (Pending I-140)

76.    Plaintiffs in this category have filed an employment-based immigrant petition (Form I-140) that has not yet been adjudicated. The Form I-140 is the predicate filing for employment-based permanent residence under INA § 203(b), 8 U.S.C. § 1153(b), and Defendants are subject to a mandatory, non-discretionary duty to adjudicate such petitions and notify the petitioner of the decision. 8 C.F.R. §§ 204.5, 103.2(b)(19); 5 U.S.C. § 555(b). The challenged directives have suspended adjudication of these petitions, preventing Plaintiffs from establishing the predicate eligibility necessary to proceed to

adjustment of status.

77.    Plaintiffs in this category include: Alireza A. Doe (Iran); Ali R. Doe (Iran); Amin S. Doe (Iran); Amirhosein R. Doe (Iran); Amirsalar B. Doe (Iran); Arian E. Doe (Iran); Emad S. Doe (Iran); Farzad V. Doe (Iran); Gisoo D. Doe (Iran); Hava D. Doe (Iran); Marjan D. Doe (Iran); Minoo M. Doe (Iran); Mitra B. Doe (Iran); Mohammad K. Doe (Iran); Nooshin Z. Doe (Iran); Saeed B. Doe (Iran); Seyedsajad M. Doe (Iran); Shaghayegh V. Doe (Iran); Sina L. Doe (Iran); Vahid N. Doe (Iran); Yasaman E. Doe (Iran).

### E. Adjustment of Status — Cuban Adjustment Act Applicants

78.    Plaintiffs in this category are Cuban nationals who entered the United States lawfully and have filed applications for adjustment of status under the Cuban Adjustment Act, 8 U.S.C. § 1255 note. Each has complied with all requirements of the Cuban Adjustment Act. The challenged directives have placed their applications on indefinite hold, preventing adjudication of their eligibility for lawful permanent residence.

79.    Plaintiffs in this category include: Brayan R. Doe (Cuba); Raidel P. Doe (Cuba); Carlos G. Doe (Mexico) (Spouse dependent of Raidel P. Doe); Gladys G. Doe (Cuba); Manuel N. Doe (Cuba).

### F. Adjustment of Status — Family-Based Applicants

80.    Plaintiffs in this category are noncitizens who have filed applications for adjustment of status based on an approved or pending family-based immigrant petition (Form I-130) or other qualifying family relationship. Each has complied with all requirements of the family-based immigration process. The challenged directives have placed their applications on indefinite hold based on their nationality or country of origin, depriving them of the ability to obtain lawful permanent residence and, in many cases, employment authorization.

81.    Plaintiffs in this category include: Aidasadat M.T. Doe (Iran); Adolfo P. Doe (Venezuela); Amin M. Doe (Iran); Amslyne K. Doe (Haiti); Andisheh G. Doe (Iran) (spouse of Amir B. Doe); Bahareh S. Doe (Iran); Bob P-L. Doe (Haiti); Fazlollah M. Doe (Iran); Zahra G. Doe (Iran) (spouse of Fazlollah M. Doe); Francys C. Doe (Venezuela); Garlyne V. Doe (Haiti); Haleema L. Doe (Afghanistan); Iman M.

Doe (Iran); Jaackcirelys G. Doe (Venezuela); Javier Q. Doe (Venezuela); Jose M. Doe (Venezuela); Katiana C. Doe (Haiti); Kwadzovi A. Doe (Togo); Kyaw T. Doe (Myanmar); Marco R. Doe (Venezuela); Mya S. Doe (Myanmar); Nancy C. Doe (Haiti); Paing Y. Doe (Myanmar); Patricia P. Doe (Venezuela); Shahnaz S. Doe (Iran); Souraya H. Doe (Syria); Sylvie E. Doe (Haiti); Thinzar L. Doe (Myanmar).

### G. Adjustment of Status — Asylum-Based Applicants

82.    Plaintiffs in this category have been granted asylum in the United States and have filed applications for adjustment of status (Form I-485) to lawful permanent residence based on their asylum grants. Presidential Proclamation 10998 § 8(d) expressly provides that the Proclamation "shall not apply to an individual who has been granted asylum by the United States." Despite that express carve-out, the Policy Memoranda have imposed the same adjudicative hold on these Plaintiffs' applications as on those filed by nationals of the designated countries generally, in direct conflict with the Proclamation's limitations.

83.    Plaintiffs in this category include: Akmurat O. Doe (Turkmenistan); Hasti H. Doe (Iran); Mawugnon Z. Doe (Togo); Mohammed A. A. Doe (Yemen); Mostafa M. Doe (Afghanistan); Munera N. Doe (Afghanistan); Raymond K. Doe (Burundi); Ye M. Doe (Myanmar).

### H. Affirmative Asylum Applicants

84.    Plaintiffs in this category have filed affirmative asylum applications (Form I-589) with USCIS and are awaiting adjudication. Each has complied with all filing requirements and is lawfully present in the United States during the pendency of the application. Presidential Proclamation 10998 § 8(d) expressly provides that nothing in the Proclamation "shall be construed to limit the ability of an individual to seek asylum." Despite that express command, Policy Memorandum PM-602-0192 imposed a blanket hold on all affirmative asylum adjudications regardless of nationality, and that hold remains in place. Defendants are subject to a mandatory duty to adjudicate asylum applications, including a statutory directive to complete adjudication within 180 days. 8 U.S.C. § 1158(d)(5)(A)(iii).

85.    Plaintiffs in this category include: Aleksei S. Doe (Russia); Aung K. Doe (Myanmar); Aye K. Doe (Myanmar); Cherry T. Doe (Myanmar); Hlaing T. Doe (Myanmar); Kamyab V. Doe (Iran);

Khant S. Doe (Myanmar); Kyaw Z. Y. Doe (Myanmar); Larissa G. Doe (Burundi); Marie J. Doe (Haiti); Mariya R. Doe (Kazakhstan); Myo A. Doe (Myanmar); Percy I. Doe (Nigeria); Robert C. Doe (Kenya); Saw Z. Doe (Myanmar); Wint A. Doe (Myanmar); Zaw L. Doe (Myanmar).

### I. Employment and Travel Authorization Applicants

86.    Plaintiffs in this category have filed applications for employment authorization (Form I-765) or Optional Practical Training (OPT) extensions that remain unadjudicated as a result of the challenged directives. Each Plaintiff is or was authorized to work and remain lawfully present in the United States, and timely filed for continued or new authorization. The challenged directives have suspended adjudication of these applications, placing Plaintiffs at imminent risk of losing lawful work authorization, income, and in some cases lawful immigration status, through no fault of their own.

87.    Plaintiffs in this category include: Aye S. Doe (Myanmar); Behrouz E. Doe (Iran); Fatema H. Doe (Afghanistan); Marjan A. Doe (Iran); Mohammedmehdi A. Doe (Iran); Zhina R. Doe (Iran); Zin H. Doe (Myanmar).

### J. Additional Applicants

88.    Plaintiffs in this category have pending immigration benefit applications that do not fit within the categories described above. Each has complied with all applicable requirements and is lawfully present in the United States. The challenged directives have suspended or delayed adjudication of their applications.

89.    Plaintiffs in this category include: Sara F. Doe (Iran) (spouse of Alireza A. Doe) (I-539).

### IMMIGRATION AND NATIONALITY ACT

**Statutory and Regulatory Framework**
**Naturalization (INA §§ 310–319; 8 U.S.C. §§ 1421, 1446–1448; 8 C.F.R. Part 335)**

90.    Congress vested exclusive naturalization authority in USCIS and mandated adjudication of naturalization applications. 8 U.S.C. § 1421(a).

91.    Section 1446 provides that USCIS "shall conduct" an investigation and examination of each applicant. 8 U.S.C. § 1446(a), (d).

92.     Section 1447 provides that, once eligibility is established, USCIS "shall grant" naturalization and administer the oath. 8 U.S.C. § 1447(a)–(b).

93.     Implementing regulations are similarly mandatory: 8 C.F.R. § 335.3(a) requires USCIS to determine whether to grant or deny an application following examination.

**Adjustment of Status (INA § 245; 8 U.S.C. § 1255; 8 C.F.R. §§ 245.1–245.2)**

94.     Section 245 authorizes eligible noncitizens who have been inspected or paroled into the United States to apply for adjustment of status and directs USCIS to adjudicate those applications through individualized determinations of admissibility, visa availability, and statutory eligibility. By statute, the process is not discretionary once an application is properly filed: Congress provided that eligible applicants "may apply," and that USCIS must determine eligibility based on evidence and statutory criteria.

95.     The implementing regulations confirm that obligation. Under 8 C.F.R. § 245.2(a)(1), USCIS must accept and process properly filed applications that are accompanied by required fees and initial evidence. Section 245.2(a)(5)(i) further mandates action, stating that an officer "shall adjudicate" an adjustment application and must notify the applicant of the decision. Related regulations require USCIS to request additional evidence if needed, and—after evidence is submitted—to make a determination to approve or deny the application, not to withhold action indefinitely.

96.     Congress designed adjustment as an adjudicatory benefit tied to statutory eligibility and timely access to permanent residence. The statutory and regulatory framework assumes movement toward a final decision once (1) a visa is available, (2) the applicant submits the required fees and evidence, and (3) USCIS completes any necessary background review. That design is reflected in the mandatory "shall adjudicate" language and the absence of any authority to suspend adjudication based on nationality.

97.     Nothing in § 245 or its implementing regulations authorizes USCIS to refuse to act on properly filed applications, to place entire nationalities into open-ended abeyance, or to treat nationality itself as evidence of inadmissibility or risk. The adjudicative hold thus contradicts Congress's requirement of individualized adjudication and converts a mandatory statutory process into an indefinite suspension

untethered to any statutory criteria.

## Asylum (INA § 208; 8 U.S.C. § 1158; 8 C.F.R. Part 208)

98.    Section 208 provides that "any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . .) may apply for asylum," 8 U.S.C. § 1158(a)(1), and mandates adjudication of such applications. Congress imposed specific procedural requirements governing affirmative asylum, including deadlines and mandatory processing obligations. Section 1158(d)(5)(A) directs DHS to conduct an initial interview within 45 days and to complete adjudication within 180 days absent exceptional circumstances—reflecting Congress's intent that asylum claims be decided, not suspended.

99.    The implementing regulations mirror these statutory obligations. Under 8 C.F.R. § 208.9, USCIS must interview asylum applicants to evaluate eligibility, credibility, and statutory bars. Section 208.14 requires adjudicators to take action following an interview—granting asylum, denying it, or referring the application to the Department of Justice for removal proceedings. These steps form a mandatory adjudicatory sequence: interview; evaluate evidence; issue a decision or referral. The regulations contemplate continuous processing and expressly provide for actions at each stage, not indefinite holds.

100.    The statutory design recognizes asylum as a humanitarian protection grounded in international and domestic law, with specific protections for timely adjudication and eligibility to obtain work authorization during the process. Congress required DHS to move cases forward through individualized adjudication and to complete them within prescribed timeframes. Nothing in § 1158 or Part 208 authorizes DHS or USCIS to halt asylum adjudications categorically, to suspend interviews across the board, or to impose moratoria based solely on nationality. Such adjudicative holds convert a mandatory adjudicatory framework into an open-ended asylum limbo that Congress expressly sought to prevent through statutory deadlines and individualized assessment requirements.

## Employment Authorization (INA § 208(d); 8 C.F.R. §§ 208.7, 274a.12)

101.    Section 208(d) and implementing regulations require DHS to process work authorization

applications for eligible asylum applicants and renewal applicants.

102.     Regulations provide that DHS "shall grant" employment authorization after required timeframes. 8 C.F.R. § 208.7(a).

103.     The regulatory scheme imposes mandatory duties to accept, process, and adjudicate work authorization applications and contains no authority for categorical or indefinite suspension.

### Prohibition on Nationality-Based Discrimination (8 U.S.C. § 1152(a)(1)(A))

104.     For much of the twentieth century, the federal immigration system was structured around national-origin quotas that explicitly allocated immigration benefits on the basis of nationality and race. The Immigration Act of 1924 imposed formal national-origin limits that restricted immigration from Asia, Africa, and southern and eastern Europe.

105.     Although the 1952 Immigration and Nationality Act carried forward elements of the quota system, Congress repudiated nationality-based allocation in the Immigration and Nationality Act of 1965, Pub. L. No. 89-236. The 1965 amendments abolished the national-origin quota system and replaced it with a uniform preference system based on family and employment categories.

106.     As part of this shift, Congress enacted § 202(a)(1)(A), now codified at 8 U.S.C. § 1152(a)(1)(A), which provides that "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence."

107.     Section 202(a)(1)(A) was designed as a categorical barrier against the reintroduction of nationality-based preferences or penalties in the allocation of immigration benefits. Legislative history reflects Congress's express intent to ensure that nationality could not serve as a proxy for eligibility or risk.

108.     Although § 202(a)(1)(A) applies directly to immigrant visa issuance abroad, it necessarily informs the treatment of immigrant-visa-dependent domestic benefits—particularly adjustment of status and naturalization—which derive from visa eligibility and share the same statutory framework. Domestic adjudication of these benefits must therefore be free from nationality-based discrimination.

109.     The INA reflects Congress's deliberate structural choice: individualized adjudication based on statutory eligibility criteria, not categorical judgments based on nationality and/or country of birth. The challenged directives substitute nationality for individualized evidence, contrary to this core statutory design.

110.     Defendants' policy of placing all applicants from thirty-nine designated countries into open-ended "security posture" holds reintroduces nationality and/or country of birth as a controlling factor in domestic adjudication, effectively reviving the very form of discrimination Congress abolished in 1965.

111.     Nothing in the INA authorizes DHS or USCIS to treat nationality and/or country of birth as a basis for suspending adjudication or imposing heightened scrutiny absent individualized findings. To the contrary, nationality-based distinctions in the domestic context conflict with the statutory command of individualized adjudication and Congress's explicit rejection of national-origin systems.

112.     The challenged directives thus contravene § 202(a)(1)(A)'s nondiscrimination principle and undermine Congress's objective of eliminating nationality-based barriers to lawful immigration benefits.

### Limits of INA § 212(f) and Its Inapplicability to Domestic Adjudication

113.     While INA § 212(f), codified at 8 U.S.C. § 1182(f), authorizes the President to "suspend the entry" of noncitizens whose admission would be detrimental to the interests of the United States, the statutory text is expressly confined to entry—not adjudication of applications for individuals already physically present in the United States.

114.     Section 212(f) operates at consulates and the border, and governs visa issuance abroad and admission at ports of entry. It does not grant authority to override domestic adjudication obligations imposed by Congress on USCIS. In this suit, Plaintiffs do not challenge the Executive's authority to regulate or limit the entry of certain foreign nationals into the United States.

115.     Congress created a structural division between border entry authority and domestic adjudication authority: the former resides with the President and the Departments of State and Homeland

Security; the latter resides with USCIS under chapters 4, 5, and 12 of the INA. See 8 U.S.C. §§ 1421–1448, 1255, 1158.

116.    Nothing in § 1182(f) authorizes the President or DHS to: (a) suspend naturalization interviews or oath ceremonies; (b) halt or delay adjustment of status adjudications; (c) stop processing affirmative asylum adjudications; or (d) suspend employment authorization tied to applications in the domestic system.[3]

117.    Congress could have granted the Executive authority to suspend domestic adjudications based on nationality or security posture; it did not. Instead, Congress imposed mandatory adjudication duties and prohibited nationality-based and birthplace discrimination.

118.    Defendants' reliance on § 1182(f) to justify domestic adjudication holds exceeds statutory authority, alters the statutory scheme Congress enacted, and is ultra vires.

## CLAIMS FOR RELIEF

## COUNT I — ULTRA VIRES EXECUTIVE ACTION

119.    Plaintiffs incorporate the preceding paragraphs.

120.    The INA grants the President limited authority under § 1182(f) to suspend the entry of certain foreign nationals, but does not authorize the suspension or indefinite deferral of domestic immigration adjudications conducted by USCIS.

121.    USCIS is statutorily required to adjudicate applications for naturalization, adjustment of status, asylum, and employment authorization. These are mandatory duties imposed by Congress through the INA and its implementing regulations. USCIS lacks authority to suspend adjudication en masse or to impose categorical holds based solely on nationality and/or place of birth.

122.    The challenged directives—Presidential Proclamations 10949 and 10998, Policy Alert PA-2025-26, and Policy Memoranda PM-602-0192 and PM-602-0194—convert the President's § 1182(f) entry authority into a domestic adjudication moratorium, exceeding statutory limits and displacing

---

[3] In *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), the Supreme Court addressed only the scope of § 1182(f) with respect to entry and consular visa issuance. The Court did not extend § 1182(f) to domestic adjudications and did not hold that it overrides statutory adjudication mandates.

mandatory adjudicatory obligations that Congress assigned to USCIS.

123.    The directives conflict with statutory requirements, including the mandatory "shall" language in 8 U.S.C. §§ 1446–1447 (naturalization), § 1158(d)(5) (asylum), and the adjudication requirements in 8 C.F.R. §§ 208.9, 208.14, and 245.2(a)(5)(i) (adjustment of status).

124.    As set forth in Count III, the adjudicative hold policy also exceeds and conflicts with the express limitations of Presidential Proclamation 10998 § 8(d), and is therefore ultra vires for this additional reason.

125.    Defendants acted outside the scope of delegated authority and contrary to the statutory framework Congress enacted. Because Congress did not authorize these measures, the challenged directives are ultra vires and must be set aside.

## COUNT II — APA: AGENCY ACTION UNLAWFULLY WITHHELD AND UNREASONABLY DELAYED (5 U.S.C. § 706(1))

126.    Plaintiffs incorporate the preceding paragraphs.

127.    Defendants' implementation of the adjudicative hold policies has unlawfully withheld and unreasonably delayed agency action required by law. By categorically suspending final adjudication of Plaintiffs' pending applications without any defined endpoint, Defendants have failed to carry out mandatory adjudicatory duties imposed by the INA, applicable regulations, and 5 U.S.C. § 555(b).

128.    Under 5 U.S.C. § 706(1), a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed."

129.    Congress has imposed on USCIS discrete, mandatory duties to adjudicate each of the categories of immigration benefit applications at issue in this case: (a) Naturalization: Congress directed that USCIS "shall conduct" an investigation and examination of each applicant, 8 U.S.C. § 1446(a), (d), and that once eligibility is established, USCIS "shall grant" naturalization and administer the oath of allegiance, 8 U.S.C. § 1447(a)–(b); (b) Adjustment of Status: Implementing regulations mandate that a USCIS officer "shall adjudicate" each adjustment application and notify the applicant of the decision, 8 C.F.R. § 245.2(a)(5)(i); (c) Asylum: Congress directed that DHS shall conduct an initial interview within

45 days and complete adjudication within 180 days, absent exceptional circumstances, 8 U.S.C. § 1158(d)(5)(A)(ii)–(iii); and (d) Employment Authorization: Regulations provide that DHS "shall grant" employment authorization to eligible applicants after required timeframes, 8 C.F.R. § 208.7(a).

130.    Each of these adjudicatory duties is a discrete agency action that USCIS is legally required to perform. The duty to adjudicate each properly filed application is not a broad programmatic obligation, but a specific, nondiscretionary act owed to each individual applicant under the governing statutes and regulations.

131.    USCIS has unlawfully withheld and unreasonably delayed the performance of these mandatory duties with respect to each Plaintiff. Rather than adjudicating Plaintiffs' properly filed applications in accordance with the statutory and regulatory framework, USCIS has placed those applications into indefinite adjudicative holds pursuant to Policy Memoranda PM-602-0192 and PM-602-0194. USCIS has not denied Plaintiffs' applications; it has refused to act on them at all.

132.    The agency's refusal to adjudicate is not based on any individualized assessment of Plaintiffs' applications, any case-specific deficiency, or any statutory ground for withholding action. It is based solely on Plaintiffs' nationality, country of birth, or association with a designated country—criteria that do not appear in any statute or regulation as a basis for withholding adjudication.

133.    Many Plaintiffs have had applications pending for months or years, have completed all steps required of them—including interviews, biometrics, and responses to requests for evidence—and in some cases have been approved and are awaiting only the administration of an oath or the issuance of a document. The withholding of final action on these applications is both unlawful and unreasonable.

134.    Plaintiffs are entitled to an order under 5 U.S.C. § 706(1) compelling USCIS to adjudicate their pending applications in accordance with the statutory and regulatory requirements applicable to each benefit category.

### COUNT III — APA: CONTRARY TO LAW (5 U.S.C. § 706(2)(A), (C))

135.    Plaintiffs incorporate the preceding paragraphs.

*A. The Adjudicative Hold Policy Conflicts with Mandatory Statutory and Regulatory Duties to Adjudicate.*

136.    The APA directs courts to "hold unlawful and set aside" agency action that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C). The adjudicative hold policy and the significant negative factor policy are each contrary to law on multiple, independent grounds.

137.    The adjudicative hold policy set forth in Policy Memoranda PM-602-0192 and PM-602-0194 conflicts with the statutory and regulatory mandates requiring USCIS to adjudicate the categories of benefit applications at issue in this case.

138.    With respect to naturalization, Congress directed that USCIS employees designated to conduct examinations "shall make a determination as to whether the application should be granted or denied, with reasons therefore." 8 U.S.C. § 1446(d). With respect to asylum, Congress directed that final adjudication "shall be completed within 180 days after the date an application is filed," absent exceptional circumstances. *Id.* § 1158(d)(5)(A)(iii). With respect to adjustment of status, USCIS regulations require that "[t]he applicant shall be notified of the decision of the director." 8 C.F.R. § 245.2(a)(5)(i). With respect to employment authorization, USCIS regulations require that an applicant whose application is granted "shall be notified of the decision," and an applicant whose application is denied "shall be notified in writing of the decision and the reasons for the denial." *Id.* § 274a.13(b)–(c). The Administrative Procedure Act further requires that each agency "shall proceed to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b).

139.    The adjudicative hold policy, which indefinitely halts the adjudication of these applications based solely on nationality, country of birth, or association with a designated country, is contrary to these mandatory adjudicatory duties.

*B. The Adjudicative Hold and Significant Negative Factor Policies Exceed Defendants' Authority Under INA § 212(f).*

140.    INA § 212(f), 8 U.S.C. § 1182(f), authorizes the President to "suspend the entry" of "any

-148-

class of aliens" into the United States. The Supreme Court has confirmed that § 1182(f) "grants the President broad discretion to suspend the entry of aliens into the United States." Trump v. Hawaii, 585 U.S. 667, 683–84 (2018) (emphasis added).

141.    By its plain text, § 1182(f) authorizes restrictions on entry, not the suspension of domestic adjudications for noncitizens already admitted to the United States. As the Supreme Court has explained, admissibility and entry "operate in [a] different spher[e]" than the allocation of visas and immigration benefits. Hawaii, 585 U.S. at 695. The challenged directives, which apply exclusively to the domestic adjudication of benefit applications by noncitizens already lawfully present in the United States, exceed the authority conferred by § 1182(f).

### C. The Significant Negative Factor Policy Violates § 1152(a)(1)(A)'s Prohibition on Nationality Discrimination as Applied to Adjustment of Status and Work Authorization.

142.    Section 1152(a)(1)(A) provides that, with limited exceptions not relevant here, "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence." 8 U.S.C. § 1152(a)(1)(A). Applications for adjustment of status and the work authorization applications at issue in this case depend on the allocation of immigrant visas and are accordingly subject to § 1152(a)(1)(A)'s prohibition on nationality-based discrimination.

143.    The significant negative factor policy expressly draws distinctions on the basis of nationality, instructing USCIS officers to treat the nationality of applicants from any of the thirty-nine designated countries as a "significant negative factor" in adjudicating their benefit applications. The policy is contrary to § 1152(a)(1)(A) as applied to applications for adjustment of status and work authorization.

### D. The Significant Negative Factor Policy Is Contrary to the INA's Statutory Frameworks Governing Asylum and Naturalization.

144.    The significant negative factor policy is also contrary to law as applied to applications for asylum and naturalization, because each of those statutory frameworks defines eligibility by reference to individualized criteria that leave no room for a nationality-based thumb on the scale.

145.    With respect to asylum, the INA provides that "[a]ny alien who is physically present in the United States or who arrives in the United States . . ., irrespective of such alien's status, may apply for asylum." 8 U.S.C. § 1158(a)(1). The statute defines eligibility by reference to the individualized refugee definition in § 1101(a)(42)—which turns on past persecution or a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion"—and not by reference to the applicant's nationality. § 1158(b)(1)(A); § 1101(a)(42)(A). The bars to asylum enumerated in § 1158(b)(2) likewise reflect individualized conduct or status determinations (persecutor of others; conviction of a particularly serious crime; commission of a serious nonpolitical crime abroad; danger to U.S. security; terrorist activity; firm resettlement). Nationality from a designated country appears nowhere among these enumerated bars. Under the canon of expressio unius, Congress's careful enumeration of disqualifying factors forecloses the addition by executive fiat of nationality as a further disqualifying factor. Imposing a nationality-based "significant negative factor" on asylum adjudications conflicts with the INA's statutory scheme for asylum eligibility, which Congress made nationality-blind by design.

146.    With respect to naturalization, Congress directed that "[t]he right of a person to become a naturalized citizen of the United States shall not be denied or abridged because of race, sex, or marital status." 8 U.S.C. § 1422. While that provision does not expressly enumerate nationality, the broader naturalization framework reflects the same congressional design: eligibility for naturalization is defined entirely by reference to individualized statutory criteria—lawful permanent residence, statutory residency and physical presence, good moral character, knowledge of English and U.S. civics, and attachment to the principles of the Constitution. 8 U.S.C. § 1427(a). Good moral character is itself defined by reference to enumerated disqualifying conduct, none of which includes nationality. *Id.* §§ 1101(f), 1427(e). Naturalization decisions must be made on the basis of "the applicant's conduct and acts at any time prior to that period." § 1427(e). The INA's naturalization framework leaves no room for nationality to operate as a categorical negative factor; doing so would convert an individualized statutory inquiry into a nationality-based screen Congress neither authorized nor contemplated.

147.    The significant negative factor policy is, accordingly, contrary to the statutory frameworks governing asylum and naturalization in 8 U.S.C. §§ 1158, 1422, and 1427.

### E. The Adjudicative Hold Exceeds and Conflicts with the Presidential Proclamations the Policy Memoranda Invoke as Authority.

148.    The Policy Memoranda expressly rely on Presidential Proclamations 10949 and 10998 as the source of authority for the adjudicative hold policy. An agency policy that exceeds or conflicts with the source of authority it invokes is contrary to law under 5 U.S.C. § 706(2)(A).

149.    Section 8(d) of Proclamation 10998 imposes two express limitations on the Proclamation's scope: it shall not apply to individuals already granted asylum or admitted as refugees, and it shall not be construed to limit the ability of any individual to seek asylum, refugee status, withholding of removal, or protection under the Convention Against Torture. PP 10998, § 8(d).

150.    The adjudicative hold policy exceeds these express limitations in two respects. First, the Policy Memoranda apply the adjudicative hold to applications filed by individuals already granted asylum, including applications to adjust status to lawful permanent residence based on the asylum grant. This contradicts § 8(d)'s express exclusion of asylees and refugees from the Proclamation's scope. Second, the Policy Memoranda apply a blanket adjudicative hold to all pending Form I-589 asylum applications, regardless of the applicant's nationality. This contradicts § 8(d)'s express command that the Proclamation not be construed to limit the ability of any individual to seek asylum.

151.    The adjudicative hold policy is therefore contrary to law within the meaning of 5 U.S.C. § 706(2)(A) and (C), because it exceeds and conflicts with the very Proclamation the Policy Memoranda invoke as authority.

152.    For these reasons, the adjudicative hold policy and the significant negative factor policy are contrary to law and in excess of statutory jurisdiction, authority, or limitations within the meaning of 5 U.S.C. § 706(2)(A) and (C), and must be set aside.

### COUNT IV — APA: ARBITRARY AND CAPRICIOUS (5 U.S.C. § 706(2)(A))

153.    Plaintiffs incorporate the preceding paragraphs.

154.    The Administrative Procedure Act directs courts to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Both the adjudicative hold policy set forth in Policy Memoranda PM-602-0192 and PM-602-0194 and the significant negative factor policy set forth in Policy Alert PA-2025-26 are arbitrary and capricious within the meaning of § 706(2)(A).

155.    The challenged directives were issued without adequate explanation, evidentiary basis, or reasoned decision-making as required under the APA.

156.    PM-602-0192 was issued with no exceptions for any category of applicant or benefit type, no criteria for individualized determination, no timelines, no sunset provisions, no standards for lifting holds, and no mechanisms for affected applicants to seek review or exemption.

157.    PM-602-0194 added ten categories of exceptions, but those exceptions are narrow and largely irrelevant to the core benefit categories at issue in this case—naturalization, adjustment of status, asylum, and employment authorization. The exceptions principally address replacement documents, law enforcement priorities, sporting events, and program terminations. They do not provide meaningful relief to applicants whose cases have been placed on indefinite hold.

158.    PM-602-0194 directed that USCIS would issue operational guidance within 90 days. That self-imposed deadline expired on or about April 1, 2026. Upon information and belief, no such operational guidance has been issued, and the adjudicative holds remain in place without the operational framework USCIS itself determined was necessary.

159.    PM-602-0194 eliminated the broad exemption for family-based immigrant visa applications that had existed under PP 10949, subjecting family-based applicants to the same adjudicative hold without adequate explanation for that change.

160.    Defendants failed to consider the reliance interests of the hundreds of thousands of applicants who filed applications in compliance with statutory requirements and in reasonable reliance on timely adjudication. Defendants failed to consider the statutory mandates requiring adjudication. Defendants failed to consider or adopt less restrictive alternatives, such as individualized background

checks and case-by-case review, that would have permitted continued adjudication while addressing any legitimate security concerns.

161.    The breadth, indefinite duration, and nationality-based character of the adjudicative holds, combined with the absence of reasoned explanation, the failure to issue promised operational guidance, and the disregard of statutory obligations and reliance interests, render the challenged directives arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A).

162.    USCIS failed to articulate a rational connection between the factual bases offered for the adjudicative hold policy and the scope of the policy. The Policy Memoranda reference two isolated criminal acts planned or committed by Afghan nationals and the country-specific vetting and screening findings set forth in Presidential Proclamations 10949 and 10998. Neither of these factual bases supports halting domestic benefit adjudications for nationals of thirty-nine designated countries, much less halting all asylum adjudications regardless of nationality. The Policy Memoranda extrapolate from the conduct of two individuals to thousands of unrelated applicants from dozens of countries, and from country-specific entry findings to a worldwide suspension of asylum adjudication, without any reasoned explanation for either extrapolation.

163.    The factual findings in Presidential Proclamations 10949 and 10998 concern the adequacy of foreign governments' systems for vetting and screening their nationals in advance of entry into the United States. Domestic benefit adjudication for noncitizens already admitted to the United States is a separate process governed by separate statutory and regulatory provisions, and Defendants have offered no reasoned explanation for treating findings about foreign vetting systems as a basis for suspending domestic adjudications. Many of the Plaintiffs have been lawfully present in the United States for years or decades, have undergone extensive prior screening by the United States government, and have already been determined eligible for the benefits they seek.

164.    USCIS failed to consider the reliance interests of applicants affected by the adjudicative hold policy. Plaintiffs and class members reasonably relied on the prior policy of issuing decisions on benefit applications, and that reliance shaped their professional, educational, financial, and family

planning. USCIS did not assess whether these reliance interests existed, did not weigh them against the policy's stated objectives, and did not consider alternatives to a categorical adjudicative hold that would have permitted final adjudication to occur while addressing any individualized concerns. The conclusory statement in PM-602-0194 that the agency had "considered" the consequence of delay and "weighed" it against vetting concerns does not satisfy the agency's obligation to engage with significant reliance interests.

165. Policy Alert PA-2025-26, which directs USCIS officers to treat nationality from one of the thirty-nine designated countries as a "significant negative factor" in the adjudication of benefit applications, is independently arbitrary and capricious.

166. Defendants failed to provide a reasoned explanation for the significant negative factor policy. The Policy Alert relies on the same country-specific vetting and screening findings set forth in Presidential Proclamations 10949 and 10998, but those findings concern foreign governments' systems for vetting their nationals in advance of entry into the United States. Defendants offered no reasoned explanation for why such findings bear on the discretionary adjudication of benefit applications filed by individuals already admitted to the United States, many of whom have undergone extensive prior screening, have been lawfully present in the United States for years, and have already been determined eligible for the benefits they seek. Defendants also failed to explain why nationality from a designated country—standing alone, without any individualized derogatory information—is a rational proxy for adverse discretionary factors in domestic benefit adjudications.

167. Defendants failed to consider the reliance interests of applicants affected by the significant negative factor policy. Applicants and their families reasonably relied on the prior policy under which their applications would be adjudicated based on individualized assessment, and that reliance shaped their professional, educational, financial, and family planning. Defendants did not assess whether these reliance interests existed, did not weigh them against the policy's stated objectives, and did not consider alternatives to a categorical nationality-based negative factor.

## COUNT V — APA: NOTICE-AND-COMMENT VIOLATION (5 U.S.C. § 553)

168.    Plaintiffs incorporate the preceding paragraphs.

169.    Policy Memoranda PM-602-0192 and PM-602-0194 impose binding consequences on the adjudication of immigration benefit applications, alter the rights and obligations of affected applicants, and suspend the performance of statutory duties. They are substantive rules with immediate and direct legal effect.

170.    PM-602-0192 imposed a categorical hold on all affirmative asylum adjudications and on all pending benefit requests filed by nationals of nineteen designated countries. PM-602-0194 extended that hold to nationals of thirty-nine countries and eliminated the family-based exemption. Both memoranda prescribe binding standards that USCIS adjudicators must follow and that determine whether applications will be adjudicated.

171.    Despite their substantive effect, neither PM-602-0192 nor PM-602-0194 was issued through notice-and-comment rulemaking. DHS and USCIS did not publish proposed rules, did not solicit public comment, and did not provide public notice prior to implementation. No notice appeared in the Federal Register for either memorandum.

172.    The memoranda's disclaimers—stating that they are "intended solely for the guidance of USCIS personnel" and do not "create any right or benefit, substantive or procedural, enforceable under law"—do not alter their substantive character. A rule's legal effect is determined by its practical impact, not by the agency's self-serving characterization. The memoranda bind adjudicators, determine outcomes, and impose immediate and concrete consequences on affected applicants.

173.    By adopting substantive rules without notice-and-comment rulemaking, Defendants violated 5 U.S.C. § 553 and the directives must be set aside under § 706(2)(D).

### COUNT VI — EQUAL PROTECTION (FIFTH AMENDMENT)

174.    Plaintiffs incorporate the preceding paragraphs.

175.    The Fifth Amendment's Due Process Clause includes an equal protection component that applies to the federal government. Plaintiffs are all physically present and lawfully residing in the United States and are entitled to equal protection under the Fifth Amendment.

### A. The Challenged Directives Are Classifications on the Basis of National Origin.

176.    The adjudicative hold policy and the significant negative factor policy expressly classify Plaintiffs on the basis of nationality, country of birth, or association with one of thirty-nine designated countries. Policy Memoranda PM-602-0192 and PM-602-0194 place applications by nationals of those countries on an indefinite adjudicative hold. Policy Alert PA-2025-26 directs USCIS officers to treat nationality from those countries as a "significant negative factor" in adjudicating discretionary benefit applications.

177.    These are facial classifications on the basis of national origin. They do not turn on individualized determinations of derogatory information, conduct, or risk. They apply to every applicant who is a national of, or who was born in, one of the designated countries—including applicants who have undergone extensive prior screening, have been lawfully present in the United States for years or decades, and have been previously found eligible for the benefits they seek.

### B. Trump v. Hawaii Does Not Govern Domestic Benefit Adjudications.

178.    *Trump v. Hawaii*, 585 U.S. 667 (2018), upheld the President's authority under INA § 212(f) to impose nationality-based restrictions on the entry of foreign nationals into the United States. Hawaii did not address—and did not authorize—nationality-based classifications applied to the domestic adjudication of immigration benefits filed by individuals already lawfully admitted to the United States. As the Supreme Court explained in Hawaii, admissibility and entry "operate in [a] different spher[e]" than the allocation of immigration benefits. 585 U.S. at 695. The deference to executive power discussed in Hawaii was tied to the President's authority over "matters of entry and national security," Id. at 704, not to USCIS's adjudication of domestic benefit applications by noncitizens already present in this country.

179.    The challenged directives operate in the domestic adjudication sphere that *Hawaii* expressly distinguished. The directives apply exclusively to applications filed by individuals lawfully admitted and present in the United States, who are not seeking entry and whose admissibility has already been determined. The reduced scrutiny applied in *Hawaii* to entry-based classifications under § 1182(f) does not extend to nationality-based classifications imposed on the domestic adjudication of immigration

benefits.

### C. The Constitutional Rights of U.S. Citizen Beneficiaries Are Burdened.

180.    The Supreme Court has recognized that "although foreign nationals seeking admission have no constitutional right to entry, this Court has engaged in a circumscribed judicial inquiry when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Hawaii*, 585 U.S. at 703. The challenged directives burden the constitutional rights of numerous U.S. citizen beneficiaries—including U.S. citizen spouses, parents, children, and employers of Plaintiffs—whose family-based and employment-based petitions have been suspended solely because of the nationality of their beneficiaries. These U.S. citizen petitioners have a direct interest in the timely adjudication of the benefit applications they filed on behalf of their family members and employees, and the challenged directives deny that adjudication on the basis of an impermissible nationality-based classification.

### D. The Directives Cannot Survive Any Level of Equal Protection Scrutiny.

181.    The challenged directives cannot survive even rational basis review. The government has offered two purported justifications: (1) two isolated criminal incidents involving Afghan nationals, and (2) the President's findings in Presidential Proclamations 10949 and 10998 regarding the adequacy of certain foreign governments' vetting and screening systems for individuals seeking entry to the United States. Neither rationally supports the classifications imposed by the challenged directives.

182.    The criminal conduct of two individuals does not rationally support adjudicative holds and adverse discretionary treatment imposed on tens of thousands of noncitizens from thirty-nine countries, much less the blanket asylum hold imposed on applicants from every country in the world.

183.    The Presidential Proclamations' findings about foreign vetting and screening systems concern the assessment of individuals seeking entry to the United States. Those findings do not rationally support adverse adjudicatory treatment of individuals who have already been admitted to the United States—often years or decades ago—who have undergone extensive United States government screening at the time of their admission and at multiple subsequent stages, and who have been found eligible for the benefits they now seek. The challenged directives apply a foreign-vetting rationale to a

-157- ~~157~~

domestic-adjudication context where that rationale has no traction.

184. The classifications imposed by the challenged directives are also overbroad and underinclusive in ways that confirm the absence of a rational fit. They sweep in lawful permanent residents seeking naturalization, employment-based applicants who have already been approved for permanent residence, asylees and refugees seeking adjustment based on protected status, and U.S.-citizen-petitioned beneficiaries whose applications have been individually adjudicated and approved at every prior stage. At the same time, the directives ignore nationals of other countries with comparable or higher visa-overstay rates, comparable or greater identified security risks, or comparable foreign-government vetting deficiencies, who are not subject to any adjudicative hold or significant negative factor.

185. Even if the directives could survive rational basis review—which they cannot—they would fail heightened scrutiny. National origin classifications by the federal government in the context of domestic civil rights have historically been subject to careful scrutiny. The challenged directives revive a form of nationality-based discrimination that Congress abolished in the 1965 Immigration and Nationality Act amendments and impose it on individuals who are lawfully present in the United States, have complied with all statutory and regulatory requirements, and in many cases have already been determined eligible for the benefits they seek.

186. The adjudicative hold policy and the significant negative factor policy violate the equal protection component of the Fifth Amendment's Due Process Clause and must be set aside.

### COUNT VII — PROCEDURAL DUE PROCESS (FIFTH AMENDMENT)

187. Plaintiffs incorporate the preceding paragraphs.

### *A. Plaintiffs Are Entitled to the Protections of the Due Process Clause.*

188. Plaintiffs are all physically present and lawfully residing in the United States. The Due Process Clause applies to all persons within the United States, including noncitizens, regardless of whether their presence is temporary or permanent. Plaintiffs are therefore entitled to the procedural protections of the Fifth Amendment's Due Process Clause.

*B. Plaintiffs Have Constitutionally Protected Liberty and Property Interests in the Adjudication of Their Applications.*

189.    A protected property interest arises where an individual has a legitimate claim of entitlement rooted in statutes, regulations, or rules that secure certain benefits. Congress has created mandatory adjudicatory schemes governing naturalization, adjustment of status, asylum, and employment authorization, which impose nondiscretionary statutory and regulatory duties on USCIS to adjudicate properly filed applications and to issue decisions to applicants. 8 U.S.C. §§ 1446(b), (d), 1447(a)–(b), 1158(d)(5)(A)(ii)–(iii); 8 C.F.R. §§ 245.2(a)(5)(i), 208.7, 274a.13(b)–(c); 5 U.S.C. § 555(b). These mandatory schemes give rise to a legitimate claim of entitlement to adjudication of properly filed applications.

190.    Plaintiffs also have constitutionally protected liberty interests at stake. Non-citizens lawfully residing in the United States have liberty interests in continuing to live and work in this country. The challenged directives place Plaintiffs at risk of losing lawful status, employment authorization, the ability to work and support themselves and their families, and the ability to remain present in the United States—each implicating liberty interests protected by the Due Process Clause. Naturalization applicants who have been recommended for or formally approved for citizenship have particularly strong interests, having completed every step required of them and awaiting only the ministerial administration of the oath of allegiance.

*C. The Challenged Directives Deprive Plaintiffs of These Interests Without Adequate Procedures.*

191.    The adequacy of procedures is evaluated by weighing three considerations: (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the probable value of additional safeguards, and (3) the government's interest, including the burden that additional procedures would impose.

192.    The private interests at stake are substantial and concrete. Plaintiffs face indefinite suspension of statutory benefits to which they are entitled by Congress, loss of employment, lapse of

lawful status, separation from family, and exposure to removal. For some Plaintiffs, the suspension of adjudication threatens loss of life-saving medical research positions, loss of livelihoods on which family members depend, and inability to reunite with spouses, children, or aging parents abroad.

193.    The risk of erroneous deprivation is severe and the value of additional safeguards is high. The challenged directives suspend adjudication based solely on nationality, country of birth, or association with a designated country—criteria that have no bearing on whether any individual applicant satisfies the statutory eligibility requirements for the benefits sought. Many Plaintiffs have been previously approved for the benefits they seek, have completed all required interviews and biometrics, and in some cases await only the ministerial issuance of a document or administration of an oath. There is no procedural mechanism for any affected applicant to challenge the hold, present individualized evidence, seek exemption, or obtain administrative or judicial review of the suspension's application to their case. Even minimal additional procedures—such as advance notice, a statement of grounds, and an opportunity to present individualized evidence—would substantially reduce the risk of erroneous deprivation by ensuring that adjudication is suspended only where individualized concerns exist.

194.    The government's interest in the adjudicative hold policy is limited. The government can address any legitimate individualized security or screening concerns through case-specific investigation, the existing background check infrastructure, and the targeted withholding-of-adjudication procedures in 8 C.F.R. § 103.2(b)(18). The adjudicative hold does not facilitate the government's screening and vetting interests; to the contrary, it suspends adjudication without conducting any individualized review at all.

### D. The Challenged Directives Provide No Notice or Process.

195.    Defendants provided no advance notice of the adjudicative hold or the significant negative factor policy. Plaintiffs were not informed before their applications were placed on hold; in many cases, they discovered the hold only through cancelled interviews, cancelled oath ceremonies, or unexplained processing delays. Defendants have provided no statement of the grounds on which any individual Plaintiff's application has been placed on hold, no estimated duration or end date for the hold, no standards governing its lifting, and no administrative mechanism for any Plaintiff to contest its

application, present individualized evidence, request exemption, or seek expedited review.

196.    By imposing an indefinite, nationality-based suspension of statutory adjudications without notice, without individualized determination, and without any meaningful opportunity to be heard, Defendants have deprived Plaintiffs of liberty and property interests without due process of law, in violation of the Fifth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.    Certify this action as a class action under Federal Rule of Civil Procedure 23(b)(2), with two subclasses as defined herein, appoint the named Plaintiffs as class representatives, and appoint Hacking Immigration Law, LLC as class counsel pursuant to Rule 23(g);

2.    Declare that Presidential Proclamations 10949 and 10998, to the extent they have been applied by the Defendants to suspend or delay domestic immigration adjudications, exceed the authority granted by INA § 212(f) and are unlawful as so applied;

3.    Declare that the adjudicative hold policy set forth in Policy Memoranda PM-602-0192 and PM-602-0194 and the significant negative factor policy set forth in Policy Alert PA-2025-26 are contrary to law, arbitrary and capricious, and were promulgated without notice-and-comment rulemaking, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 553 and 706(2);

4.    Declare that the challenged directives violate the equal protection and due process guarantees of the Fifth Amendment;

5.    Set aside and vacate, pursuant to 5 U.S.C. § 706(2), Policy Memoranda PM-602-0192 and PM-602-0194 and Policy Alert PA-2025-26 as applied to domestic USCIS adjudications, including naturalization, adjustment of status, affirmative asylum, and employment authorization;

6.    Enjoin Defendants from applying the challenged directives to suspend, delay, or impose nationality-based holds on the domestic adjudication of immigration benefit applications absent individualized, case-specific statutory grounds;

7.    Compel Defendants, pursuant to 5 U.S.C. § 706(1), to perform their mandatory,

nondiscretionary duties to adjudicate Plaintiffs' pending applications in accordance with the statutory and regulatory framework governing each benefit category, including 8 U.S.C. §§ 1446(b), (d), 1447(a)–(b), 1158(d)(5)(A)(ii)–(iii); 8 C.F.R. §§ 245.2(a)(5)(i), 208.7, 274a.13(b)–(c); and 5 U.S.C. § 555(b);

8.      Award attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

9.      Grant any further relief the Court deems just and proper.

**RESPECTFULLY SUBMITTED**
May __, 2026

***/s/ Stefanie Fisher-Pinkert***
Stefanie Fisher-Pinkert
BBO#676653
655 Centre St, Box 300151
Jamaica Plain, MA 02130
(C) 203-952-1809
(E) stef@sfpbriefing.com

***/s/ James O. Hacking, III***
James O. Hacking, III
MO Bar # 46728
*Admitted Pro Hac Vice*
Hacking Immigration Law, LLC
10121 Manchester Road, Suite A
St. Louis, MO 63122
(O) 314.961.8200
(F) 314.961.8201
(E) jim@hackingimmigrationlaw.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on May __, 2026, a true and correct copy of the foregoing was served on Defendants by filing the document through the Court's CM/ECF system.

***/s/ James O. Hacking, III***
James O. Hacking, III