**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

AKMURAT O. DOE,  et al,

   Plaintiffs,

v.

DONALD J. TRUMP, et al.,

   Defendants.

Case No.   1:25-cv-13946-JEK

**PLAINTIFFS' MOTION TO ENFORCE THE COURT'S APRIL 30, 2026
AND MAY 7, 2026 PRELIMINARY INJUNCTION ORDERS**

**INTRODUCTION**

This Court possesses inherent authority to enforce its own orders. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). That authority is not contingent on a party's motion, and it is not diminished by the government's bare assertion that compliance has occurred. On April 30 and May 7, 2026, this Court issued clear and unambiguous orders enjoining Defendants from enforcing the adjudicative hold policy — set forth in Policy Memoranda PM-602-0192 and PM-602-0194 — against the plaintiffs in this consolidated action, and ordering Defendants to immediately lift that hold. Docs. 82 and 87. Defendants are "ENJOINED from enforcing the adjudicative hold policy, set forth in Policy Memorandum 602-0192 and Policy Memorandum 602-0194, to the pending benefit applications of the plaintiffs in the consolidated case" and are "ORDERED to immediately lift the adjudicative hold as to those plaintiffs." Doc. 87 at 1–2.

Defendants have not complied. In the weeks since those orders were issued, named plaintiffs in the Doe I case have contacted USCIS by phone and online chat — identifying themselves, providing their receipt numbers, and citing the Court's orders — and have been told, repeatedly and in writing, that the hold remains in place due to their country of birth. USCIS agents have repeatedly informed plaintiffs that they do not have access to, or have not received, information regarding the Court's orders or their

implementation within the agency, that the hold is "still as is until further notice," and that plaintiffs should consult USCIS's own policy manual — the very policy this Court has enjoined — as the reason their cases cannot move forward. One agent, confronted with the existence of the preliminary injunction, told a plaintiff: "Ok, I can't do anything about that. It's between you, USCIS, and the judge." Ex. B (Gisoo D. Doe Decl.) ¶ 5.

These are not isolated incidents. They are the product of a systemic failure by the government to implement this Court's orders within its own agency. Plaintiffs respectfully ask the Court to exercise its inherent authority to enforce the preliminary injunction and to require Defendants to provide, within seven days: (1) expedited discovery concerning Defendants' compliance with, or alleged non-compliance with, the Preliminary Injunction; (2) written certification of compliance from USCIS leadership, and (2) a case-by-case status report for each named plaintiff confirming that the adjudicative hold has been lifted and identifying any action taken on each plaintiff's pending application since the Orders issued.

## RELEVANT BACKGROUND

### A.    The Court's Orders.

On April 30, 2026, this Court issued a Memorandum and Order granting Plaintiffs' motion for a preliminary injunction. Doc. 82. On May 7, 2026, the Court issued a further Order extending that injunction to all plaintiffs in the consolidated action — the 167 plaintiffs in Doe I and the 99 plaintiffs in Doe II — and ordering Defendants to "immediately lift the adjudicative hold" as to those plaintiffs. Doc. 87 at 1–2. The orders are clear, unambiguous, and directed to USCIS, the agency responsible for adjudicating the pending benefit applications at issue.

### B.    The Government's Demand for Plaintiff Identifying Information.

Before the preliminary injunction was issued, Defendants sought — and this Court granted — access to the full names, A-numbers, and application receipt numbers of every named plaintiff in this consolidated action, sent to Defendants under seal. See Docs. 34, 44–45. The government's stated purpose was, in part, to enable USCIS to identify the plaintiffs' cases and take the steps necessary to comply with any court order. The government now has that information. It has had it since before the injunction was

issued. There is no administrative obstacle to case-level compliance — only the absence of a directive to achieve it.

**C.    Plaintiffs' Good-Faith Compliance Efforts and Defendants' Non-Response.**

Local Rule 7.1(a)(2) requires counsel to confer in good faith before filing a non-dispositive motion. Consistent with that obligation, and because Plaintiffs had seen no case-level movement in the three weeks following the Court's Orders, undersigned counsel transmitted a detailed compliance letter to Defendants' counsel of record on May 17, 2026. Ex. A. The letter explained that Plaintiffs sought the information "in good faith and with the goal of facilitating compliance without the need to involve the Court," and expressly stated: "If, on the other hand, compliance is incomplete or the scope of the Orders is in dispute as to particular plaintiffs or application types, we would prefer to identify those issues and attempt to resolve them through conferral before seeking the Court's assistance." Ex. A at 2.

The letter requested five specific categories of documentation by close of business May 23, 2026: (1) a copy of any directive, policy alert, memorandum, or written communication issued by USCIS to its adjudicators, field offices, service centers, and asylum offices communicating the Orders and instructing officers to lift the hold and cease applying the significant negative factor policy; (2) identification of which USCIS components received that directive, including the National Benefits Center, Vermont Service Center, Nebraska Service Center, Texas Service Center, and all asylum offices with jurisdiction over plaintiffs' pending applications; (3) case-level confirmation for each named plaintiff that the adjudicative hold had been lifted and that action had been taken on their application since the Orders issued; (4) an explanation of how Defendants had implemented the injunction against applying the significant negative factor policy set forth in PA-2025-26; and (5) whether any operational guidance had been issued modifying or superseding PM-602-0192 or PM-602-0194 in light of the Orders. Ex. A at 1–2.

On May 18, Defendants' counsel responded by email that she had met with USCIS that day and stated simply that "they are in compliance with the Court's order." She had consulted with the agency charged with implementing these Orders, and returned with a single conclusory sentence. No directive. No list of notified components. No case-level confirmation. Nothing responsive to any of the five requests

in Plaintiffs' letter. That same day, Plaintiffs' counsel renewed the request for documentation, noting that a general assertion of compliance was "difficult to square with what we are seeing on the ground" given that very few clients had seen any movement since the Orders issued.

On May 19, Defendants' counsel conveyed the following statement from USCIS, in full: "Per the Court's April 30, 2026 order, USCIS is enjoined from the hold policies in PM 602-0192, PM 602-0194 and the PA 2025-26 related to the 22 plaintiffs. USCIS also, per the Court's May 7, 2026 order, is enjoined from the hold policies in PM 602-0192, PM 602-0194 and the PA 2025-26 related to the 167 plaintiffs in Doe I, and the 99 plaintiffs in Doe II. Therefore, USCIS is not applying the PMs or the PA to the plaintiffs referenced." That statement addressed none of the five requests in Plaintiffs' letter. It produced no implementation directive, no list of notified components, no case-level confirmation, no explanation of how the significant negative factor injunction was being implemented, and no operational guidance. It recited the text of the Court's orders and asserted, without support, that they were being followed. Defendants provided no further response before this motion was filed. That assertion is directly contradicted by the evidence set forth below.

## EVIDENCE OF NONCOMPLIANCE

Plaintiffs submit the accompanying declarations of named plaintiffs in the Doe I case, each of whom contacted USCIS after the Orders issued and received confirmation — by phone or online chat, from identified USCIS agents — that the adjudicative hold remains in effect as to their cases. Ex. B, C, D and E. The evidence falls into four categories, each of which independently establishes noncompliance.

**A.      USCIS Agents Explicitly Confirmed the Hold Remains in Place Due to Country of Birth.**

Multiple plaintiffs were told directly and unambiguously that their cases remain on hold because of their country of birth. Plaintiff Amirhossein H. Doe contacted USCIS by online chat on May 27, 2026, and was told by agent Jessica L (Agent ID G006554): "Yes, the hold has to do with your country of birth. USCIS has not released any new information on the hold, it is still as is until further notice." Ex. B (Amirhossein H. Doe Decl.) ¶¶ 4–5. Plaintiff Raidel P. Doe contacted USCIS on the same date and was informed there was a hold on his case; when he asked whether it had anything to do with his nationality,

the agent confirmed it did, stating they "could see that my country of birth is Cuba." Ex. B (Raidel P. Doe Decl.) ¶5. Plaintiff Behrouz E. Doe was told by agent Ashley I: "there is a hold on your case," after inquiring whether the hold was due to his home country. Ex. B (Behrouz E. Doe Decl.) ¶ 5.

Plaintiff Sobhan Z. Doe was informed: "Yes there is a hold on your case due to restricted countries ban." Ex. B (Sobhan Z. Doe Decl.) ¶5. Plaintiff Kasra S. Doe specifically asked agent Elizabet M, (Agent ID G-33168) whether the adjudicative hold affecting applicants from certain countries had been lifted following this Court's orders. The agent stated that "additional reviews" were being conducted due to Plaintiff's country of origin pursuant to the Presidential Proclamation Ex. C (Kasra S. Doe Decl.) ¶6-7. Plaintiff Mohammad M.Z. Doe contacted USCIS on May 28, 2026, and was informed by agent Haley R. that there were "no updates on our end with it being lifted" regarding lifting the hold despite Plaintiff informing the agent of this Court's orders. Ex. D (Mohammad M.Z. Doe Decl.) ¶ 6.

**B.      USCIS Agents Acknowledged the Court's Orders and Refused to Act.**

Several plaintiffs specifically informed USCIS agents of this Court's orders, and were told in response that USCIS could not or would not act. Plaintiff Jose T. Doe contacted USCIS on May 22, 2026, and informed agent Araceli E (Agent ID G-026386) of the Court's orders; the agent responded that the case was "STILL PAUSED, but it is under processing" — paused due to Venezuela nationality. Ex. B (Jose T. Doe Decl.) ¶ 6. When Plaintiff Amirhossein H. Doe asked whether the matter could be escalated to a Tier 2 officer in light of the April 30 order, the agent replied: "USCIS has not provided new information on the hold regarding if the hold is going to be lifted. You just have to wait," and ended the chat. Ex. B (Amirhossein H. Doe Decl.) ¶ 6. Plaintiff Gisoo D. Doe was told by agent Ashley I, after mentioning the court order: "Ok, I can't do anything about that. It's between you, USCIS, and the judge." Ex. B (Gisoo D. Doe Decl.) ¶ 5. Plaintiff Sobhan Z. Doe, after informing the agent of the May 7 order, was told: "We do not have any updated information on the ban being removed at this time." Ex. B (Sobhan Z. Doe Decl.) ¶ 6.

Plaintiff Khazar D. Doe contacted USCIS on May 20, 2026, informed the agent of this Court's order lifting the hold, and was told her case was "paused due to the Presidential Proclamation," which

"can't be lifted" because "the President has to do that," and that it remained paused notwithstanding the lawsuit. Ex. C (Khazar D. Doe Decl.) ¶¶ 5–6. Plaintiff Milad H. Doe contacted USCIS on May 22, 2026, informed the agent of this Court's order, and was told his case was "not yet" being processed in compliance with the order. Ex. C (Milad H. Doe Decl.) ¶ 6. Plaintiff Saman Z. Doe contacted USCIS on May 27, 2026, informed the agent of this Court's order lifting the hold, and was told by agent TaQuadra T. that "the lift on your case is not updated at this time." Ex. C (Saman Z. Doe Decl.) ¶ 5.

These exchanges confirm both that USCIS personnel continue to apply the enjoined pause notwithstanding this Court's orders and that agents have not been instructed to take corrective action in response to the injunctions.

**C.     USCIS Agents Cited the Enjoined Policy Manual as the Reason Cases Cannot Move Forward.**

Perhaps most telling, at least one USCIS agent, when confronted with the existence of the preliminary injunction, directed the plaintiff to USCIS's own policy manual as the controlling authority. Plaintiff Shaghayegh V. Doe was told: "Please refer to our policy manual on our USCIS site as this is a requirement. We cannot process your case further until the hold is lifted." Ex. B (Shaghayegh V. Doe Decl.) ¶ 6. This response — invoking the very policy memoranda this Court has enjoined as the reason a plaintiff's case cannot proceed — confirms that the enjoined directives remain operationally in effect at the USCIS contact center level, at minimum. Plaintiff Shaghayegh V. Doe faces the loss of her employment and lawful status if her I-765 STEM OPT extension is not adjudicated by July 12, 2026. *Id.* ¶ 9. When Plaintiff Amir B. Doe asked USCIS agent Miranda B. whether his case remained on hold, the agent cited the Policy Memorandum as the basis for the continued delay. Ex. E (Amir B. Doe Decl.) ¶ 5.

**D.     USCIS Agents Admitted the Court's Orders Have Not Been Communicated Within the Agency.**

Several agents stated explicitly that information about the court orders had not been transmitted within USCIS. Plaintiff Mitra B. Doe contacted USCIS approximately two weeks after the preliminary injunction was granted and was informed by agent Charles F (Agent ID G-018697) that USCIS had not

been informed of the Court's order. Ex. D (Mitra B. Doe Decl.) ¶ 6. She initially joined this action based on a pending I-140 petition and later became eligible for STEM OPT, filing her I-765 at the end of February; her prior OPT authorization has since expired, resulting in a lapse in work authorization and ongoing hardship due to USCIS delay. Plaintiff S. Alireza Doe was told by agent Haylee P (Agent ID G-712166): "We do not have any information regarding court cases at this time." Ex. B (S. Alireza Doe Decl.) ¶¶ 5–6. When the plaintiff asked to be escalated to a Tier 2 officer, the agent responded: "Information regarding this court case hasn't been pushed through to USCIS yet so tier 2 will not have any additional information to provide at this time, either." Id. This is a direct admission that, as of May 27, 2026 — three weeks after this Court's May 7 Order — the injunction had not been communicated to USCIS personnel.

Additionally, Plaintiff Zhina R. Doe, a premium processing applicant, was told by agent Cidney S (Agent ID G-011896): "I have provided the only answer/information USCIS allows for chat agents to provide. I have provided you with all of the information that I have access to in my system. I have completed the tasks USCIS allows for me to complete as a chat agent." Ex. B (Zhina R. Doe Decl.) ¶ 6. This scripted response — confirming that agents have been given limited authority and information — further demonstrates that the failure of compliance is institutional, not individual.

ARGUMENT

**A.    This Court Has Inherent Authority to Enforce Its Own Orders.**

Federal courts possess inherent authority to enforce compliance with their orders. *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991); *see also Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63 (1st Cir. 2002). That authority exists independently of any statutory basis, and it extends to requiring parties to take affirmative steps to demonstrate that compliance has been achieved. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987). Where, as here, the government has filed a bare assertion of compliance unsupported by

documentation, and the record contains substantial evidence that compliance has not occurred, the Court's inherent authority to require substantive proof of compliance is squarely implicated.

### B.    The Four Factors for Enforcement Are Satisfied.

Even under the civil contempt standard, enforcement is warranted. A court may enforce a preliminary injunction upon clear and convincing evidence that: (1) the alleged contemnor had notice of the order; (2) the order was clear and unambiguous; (3) the alleged contemnor had the ability to comply; and (4) the alleged contemnor violated the order. *New York v. Trump*, 777 F. Supp. 3d 112, 116 n.3 (D.R.I. 2025), aff'd, 171 F.4th 1 (1st Cir. 2026). Each factor is satisfied here.

**Notice**. Defendants have notice of the Orders. They appeared and opposed the preliminary injunction, received the Orders directly, and filed a compliance statement asserting awareness of the Orders' terms. The government's demand for plaintiff identifying information to facilitate compliance further confirms actual notice.

**Clarity**. The Orders could not be clearer. They command that Defendants are "ENJOINED from enforcing the adjudicative hold policy, set forth in Policy Memorandum 602-0192 and Policy Memorandum 602-0194, to the pending benefit applications of the plaintiffs in the consolidated case" and are "ORDERED to immediately lift the adjudicative hold as to those plaintiffs." Doc. 87 at 1–2. No ambiguity exists as to scope, subject matter, or the identity of the affected plaintiffs.

**Ability to Comply**. USCIS has adjudicated immigration benefits applications since its inception. It is paid by applicants — including premium processing fees from some plaintiffs — to do so. Plaintiff Aye S. Doe's OPT application was upgraded to premium processing on November 14, 2025, which ordinarily requires USCIS action within 15 business days, yet more than six months later USCIS stated only that the case remained under "active examination" and that the delay was "necessary" to ensure "thorough processing." Ex. D (Aye S. Doe Decl.) ¶¶ 2, 5–6. The continued failure to adjudicate even premium-processed applications strongly confirms that the adjudicative hold remains in effect notwithstanding this Court's orders. Defendants  have the names, A-numbers, and receipt numbers of

every named plaintiff. The government has offered no explanation for why it has been unable to issue an internal directive implementing this Court's orders.

**Violation**. The declarations submitted herewith establish, by clear and convincing evidence, that the adjudicative hold remains in place as to named plaintiffs in Doe I. USCIS agents have confirmed the hold in writing, refused to acknowledge the injunction's effect, and in at least one instance cited the enjoined policy manual as the operative authority. The government's single-sentence assertion of compliance is insufficient to overcome this record.

## RELIEF REQUESTED

Plaintiffs respectfully request that the Court exercise its inherent authority to enforce the preliminary injunction and order Defendants to provide, within seven days of any order:

1. Expedited discovery on the issue of the Defendants' compliance or non-compliance with the Preliminary Injunction;

2. Written certification from USCIS leadership — at the level of the Director or equivalent senior official with operational authority — confirming that a directive has been issued to all USCIS components with jurisdiction over named Plaintiffs' applications, instructing those components to lift the adjudicative hold and to process Plaintiffs' applications without applying the enjoined policies; and/or

3. A case-by-case status report for each named plaintiff in the Doe I consolidated action, identifying the current status of each pending application, confirming that the adjudicative hold has been lifted as to that application, and identifying any affirmative action taken on that application since the Orders issued on April 30 and May 7, 2026.

Plaintiffs do not seek sanctions at this time. They reserve the right to seek further relief, including sanctions, should Defendants fail to comply with any order entered on this motion. What Plaintiffs actually seek is documentation in each case that the Government is complying with this Court's orders.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and enter an order requiring Defendants to provide written certification of compliance and a case-by-case status report within seven days.

**RESPECTFULLY SUBMITTED**
May 29, 2026


*/s/ Stefanie Fisher-Pinkert*
Stefanie Fisher-Pinkert
BBO#676653
655 Centre St, Box 300151
Jamaica Plain, MA 02130
(C) 203-952-1809
(E) stef@sfpbriefing.com


*/s/ James O. Hacking, III*
James O. Hacking, III
MO Bar # 46728
*Admitted Pro Hac Vice*
Hacking Immigration Law, LLC
10121 Manchester Road, Suite A
St. Louis, MO 63122
(O) 314.961.8200
(F) 314.961.8201
(E) jim@hackingimmigrationlaw.com

**ATTORNEYS FOR PLAINTIFFS**


**CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule 7.1(a)(2), counsel for Plaintiffs certify that on May 17, 2026, they transmitted a detailed compliance letter to Defendants' counsel of record requesting documentation of the steps taken to implement the Court's Orders, and that on May 18 and 19, 2026, counsel exchanged emails in a good-faith attempt to resolve or narrow the compliance issues presented in this motion. Defendants' counsel provided only a general assertion of compliance, without documentation.

Defendants did not request that Plaintiffs identify specific instances of noncompliance until May 28, 2026 — after two rounds of conferral had yielded only a conclusory assertion of compliance, and after Plaintiffs had advised that they would seek the Court's assistance. That request has the burden backwards. The obligation to implement the injunction, and to confirm that it has been implemented, runs to Defendants, who have held the names, A-numbers, and receipt numbers of every named plaintiff under seal since before the injunction was issued. More fundamentally, the request is futile on its own terms: the

-10-

-11-

overwhelming majority of named plaintiffs have seen no movement on their applications since the Orders issued, so noncompliance is the rule rather than a set of isolated exceptions to be run down case by case. Asking Plaintiffs to catalog the cases in which nothing has happened would do nothing but reproduce a plaintiff list Defendants already possess, while leaving the underlying failure to implement the Orders unaddressed.

The parties were unable to resolve the dispute, and Plaintiffs therefore seek the Court's assistance. Defendants have refused to provide the requested documentation of compliance with this Court's Orders.

*/s/ James O. Hacking, III*
James O. Hacking, III

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, a true and correct copy of the foregoing was served on Defendants by filing the document through the Court's CM/ECF system.

*/s/ James O. Hacking, III*
James O. Hacking, III

-11-