# EXHIBIT

# D

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AKMURAT O. DOE, et al,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | Case No. 1:25-cv-13946-JEK<br><br>CONSOLIDATED WITH:<br><br>*Abeer H. Doe, et al. v. Trump, et al.*, 1:26-cv-11382-JEK |

**NOTICE OF DEPOSITION**

**TO:** All Parties of Record

**DATE AND HOUR:** Friday, August 21, 2026, 8:30 a.m. – 12:30 p.m.

**PLACE DEPOSITION TO BE TAKEN:** USCIS Headquarters, 5900 Capital Gateway Drive, Camp Springs, MD 20746

**WITNESS TO BE DEPOSED:** Defendant USCIS Rule 30(b)(6) designee(s)

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition upon oral examination of Defendant U.S. Citizenship and Immigration Services (USCIS) at the date, hour, and place stated above, before a Notary Public or other officer authorized to administer oaths.

Pursuant to Rule 30(b)(6), USCIS shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf regarding the matters for examination set forth below. Each designated witness must testify about information known or reasonably available to USCIS. The deposition will be recorded by stenographic means and may also be recorded by audio and/or audiovisual means, and will continue from day to day until completed. Any party or their attorney may appear and cross-examine as they see fit.

**DEFINITIONS**

1. **"USCIS"** means Defendant United States Citizenship and Immigration Services, and includes its components, offices, officers, employees, agents, and any person acting or purporting to act on its behalf.

2. **"Challenged Policies"** means, collectively, the Global Asylum Hold, the Benefits Hold, the Comprehensive Re-Review Policy, and the Country-Specific Factors Policy, as defined below and as announced in the November, December, and January Memoranda.

3. **"November Memorandum"** means USCIS Policy Alert PA-2025-26, "Impact of INA 212(f) on USCIS' Adjudication of Discretionary Benefits" (Nov. 27, 2025), and the corresponding revisions to the USCIS Policy Manual.

4. **"December Memorandum"** means USCIS Policy Memorandum PM-602-0192, "Hold and Review of All Pending Asylum Applications and All USCIS Benefit Applications Filed by Aliens from High-Risk Countries" (Dec. 2, 2025).

5. **"January Memorandum"** means USCIS Policy Memorandum PM-602-0194, "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries" (Jan. 1, 2026).

6. **"Global Asylum Hold"** means USCIS's directive to place a hold on all Forms I-589 (Application for Asylum and for Withholding of Removal) pending a comprehensive review.

7. **"Benefits Hold"** means USCIS's directive to place a hold on pending benefit requests filed by individuals from the Designated Countries pending a comprehensive review, regardless of entry date.

8. **"Comprehensive Re-Review Policy"** means USCIS's directive to conduct a comprehensive re-review of approved benefit requests for individuals from the Designated Countries who entered the United States on or after January 20, 2021.

9. **"Country-Specific Factors Policy"** means the revisions to the USCIS Policy Manual directing personnel to treat country-specific factors as a significant negative factor in adjudicating discretionary benefit requests.

10. **"Designated Countries" (or "Travel Ban Countries")** means the countries subject to the entry restrictions set forth in Proclamation No. 10949 (June 4, 2025) and Proclamation No. 10998 (Dec. 16, 2025), and any country USCIS has treated as "high-risk" in applying the Challenged Policies.

11. **"Operation PARRIS"** means the initiative described by USCIS as "Post-Admission Refugee Reverification and Integrity Strengthening."

12. **"Immigration Benefit"** means any classification, status, or authorization adjudicated by USCIS, including asylum, adjustment of status, employment authorization, naturalization, and temporary protected status.

13. **"Relating to" / "concerning"** means referring to, regarding, evidencing, constituting, reflecting, or in any way logically or factually connected with the subject matter.

14. "**Contact Center"** means the USCIS Contact Center and any other call center, telephone helpline, tier-1 or tier-2 support service, or public-facing case-status service (including online case-status tools) through which USCIS communicates case status or guidance to applicants or the public.

15. **"Preliminary Injunction"** means the Court's April 30, 2026 Order in this action [ECF No. 82] preliminarily enjoining Defendants from applying or enforcing the Challenged Policies as to Plaintiffs and their members / as specified therein.

16. **"Dorcas Litigation"** means *Dorcas International Institute of Rhode Island, et al. v. USCIS*, et al., No. 1:26-cv-00132-JJM-PAS (D.R.I.).

17. **"Dorcas Vacatur"** means the Court's June 5, 2026 Opinion, and any judgment or order entered in the *Dorcas* Litigation, vacating and declaring unlawful the Challenged Policies.

18. **"Appeal"** means any appeal taken by Defendants, USCIS, or any other defendant from the judgment entered in the *Dorcas* Litigation.

**INSTRUCTIONS**

1. The matters for examination set forth below are to be construed independently; each subpart is illustrative of, and subsumed within, the matter under which it appears and does not constitute a separate matter for examination.

2. Unless otherwise stated, each matter concerns the period from January 20, 2025 to the present, and encompasses the adoption, scope, operation, current status, and any subsequent modification or rescission of the Challenged Policies.

3. To the extent USCIS contends that any matter calls for information protected by the deliberative-process privilege, the attorney-client privilege, or any other privilege or protection, USCIS shall so state and shall produce a designee prepared to testify to all non-privileged information within the matter.

**MATTERS FOR EXAMINATION**

1. USCIS's statutory authority to adjudicate Immigration Benefits and its ordinary adjudication process as it existed before the Challenged Policies, including:

(a)the categories of Immigration Benefits USCIS adjudicates and the statutory and regulatory deadlines USCIS recognizes for adjudicating them;

(b)the distinction USCIS draws between non-discretionary and discretionary benefits, and the individualized, totality-of-the-circumstances assessment applied to discretionary adjudications; and

(c)the security-screening and background-check procedures USCIS applied to applicants before the Challenged Policies.

2. The development, drafting, review, clearance, approval, and issuance of the November, December, and January Memoranda, including the identity and role of each person who authored, contributed to, approved, or directed the issuance of each Memorandum, and the timing of each step.

3. The factual bases, evidence, data, and analyses USCIS relied upon in adopting each of the Challenged Policies, including:

(a)the contents and completeness of the administrative record for each Memorandum, and any materials USCIS considered but did not include in the record; and

(b)the relationship between the Challenged Policies and Proclamation Nos. 10949 and 10998 (the entry restrictions), including any findings from those proclamations or any inter-agency vetting review that USCIS relied upon.

4. The scope and operation of the Global Asylum Hold, including which applications and applicants it covers, any change in that scope over time, the nature, status, and anticipated completion of the "comprehensive review" referenced in the December Memorandum, and the authority and process for lifting the hold or adjudicating an otherwise-eligible application (including the Director/Deputy Director approval requirement).

5. The scope and operation of the Benefits Hold, including the benefit types and applicants it covers, its extension to additional countries by the January Memorandum, what processing (if any) occurs on held applications while final decisions are paused, and the authority and process for lifting the hold or adjudicating an otherwise-eligible application.

6. The scope and operation of the Comprehensive Re-Review Policy, including which previously granted benefits and applicants it covers, the procedures, standards, and criteria USCIS applies

in re-reviewing and deciding whether to revoke, rescind, or terminate a benefit, the process or notice (if any) afforded to affected individuals, and the anticipated duration of the re-review.

7. The scope and operation of the Country-Specific Factors Policy, including how USCIS personnel are directed to weigh "country-specific factors" as a significant negative factor in discretionary adjudications, which factors are considered, whether and how the policy applies beyond the Designated Countries, and any guidance, training, or instructions provided to adjudicators and any adjudications in which it has been applied.

8. The current operative status of each Challenged Policy, and any modification, narrowing, resumption, or rescission of any Challenged Policy, including:

(a)Operation PARRIS — its purpose, procedures, scope, and status;

(b)the March 30, 2026 website Alert and the April 30, 2026 Update — what holds were lifted, for whom, and on what basis, and whether any change was effectuated by a memorandum of the USCIS Director (as the Challenged Policies require) or only by website posting; and

(c)the "internal review process for lifting holds on individual or group cases," including who administers it and the criteria applied.

9. The binding effect of the Challenged Policies on USCIS personnel — including the "effective immediately" directives and the statement that the Policy Manual "is controlling and supersedes any related prior guidance" — whether any adjudicator has discretion to depart from them, and the legal consequences that flow from them for applicants and beneficiaries.

10. The rationale USCIS has stated for the Challenged Policies and the connection between that rationale and the Policies, including:

(a)the connection USCIS drew between the 2024 Election Day incident and the 2025 Washington, D.C. shooting and a policy reaching applicants from all Designated Countries and asylum seekers from every country;

(b)the factual basis for USCIS's conclusion that individuals from the Designated Countries pose a national-security or public-safety threat, and how withholding, delaying, or re-reviewing benefits for persons already present in the United States serves that interest; and

(c)any less-restrictive or non-country-based alternatives (such as enhanced individualized vetting) that USCIS considered, and the reasons any were rejected.

11. Whether, when, and how USCIS identified, assessed, and weighed the reliance interests of affected applicants and beneficiaries before adopting each Challenged Policy, and the meaning and basis of USCIS's statement that it "weighed" processing delays against the need for vetting, including whether USCIS considered consequences beyond delay (such as lost employment authorization, canceled interviews, and re-review of previously granted benefits).

12. USCIS's actual purpose, priorities, and decisionmaking process in adopting the Challenged Policies, including any departures from USCIS's ordinary substantive or procedural practices, the relationship (if any) between the Policies and contemporaneous public statements by the President and the then-Secretary of Homeland Security, and any consideration by USCIS of the national-origin or religious composition of the affected population.

13. USCIS's characterization of each Challenged Policy as a legislative/substantive rule, an interpretive rule, or a general statement of policy, the basis for that characterization, and whether USCIS undertook or considered notice-and-comment rulemaking for any Policy and why it proceeded by memorandum.

14. How each Challenged Policy classifies applicants by country of origin, including the derivation of the list of Designated Countries used by USCIS, the extent to which that list corresponds to predominantly non-white, non-European, or majority-Muslim countries, and whether any facially neutral criteria (such as vetting deficiencies, information-sharing, or overstay rates) were applied evenhandedly across countries or selectively to the Designated Countries.

15. The scope and impact of the Challenged Policies, including the number of applications and beneficiaries affected by each Policy (by benefit type and country of origin), the volume held, resumed, denied, or re-reviewed to date, resulting backlogs, processing times, and interview cancellations, and any comparison of adjudication outcomes for applicants from Designated Countries versus other applicants.

16. The governmental interest USCIS contends each Challenged Policy serves, the evidence supporting that interest, how each Policy is tailored to it, and USCIS's position on whether the deference framework applicable to entry decisions applies to adjudications affecting noncitizens already lawfully admitted to and present in the United States.

17. The authenticity, custody, and completeness of the November, December, and January Memoranda, the administrative records filed in this and related litigation, the March 30 and April 30 postings, and the declaration(s) submitted by USCIS concerning the Challenged Policies.

18. USCIS's compliance with and implementation of the Preliminary Injunction, and any resulting change to the Challenged Policies, including:

(a) each action USCIS took to comply with the Preliminary Injunction — including to lift, suspend, or cease applying any Challenged Policy as to persons covered by the Order — the instrument by which USCIS did so (e.g., a memorandum of the USCIS Director, email, Policy Manual update, or website posting), and the date of each;

(b) the process by which USCIS communicated the Preliminary Injunction and any resulting change to its workforce — including headquarters, service centers, field offices, asylum offices, and the Contact Center — such as guidance memoranda, emails, training, talking points, and Contact Center scripts or case-status messaging, and the identity of the persons responsible and the dates on which each communication issued;

(c) the steps USCIS took to ensure that adjudicators and Contact Center personnel resumed adjudicating covered applications and provided accurate and consistent information about their status, and any monitoring or quality control of that messaging;

(d) any continued, inconsistent, or renewed application of the Challenged Policies after the Preliminary Injunction, including instances in which covered applicants or the public were told that a case remained paused or on hold, or that personnel had received no guidance or instruction;

(e) USCIS's understanding of the scope of the Preliminary Injunction — including which persons, applications, and Challenged Policies it covers — and any position that particular conduct falls outside the Order; and

(f) any effort to stay, modify, dissolve, appeal, or seek clarification of the Preliminary Injunction, and the effect of any such action on the adjudication of covered applications.

19. USCIS's implementation of the Dorcas Vacatur and any resulting lift, resumption, reinstatement, or continuation of the Challenged Policies, including:

(a) each action USCIS took to lift, rescind, resume, reinstate, or continue any hold or Challenged Policy following the Dorcas Vacatur, the instrument by which USCIS did so (e.g., a memorandum of the USCIS Director, email, Policy Manual update, or website posting), and the date of each;

(b) the process by which USCIS communicated the Dorcas Vacatur and any resulting change to its workforce — including headquarters, service centers, field offices, asylum offices, and the Contact Center — such as guidance memoranda, emails, training, talking points, and Contact

Center scripts or case-status messaging, and the identity of the persons responsible and the dates on which each communication issued;

(c) the steps USCIS took to ensure that adjudicators and Contact Center personnel resumed adjudicating affected applications and provided accurate and consistent information about their status, and any monitoring or quality control of that messaging;

(d) any continued, inconsistent, or renewed application of the Challenged Policies after the Dorcas Vacatur, including instances in which applicants or the public were told that a case remained paused or on hold, or that personnel had received no guidance or instruction; and

(e) whether any guidance, instruction, hold, adjudication practice, or Contact Center messaging concerning the Challenged Policies was issued, modified, suspended, reinstated, or rescinded after the notice of appeal in the Dorcas Litigation was filed, including whether any stay of the Dorcas Vacatur was sought or obtained and its effect on the adjudication of affected applications.

RESPECTFULLY SUBMITTED
July 29, 2026

Stefanie Fisher-Pinkert
BBO# 676653
655 Centre St, Box 300151
Jamaica Plain, MA 02130
(C) 203-952-1809
(E) stef@sfpbriefing.com

***/s/ James O. Hacking, III***
James O. Hacking, III
MO Bar # 46728
Admitted Pro Hac Vice
Hacking Immigration Law, LLC
10121 Manchester Road, Suite A
St. Louis, MO 63122
(O) 314.961.8200
(F) 314.961.8201
(E) jim@hackingimmigrationlaw.com

Carl Hurvich
BBO # 698179
Brooks Law Firm
10 High Street, Suite 3
Medford, MA 02155

617-245-8090
Carl@brookslawfirm.com

LaToya N. McBean Pompy
NY Bar # 6153985
McBean Law, PLLC
237 Mamaroneck Ave, Lower Level
White Plains, NY 10605
914-898-9488
L.Pompy@mcbeanlaw.com

Lauren E. Allu
NY Bar # 4160644
NJ Bar # 014772002
PA Bar # 325125
McBean Law, PLLC
237 Mamaroneck Ave, Lower Level
White Plains, NY 10605
914-898-9488
l.allu@mcbeanlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via the Court's CM/ECF electronic filing system this 29th day of July, 2026, to:

Victoria Turcios
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
Ben Franklin Station, P.O. Box 878
Washington, DC 20044
Tel: (202) 451-7661
Email: Victoria.E.Turcios2@usdoj.gov

ATTORNEY FOR DEFENDANTS

***/s/ James O. Hacking, III***